UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,,

No. 21 Civ 6387 (KAM)(LB)

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

Defendants.

-------------------------------------------------------------------- x

**DEFENDANTS NEW YORK CITY DEPARTMENT OF EDUCATION AND MEISHA
PORTER'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants DOE and Porter
100 Church Street
New York, New York 10007

*Of Counsel:*     Andrea O'Connor
                  Iván A. Méndez, Jr.
                  Maxwell Leighton

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF FACTS ........................................................................ 4

ARGUMENT ..............................................................................

    A.    PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE IMPACT ARBITRATION AWARD .. ........................... 7

    B.    PLAINTIFFS SEEK A MANDATORY INJUNCTION, AND FAIL TO MEET THE ASSOCIATED BURDEN ........................................ 8

    C.    PLAINTIFFS DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION ................................................... 10

    D.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM ................................ 10

    E.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS .............................................................................. 14

        1.    Plaintiffs Are Not Being Subject to Discipline ......................... 15

        2.    Alternatively, Plaintiffs Have Been Provided All Process Owed to Them .............................................................. 20

    F.    THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS .......................................................... 25

    G.    AN INJUNCTION IS NOT IN THE PUBLIC INTEREST ................................ 27

CONCLUSION ................................................................... ................................................ 27

<u>Cases</u>                                                                                                                    <u>Pages</u>

14 Penn Plaza LLC v. Pyett,
   556 U.S. 247 (2009) ........................................................................................7

Abdul Wali v. Coughlin,
   754 F.2d 1015 (2d Cir. 1985)...........................................................................7

Adams v. N.Y. State Educ. Dep't,
   08 Civ. 5996 (VM), 2010 U.S. Dist. LEXIS 15635 (S.D.N.Y 2008)....................19

Adrian v. Bd. of Ed.,
   92 A.D.3d 1272 (4th Dep't 2012), <u>leave to appeal granted</u>, 19 N.Y.3d 804
   (2012)......................................................................................................15, 16

Almontaser v. N.Y. City Dep't of Educ.,
   519 F.3d 505 (2d Cir. 2008)..............................................................................9

Blake v. Potter,
   2004 U.S. Dist. LEXIS 6596 (S.D.N.Y. Apr. 12, 2004)...........................................7

Brown & Williamson Tobacco Corp. v. Engman,
   527 F.2d 1115 (2d Cir. 1975)..........................................................................25

Brown v. Bd. of Educ.,
   2009 N.Y. Misc. LEXIS 5475 (Sup. Ct. N.Y. Co. July 22, 2009).........................15

Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
   2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009)....................................15, 16

Buckley v. N.Y. & Presbyterian Hosp.,
   No. 21 Civ 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21,
   2021) ........................................................................................................12

Capul v. City of N.Y.,
   No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27,
   2020),
   <u>aff'd</u> 832 Fed. App'x. 766 (2d Cir. 2021) ..........................................................20

Citibank, N.A. v. Citytrust,
   756 F.2d 273 (2d Cir. 1985)...............................................................8, 9, 10, 11

City School District v. McGraham,
   17 N.Y.3d 917 (2011) ...................................................................................16

Cleveland Bd. of Educ. v. Loudermill,
   470 U.S. 532 (1985)......................................................................................21

Cornejo v. Bell,
   592 F.3d 121 (2d Cir. 2010)...........................................................................13

**Cases**                                                                                                    **Pages**

Dechberry v. N.Y.C. Fire Dep't,
    124 F. Supp. 3d 131 (E.D.N.Y. 2015) ...................................................................13

Doninger v. Niehoff,
    527 F.3d 41 (2d Cir. 2008).............................................................................................9

E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus.,
    164 F.3d 89 (2d Cir. 1998)..........................................................................................13

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
    940 F.2d 775 (2d Cir. 1991).................................................................................21, 22

Faiveley Transp. Malmo AB v. Wabtec Corp.,
    559 F.3d 110 (2d Cir. 2009)..........................................................................................9

Felix v. Dep't of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) ............................................................................................16, 18

Ford v. Reynolds,
    316 F.3d 351 (2d Cir. 2003).........................................................................................12

Guitard v. United States Sec'y of Navy,
    967 F.2d 737 (2d Cir. 1992).........................................................................................12

Hellenic Am. Neighborhood Action Comm. v. City of New York,
    101 F.3d 877 (2d Cir. 1996).........................................................................................21

Holt v. Continental Group,
    708 F.2d 87 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ..............................12

Impax Media Inc. v. Northeast Adver. Corp.,
    No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. Jan. 10, 2018)................9

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)...........................................................................................14

Jayaraj v. Scappini,
    66 F.3d 36 (2d Cir. 1995).............................................................................................13

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990).....................................................................................10, 12

Kane v. de Blasio,
    21 Civ. 7863 (S.D.N.Y.) (VEC)......................................................................1, 2, 11, 12

Katir v Columbia Univ.,
    15 F.3d 23 (2d Cir. 1994)..............................................................................................7

**Cases**                                                                         **Pages**

Matter of Koutros v. Dep't of Educ. of City of N.Y.,
    2013 NY Slip Op 33491 (Sup. Ct. N.Y. County October 22, 2013) affirmed at
    129 A.D.3d 434 (App. Div. 1st Dept.) ................................................................17

LaRouche v. Kezer,
    20 F3.d 68, 74 n.7 (2d Cir. 1994) ..........................................................................8

Le Sportsac, Inc. v. Dockside Research, Inc.,
    478 F. Supp. 602 (S.D.N.Y. 1979) ......................................................................10

MacFall v. City of Rochester,
    495 F. App'x 158 (2d Cir. 2012) ..........................................................................14

Mandelkern v. City of Buffalo,
    64 A.D.2d 279 (4th Dept. 1978) ..........................................................................17

Maniscalco v. N.Y. City Dept. of Educ.,
    No. 21 Civ.5055 (E.D.N.Y.) (BMC) ..............................................................1, 2, 4

Martz v. Inc. Vill. of Valley Stream,
    22 F.3d 26 (2d Cir. 1994) ....................................................................................14

McPherson v. New York City Dep't of Educ.,
    457 F.3d 211 (2d Cir. 2006) ................................................................................14

Moore v. Consol. Edison Co. of N.Y., Inc.,
    409 F.3d 506 (2d Cir. 2005) ................................................................................12

Narumanchi v. Board of Trustees of Connecticut State Univ.,
    850 F.2d 70 (2d Cir. 1988) ..................................................................................20

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82
    v. Cuomo,
    64 N.Y.2d 233 (1984) ..........................................................................................14

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ....................................................................................16, 18

Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.,
    697 F.3d 209 (2d Cir. 2012) ................................................................................13

O'Connor v. Board of Education,
    48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008) ..........15, 16, 17

Patsy v. Board of Regents of Florida,
    457 U.S. 496 (1982) ............................................................................................20

**Cases** **Pages**

Rivera-Powell v. New York City Bd. of Elections,
    470 F.3d 458 (2d Cir. 2006)............................................................21

Roman Catholic Diocese v. Cuomo,
    141 S. Ct. 63 (2020)................................................................25

Sampson v. Murray,
    415 U.S. 61 (1974)..............................................................10, 12

Score, Inc. v. Cap Cities/ABC, Inc.,
    724 F. Supp. 194 (S.D.N.Y. 1989) .................................................10

Smith v. Bd. of Educ.,
    102 A.D.2d 655 (3d Dep't 1984), aff'd, 65 N.Y.2d 797 (1985)............................16

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
    New York, et al.,
    Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ...................................1

Tom Doherty Assocs. v. Saban Entm't, Inc.,
    60 F.3d 27 (2d Cir. 1995)...........................................................7, 9

Tough Traveler, Ltd. v. Outbound Prod.,
    60 F.3d 964 (2d Cir. 1995)............................................................11

Trump v. Deutsche Bank AG,
    943 F.3d 627 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct.
    2019 (2020)....................................................................24

Velasco v. Beth Isr. Med. Ctr.,
    279 F. Supp. 2d 333 (S.D.N.Y. 2003)..................................................7

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)................................................................24

Winter v. Natural Res. Def. Council, Inc.,
    555 U.S. 7 (2008).................................................................9, 24

Zinermon v. Burch,
    494 U.S. 113 (1990)..............................................................13, 21

**Statutes**                                                                                          **Pages**

Civil Service Law § 75 ...........................................................................14, 16, 18, 19

Education Law § 2573 .........................................................................................17

Education Law § 3001(2)......................................................................................16

Education Law § 3009(1)......................................................................................16

Education Law § 3010 ..........................................................................................16

Education Law § 3020(4)(a) .................................................................................19

Education Law § 3020-a ...............................................................14, 15, 16, 17, 18, 19

Education Law § 3020-a and § 75 ........................................................................19

N.Y. Labor Law § 27-a .......................................................................................14

§ 1983....................................................................................................................20

**Other Authorities**

Board of Education of the City School District of the City of New York and the
    United Federation of Teachers, Local 2, AFT, AFL-CIO (hereafter "Impact
    Arbitration Decision"), at 4.....................................................................5, 6, 23

DOE Vaccination Mandate at
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-3.pdf ..........................................................................................1

Emergency Executive Order No. 98 .........................................................................3, 4

The Rehabilitation Act, And Other EEO Laws, at K.1.
    (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-
    rehabilitation-act-and-other-eeo-laws, last visited Nov. 18, 2021)...........................15

**<u>PRELIMINARY STATEMENT</u>**

On August 24, 2021—the day after the U.S. Food and Drug Administration ("FDA") fully approved the Pfizer COVID-19 vaccine—the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (the "DOE Vaccination Mandate").[1]   The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the U.S. Centers for Disease Control and Prevention ("CDC") extols vaccination as the primary strategy to stop the spread of COVID-19 and thus recommends that teachers, school administrators and other employees working in school buildings be vaccinated as soon as possible to help schools safely resume full operations.  Further, DOE is the largest school district in the country, with approximately one million students, hundreds of thousands of whom are not yet vaccinated.  Thus, the DOE Vaccination Mandate is fully premised on potentially saving lives, protecting public health, and promoting public safety.

The DOE Vaccination Mandate the subject of several legal challenges brought in state and federal court.  <u>See, e.g.</u>, <u>Maniscalco v. N.Y. City Dept. of Educ.</u>, No. 21 Civ.5055 (E.D.N.Y.) (BMC)[2];  <u>Kane v. de Blasio</u>, 21 Civ. 7863 (S.D.N.Y.) (VEC); <u>Keil v. The City of New York, et al.</u>, 21 Civ. 8773 (SDNY)(VEC); <u>The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al.</u>, Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).

---

[1]  DOE Vaccination Mandate at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf.  Last accessed on Nov. 18, 2021.

[2] Notably, Rachel Maniscalco – the lead plaintiff in <u>Maniscalco</u> – is also a plaintiff herein.

Plaintiffs in these challenges have sought to enjoin the enforcement of the DOE Vaccination Mandate as applied to DOE employees.  Id.  In MLC, Maniscalco, Keil and Kane, the respective Court denied the plaintiffs' application for a temporary restraining order and/or preliminary injunction seeking to enjoin the mandate, finding, among other things, that plaintiffs had not shown the likelihood of success on the merits.  As such, there can be no debate that the DOE Vaccination Mandate is itself sound and enforceable.

Plaintiffs are DOE employees who seek to represent themselves and a class of other DOE employees who oppose the DOE Vaccination Mandate and consequences for failure to comply with this mandate.  Plaintiffs claim that requiring COVID-19 vaccination as a qualification of employment for DOE employees interferes with their procedural due process rights under the Fourteenth Amendment of the United States Constitution.  Plaintiffs now seek—seven weeks after the deadline for employees to show proof of vaccination—a preliminary, and mandatory, injunction that would prohibit DOE from taking any action stemming from plaintiffs' refusal to comply with the lawful DOE Vaccination Mandate and that would disrupt the status quo by requiring DOE to return Plaintiffs to DOE payroll.

While this motion is couched as a constitutional claim, Plaintiffs are actually contending that a duly authorized government authority, namely, DOHMH, has no ability to impose requirements of employment in response to a public health emergency.  This is simply incorrect.  The COH Order – which has been repeatedly upheld as lawful – altered the circumstances under which a DOE employee may maintain their fitness to perform their job duties by requiring that DOE employees must be vaccinated against COVID-19.  The consequence of this requirement is that those DOE employees who are unwilling to be vaccinated – and have not obtained an exemption or reasonable accommodation with respect to the mandate – are no longer fit to perform their job duties at DOE.  As explained below, it is

well-established that government authorities are entitled to establish lawful employment requirements, such as holding a particular license or a residency requirement, and an employee's failure to adhere to these requirements permits their summary separation from service. Plaintiffs have not complied with the lawful COH Order and DOE Vaccination Mandate and, absent exemption from the mandate, they are not fit to work for the DOE.

Putting aside the validity of the DOE Vaccination Mandate, and the ample scientific and legal justifications for the same, Plaintiffs' request for a preliminary injunction must be denied for the simple reason that they have not demonstrated irreparable harm. Plaintiffs, by their own admission, were taken off of DOE payroll on October 4, 2021, more than six weeks before seeking affirmative injunctive relief returning them to payroll. Thus, Plaintiffs' own inaction and delays in seeking injunctive relief belie the purported emergency relief sought here.

In addition, the allegedly irreparable harm articulated here—loss of salary and employment—is precisely the sort of harm that the Second Circuit has repeatedly held to be insufficient to justify injunctive relief.

Finally, the claims on which the preliminary injunction request are premised (which rely exclusively on a novel procedural due process theory), are unlikely to succeed on the merits. Because of that, and the other reasons set forth below, Plaintiffs meet none of the requirements for a preliminary injunction. Therefore, Defendants DOE and Porter ("DOE Defendants") respectfully submit that Plaintiffs' application for a preliminary, and mandatory, injunction must be denied in its entirety.

## STATEMENT OF FACTS

### COVID-19 Pandemic and Impact on Schools

On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in the City of New York ("the City") to address the threat posed by COVID-19 to the health and welfare of City residents, and this order remains in effect today.  <u>See</u> DOE Vaccination Mandate at p. 1.  Thereafter, on March 25, 2020, the DOHMH Commissioner declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and recently declared that the public health emergency continues to be in effect.  <u>Id</u>.

The CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations" and is "the leading public health prevention strategy to end the COVID-19 pandemic."  <u>Id</u>.  The DOE serves approximately one million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who were, until very recently, too young to be eligible to be vaccinated. <u>See id.</u> p. 2.  Given these circumstances and the CDC's judgment, DOHMH determined that requiring vaccination for individuals working in school settings or other DOE buildings will potentially save lives, protect public health, and promote public safety. <u>Id</u>.

On August 23, 2021, Mayor de Blasio and the DOHMH Commissioner announced that DOE employees  would be subject to a "vaccine only" mandate, as opposed to a vaccination-or-testing requirement, as described thereafter in the COH Order.  <u>See id</u>.  Under this policy, by September 27, 2021, DOE employees were required to submit proof that they were fully vaccinated; or received a single dose vaccine, or the second dose of a two-dose vaccine; or

4

received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  Id.[3]

**Impact Arbitration Decisions and Agreement**

Defendant United Federation of Teachers ("UFT") is the bargaining unit for Teachers, Secretaries, Paraprofessionals, Guidance Counselors, Speech Language Pathologists, School Psychologists, and Social Workers, among other titles, employed by DOE.  See "About Your Union" available at https://www.uft.org/your-union/about-uft; last accessed Nov. 19, 2021. On September 10, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the DOE Vaccination Mandate.  See O'Connor Decl., Exh. A (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO (hereafter "Impact Arbitration Decision"), at 4.  PERB appointed an arbitrator and several days of discussions were held.  Id.  On September 10, 2021, the arbitrator issued a decision, which established  (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits; and (3) that the DOE may "unilaterally separate employees" who have not complied with the Vaccination Mandate or have an approved exemption or accommodation and have not opted for either separation option.  Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response.  See id. at 6-13.[4]  It also sets forth that

---

[3] As a result of a brief appellate stay in Maniscalco, the deadline for showing proof of at least one dose of a vaccine was extended to October 1, 2021, by 5 p.m.  No other later deadlines were impacted or adjusted.

[4] As detailed below, seven plaintiffs availed themselves of the accommodation process.

employees who have not requested an exemption, or whose request was denied, may be placed on leave without pay by the DOE starting September 28, 2021. See id. at 13. While on leave without pay, employees continue to be eligible for health insurance. Id. at 15. Employees who submit proof of vaccination before November 30, 2021, will be eligible to return to their school within one week of submitting their documentation to the DOE. Id. at 14.

The decision also sets forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of leave without pay and with health benefits. See id. at 14. DOE employees who have not complied with the DOE Vaccination Mandate could opt to either separate from service by October 29, 2021 and receive enhanced payment of accrued paid time off and health insurance through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16. Alternatively, as a second option, employees can also opt to have their leave without pay extended to September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who have chosen to extend their leave without pay do not comply with the DOE Vaccination Mandate by the end of the period, they will be deemed to have voluntarily resigned. Id. In addition the Impact Arbitration Decision provides that on or after December 1, 2021, DOE will unilaterally separate employees who remain out of compliance with the DOE Vaccination Mandate and have not applied for either the extended leave or separation. Id.

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the remaining unions representing DOE employees; for example, the Council of Supervisors and Administrators ("CSA"), which represents DOE Principals and Assistant Principals, and District Council 37, City of New York ("DC 37"), which represents many school-based employees such as school aides, school food workers and Parent Coordinators. Similar to the process that led to the Impact Arbitration

Decision – which covers the majority of plaintiffs herein – the negotiations with CSA reached an impasse and the parties proceeded to arbitration. See O'Connor Decl. at B, September 15, 2021 Arbitration Award Decision in <u>Board of Education of the City School District of the City of New York and the</u> Council of Supervisors and Administrators. On September 15, 2021, an arbitration award was issued that exactly mirrors that of the Impact Arbitration Decision. <u>Id.</u>

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave procedures for those DOE employees who do not comply with the DOE Vaccination Mandate and, again, reached an agreement that mirrors that of the Impact Arbitration Decision. See O'Connor Decl. at C, Memorandum of Agreement District Council 37, City of New York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021.[5]

## ARGUMENT

### A. PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE IMPACT ARBITRATION AWARD

"[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." <u>Katir v Columbia Univ.,</u> 15 F.3d 23, 24-25 (2d Cir. 1994). The remedy for an individual is to pursue a duty of fair representation claim against his or her union. <u>See id</u>. at 24-25. <u>See also</u> <u>14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 260 (2009) (holding that unions were free to negotiate a departure from federal statutory scheme on behalf of their members)</u>; <u>Velasco v. Beth Isr. Med. Ctr.</u>, 279 F. Supp. 2d 333, 336 (S.D.N.Y. 2003) (dismissing challenge to arbitration award on standing grounds); <u>Blake v. Potter</u>, 2004 U.S. Dist. LEXIS 6596, at *9 (S.D.N.Y. Apr. 12, 2004) (same). This is precisely the situation plaintiffs here find themselves

---

[5] Because the applicable CSA decision and the DC 37 agreement are identical in all relevant respects to the Impact Arbitration Decision, for ease of reference this memorandum will refer to all three as the Impact Arbitration Decision.

in: they are challenging their placement on Leave Without Pay ("LWOP") and potentially their separation from DOE; however, their placement on LWOP and their projected separation was the result of negotiations and arbitration award between the City and the various unions representing plaintiffs, not plaintiffs individually. Accordingly, plaintiffs do not have standing to challenge their placement on LWOP and/or potential separation due to the fact that this procedure was collectively bargained with the respective unions, most notably, the UFT, CSA and DC 37.

**B.    PLAINTIFFS SEEK A MANDATORY INJUNCTION, AND FAIL TO MEET THE ASSOCIATED BURDEN**

A typical injunction seeks to maintain the status quo pending a trial on the merits. Abdul Wali v. Coughlin, 754 F.2d 1015 (2d Cir. 1985). Plaintiffs are required to meet the higher standard of a mandatory injunction if (1) the injunction would alter, rather than maintain the status quo or (2) the injunction would grant the movant with substantially all the relief sought and that relief cannot be undone even if defendants would prevail on the merits. Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, *33-34 (2d Cir. 1995). Here, Plaintiffs are seeking, among other things, to be restored to DOE payroll after having been placed on LWOP for their failure to comply with the DOE Vaccination Mandate. It must be noted that, in addition to being restored to payroll, Plaintiffs seek to have their "benefits, including health benefits, and pension credits," restored. As per the Impact Arbitration Decision, Plaintiffs on LWOP maintain their health benefits and therefore all the Plaintiffs herein continue to maintain their health benefits despite their placement on LWOP.

The status quo in a preliminary injunction is the "last, peaceable uncontested status which preceded the pending controversy." LaRouche v. Kezer, 20 F3.d 68, 74 n.7 (2d Cir. 1994). For the purposes of Plaintiffs' application to be restored to payroll, the last "peaceable" moment was the day prior to being placed on LWOP. Utilizing Plaintiff Broecker as an example, she avers in her affidavit that she has been on LWOP since October 4, 2021. Thus, in

order to maintain the status quo of remaining on payroll, Plaintiff Broecker would have been required to make the instant application on or before October 3, 2021.  She – and the other Plaintiffs – failed to do so.  Thus, if plaintiffs' application were granted, it would alter, not maintain, the status quo.

Plaintiffs' application is completely silent as to why Plaintiffs waited until November 17, 2021 to seek this "emergency" relief from the Court.  This is despite the fact that the Complaint, and Exhibit A annexed thereto, confirm that Plaintiffs were given advance warning that they were going to be placed on LWOP as of October 4, 2021.  Plainly, Plaintiffs' own delay strongly counsels against the extraordinary equitable relief they seek. See Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

In any event, given their placement on LWOP well over one month ago, Plaintiffs must meet the higher standard required for mandatory injunctions.  In particular, they must show a "clear" or "substantial" likelihood of success on the merits.  Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995); Doninger v. Niehoff, 527 F.3d 41, *47 (2d Cir. 2008). From their Complaint, it is clear that Plaintiffs will not be able to meet this high burden because the *only* harm associated with their placement on LWOP is removal from payroll.  This type of alleged harm is – by definition – reparable.  Accordingly, Plaintiffs cannot meet the mandatory injunction standard and their application should be denied.  And, even so, for substantially the same reasons as discussed below, Plaintiffs cannot meet even the lower, more permissive standard of a prohibitory injunction.

### C. PLAINTIFFS DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION

In order to justify a preliminary injunction, plaintiffs must demonstrate: (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) the balance of equities tips decidedly in their favor; and (4) that the public interest weighs in favor of granting an injunction. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008). Of these requirements, a showing of likely irreparable harm is often referred to as the **most** important. See, e.g., Citibank, N.A., 756 F.2d at 275. An injunction is unwarranted because Plaintiffs cannot demonstrate any of these requirements.

### D. PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)). In making a showing of irreparable harm, Plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990). As the Supreme Court has held "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of

litigation, weighs heavily against a claim of irreparable harm." <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974).

Plaintiffs identify two so-called "irreparable" harms: continued loss of pay while on LWOP and their potential separation from DOE. Neither of these harms is irreparable or otherwise sufficient to justify a preliminary injunction.

As noted above, the extraordinary delay in seeking to enjoin a certain eventuality that will occur on December 1, 2021, but was entirely known to Plaintiffs on October 4, 2021 if not earlier, greatly forecloses the validity of any professed "urgent need for speedy action to protect the plaintiffs' rights." <u>Citibank N.A.</u>, 756 F.2d at 276. Having delayed to the point of manufacturing an emergency, Plaintiffs' application claiming an impending crisis now exists must be viewed as a bald calculation bordering on pure gamesmanship. Indeed, the Second Circuit has explained that a party's "failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" <u>Id.</u> at 277 (quoting <u>Le Sportsac, Inc. v. Dockside Research, Inc.</u>, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)). A delay "may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." <u>Tough Traveler, Ltd. v. Outbound Prod.</u>, 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks and citations omitted). While Courts have not imposed rigid deadlines by which a request for preliminary injunctive relief must be made, even a relatively brief delay may be deemed too long. <u>See</u>, <u>e.g.</u>, <u>Citibank</u>, 756 F.2d at 276-77.

Here, as noted above, Plaintiffs allege they have <u>all</u> been on LWOP since October 4, 2021. Plaintiffs nevertheless waited 44 days to seek this "emergency" relief from the Court. This delay is both lengthy and completely unexplained thereby severely undercutting any

"urgency" associated with this application. In <u>Kane</u>, the Honorable Valerie E. Caproni addressed a similar delay by teachers seeking to challenge the DOE Vaccination Mandate by way of an application for a preliminary injunction:

> Before I turn to the likelihood of success on the merits, I note that preliminary injunctions are generally issued when there is an urgent need for speedy action to protect a plaintiff's rights. As the Second Circuit has noted, "a delay in seeking enforcement of those rights...tends to indicate at least a reduced need for such drastic, speedy action." <u>Citibank, N.A. v. Citytrust</u>, 756 F.2d 273, 276 (2d Cir. 1985). I am absolutely baffled by plaintiffs' delay in seeking a preliminary injunction. The vaccine mandate was announced on August 23 and published on August 24. Plaintiffs filed this action almost a month later, on September 21. Although the complaint asserted that plaintiffs were seeking a preliminary injunction, see Compl. ¶ 6, there is no indication that they served the complaint promptly and, even if they did, they waited to seek an order to show cause why a TRO and preliminary injunction should not be granted until October 4, three days after the effective date of the order they were challenging. Although I am not denying the request for emergency relief because of plaintiffs' delay, the apparent gamesmanship by plaintiffs' counsel in waiting to file this case and then in seeking a preliminary injunction does nothing to help her cause.

<u>See</u> O'Connor Decl. at Ex. D, Transcript of Proceedings held on October 12, 2021 in <u>Kane</u> at 58:20-59:17. Here, it is similarly "baffling" as to why Plaintiffs waited over six weeks to challenge their placement on LWOP and the notification that they would be subject to summary termination as of December 1, 2021.

Next, "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 79 (2d Cir. 1990). As the Supreme Court has held "the temporary loss of income, ultimately to be recovered, does not usually

12

constitute irreparable injury . . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

Here, the two claimed harms, i.e. the continued loss of pay and projected separation from employment, are quintessential **reparable** harms. See Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005); Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003). Plaintiffs' allegation that they have been placed on LWOP and are facing a possible "loss of employment is insufficient to carry [their] burden of showing irreparable harm because [they] make no showing that the loss of [their] employment cannot be remedied with money damages." Buckley v. N.Y. & Presbyterian Hosp., No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21, 2021); see also Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ("the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."); Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992)("injuries that generally attend a discharge from employment — loss of reputation, loss of income and difficulty in finding other employment — do not constitute the irreparable harm necessary to obtain a preliminary injunction")(internal citations omitted).

In examining the DOE Vaccination Mandate in MLC, the Court held that the petitioners were "unlikely to be succeed on the second prong of the preliminary injunction test as they cannot establish an irreparable harm as the loss of employment is compensable by money damages and reinstatement to said employment. Petitioners represented employees who refuse to

accept vaccination and are ineligible for an exemption are still entitled to contest any negative outcome through their union procedures and additionally are able to pursue their profession outside of those schools impacted by the Order." See N.Y.C. Mun. Labor Comm. v. City of N.Y., 2021 NY Slip Op 21260, ¶ 5 (Sup. Ct.).

Indeed, even a loss of "benefits" attendant to employment does not constitute irreparable harm. See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012) (back pay includes lost fringe benefits such as vacation pay and pension benefits); E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus., 164 F.3d 89, 101 (2d Cir. 1998)(holding same); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(a reinstatement order issued by the District Court could award "full pension benefits, including an award of seniority status covering the interim between termination and a final disposition of the parties' rights."). Because Plaintiffs are unable to demonstrate irreparable harm, their motion for a preliminary injunction must be denied.

### E.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." <u>J.S. v. T'Kach</u>, 714 F.3d 99, 105 (2d Cir. 2013). "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of <u>that</u> right, and third show that the deprivation was effected without due process." <u>Id.</u> (internal citation and quotation marks omitted). "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>MacFall v. City of Rochester</u>, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting <u>Martz v. Inc. Vill. of Valley Stream</u>, 22 F.3d 26, 29 (2d Cir. 1994). In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it. <u>Id.</u> (quoting <u>McPherson v. New York City Dep't of Educ.</u>, 457 F.3d 211, 216 (2d Cir. 2006)).

Plaintiffs argue that they have been "suspended without pay" and face separation from the DOE without the due process owed to them and therefore they are likely to succeed on the merits. Plaintiffs are incorrect.

### 1. Plaintiffs Are Not Being Subject to Discipline

Plaintiffs premise their procedural due process claim on the faulty notion that they are being subjected to "discipline" in the form of an unpaid "suspension" without the process owed to them via Education Law § 3020-a or Civil Service Law § 75. Not so. In fact, the Impact Arbitration Award specifically states that placement on LWOP is non-disciplinary. Rather, by virtue of Plaintiffs' unwillingness to comply with the DOE Vaccination Mandate, they are simply no longer fit and/or qualified to continue their public employment with the DOE.

As detailed below, they are, therefore, not entitled to any process in advance of their placement on LWOP and separation.

The DOE, as a government employer, has a duty to maintain a safe workplace. <u>See generally</u> N.Y. Labor Law § 27-a. The obligation of how best to do so is within the discretion of the employer. <u>See</u> <u>New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo</u>, 64 N.Y.2d 233, 237-40 (1984). Federal, state and local law also confirm, in the context of the COVID-19 pandemic, that employers can refuse to allow employees to work who are not fit for work under the applicable medical standards set forth by the public health authorities. <u>See</u> <u>e.g.</u> EEOC Guidance, What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, at K.1. (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, last visited Nov. 18, 2021).

The DOE, consistent with its obligation to provide a safe workplace, and in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform their job functions when they lack fitness to do so under the COH Order. When employees are not fit to perform their duties under these circumstances, they are not being "suspended" but rather are unable to work due to ineligibility caused by their lack of fitness, even where here the ineligibility may be temporary and curable. <u>C.f.</u> <u>Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.</u>, 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), <u>citing</u> <u>O'Connor v. Board of Education</u>, 48 A.D.3d 1254 (4th Dept. 2008) <u>lv. denied</u> 10 N.Y.3d 928 (2008) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.). To be sure, the Second Circuit earlier this month upheld vaccination as a "condition

of employment" in the healthcare field.  We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021).

Section 3020-a hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency."  O'Connor v. Bd. of Educ., 48 A.D.3d 1254, 1255 (4th Dep't 2008) (3020-a hearing not required when teacher is terminated for failure to comply with residency requirement as this constitutes a job qualification, not discipline), appeal dismissed, 10 N.Y.3d 928 (2008); Adrian v. Bd. of Ed., 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); Brown v. Bd. of Educ., 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009) ("The termination of Petitioner did not implicate the procedural protections of Education Law § 3020-a because Petitioner's termination was due to her legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence on her part.") (citations omitted; Felix v. Dep't of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) (failure to maintain residency requirement does not trigger the protections of Civil Service Law § 75 because it is a matter of job eligibility, not discipline for misconduct).  Indeed, the Court of Appeals has explicitly held that termination for failure to have a teaching certification is not discipline and termination is required.  Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011).

For example, New York Education Law expressly states that a teacher who does not possess a teaching certificate issued by the State of New York is unqualified, as a matter of law.  Indeed, the Court of Appeals has explicitly held that summary termination for failure to have a teaching certification is not discipline.  Lanterman, 14 N.Y.3d at 282; see also McGraham, 17 N.Y.3d at 918 n.1 (2011).

Thus, Plaintiffs' argument that they were entitled to a § 3020-a or § 75 hearing in advance of being placed on LWOP or being ultimately separated is misplaced. Here, the DOE is enforcing the lawful COH Order by removing unvaccinated employees from the workplace because they are no longer fit to perform their duties. While this is a new job requirement put in place to combat at novel virus, the analysis remains unchanged. The DOE is able to separate employees that are not in compliance with lawful job requirements. In essence, plaintiffs seek to redefine "discipline" to include a failure to meet a qualification of their DOE employment. The Courts have repeatedly rejected such attempts. O'Connor, 48 A.D.3d at 1255; Adrian, 92 A.D.3d at 1273; Brown, 2009 N.Y. Misc. LEXIS 5475, at *9-10, Appendix "A,"; see Felix, 3 N.Y.3d at 505.

Indeed, in O'Connor, the petitioners were tenured teachers employed by the Niagara Falls Board of Education who were terminated for their failure to comply with a residency requirement. O'Connor, 48 A.D.3d 1254, 1255. In bringing a procedural due process claim challenging their termination, the petitioners argued that they could not be terminated without the Board of Education first issuing disciplinary charges against them, followed by a hearing under Education Law § 3020-a. Id.

The Court disagreed, holding that § 3020-a was inapplicable because that section deals solely with "issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto." Id. In contrast, the residency requirement was a "qualification of employment" that was "unrelated to job performance, misconduct or competency" and therefore the Board of Education "may impose it if [it] chooses to do so without running afoul of the Constitution or general laws of the State." Id., citing Mandelkern v. City of Buffalo, 64 A.D.2d 279, 281 (4th Dept. 1978).

Similarly, in <u>Matter of Koutros v. Dep't of Educ. of City of N.Y.</u>, 2013 NY Slip Op 33491 (Sup. Ct. N.Y. County October 22, 2013) <u>affirmed at</u> 129 A.D.3d 434 (App. Div. 1st Dept.), the Court held that the termination of a tenured teacher did not implicate the procedural protections of § 3020-a because plaintiff's termination was due to his legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence.

Likewise, under Education Law § 2573, a teacher must complete four years of service to achieve tenure. <u>See</u> O'Connor Decl., Ex. E, Affidavit of Vicki Bernstein at 2. New York State's Education Department permits a teacher to begin teaching with what is referred to as an "Initial Certificate," which is valid for five years, during which time the teacher is expected to obtain a master's degree and a "Professional Certificate" and complete all necessary certification requirements. <u>Id.</u> A teacher may complete probation during this time period and, pursuant to the collective bargaining agreement between the Department and UFT, be entitled to the protections afforded by Education Law § 3020-a. <u>Id.</u>

Each year, the DOE reviews certification statuses for teachers and other staff and identifies staff who have an expired Initial Certificate (including teachers and other pedagogical staff who have completed probation) and who have not completed the necessary certifications. <u>Id.</u> at 4. Once identified, the DOE then separates these employees from service without a hearing pursuant to § 3020-a. <u>Id.</u> Indeed, the union representing most of the plaintiffs in this case, the United Federation of Teachers, on its own website, admonishes that "although you can be tenured while holding an initial certificate, you can be terminated without the right to due process for failure to complete the requirements for the professional certificate in the same license area" <u>See</u> <u>id.</u>, <u>citing</u> "How do I achieve Tenure" *available at* https://www.uft.org/teaching/new-teachers/tenure; last accessed on Nov. 18, 2021. For example, in the 2018-19 school year, DOE separated 136 staff (131 teachers, 3 guidance counselors, and 2

social workers); in the 2019-20 school year, DOE separated 30 staff (27 teachers, and 3 social workers); and in the 2020-2021 school year, DOE separated 217 staff (198 teachers, 3 guidance counselors, 15 social workers, 1 psychologist) from service based on their failure to obtain the required certifications. Id. at 5.

Similarly, under Civil Service Law § 75, it is equally well-settled that the failure to maintain eligibility for employment is not an act of misconduct or one related to job performance so as to implicate the disciplinary procedures mandated by Civil Service Law § 75. See Lanterman, 14 N.Y.3d at 282 (2010); Felix, 3 N.Y.3d 498 at 505.

Thus, it is clear that a public employer may lawfully, and summarily, separate employees from service without process due to the employee's legal ineligibility to maintain their employment. Here, the City's Health Commissioner promulgated a lawful eligibility requirement: to be eligible to work for DOE, an individual must be vaccinated against COVID-19. Plaintiffs have not complied with that lawful requirement and are therefore subject to separation. This ineligibility in no way implicates the disciplinary procedures delineated in Education Law § 3020-a or Civil Service Law § 75 because it does not pertain to misconduct or job performance. Therefore, because plaintiffs no longer meet eligibility requirements, they can be separated from service without the disciplinary procedures delineated in § 3020-a and/or § 75.

### 2. Alternatively, Plaintiffs Have Been Provided All Process Owed to Them

Even if Plaintiffs could demonstrate that their placement on LWOP and potential separation was somehow "disciplinary" in nature, their procedural due process claim nevertheless fails for several reasons.

First, although not specifically delineated as such, it appears as though Plaintiffs are arguing that their respective unions – of which only UFT is named – essentially bargained away the due process rights owed to them under § 3020-a and § 75. While Plaintiffs may have a

gripe against their unions, this type of complaint does not suffice to state a Constitutional violation. To be sure, courts of this Circuit have held that "§ 3020(4)(a) authorizes the DOE and the UFT to enter into a collective bargaining agreement modifying the procedures set forth in § 3020-a." Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996 (VM)(AJP), 2010 U.S. Dist. LEXIS 15635, at *31 (S.D.N.Y 2008). Thus, even if the Court were to accept that Plaintiffs' placement on LWOP and projected separation is disciplinary in nature, thereby implicating § 3020-a, it is clear that the City and UFT had the ability to bargain over modifications to § 3020-a related to the DOE Vaccination Mandate. Here, the City bargained over the impact of the DOE Vaccination Mandate and, ultimately, this bargaining reached an impasse which proceeded to arbitration. The LWOP and separation procedures being challenged by Plaintiffs are the result of collective bargaining and impasse arbitration, negotiated and statutorily-regulated processes which can appropriately modify the procedures set forth in § 3020-a. To the extent Plaintiffs are unhappy with the Impact Arbitration Decision, their avenue for relief is not a constitutional claim against DOE.

Second, while a plaintiff in a § 1983 case is not required to exhaust their administrative remedies before bringing suit, (see Patsy v. Bd. of Regents of Fla., 457 U.S. 496 (1982)), this general rule does not apply in a procedural due process suit if plaintiffs failed to avail themselves of the right to be heard. See Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988). In Narumanchi, the Second Circuit explained that in procedural due process cases, the limited procedural rights guaranteed under the circumstances of a particular case could be satisfied by pre-deprivation notice and hearing rights contained in grievance procedures of a collective bargaining agreement. 850 F.2d at 72.

Here, Plaintiffs contend that they are entitled to hearings pursuant to their respective collective bargaining agreements. See Dkt. No. 2-10, Plaintiffs' Memorandum of

Law at 16-17. The collective bargaining agreements governing the terms of Plaintiffs' employment establish grievance and arbitration procedures that Plaintiffs could use to challenge the so-called "disciplinary actions" taken against them. Thus, Plaintiffs' procedural rights were adequately satisfied by the grievance procedures contained in the applicable collective bargaining agreements. The fact that Plaintiffs chose not to utilize such procedures does not change this outcome. Cf. Capul v. City of N.Y., No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020) (holding that City employees' failure to avail themselves of adequate post-deprivation remedies did not render their procedural due process claims viable), aff'd 832 Fed. App'x. 766 (2d Cir. 2021).

To the extent that certain Plaintiffs are claiming that UFT was "not accepting" grievances prior to November 12, 2021, see Dkt. No. 2-3, Affidavit of Jeannine Lam, that allegation does not impact the constitutional analysis vis-à-vis the DOE. Indeed, while Plaintiffs may be claiming that UFT breached its duty of fair representation by allegedly failing to accept grievances, that alleged failure on UFT's part does not change the fact that Plaintiffs had ample process at their disposal via their collective bargaining agreements (or via Article 78 proceedings brought in New York State Supreme Court). Thus, UFT's supposed failure to bring grievances does not suffice to establish a Constitutional violation against DOE.

Third, DOE has provided the process due to plaintiffs under the Impact Arbitration Decisions. "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 126 (1990). The Second Circuit has explained that in evaluating what process satisfies the Due Process Clause, "the Supreme Court has distinguished between . . .(1) claims based on random, unauthorized acts by state employees," and "(2) claims based on established state procedures." Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458,

465 (2d Cir. 2006). When "the alleged deprivation of a protected property . . . interest without due process of law occurred because of a random and arbitrary act," it is often impossible for the state to provide a pre-deprivation remedy, and, on those occasions, "an Article 78 proceeding is a perfectly adequate post-deprivation remedy." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996)). If, however, "the alleged deprivation was predictable, pre-deprivation procedures were possible, and the alleged improper conduct was taken by those who were acting within their authority," a pre-deprivation remedy is required. Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 784 (2d Cir. 1991).

Here, Plaintiffs' placement on LWOP and projected separation was not random or arbitrary but rather was duly promulgated via the collective bargaining process. While the due process clause therefore requires DOE to provide "notice and opportunity for a hearing" before terminating an employee with a protected property interest in his employment, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks omitted), Ezekwo makes clear that in order to satisfy this "hearing" requirement, an employee need only be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required." Ezekwo, 940 F.2d at 786.

All Plaintiffs had ample advance notice that they were being placed on LWOP and that, as a result of their non-compliance with the DOE Vaccination Mandate, they would be separated from the DOE. In fact, the vast majority of Plaintiffs have had notice of these potential outcomes since September 10, 2021, when the highly publicized Impact Arbitration Decision was issued. Furthermore, nearly immediately after the September 27, 2021 implementation date for the DOE Vaccination Mandate, Plaintiffs were notified on October 2, 2021, that they were not in compliance with such mandate, that they would be placed on LWOP as of October 4,

2021, and that DOE would seek to separate them as of December 1, 2021 if they did not opt to extend their LWOP status and remained out of compliance with the mandate.  See Dkt. No. 1-1.

After this notice was given, Plaintiffs certainly could have sought relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy.  In addition, the Impact Arbitration Decision provided for an expedited process to review requests for exemptions and accommodations, providing further opportunities to Plaintiffs to be heard before being subject to separation, as further described below.  But Plaintiffs  waited 44 days to bring this "emergency" application claiming that their procedural due process rights had been violated.  Plaintiffs' claims ring hollow, however, given their completely unexplained delay in seeking to enforce their Constitutional rights.  In fact, this "emergency" application is entirely of Plaintiffs' own making as they could have filed an Article 78 proceeding challenging the October 2, 2021 notification immediately after it was received.  Again, they chose not to do so in order to manufacture an "emergency" requiring this Court's intervention.

As noted, the Impact Arbitration Decision creates additional processes available to all DOE employees, including Plaintiffs.  First, the Impact Arbitration Decision establishes a robust process by which DOE employee may apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response.  See O'Connor Decl., Exh. A, Impact Arbitration Decision at 6-13.  The Impact Arbitration Decision further provides that employees who seek to challenge the denial of an accommodation may do so via an additional arbitration.  Id.  Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of the process available to them to seek an accommodation with respect to the DOE Vaccination Mandate.  See O'Connor Decl. at Ex. F.  In fact, these plaintiffs proceeded to arbitration in

connection with their accommodation requests. Id. Despite that, Plaintiffs – including these plaintiffs – are claiming they were not provided with constitutionally sufficient due process. The Court should not countenance such hollow arguments.

Next, the Impact Arbitration Decision sets forth a process for separation from employment or extension of LWOP. See id. at 14. Under this process, DOE employees who had not complied with the DOE Vaccination Mandate by October 29, 2021 could have opted to be separated from employment and continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16. Employees could also in the alternative opt to have their leave without pay extended to September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who have chosen to extend their leave without pay do not comply with the DOE Vaccination Mandate by the end of the period, they will be deemed to have voluntarily resigned. Id. DOE employees have until November 30, 2021 to proceed with one of the above-delineated processes. Those who do not avail themselves of these processes are subject to summary separation as of December 1, 2021. Id. While Plaintiffs may not like these processes, and may have chosen not to avail themselves of them, this does not amount to a Constitutional due process violation.

Therefore, even if Plaintiffs could demonstrate that their placement on LWOP and potential separation was somehow "disciplinary" in nature, their procedural due process claim nevertheless fails because they were provided with all process they were owed.

## F. THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS

Even if Plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor. Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020). To balance the

equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief. Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of DOE. As laid out throughout this Memorandum of Law, the City's public health experts, who are charged with ensuring the safety and wellbeing of the City's residents, determined that the most effective means of containing the deadly COVID-19 pandemic in schools and keep school children safe was to mandate that school staff be vaccinated. The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the U.S. Centers for Disease Control and Prevention extols vaccination as the primary strategy to stop the spread of COVID-19 and recommends that teachers, school administrators and other employees working in school building be vaccinated as soon as possible to help schools safely resume full operations. Further, and to that end, DOE is the largest school district in the country, with around one million students, hundreds of thousands of whom are not yet vaccinated. Simply put, the DOE Vaccination Mandate is fully premised on potentially saving lives, protecting public health, and promoting public safety as well as minimizing disruption to in-person classroom disruption. The harm DOE seeks to prevent here, the death or serious illness of students and staff, and further disruption to the education of approximately one million students, is not compensable.

By contrast, Plaintiffs here, who were taken off of DOE payroll 44 days before filing this "emergency application," are not in danger of irreparable harm. Should they succeed, they can be made whole and compensated. In light of the foregoing, it is plain that the equities

26

tip heavily in favor of the DOE. As such, Plaintiffs' request for a preliminary injunction should be denied.

### G. AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Courts must also consider whether the granting of the requested relief contravenes the public interest. Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975). The Supreme Court has recognized that stemming the spread of COVID-19 is a compelling public interest. Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 67 (2020). Thus, maintaining the status quo in this case, and refraining from ordering DOE to return the unvaccinated plaintiffs to payroll when the DOE cannot permit them to perform work, is a compelling public interest that militates against imposing an affirmative injunction.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be denied.

Dated:      New York, New York
            November 19, 2021

<div style="margin-left:40%">

GEORGIA M. PESTANA
Corporation Counsel of the
   City of New York
Attorney for Defendants DOE and Porter
100 Church Street, Room 2-100
New York, New York 10007
212-356-4015


By: _____/s/_____

     Andrea O'Connor
     Assistant Corporation Counsel

</div>