UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
BROECKER *et al.*,                                              :
                                                               :
                              Plaintiffs,                       :
                                                               :
          -against-                                            :
                                                               :     Index No. 21-cv-6387
                                                               :
NEW YORK CITY DEPARTMENT OF                                     :
EDUCATION, *et al.*,                                           :
                                                               :
                              Defendants.                       :
-------------------------------------------------------------- X

**DEFENDANT UNITED FEDERATION OF TEACHERS, LOCAL 2, AFL-CIO'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A
<u>TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ADDITIONAL RELEVANT FACTS ................................................................................ 4

    I.     New York's State of Emergency, Shutdown, and Reopening .............................. 4

    II.    The DOE Vaccination Mandate ........................................................................ 6

    III.   The Award ............................................................................................................ 7

    IV.  Court Challenges To Vaccination Mandates ..................................................... 9

ARGUMENT ................................................................................................................... 14

    I.     PLAINTIFFS' CANNOT DEMONSTRATE A LIKELIHOOD OF
         SUCCESS ON THE MERITS OF THEIR 42 U.S.C. § 1983 CLAIMS .............. 14

         A. UFT Is Not a State Actor ................................................................. 14

         B. The UFT Has Not "Aided and Abetted" Violations of § 1983 ....................... 18

    II.    PLAINTIFFS FAIL TO CONSIDER THE AWARD ......................................... 18

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ahrens v. New York State Pub. Employees Fed'n, AFL-CIO,
   203 A.D.2d 796 (3d Dep't 1994) .............................................................17

Burton v. Wilmington Parking Auth.,
   365 U.S. 715 (1961) ................................................................................16

Callaghan v. United Federation of Teachers,
   133 A.D.3d 412 (1st Dep't 2015) ............................................................14

Chambers v. Time Warner, Inc.,
   282F.3d 147 (2d Cir. 2002) .....................................................................18

Ciambriello v. County of Nassau,
   292 F.3d 307 (2d Cir. 2002) ...........................................................14, 16, 17

Commodari v. Long Island Univ.,
   89 F. Supp. 2d 353 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir. 2003) ...........15

Dahl v. Bd. of Trustees of W. Mich. Univ.,
   No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) .......................12

Dennis v. Sparks,
   449 U.S. 24 (1980) ..................................................................................15

Doe v. Mills,
   16 F.4th 20 (1st Cir. 2021), petition for cert. filed (Nov. 15, 2021) ...........12

Driskell v. New York City,
   11 Civ. 4915 (BMC), 2011 WL 6812516 (E.D.N.Y. Dec. 23, 2011) ...................14

Dykes v. Southeastern Pa. Transp. Auth.,
   68 F.3d 1564 (3d Cir. 1995)....................................................................18

Figueroa v. City of Camden,
   580 F. Supp. 2d 390 (D.N.J. 2008) .........................................................18

Goel v. Bunge, Ltd.,
   820 F.3d 554 (2d Cir. 2016)....................................................................18

Harmon v. Matarazzo,
   162 F.3d 1147 (2d. Cir. 1998)..................................................................14

International Audiotext Network, Inc. v. Am. Tel. and Tel. Co.,
    62 F.3d 69 (2d Cir. 1995)......................................................................................18

Jacobson v. Massachusetts,
    197 U.S. 11 (1905)...............................................................................................11

Jessamy v. City of New Rochelle, New York,
    292 F. Supp. 2d 498 (S.D.N.Y. 2003)................................................................16

Kane, et al. v. de Blasio et al.,
    No. 21-2678 (2d Cir. Nov. 15, 2021)..................................................................12

Klaassen et al. v. Trustees of Indiana University,
    No. 21-2326 (7th Cir. Aug. 2, 2021)...................................................................12

Leahy v. Board of Trustees,
    912 F.2d 917 (7th Cir. 1990) ..............................................................................17

Maniscalco et al. v. The New York City Department of Education, et al.,
    21-cv-5055 (BMC) (E.D.N.Y. Sept. 23, 2021)...................................................11

Mehrhoff v. William Floyd Union Free School District,
    No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) ...................15, 18

MLC et. Al. v. City of New York et al.,
    158368/2021 (Sup. Ct. N.Y. Cnty.) .....................................................................9

National Broadcasting Co. v. Communications Workers of America,
    860 F.2d 1022 (11th Cir. 1988) ..........................................................................15

New York City Mun. Labor Comm. v. City of New York,
    73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021) ...............................................2, 11, 18

Sykes v. Bank of America,
    723 F.3d 399 (2d Cir. 2013)................................................................................16

Town of Southampton v. N.Y. State Pub. Empl. Rels. Bd.,
    2 N.Y.3d 513 (2004) ............................................................................................19

Valvo v. Dep't of Educ. of N.Y.,
    19-CV-8341 (JPO), 2021 WL 1063759 (S.D.N.Y. Mar. 18, 2021).......................17

We the Patriots USA, Inc. et al. and Dr. A. v. Hochul
    (No. 21-2179 (2d Cir. Nov. 4, 2021) ..................................................................12

We the People v. Hochul,
    Nos. 21-2179, 21-2566 (2d Cir. Nov. 4, 2021).....................................................18

**Statutes**

42 U.S.C. § 1983 ................................................................................................... *passim*

N.Y. Civil Service Law § 75 ...........................................................................................9

N.Y. Civil Servivce Law § 200 *et seq.* ........................................................................14

N.Y. Education Law § 3020 ............................................................................................9

N.Y. Education Law § 3020-a .........................................................................................9

**Other Authorities**

Arbitrator rules in union's favor on medical accommodations, UFT (Sept. 10,
   2021),  https://www.uft.org/news/news-stories/arbitrator-rules-unions-favor-
   on-medical-accommodations .................................................................................13

Article 1 § 6 of the New York Constitution...................................................................9

CPLR Article 78 .........................................................................................................9, 11

COVID-19: Data, NYC HEALTH, https://www1.nyc.gov/site/doh/covid/covid-19-
   data-variants.page (last accessed Nov. 19, 2021). ....................................................5

Education Employee Vaccine Mandate, NYC OFFICE OF THE MAYOR (Aug. 23,
   2021), https://www1.nyc.gov/office-of-the-mayor/news/578-21/mayor-de-
   blasio-chancellor-porter-commissioner-chokshi-department-education ...................6

Education Employees, Contractors, Visitors, and Others, NEW YORK CITY
   DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021),
   https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
   requirement-doe-3.pdf ...............................................................................................2

Emergency Executive Order No. 98 (Mar. 12, 2020)....................................................5

Executive Order No. 202.8 (Mar. 20, 2020) .................................................................5

Executive Order No. 202 (Mar. 7, 2020) ......................................................................5

Governor Cuomo Signs the 'New York State on PAUSE' Executive Order, New
   York State Governor (Mar. 20, 2020),
   https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-
   pause-executive-order (last accessed Nov. 19, 2021)...............................................5

Mayor de Blasio, Chancellor Porter and Commissioner Chokshi Announce
    Department of Education Employee Vaccine Mandate, NYC OFFICE OF THE
    MAYOR (Aug. 23, 2021), https://www1.nyc.gov/office-of-the-
    mayor/news/578-21/mayor-de-blasio-chancellor-porter-commissioner-
    chokshi-department-education ......................................................................................6.

MSNBC's Morning Joe, NYC OFFICE OF THE MAYOR (July 21, 2021),
    https://www1.nyc.gov/office-of-the-mayor/news/508-21/transcript-mayor-de-
    blasio-appears-live-msnbc-s-morning-joe ....................................................................6

New York Constitution Amendment, Article 1 § 6 ........................................................9

New York Is Reopening. Here's What That Actually Means, N.Y. TIMES (May
    19, 2021, updated Sept. 17, 2021) ................................................................................5

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination or Testing for Staff in Public health Settings (July 21, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    or-testing-staff-public-settings-072121.pdf ..............................................................6

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
    (Aug. 24, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe.pdf...........................................................................................2, 7

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
    (Sept. 15, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-2.pdf ......................................................................................2, 10

Order of the Commissioner of Health and Mental Hygiene to Require COVID-
    19 Vaccination For Department of Education Employees, Contractors,
    Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL
    HYGIENE (Sept. 28, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-3.pdf .............................................................................................2

PAUSE' Executive Order, New York State Governor (Mar. 20, 2020),
    https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-
    pause-executive-order (last accessed Nov. 19, 2021)...............................................5

Sharon Otterman, New York Is Reopening.  Here's What That Actually Means,
N.Y. TIMES (May 19, 2021, updated Sept. 17, 2021),
https://www.nytimes.com/2021/05/19/nyregion/nyc-reopening-restrictions-
masks-vaccines.html.

Sharon Otterman, Here's Who Is Hospitalized for Covid in New York City as
Cases Rise, N.Y. TIMES (July 30, 2021) ........................................................................6

Transcript: Mayor de Blasio Holds Media Availability, NYC OFFICE OF THE
MAYOR (July 26, 2021), https://www1.nyc.gov/office-of-the-
mayor/news/517-21/transcript-mayor-de-blasio-holds-media-availability .............................6

Transcript: Mayor de Blasio Appears Live on MSNBC's Morning Joe, NYC
OFFICE OF THE MAYOR (July 21, 2021), https://www1.nyc.gov/office-of-the-
mayor/news/508-21/transcript-mayor-de-blasio-appears-live-msnbc-s-
morning-joe...........................................................................................................................6

UFT (Sept. 10, 2021), https://www.uft.org/news/news-stories/arbitrator-rules-
unions-favor-on-medical-accommodations ...........................................................................13

## PRELIMINARY STATEMENT

The pervasive impact of the COVID-19 pandemic and its impact on New York City, the rest of the country and – indeed – the world, needs little introduction.  At the height of the pandemic, public schools and educators, in particular, faced nearly overwhelming obstacles in balancing the continued provision of quality education with the health and safety of students, school staff, and their respective families.  Throughout this period, Defendant United Federation of Teachers (the "UFT") strove to protect the health and safety of its members and the children they serve, first in securing the closing of the New York City public schools and then working towards accomplishing their safe re-opening. Contributing to this latter success was the development and (eventual) widespread distribution of Covid-19 vaccines.

Yet, although it encourages vaccination for all who are able, the UFT – contrary to the impression created by the Complaint – understands that not all of its members are able or willing to undergo inoculation.  The UFT has made considerable efforts to press the rights of those individuals, and – when courts across New York and the country were finding that public employers had the right to impose vaccination mandates – the UFT worked to soften the impact of those mandates on the relatively few who declined the vaccine.  It is this important context that is missing from the Complaint, and which is essential to this Court's consideration of the instant application and underlying claims.

When the New York City Department of Health and Mental Hygiene ("DOHMH") issued the initial version of a vaccination mandate for all workers in City educational facilities (the "DOE Vaccination Mandate" or the "Mandate"), it did not even provide for the possibility of medical or religious exemptions, let alone offer alternatives for those who declined vaccination

and would, therefore, be precluded by the Mandate from working inside school buildings.[1]  In response to the Mandate, the UFT immediately moved on two parallel tracks: first, together with other City unions, bringing a challenge to the Mandate itself and the omission of medical and religious objections in New York State court on constitutional due process and other grounds; and, second, proceeding to expedited negotiations regarding the Mandate's implementation.

The New York State Supreme Court granted the Unions' application for a temporary restraining order, and, following the "suggestion" of the Court "that the City allow for the possibility of medical and religious exemption requests" the City quickly amended the Mandate to allow for reasonable medical and religious accommodation.  However, after further briefing, the remainder of the Unions' challenges (premised in part on due process arguments analogous to those asserted by Plaintiffs here) were denied, and the Mandate was permitted to continue.[2]  As time would tell, this result was consistent with numerous other challenges to COVID-19 vaccine mandates.[3]

While the amendment to the Mandate forced by the Unions' court challenges aided in moving the implementation bargaining process forward, the looming start date for the new school year created urgency in negotiation process on both sides.  With the parties far from

---

[1]  See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.  That Order was amended twice – once to include reasonable medical and religious accommodations, Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf, and again following the dissolution of the Second Circuit's temporary restraining order in a separate matter challenging the Citywide Mandate.  Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf.

[2]  See New York City Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty.  2021).

[3]  See infra at      .

agreement, the UFT sought a declaration of impasse from the New York Public Employment Relations Board ("PERB") and the appointment of a mediator to assist the negotiations.  When several sessions of mediation did not produce a final agreement, the parties moved to arbitration, which resulted in a binding impasse arbitration award (the "Award").[4]  That Award, missing from the factual picture presented by the Complaint, places both the facts and Plaintiffs' claims in context.

Through that arbitration, the UFT was able to secure processes for staff to apply for, and, when needed, take appeals from determinations for medical and religious accommodations to an independent arbitration panel.  The Award also secured options for members either to separate from the DOE with a compensation incentive, or to elect for an extended leave without pay ("LWOP"), all while maintaining health benefits until September 5, 2022.  Furthermore, for those who opted for the new LWOP, the Award allowed them to immediately return to their positions should they decide to take the vaccine (an opportunity that some have already accepted).  And, as relevant here, the Award specifically authorized the DOE to place individuals who have not complied with the Mandate on LWOP, while restricting the DOE from seeking to terminate those who were not in compliance prior to December 1, 2021.  However, once the December 1, 2021 threshold is crossed, that restriction ends, and the DOE will be able to seek the termination of noncompliant employees through existing procedures.  However, the ability to "seek to unilaterally terminate" is not tantamount to termination itself, and the UFT most assuredly did not "bargain away" any employee's right to due process before termination  Should the DOE seek to terminate any employee after December 1, the UFT expects the DOE to follow

---

[4] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021) Klinger Decl. Ex. D.

established procedures (including specifically the preference of charges), and anticipates making available Union-provided counsel in the normal course.

Plaintiffs' claims fail to account for the fact that a binding impasse arbitration award becomes part of the collective bargaining agreement.  Accordingly, it is not accurate to say that employees have been placed on LWOP in contravention of applicable collective bargaining agreements.  They have been placed on LWOP pursuant to the Award.

This is also why the UFT – which is not a state actor – has exercised its lawful discretion to decline pursuit of contractual grievances that fail to account for the impact of the Award. Accordingly, any § 1983 claim against the UFT for failure to stop the Mandate or refusal to bring a grievance is deficient.  Likewise, claims based on collusion with the DOE or contribution to the diminution of Plaintiffs' constitutional rights cannot be made out, where the underlying basis for such claims are the failure to bring a grievance that is improper pursuant to the Award (which is itself incorporated into the UFT's CBA with the DOE).

The UFT understands the impact the Mandate has on Plaintiffs; yet – as evidenced by the UFT's own efforts – constitutional due process challenges to the Mandate, and similar orders, have failed time and again.  To the extent Plaintiffs challenge the implementation of the Mandate, the UFT is bound by the terms of the Award.

Accordingly, Plaintiffs' application for a temporary restraining order and permanent injunction should be denied, and this proceeding dismissed as to the UFT.

## **ADDITIONAL RELEVANT FACTS**

I.   <u>New York's State of Emergency, Shutdown, and Reopening</u>

On March 12, 2020, Mayor Bill de Blasio declared a state of emergency for New York City, recognizing that "the risk of community spread throughout New York City impacts the life and health of the public and public health is imperiled by the person-to-person spread of

COVID-19[.]"[5]  This announcement echoed then-Governor Cuomo's declaration of a disaster

emergency for all of New York State, made days earlier.[6]

Thereafter, on March 20, 2020, Governor Cuomo issued Executive Order 202.8 and

announced the "New York State on PAUSE" plan, which shuttered all non-essential businesses

statewide, and banned "[n]on-essential gatherings of individuals of any size for any reason (*e.g.*,

parties, celebrations or other social events)[.]"[7]  From that time until roughly May of this year, it

had been best practice to periodically close spaces (particularly indoors) where individuals

gather, in order to reduce community spread or flare ups.[8]

Since May, activities in the City have moved towards a return to normal.  The change

was due primarily to the widespread availability and utilization of the Pfizer, Moderna, and

Johnson & Johnson vaccines.[9]  Today, nearly all individuals aged 5 and older are eligible to

receive the vaccine, with many eligible to receive a booster dose.

For several months now, a strain of COVID-19 known colloquially as the "Delta variant"

has become the predominant version of the virus affecting City residents.[10]  Despite the Delta

---

[5] See Emergency Executive Order No. 98, City of New York Office of the Mayor (Mar. 12, 2020).

[6] Governor Cuomo had previously declared a disaster emergency for the State of New York.  See Executive Order No. 202, State of New York Executive Chamber (Mar. 7, 2020).  The Governor has since issued a series of related executive orders continuing and expanding on the declaration of disaster emergency.  On March 13, 2020, a state of national emergency was declared.

[7] See Governor Cuomo Signs the 'New York State on PAUSE' Executive Order, New York State Governor (Mar. 20, 2020), https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order (last accessed Nov. 19, 2021).  Governor Cuomo's mandate has since been relaxed, but social distancing guidelines are still in effect, and limits continue to exist on the size of social gatherings and how specific business may serve the public.

[8] Sharon Otterman, New York Is Reopening.  Here's What That Actually Means, N.Y. TIMES (May 19, 2021, updated Sept. 17, 2021), https://www.nytimes.com/2021/05/19/nyregion/nyc-reopening-restrictions-masks-vaccines.html.

[9] See id.

[10] See COVID-19: Data, NYC HEALTH, https://www1.nyc.gov/site/doh/covid/covid-19-data-variants.page (last accessed Nov. 19, 2021).

Variant, rising vaccination rates have resulted in COVID-19 cases and hospital admissions significantly below their 2020 peaks.[11]

While the extraordinary powers granted to the Governor have been relinquished, and the State's declaration of emergency ended on June 24, 2021, the City has maintained its state of emergency.

II.     The DOE Vaccination Mandate

In their ongoing efforts to address the pandemic the City and State have issued a series of requirements and mandates regarding vaccination and COVID-19 safety protocols.

The City initially announced a vaccination-or-test mandate for public sector health care workers on July 21, 2021.[12]  That day, the Commissioner of DOHMH ordered vaccination or weekly testing for staff in public healthcare settings.[13]  Less than a week later, the Mayor proclaimed that "every single city employee will be expected to be either vaccinated or be tested weekly."[14]

Shortly thereafter, on August 23, 2021, following FDA approval of the Pfizer vaccine, Mayor de Blasio and DOHMH Commissioner Chokshi announced the at-issue vaccination mandate for all employees in the City school district.[15]  The following day, DOHMH imposed

---

[11] See Sharon Otterman, Here's Who Is Hospitalized for Covid in New York City as Cases Rise, N.Y. TIMES (July 30, 2021), https://www.nytimes.com/2021/07/30/nyregion/nyc-covid-hospitalizations.html.

[12] Transcript: Mayor de Blasio Appears Live on MSNBC's Morning Joe, NYC OFFICE OF THE MAYOR (July 21, 2021), https://www1.nyc.gov/office-of-the-mayor/news/508-21/transcript-mayor-de-blasio-appears-live-msnbc-s-morning-joe.

[13] See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination or Testing for Staff in Public health Settings (July 21, 2021),  https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-or-testing-staff-public-settings-072121.pdf

[14] See Transcript: Mayor de Blasio Holds Media Availability, NYC OFFICE OF THE MAYOR (July 26, 2021), https://www1.nyc.gov/office-of-the-mayor/news/517-21/transcript-mayor-de-blasio-holds-media-availability.

[15] See Mayor de Blasio, Chancellor Porter and Commissioner Chokshi Announce Department of Education Employee Vaccine Mandate, NYC OFFICE OF THE MAYOR (Aug. 23, 2021), https://www1.nyc.gov/office-of-the-mayor/news/578-21/mayor-de-blasio-chancellor-porter-commissioner-chokshi-department-education.

the first version of the DOE Vaccination Mandate, which requires all DOE staff, City employees, and contractors who "work in-person in a DOE school setting or DOE building" and others in City schools to – no later than September 27, 2021 – provide proof that they have at least received the first dose of a vaccine.[16]  While the DOE was willing to discuss the impact of the Mandate, the original mandate, as indicated above, failed to provide for either medical or religious exemptions.  The City continued to issue analogous policies, culminating in a citywide vaccination mandate issued on October 20, 2021.

Throughout these changing policies, the UFT and other City unions have sought to negotiate aspects of the policies and their implementation in the interest of their members The City acknowledged an obligation to bargain over the implementation of the vaccine mandates, and engaged in bargaining with the UFT on the impact and implementation of the August 23, 2021 DOE Vaccination Mandate.  Moreover, the City did not challenge the UFT's declaration of impasse, filed with PERB on September 1, 2021,[17] leading PERB to appoint  Martin F. Scheinman to mediate the matter and subsequently arbitrate the dispute.

III.   The Award

On September 10, 2021, after expedited mediation and then arbitration between the UFT, the City and DOE, Scheinman issued the Award concerning the impact and implementation of the August 23, 2021 DOE Vaccination Mandate.[18]  The Award provides that, although the

---

[16] Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, New York City Department of Health and Mental Hygiene (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf

[17] See Declaration of Impasse, PERB (Sept. 1, 2021), attached to the Klinger Decl. as Ex. A.

[18] See Klinger Decl. Ex. D.

Mandate prevents unvaccinated employees form being in school buildings, no one would be summarily dismissed.  Rather, the Award provides, *inter alia,* for the following benefits:

1. A procedure for applying for both medical and religious accommodations (see Award at 7);

2. A procedure for appealing the denial of said accommodations to a panel of impartial arbitrators (see Award at 10);

3. The ability to remain on payroll and continue to receive medical coverage while such applications and appeals are pending (see Award at 11-12);

4. For those not awaiting accommodation review, who declined to vaccinate, the ability to elect non-disciplinary leave without pay that allows them to continue to receive health benefits, and from which they could resume their position upon vaccination (see Award at 13-14);

5. The option to, within a specified window, elect to separate from the DOE, receive an incentive payment, and have health benefits continue through September 5, 2022 (see Award at 16); and

6. A prohibition on the DOE seeking to terminate any employee for noncompliance until after December 1, 2021 (see Award at 17-18).

The DOE's ability *to seek* termination is limited to those employees who, after December 1, 2021, have chosen to remain unvaccinated, and have not elected one of the options provided for in the Award.  The Award does not provide the DOE a unilateral right to summarily terminate employees.  Rather, it recognizes that, after December 1, 2021, the DOE may choose to use available procedures to seek termination.

Following the Award, subsequent negotiation and arbitration was then had with the

Council of School Supervisors and Administrators, the City, and DOE, which produced its own

award from Arbitrator Scheinman on September 15, 2021.[19]  Teamsters Local 237 and other

unions pursued their own paths with the City and DOE, also overseen by Arbitrator Scheinman,

which received their own analogous awards.[20]  All the awards provided for the employer to place

noncompliant employees on leave without pay under applicable circumstances.

IV.    Court Challenges To Vaccination Mandates

While pursuing impasse arbitration, on September 9, 2021, the UFT – together with other

unions – filed an order to show cause and petition for a temporary restraining order and a

preliminary injunction in New York Supreme Court to vacate the DOE Vaccination Mandate

pursuant to CPLR Article 78.[21]  In brief, the Unions argued that the Mandate, (a) violates

employees' individual bodily integrity and right to refuse medical treatment by forcing

employees to undergo unwanted medical procedures or be precluded from engaging in their

chosen professions; (b) violates employees' due process rights by involuntarily preventing

permanently-appointed DOE and City employees declining vaccination from engaging in their

employment, resulting in a deprivation of their vested property rights in violation of the

Fourteenth Amendment, Article 1 § 6 of the New York Constitution, N.Y. Education Law §§

3020 and 3020-a, and N.Y. Civil Service Law § 75; and (c) fails to provide required exceptions

for those with medical contraindications or sincerely-held religious objections to inoculation.

---

[19] See Board of Education of the City School District of the City of New York and Council of Supervisors and Administrators (Impact Bargaining), Arbitration Award (Sept. 15, 2021), attached to the Klinger Decl. as Ex. E.

[20] See Board of Education of the City School District of the City of New York and International Brotherhood of Teamsters, Local 237 (Impact Bargaining), Arbitration Award (Sept. 15, 2021), attached to the Klinger Decl. as Ex. F.

[21] MLC et. Al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

On September 14, 2021, New York Supreme Court Justice Larry Love granted the application for a temporary restraining order.[22]  In a subsequent conference, the Court suggested that the City might want to re-examine the absence of medical and religious exemption, which, as indicated above, the City did.[23]

Following oral argument on the Unions' remaining claims, Justice Love dismissed the petition, reasoning:

> Having resolved the issue of appropriate medical and religious exemptions with the New Order, Petitioners' sole argument is that the New Order violates school-based employees substantive due process rights by threatening their personal autonomy, bodily integrity and right to reject medical treatment.
>
> [. . .]
>
> Since *Jacobson*, the state and federal courts have consistently held that a mandatory vaccine requirement does not violate substantive due process rights and properly fall within the State's police power.  *See*, *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (holding that New York's mandatory vaccine requirement did not violate substantive due process rights as the vaccinations were within the State's police power, and individual liberties did not overcome its judgement that such vaccination was in the interest of the population as a whole); *Caviezel v. Great Neck Pub. Schs.*, 500 F. App'x 16, 19 (2d Cir. 2012); *C.F. v. New York City Dept. of Health & Mental Hygiene*, 191 A.D. 3d 52, 69 (2d Dep't Dec. 23, 2020) (holding that the City of New York's measles vaccine mandate did not violate the due process rights secured by the Fourteenth Amendment).  As such, Petitioners will be unable to establish a likelihood of ultimate success on the merits.

---

[22] A true and correct copy of the executed Order to Show Cause for a Temporary Restraining Order is attached hereto as Exhibit G.

[23] See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf

See New York Mun. Labor Comm. v. The City of New York, 73 Misc. 3d 621, 625-27 (Sup. Ct. N.Y. Cnty. 2021).

Nationally, a plethora of due process challenges to employee vaccination mandates have met the same fate as the Unions' Article 78 proceeding.  Indeed, before this very Court, Plaintiff Rachel Maniscalco was herself a named plaintiff in Maniscalco et al. v. The New York City Department of Education, et al., wherein she challenged the very same DOE Vaccination Mandate at issue here as a violation of substantive due process and equal protection rights under the Fourteenth Amendment, as well as an arbitrary and capricious agency determination under CPLR Article 78.  There, Judge Cogan held that the plaintiffs had "not shown a likelihood of success on the merits." See Maniscalco, 21-cv-5055 (BMC), at *1, 2, 6 (E.D.N.Y. Sept. 23, 2021) (citations omitted).

Moreover, Judge Cogan – like Judge Love – cited Jacobson v. Massachusetts, 197 U.S. 11 (1905), for the proposition that "the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'"  See id. at *6 (citations omitted).  Therefore, "mandating a vaccine approved by the FDA" did not qualify as a "plain, palpable invasion" of fundamental rights." See id.  at *7.

The Second Circuit affirmed by summary order "for substantially the reasons stated in the district court's thoughtful memorandum decision[.]" See No. 21-2343 (2d Cir. Oct. 15, 2021). The Maniscalco plaintiffs then applied for an emergency application for a writ of injunction to the Supreme Court of the United States. That application was denied on October 1, 2021.

Nor is this result singular.  The Seventh Circuit Court of Appeals, citing <u>Jacobson</u>, also rejected due process challenges to a COVID-19 vaccine mandate for students, faculty, and staff at Indiana University.  <u>See</u> <u>Klaassen et al. v. Trustees of Indiana University</u>, No. 21-2326 (7th Cir. Aug. 2, 2021).  Plaintiffs there also applied to the Supreme Court for injunctive relief.  Justice Barrett denied that application on August 12, 2021.

Employee vaccine mandates have also been upheld outside of the due process context.  <u>See</u>, <u>e.g.</u>, <u>Kane, et al. v. de Blasio et al.</u>, No. 21-2678 (2d Cir. Nov. 15, 2021) (rejecting challenge to the DOE Vaccination mandate based on the Free Exercise Clause, Establishment Clause, and Title VII, following denial of religious exemption requests), en banc hearing pending November 22, 2021; <u>We the Patriots USA, Inc. et al. and Dr. A. v. Hochul</u> (No. 21-2179 (2d Cir. Nov. 4, 2021) (consolidated) (rejecting challenges to New York State medical health professional vaccination mandate based on the Supremacy Clause, Free Exercise Clause, Fourteenth Amendment, and Title VII); <u>Doe v. Mills</u>, 16 F.4th 20 (1st Cir. 2021), <u>petition for cert. filed</u> (Nov. 15, 2021), (rejecting challenge to health care worker vaccination mandate based on the Free Exercise Clause, Supremacy Clause, and Equal Protection Clause), application for extraordinary relief denied 595 U.S. __, No. 21A90 (2021).[24] <u>Dahl v. Bd of Trustees of W. Mich. Univ.</u>, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) (holding that University's failure to grant religious exemptions burdened student athlete free exercise rights).

---

[24] <u>Dahl v. Bd. of Trustees of W. Mich. Univ.</u>, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) is a distinguishable exception.  There, the court declined to stay a vaccination mandate that considered student-athlete religious exemptions on a case-by-case basis.  The court reasoned that the University did not dispute that the vaccine would violate plaintiffs' sincerely held religious beliefs, and that the the privilege of playing college sports should not be based on the forced compromise of those beliefs.

V.      The UFT Openly Communicated With Employees Regarding Grievances

Following issuance of the Mandate, some UFT members reached out to the UFT to request that the union file grievances on their behalf.  Initially, the UFT considered the requests; however, given the binding protocols and procedures in the Award (the terms of which are incorporated into the UFT's CBA) it was apparent that any grievances would lack merit. Accordingly, the UFT advised inquiring members that procedures regarding unvaccinated employees were governed by the binding Award, which was circulated to members along with plain-language guidance of the Award's terms.[25]  Moreover, the UFT informed its members that they were still able to file step 1 grievances on their own.

Indeed, on November 11, 2021, prior to filing this Complaint, Plaintiff Jeannine Lam emailed the UFT requesting that it file grievances on her behalf for "stopping my pay without any 'right to due process' at all"; and for "8 unauthorized absences, so far, which have been put into the system under my name[.]"[26]

In response, UFT General Counsel Beth Norton stated:

> the DOE's procedure for unvaccinated employees is governed by the September 10, 2021 interest arbitration award issued by Arbitrator Martin Scheinman (the "Award").  Under the Award, unvaccinated DOE employees have until November 30, 2021 to elect to either (1) separate from service or (2) remain on an unpaid leave through September 5, 2022.  If an unvaccinated DOE employee does not select either of these options by the November 30, 2021 deadline, the Award provides that as of December 1, 2021, "the DOE shall seek to unilaterally separate employees who have not opted" to either separate from service or remain on an unpaid leave.

---

[25] See Arbitrator rules in union's favor on medical accommodations, UFT (Sept. 10, 2021), https://www.uft.org/news/news-stories/arbitrator-rules-unions-favor-on-medical-accommodations.

[26] Norton Decl. Ex. A.

> At this time, the DOE has not announced the procedure it will seek
> to implement to "unilaterally separate" employees that do not elect
> to separate from service or extend their leave through September 5,
> 2022 by the November 30, 2021 deadline.  When the
> announcement is made, we will send a communication to all
> affected members explaining the next steps.

See Ex. A.

## ARGUMENT

## I.   PLAINTIFFS' CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR 42 U.S.C. § 1983 CLAIMS

A. UFT Is Not a State Actor

Defendant UFT is a public employee labor organization pursuant to New York Civ. Serv. L. § 200 *et seq.*, and Michael Mulgrew is a private individual who is its elected president. State and federal courts – including this Court – have explicitly recognized that the UFT is not a state actor.  See Driskell v. New York City, 11 Civ. 4915 (BMC), 2011 WL 6812516, at *3 (E.D.N.Y. Dec. 23, 2011) (citing Ciambriello, 292 F.3d 307, 323 (2d Cir. 2003)) ("Plaintiff does not allege that the UFT is a state actor, nor could she."); see also Callaghan v. United Federation of Teachers, 133 A.D.3d 412 (1st Dep't 2015) (holding that the UFT is a private actor, and that "courts in this State have consistently held that unions, even those representing public employees, such as the UFT, are not state actors").

Furthermore, as a general rule, labor unions – even public-sector unions – and their agents are not state actors. See Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (stating that New York's Civil Service Employees Association (CSEA) was not a state actor for the purposes of 42 U.S.C. § 1983).  Nor does the mere fact that a union represents public employees render that union a state actor.  See Harmon v. Matarazzo, 162 F.3d 1147 (2d. Cir. 1998) (Table) (dismissing plaintiff's § 1983 claim and noting that the Patrolmen's Benevolent Association is an independent private entity that is in no way intertwined with the

14

police department, except to the extent that its members are policemen).  Rather, the UFT exists

to represent the collective interests of employees in positions it represents separate and apart

from their role as civil servants, and by the design of state law maintains an "inherently

advers[ar]ial" relationship with the state employers who employ its members and others it

represents.  See Mehrhoff v. William Floyd Union Free School District, No. 04-CV-3850, 2005

WL 2077292, at * 4 (E.D.N.Y. Aug. 22, 2005) (citing McGovern v. Local 456, Int'l Bhd. Of

Trustees, 107 F. Supp. 2d 311, 317 (2d Cir. 2000)).

   Therefore, Plaintiffs' burden is high, and unsatisfied.  To survive a motion to dismiss, let

alone demonstrate a likelihood of success on the merits, Plaintiffs must allege facts showing that

UFT was acting under the color of state law when engaging in the alleged violation.  See Dennis

v. Sparks, 449 U.S. 24, 27 (1980).  In general, there are three main situations where private

action is treated as state action under § 1983: "(1) when the private actor performs a traditional

state function; (2) when a symbiotic relationship or close nexus exists between the private actor

and the state; and (3) when the private actor is a willful participant in joint activity with the State

or its agents." Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 373 (E.D.N.Y. 2000), aff'd,

62 F. App'x 28 (2d Cir. 2003) (internal citations and quotations omitted).  None of these factors

are satisfied here.

   The UFT is not performing a traditional state function, which is limited to actions which

are "traditionally the exclusive prerogative of the State." National Broadcasting Co. v.

Communications Workers of America, 860 F.2d 1022, 1026 (11th Cir. 1988) (citing Jackson v.

Metropolitan Edison Co., 419 U.S. 345, 353 (1988)).  Similarly, the UFT has no close nexus

with the DOE or any other state institution, which exists when a private actor's conduct "has

sufficiently received the imprimatur of the State so as to render it an action of the State." Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013) (internal citations omitted).

There is also no symbiotic relationship between the UFT and the DOE, which generally exists only when a private actor's conduct "has sufficiently received the imprimatur of the State so as to render it an action of the State." Sykes, 723 F.3d at 406 (internal citations omitted).  To establish such a relationship, Plaintiffs must show that the UFT "has so far insinuated itself into a position of interdependence with [the DOE] that it must be recognized as a joint participant in the challenged activity." See Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961).  Yet, the UFT has acted as a bulwark against the very City mandates Plaintiffs now challenge – a far cry from the symbiotic relationship or "willful participation" required under § 1983.

Nor have Plaintiffs mustered more than "mere[ ] conclusory allegation[s] that [UFT,]  a private entity[,] acted in concert with" the DOE or the City.  See Ciambriello, 292 F.3d at 324 (holding that CSEA was not acting under color of state law, and dismissing § 1983).  Such "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct[,]" which Plaintiffs have not plead.  See Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)).

To the contrary, as evidenced supra, the UFT has actively sought to protect the interests of its members – including those who choose not to become vaccinated – throughout the announcement and implementation of the Mandate.  These actions constitute significantly more adversity to the interests of the City than courts have found necessary to stave off a § 1983 claim against a private actor.

16

Leahy v. Board of Trustees, 912 F.2d 917 (7th Cir. 1990), is instructive.  There, a college teacher brought suit against his public employee union under 42 U.S.C. § 1983 on grounds that the union had refused to take his grievance to arbitration.  The court found that he had alleged no facts "supporting the conclusion or inference that the Union has either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in his complaint."  See id. at 921.  Rather, the allegations of conspiracy and refusal to arbitrate grievances were held conclusory.  See id.; see also Ciambriello, 292 F.3d at 324 ("conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial relationship between the County and CSEA").

In the instant case, Plaintiffs allege no specific facts or instances of misconduct or conspiracy by the UFT.  Instead, they make a nonspecific claim of "collusion" between the UFT and DOE.  Complaint ¶¶ 135-36.  They further allege that the UFT "foster[ed] and encourage[d] the NYCDOE to violate the Plaintiffs' constitutional rights."  Complaint at ¶ 156.  Yet, as in Leahy, the only basis for either of these allegations is that the UFT has declined to pursue Plaintiffs' grievances, Complaint at ¶¶ 92-93, which, in light of the binding Award, would not prevail.

Regardless, refusal to pursue a particular grievance is well within the discretion of a labor union.  See, e.g., Ahrens v. New York State Pub. Employees Fed'n, AFL-CIO, 203 A.D.2d 796 (3d Dep't 1994).  Recently, the Southern District of New York emphatically rejected the claim that refusal to pursue a particular grievance on a party's behalf constituted a constitutional violation or evidence of a conspiracy.  Valvo v. Dep't of Educ. of N.Y., 19-CV-8341 (JPO), 2021 WL 1063759, at *5 (S.D.N.Y. Mar. 18, 2021) ("From the Complaint, Plaintiff's primary concern about UFT appears to be its refusal to initiate a Step 3 grievance on her behalf. But nothing in the

17

Constitution required UFT, acting pursuant to whatever private agreement it may have had with Plaintiff, to initiate a Step 3 grievance … .  Furthermore, the Court rejects any insinuation that UFT's decision not to pursue a Step 3 grievance indicates a conspiracy between UFT and DOE.") (internal citations omitted).

Therefore, the UFT's actions – challenging the DOE Vaccination Mandate and refusing to arbitrate grievances foreclosed by the Award – are insufficient to support claims of a § 1983 violation.

B. The UFT Has Not "Aided and Abetted" Violations of § 1983

As argued supra, the UFT has engaged in no conduct with, or in support of, the City or DOE capable of supporting an "aiding and abetting"[27] claim under § 1983.  Rather, the UFT's litigation against the City, impasse arbitration,[28] and precedent point to the simple truth that UFT's actions have been inherently adversarial to the City/DOE, and in Plaintiffs' best interests. See, e.g., New York City Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (N.Y. Sup. Ct. 2021); Mehrhoff, 2005 WL 2077292, at * 4.

II.     PLAINTIFFS FAIL TO CONSIDER THE AWARD

The Complaint does not include any reference to the binding Award issued by PERB-appointed arbitrator Scheinman, the terms of which are incorporated into the UFT and DOE's

---

[27] While 42 U.S.C. § 1983 does not explicitly account for "aiding and abetting" violations of the statute, several courts have recognized such claims as allegations of conspiracy.  See, Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995); Figueroa v. City of Camden, 580 F. Supp. 2d 390, 401-02 (D.N.J. 2008) ("While it is not entirely clear on the face of their Complaint, Plaintiffs clarify that they intended to allege that the Unions conspired with state and local officials in order to deprive Plaintiffs of their rights.").

[28] The fact of the UFT's litigation against the City is public record, and is therefore proper for judicial notice. Likewise, this Court may take notice of the Award in its reasoning, as the Award is incorporated by law into the CBA, and is "integral to the complaint" – in that it is cited by, and forms the basis for, Plaintiffs' claims.  See, e.g., Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016); Chambers v. Time Warner, Inc., 282F.3d 147 (2d Cir. 2002); International Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).  Furthermore, a "court may consider hearsay evidence such as affidavits when determining whether to grant a preliminary injunction," which Plaintiffs seek here.  See We the People v. Hochul, Nos. 21-2179, 21-2566, at *11 n.3 (2d Cir. Nov. 4, 2021).

CBA by law, and supersedes provisions to the contrary.  See Town of Southampton v. N.Y. State

Pub. Empl. Rels. Bd., 2 N.Y.3d 513, 523 (2004) (holding that under New York State collective

bargaining laws, a binding interest arbitration award "effectively redefine[s] the parties'

agreement on [a] mandatory term and condition of employment").  The Award stipulates the

entirety of the leave and separation procedures with which Plaintiffs take umbrage, and removes

the contractual basis upon which Plaintiffs have asked the UFT to pursue grievances – the CBA

bases for which are rendered inapplicable by the Award.  See Award, Klinger Decl. Ex. D.  As

such, the UFT respectfully directs the Court to the Award, which needs to be read in tandem with

the CBA when assessing Plaintiffs' claims that they have been placed on LWOP in contravention

of their contractual or statutory rights.  However, as set forth supra, the Award does not obviate

or otherwise do away with existing procedure that would need to be followed should the DOE

decide either to seek discipline or termination of a DOE employee.  The reality that Plaintiffs

need to face is that the validity of the Mandate has been upheld, meaning that unvaccinated DOE

employees may not perform their work in a school building.

**<u>CONCLUSION</u>**

For the reasons set forth herein and in the accompanying submissions, Petitioners

respectfully request that the Court:

1.  deny Plaintiff's application for a temporary restraining order and preliminary

    injunction; and

2.  award such other and further relief as the Court deems just and proper.

Dated: November 19, 2021                    Respectfully submitted,


                                                    /s/ ALAN M. KLINGER
                                            STROOCK & STROOCK & LAVAN LLP
                                            Alan M. Klinger, Esq.
                                            Dina Kolker, Esq.
                                            Arthur J. Herskowitz, Esq.
                                            180 Maiden Lane
                                            New York, New York 10038
                                            (212) 806-5400
                                            aklinger@stroock.com
                                            dkolker@stroock.com
                                            aherskowitz@stroock.com

                                            - and –

                                            Beth A. Norton, Esq.
                                            UNITED FEDERATION OF TEACHERS,
                                            LOCAL 2, AFT, AFL-CIO
                                            52 Broadway
                                            New York, NY 10004
                                            bnorton@uft.org

                                            *Co-counsel for Defendant UFT*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendant United Federation of Teachers, AFT Local 2 ("PSC") is an unincorporated association under New York state law and has no parent corporations.