UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------  X
BROECKER *et al.*,                                              :
                                                               :
                                  Plaintiffs,                   :
                                                               :
            -against-                                           :        Index No. 21-cv-6387
                                                               :
                                                               :
NEW YORK CITY DEPARTMENT OF                                     :
EDUCATION, *et al.*,                                           :
                                                               :
                                  Defendants.                   :
--------------------------------------------------------------  X

**DEFENDANT UNITED FEDERATION OF TEACHERS, LOCAL 2, AFL-CIO'S
SUPPLEMENTAL MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................II

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .............................................................................................................. 2

I. **DOE EMPLOYEES ARE ENTITLED TO DUE PROCESS AS "UNILATERAL SEPARATION" CONSTITUTES DISCRETIONARY ACTION BY THE DOE** ..................................................................................... 2

    A. Public Employees in New York State May Not Be Terminated Without Due Process If Their Termination is Discretionary ................................................................ 2

    B. The DOE Retains Discretion Over How To Treat Unvaccinated Employees ................... 6

II. **THE "UNILATERAL SEPARATION" OF UNVACCINATED TEACHERS IS DISCIPLINARY ACTION AND DEMANDS THE PROCESS DUE UNDER STATUTE AND CONTRACT** ................................................................. 11

    A) Fitness For Duty, Including On Medical Grounds, Is An Issue Of Discipline ........... 11

    B) The Refusal To Comply With The Vaccine Mandate Order Is Analogous To Other Situations Treated As Disciplinary And Requiring Due Process .............................. 13

    C) The Award Does Not Waive DOE Employees' Due Process Rights ........................ 14

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adrian v. Bd. of Ed.,
    92 A.D.3d 1272 (4th Dep't 2012) ........................................................................... 4, 8

Appeal of the Bd. of Educ. of the City Sch. Dist. of the City of Oswego,
    31 Ed. Dept. Rep., Decision No. 12593 (1991) ........................................................ 13

Bd. of Regents v. Roth,
    408 U.S. 564 (1972) .................................................................................................... 2

Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
    No. 102678/09, 2009 WL 2416131 (Sup. Ct. N.Y. Cnty. July 22, 2009) ................. 5

Brown v. City of Syracuse,
    673 F.3d 141 (2d Cir. 2012) ....................................................................................... 4

City of Niagara Falls v. N.Y. State Pub. Emp. Relations Bd.,
    34 Misc. 3d 1227(A) (Sup. Ct. Albany Cnty. 2012) .................................................. 8

Conde v. Yeshiva Univ.,
    16 A.D.3d 185 (1st Dep't 2005) ............................................................................... 15

Matter of District Council 37,
    6 OCB2d 24 (BCB 2013) ............................................................................................ 9

Appeal of Elaine Cuoco,
    31 Ed Dept. Rep., Decision No. 12582 (1991) ........................................................ 13

Matter of Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) ............................................................................................... 4, 8

Fitzpatrick v. Bd. of Educ. of Mamaroneck Union Free School Dist.,
    96 A.D.2d 557 (2d Dep't 1983), appeal denied 61 N.Y.2d 607 (1984) ................... 12

Gardner v. Niskayuna Cent. School Dist.,
    42 A.D.3d 633 (3d Dep't 2007), lv. denied 9 N.Y.3d 813 (2007) ........................... 12

Gargiul v. Bd. of Educ.,
    69 A.D.2d 986 (4th Dep't 1979) ......................................................................... 13, 14

Appeal of Grossberg,
    33 Ed.. Dept. Rep., Decision No. 12976 (1993) ...................................................... 11

Hewitt v. D'Ambrose,
    418 F. Supp. 966 (S.D.N.Y. 1976) ....................................................................3

Matter of Koutros v. Dep't of Educ. of City of N.Y.,
    No. 104279/12, 2013 WL 6980455 (Sup. Ct. N.Y. Cnty. Oct. 22, 2013) aff'd,
    129 A.D.3d 434 (1st Dep't 2015) .....................................................................4

Kuhnle v. Ambach,
    91 A.D.2d 779 (3d Dep't 1982) .......................................................................13

Legal Aid Society v. City of New York,
    114 F. Supp. 2d 204 (S.D.N.Y. 2000)..............................................................15

Matter of Lutz v. Krokoff,
    102 A.D.3d 146 (3d Dep't 2012), lv denied 20 N.Y.3d 860 (2013)..........................5

Mandelkern v. City of Buffalo,
    64 A.D.2d 279 (4th Dep't 1978) .....................................................................4, 8

Mandelkern v. City of Buffalo,
    92 Misc. 2d 425 (Sup. Ct. Erie Cnty. 1977), rev'd, 64 A.D.2d 279 (4th Dep't
    1978) ...............................................................................................................8

New York State Inspection, Sec. & Law Enf't Emps., Dist. Council, 82 v. Cuomo,
    64 N.Y.2d 233 (1984) ......................................................................................6

Matter of New York State Off. of Child. & Fam. Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) .....................................................................................4

Niagara Frontier Transit Metro System, Inc. v. Amalgamated Transit Local Union
    1342,
    100 A.D.3d 1469 (4th Dep't 2012) ...............................................................2, 3

O'Connor v. Bd. of Educ.,
    48 A.D.3d 1254 (4th Dep't 2008) ..................................................................4, 8

Ricca v. Bd. of Educ. of City School Dist. of City of N.Y.,
    47 N.Y.2d 385 (1979) ............................................................................15, 16, 17

Matter of Richie v. Coughlin,
    148 A.D.2d 178 (3d Dep't 1989), appeal dismissed 75 N.Y.2d 765 (1989), lv
    denied 75 N.Y.2d 707 (1990) ...................................................................3, 7, 10

Seven–Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc.,
    686 F.Supp. 1015 (S.D.N.Y.1988) .................................................................14

Town of Southampton v. N.Y. State Pub. Emp. Rels. Bd.,
    2 N.Y.3d 513 (2004) ......................................................................................15

We the Patriots USA, Inc. v. Hochul,
    Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021) ..................5, 6

Wright v. Universal Maritime Serv. Corp.,
    525 U.S. 70 (1998)...........................................................................................................14

**Statutes**

N.Y. Civil Service Law § 50(4)...............................................................................................3

N.Y. Civil Service Law § 72.................................................................................................12

N.Y. Civil Service Law § 73.................................................................................................12

N.Y. Civil Service Law § 75...................................................................................5, 10, 12, 17

N.Y. Education Law § 913................................................................................................11, 12

N.Y. Education Law § 2568.............................................................................................11, 12

N.Y. Education Law § 2590-j(7)(b)........................................................................................11

N.Y. Education Law § 3001(2)................................................................................................8

N.Y. Education Law § 3020-a ......................................................................................... *passim*

**Other Authorities**

Merriam-Webster, https://www.merriam-webster.com/dictionary/seek ...................................16

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, New York City Department of Health and Mental Hygiene
    (Aug. 24, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe.pdf .......................................................................................................7

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, New York City Department of Health and Mental Hygiene
    (Sept. 28, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-3.pdf  ...................................................................................................7

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
    (Sept. 15, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-2.pdf ................................................................................................................7

## PRELIMINARY STATEMENT

The COVID-19 pandemic has wreaked havoc on the lives and livelihoods of people in New York and around the world. In response, state and local governments—including New York City's—have sought to expand and exercise their existing authorities in new and significant ways. The United Federation of Teachers ("UFT") has supported efforts to bring the pandemic to an end and ameliorate its impacts on New Yorkers, while simultaneously and continuously fighting to protect the rights of the public employees it represents from undue encroachment.

Per the Court's directive, this brief addresses the limited issue of whether, as Defendant New York City Department of Education ("DOE") alleges, public employees who have refrained from being vaccinated or choosing one of the alternatives available under the September 10 binding impasse arbitration award (the "Award")[1] may be summarily terminated without satisfying statutory and contractual due process. They may not. The discretionary termination of public employees without due process tramples on the protected property interest public employees have in their jobs and violates established precedent that when a public employer has *any* discretion in their decision whether to terminate a public employee, the employee must receive due process. This is true even where the employer claims that an employee is not "fit" for duty, as the DOE does here. As made clear during the UFT/DOE mediation/arbitration process and resulting Award, the statutory and contractual procedural protections against undue termination of UFT-represented employees have not been waived or modified with regard to separation from service. Accordingly, should the DOE seek to terminate unvaccinated employees, it must pursue such action under existing procedures.

---

[1] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021), Klinger Declaration in Opposition to Emergency Motion, Ex. D. (dkt# 21)

# ARGUMENT

## I.   DOE EMPLOYEES ARE ENTITLED TO DUE PROCESS AS "UNILATERAL SEPARATION" CONSTITUTES DISCRETIONARY ACTION BY THE DOE

A. Public Employees in New York State May Not Be Terminated Without Due Process If Their Termination is Discretionary

As recognized by this Court, Plaintiffs are public employees who have a constitutionally protected property interest in their continued employment. Mem. and Order Den. Mot. Prelim. Inj. ("Order"), 18 (citing Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985)). Public employees' property interests in their continued employment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). That interest is protected by a panoply of both statutory and contractual due process procedures applicable to employees serving in various titles and at various points in their careers.

New York courts have consistently found that when public employers have discretion in whether or not to terminate a public employee's employment, the employee is entitled to procedural due process. Only when the employee's continued service is prevented by a statutory or regulatory requirement under which the public employer has no discretion may the employer terminate their employment without due process. Niagara Frontier Transit Metro System, Inc. v. Amalgamated Transit Local Union 1342, 100 A.D.3d 1469 (4th Dep't 2012), is instructive. There, a transit worker failed to disclose, as required, past injuries on her employment application. Id. at 1470. The court held that although she could be disciplined, because the failure to disclose did not automatically disqualify her "any disqualification would be discretionary." Id. (citing Prue v. Hunt, 157 A.D.2d 160, 165 (4th Dep't 1990), aff'd at 78 N.Y.2d 364 (1991)) Because of the discretionary nature of the termination, "the employee must be afforded a

meaningful opportunity to invoke the discretion of the decision maker [as] a precondition to his [or her] termination." Id., at 1470-71.

This is true even where the facts of the case are largely undisputed. In Matter of Richie v. Coughlin, 148 A.D.2d 178, 180 (3d Dep't 1989), appeal dismissed 75 N.Y.2d 765 (1989), lv denied 75 N.Y.2d 707 (1990), an individual who had escaped prison and remained a fugitive for more than 15 years applied to a state agency for a job, and lied on his job application about whether he had been convicted of a felony. After obtaining permanent status, he was discovered to be a felon, disqualified from his employment under Civil Service Law § 50(4),[2] and summarily separated. Id. at 180-81. The court held that while the state agency could terminate his employment without due process if they "were *required to terminate such an employee*," Civil Service Law § 50(4) made the decision to disqualify someone discretionary, with the employee allowed to present explanations against termination and the Civil Service Commission allowed to consider mitigating and aggravating factors in "how their discretion should be exercised." Id. at 182-83 (emphasis added). Because there was discretion, the plaintiff was entitled to due process, and the alternative would "reduce the employee's right to have respondents act rationally and objectively to an empty ritual." Id.; see also Hewitt v. D'Ambrose, 418 F. Supp. 966, 969 (S.D.N.Y. 1976) (a public employee who misrepresented their age in combination with years of military service to take a qualifying exam was entitled to due process prior to termination).

---

[2] Civil Service Law § 50(4) provides that the state civil service department or municipal civil service commissions "may" disqualify or refuse to appoint an otherwise eligible applicant who, *inter alia*, "has been guilty of a crime." § 50(4) similarly provides that an otherwise eligible applicant may be disqualified if found to have a disability "which renders the applicant unfit to perform in a reasonable manner the duties of the position." The state department or municipal commissions may also investigate an eligible after appointment, and if facts which would have rendered them ineligible at the time of appointment are discovered, the department or commission may revoke the employee's certification and terminate them, but only within three years of hiring, except in the case of fraud.

In this context, whether discretion for the employer exists is determinative of the existence of due process protections. A protected property interest can cease to exist only if the employer ceases to have discretion over the individual's continued employment. See Brown v. City of Syracuse, 673 F.3d 141, 147-50 (2d Cir. 2012) (a police officer convicted of endangering a minor lost their property interest in employment after state courts reversed prior determinations and held that endangering a minor was an "oath of office" crime which automatically vacated one's employment).

The question of discretion is also key to the analysis in the cases relied on by the DOE in its Memorandum of Law in Opposition to Emergency Motion ("DOE Br.") (dkt# 18) at 15-20, previously submitted in this matter. In Matter of Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505-06 (2004), the court found that teachers could be separated without a hearing for violating a statutory residency requirement, as this was a mandatory qualification rather than an issue of discipline. The court reasoned that the respondent teacher "forfeited his position by operation of local law" and that his removal was not "discretionary." Id. at 499; see also O'Connor v. Bd. of Educ., 48 A.D.3d 1254 (4th Dep't 2008) (concerning Niagara Falls' residency requirement); Adrian v. Bd. of Ed., 92 A.D.3d 1272 (4th Dep't 2012) (same), Mandelkern v. City of Buffalo, 64 A.D.2d 279, 281 (4th Dep't 1978) (concerning Buffalo's residency requirement).

The same rule applies to issues of licensure as a teacher. See Matter of Koutros v. Dep't of Educ. of City of N.Y., No. 104279/12, 2013 WL 6980455, at *2 (Sup. Ct. N.Y. Cnty. Oct. 22, 2013) aff'd, 129 A.D.3d 434 (1st Dep't 2015) (when a teacher was "unqualified as a matter of law" for not having a teaching certificate, they could be released without due process); see also Matter of New York State Off. of Child. & Fam. Servs. v. Lanterman, 14 N.Y.3d 275, 282

(2010) (holding the same as applied to licenses relevant to employees covered by Civil Service Law § 75). It has also been applied to questions of immigration status. See Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., No. 102678/09, 2009 WL 2416131 (Sup. Ct. N.Y. Cnty. July 22, 2009) (holding that a teacher whose continued employment violated immigration law could be dismissed without a disciplinary hearing).

However, the requirement in question must expressly state that a qualification is mandatory for the position in order for summary dismissal to be valid. The implication that a qualification is mandatory is insufficient. See Matter of Lutz v. Krokoff, 102 A.D.3d 146, 148-49 (3d Dep't 2012), lv denied 20 N.Y.3d 860 (2013) (holding that a driver's license requirement for a position where not all employees drove was not an express statement, and thus a hearing was required prior to termination).

Vaccination as a so called "condition of employment" under the state's public health regulations is likewise not the same thing as a mandatory qualification for which no discretion exists. Although the DOE attempts to make much of a passing comment in the Second Circuit's decision in We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021), that case concerned entirely different claims. There, the Court addressed whether New York State's vaccination mandate for certain healthcare workers performing certain functions violated the Free Exercise Clause and *substantive* due process protections under the Fourteenth Amendment, with the Court holding that they did not. The Court mentioned that other vaccination requirements had historically been required and treated as conditions of employment, without any discussion of what, if any, impact that has on *procedural* due process. As is more relevant to the instant matter, the Court specifically recognized that because that mandate, like the DOE mandate, applied only to staff engaging in

certain high contact activities, it was conceivable that some unvaccinated staff could be accommodated by being assigned to telehealth services. Id., at 48. Thus, even for those subject to that mandate, termination was not necessarily the only option. The Court did not discuss, let alone signal, whether all employees under all mandates could be subject to summary dismissal without due process.[3]

In the instant case, the UFT does not here challenge the City's right to mandate vaccination for public employees on substantive due process grounds (that challenge having already been unsuccessfully pressed in state court). Rather, the UFT contests only the DOE's attempt to circumvent due process protections for public employees by framing a matter of discipline as a matter of mandatory statutory qualification. Tellingly, the City's mandate does not describe vaccination as a "condition of employment," but in fact does not mention employment at all. See Sec. I.B, *infra*.

In the cases relied on by the DOE, the hands of the public employer in question were bound by statute or regulation. They did not have the choice whether to end the public employee's employment, but had to do so in order to follow the law. Where disqualification or termination from one's position is discretionary, the public employer must provide due process before ending the public employee's employment.

B. The DOE Retains Discretion Over How To Treat Unvaccinated Employees

Under its own admission, the DOE has discretion in how to implement orders to exclude unvaccinated individuals from school settings. DOE Br. at 16 ("[T]he obligation of how best to

---

[3] The DOE also cites New York State Inspection, Sec. & Law Enforcement Emps. Dist. Council, 82 v. Cuomo, 64 N.Y.2d 233 (1984), which concerns whether corrections personnel could enforce the statutory right to a "safe workplace" to prevent the closure of a state prison. The court's holding—that the discretion of the governor to close a prison made the matter a nonjusticiable political question, and that alleged harm was speculative—is also unrelated to the matter at hand.

[maintain a safe workplace] is within the discretion of the employer."). The language of the mandate itself and the DOE's actions in implementing their vaccination mandate policies demonstrate the breadth of their discretion.

On August 24, 2021, the Commissioner of Health and Mental Hygiene (the "DOHMH Commissioner") issued an order to DOE staff and a range of other workers who work "in-person" in school buildings to be vaccinated, as well as excluding unvaccinated visitors from school settings ("the DOE vaccine mandate order").[4] However, unlike the kinds of requirements which eliminate employer discretion, the DOE vaccine mandate order made no direct statement concerning noncompliant employees' *employment status*.[5] The order states, in relevant part, that "all DOE staff must provide proof to the DOE that [they have been vaccinated]." While DOE employees are obligated to respect the vaccine mandate order, there is no mention of an effect on employment at all. The order does not state any employment consequence to DOE employees' refusal to abide by it, let alone automatic dismissal. Moreover, having had considerable discussion and argument during the mediation/arbitration phrase of the proceeding whether

---

[4] See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf (hereinafter, "Aug. 24 Order"). That Order was amended twice – once to include reasonable medical and religious accommodations, Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf, (hereinafter, "Sept. 15 Order"). and again following the dissolution of the Second Circuit's temporary restraining order in a separate matter challenging the Citywide Mandate. Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf (hereinafter, "Sept. 28 Order").

[5] While unrelated to the present issue, Plaintiffs' apparent assertion in their supplemental brief that the City's executive order making vaccination a "qualification" for new hires may strip them prospectively of due process rights is also incorrect. See e.g., Matter of Richie, 148 A.D.2d at 182 (that felony status may have disqualified employee upon hire, did not foreclose due process when it was discovered that the employee had lied on his application).

"process would be due" before any contemplated termination, it is telling that the Award came to

a similar conclusion, stating that the DOE vaccine mandate order did not "address matters of due

process with regard to job and benefits protection." <u>See</u> Supplemental Declaration of Alan M.

Klinger ("Klinger Suppl. Decl."), dated December 7, 2021, at ¶¶ 8-11; Award at 3.

By contrast, the laws at issue in cases cited by the DOE are extremely clear. In <u>Matter of</u>

<u>Felix</u>, 3 N.Y.3d at 502, the plaintiff was subject to New York City Administrative Code § 12-

120, which states a residency requirement and that "[f]ailure to establish or maintain city

residence as required by this section shall constitute a forfeiture of employment." As described

by the court in <u>City of Niagara Falls v. N.Y. State Pub. Emp. Relations Bd.</u>, 34 Misc. 3d 1227(A)

(Sup. Ct. Albany Cnty. 2012), the Niagara Falls ordinance at issue in <u>O'Connor</u>, 48 A.D.3d at

1255, and <u>Adrian</u>, 92 A.D.3d at 1272-73, provided that if the employee is found by the city

manager to not be a resident, "the employee would be deemed to have voluntarily resigned from

his or her employment." The residency ordinance at issue in <u>Mandelkern</u>, 64 A.D.2d at 280,

provided for some due process, specifically a hearing to establish the facts, but explicitly

provided that once lack of residency was established, the employee "shall forfeit his employment

and shall be removed therefrom." <u>Mandelkern v. City of Buffalo</u>, 92 Misc. 2d 425, 429 (Sup. Ct.

Erie Cnty. 1977), <u>rev'd</u>, 64 A.D.2d at 282. Similarly, as previously and correctly stated by the

DOE, "New York's Education Law expressly states that a teacher who does not possess a

teaching certificate issued by the State of New York is unqualified, as a matter of law." DOE Br.

at 17. Under the law, only qualified teachers may be employed as such.[6] While these laws clearly

---

[6] See Education Law § 3001(2) ("No person shall be employed or authorized to teach in the public schools of the state who is…[n]ot in possession of a teacher's certificate issued under the authority of this chapter or a diploma issued on the completion of a course in a state college for teachers or state teachers college of this state.")

instruct both employers and employees as to the consequences of violation, the DOE vaccine mandate order is not just vague, it is *silent* on the issue.

In addition, the existence of and terms of the Award itself demonstrate the DOE's discretion in how the mandate is implemented. Initially, the Award is the result of a process set out by state law regarding when and how public employers are required to negotiate with the unions representing their workers. That same law provides that where a new requirement is being imposed on existing employees, the implementation of that requirement is a mandatory subject of bargaining and therefore cannot be accomplished absent bargaining. See e.g., Matter of District Council 37, 6 OCB2d 24 (BCB 2013) ("A bargaining obligation arises when new qualifications of employment are applied to incumbent employees because they constitute new terms and conditions of employment. Qualifications of continuing employment that may require bargaining include appropriate licensure.") (internal citations omitted). This rule recognizes how unfair it can be to impose new, disqualifying requirements on those who took and have maintained their positions based upon other requirements. It also implicitly recognizes that discretion is available to the public employer with regard to how a requirement is implemented. The Award in this case, although achieved after reaching impasse, exemplifies this.

Under the Award, unvaccinated DOE employees may opt for leave without pay (LWOP) while remaining DOE employees, retaining health insurance, retaining the right to return to their current position should they become vaccinated, and avoiding disciplinary action. Award at II(A)-(C), III(B). This option caries a required waiver of rights (including due process rights) as consideration of the benefits offered. Employees who receive medical or religious exemptions may continue to work remotely or be reassigned to a position where they are not in contact with students. Award at I(K). That these particular Plaintiffs have not availed themselves of these

options is not the point. The fact that these options exist demonstrates that the DOE has the discretion to find alternatives to termination and thus any termination is not *required* by the mandate. Contrary to the DOE's assertions, there is no legal inability of an unvaccinated individual to serve as a teacher (or other schools staff member). Conversely, violations of immigration law, licensure, or residency requirements could not be avoided by assigning employees to remote instruction. As in the cases cited by the DOE, they would be barred from employment in the position as a matter of law.

Finally, that there may be limited facts in dispute in a § 3020-a hearing, Civil Service Law § 75 hearing or contractual arbitration—or, for that matter, that the DOE feels it will have a strong case for termination in such hearing—does not obviate the requirement that a hearing be had. In Matter of Richie, 148 A.D.2d at 180, the fact of plaintiff public employee's felony conviction and failure to disclose was undisputed; rather, the plaintiff sought to raise mitigating evidence and challenge that he had concealed his identity. The court explicitly held that even while the plaintiff clearly met the criteria for dismissal under the statute, he was still entitled to due process, as the law was intended to consider "a variety of aggravating and mitigating factors," and failure to provide due process would be "profoundly inappropriate conduct." Id. at 182. The provisions of NY Education Law § 3020-a and Civil Service Law § 75 provide similar discretion to public employers and hearing officers in choosing what discipline is due based on the facts and circumstances of the individual case. While the DOE may believe they have a strong case for the termination of DOE employees who refused to get vaccinated or avail themselves of the alternatives under the Award, process is still due.

## II.   THE "UNILATERAL SEPARATION" OF UNVACCINATED TEACHERS IS DISCIPLINARY ACTION AND DEMANDS THE PROCESS DUE UNDER STATUTE AND CONTRACT

A) <u>Fitness For Duty, Including On Medical Grounds, Is An Issue Of Discipline</u>

The DOE misstates the law and treats termination for lack of fitness for duty—a statutory

reason for disciplinary action—as somehow lacking either due process protection entirely or the

same protection as other forms of discipline. DOE Br. at 16-20. While the UFT does not

necessarily agree that failure to become vaccinated is a "fitness" question, fitness for duty is,

nonetheless, explicitly provided as a basis for disciplinary action, alongside misconduct and

incompetence. For example, under Education Law § 2590-j(7)(b), tenured teachers may be

terminated under § 3020-a for a range of offenses, including:

> "unauthorized absence from duty or excessive lateness; neglect of
> duty; conduct unbecoming his position, or conduct prejudicial to
> the good order, efficiency or discipline of the service…[a]
> violation of the by-laws, rules or regulations of the city board,
> chancellor, or the community board; or [a]ny substantial cause that
> renders the employee unfit to perform his obligations properly…"

Disciplinary matters defined by § 2590-j(7)(b) are subject to the procedural protections of

§3020-a. Refusal to comply with the options provided by the Award—become vaccinated, obtain

an accommodation, take extended LWOP, or voluntarily separate—could constitute one or more

of a range of offenses under § 3020-a, but process is due for all of them.

Even in cases involving teachers who are unfit for duty on medical grounds, due process

under § 3020-a is required if termination is being sought. Pursuant to Education Law §§ 913 and

2568, which establish parallel requirements for districts in cities of different sizes, school

employers may require teachers to submit to a medical examination under certain circumstances

to "safeguard the health of children attending the public schools." Section K of the UFT-DOE

collective bargaining agreement establishes substantial due-process procedures for obtaining a

11

medical examination under § 2568, including the right to a neutral medical arbitrator to review the findings of the DOE Medical Bureau in instances including "termination of the teacher's services." Comp., Ex. D, 372-73 (dkt# 1). Teachers may be excluded from the classroom for medical reasons, but are not automatically separated from employment when this is the case. See generally, Appeal of Grossberg, 33 Ed.. Dept. Rep., Decision No. 12976 (1993) (discussing the requirement for disciplinary charges prior to termination for teachers found unfit after medical examinations pursuant to §§ 913 and 2568).

If found unfit to teach for medical reasons, teachers must then be brought up on § 3020-a charges in order to terminate them, and teachers may seek judicial review of those decisions just like any other disciplinary matter. See, e.g., Fitzpatrick v. Bd. of Educ. of Mamaroneck Union Free School Dist., 96 A.D.2d 557 (2d Dep't 1983), appeal denied 61 N.Y.2d 607 (1984); see also Gardner v. Niskayuna Cent. School Dist., 42 A.D.3d 633, 634 (3d Dep't 2007), lv. denied 9 N.Y.3d 813 (2007) (same for dismissal under Civil Service Law § 75). While the DOE seems to suggest that teachers believed to be medically unfit for duty have no due process protection, they actually have two layers. Analogous protections exist for employees covered by contractual or other statutory provisions.[7]

Moreover, the DOE's treatment of unvaccinated teachers illustrates that vaccination is hardly a universal "medical fitness" requirement. Under the Award, some employees are

---

[7] While the language and processes mandated under the Civil Service Law are not identical to those under the Education Law, public employees covered by the Civil Service Law who are alleged to be medically unfit for continued service receive extensive due process protections pursuant to Civil Service Law §§ 72 and 73. These include evaluation by a neutral medical provider, both a hearing and an appeal for disputed claims of unfitness with the burden of proof on the charging party, and the requirement that public employers allow for at least one year of leave before being allowed to seek the termination of an individual placed on leave under Civil Service Law § 72. Moreover, other unions, not named as defendants in this case may have other contractual provisions that modify or supplement that process for DOE employees employed in titles they represent. Accordingly, artificial distinctions between "fitness" and "discipline" do not translate into the DOE's ability to summarily dismiss any employee on any ground.

permitted to continue to work with accommodations (including some working remotely), while those who have opted to take extended LWOP continue to hold rights to their positions and receive health benefits during their leave. Award at I(K), II(A)-(C), III(B). Unvaccinated teachers may not be "fit" for in-person classroom duty (while still being fit for other duty), but fitness for duty is statutorily defined and process is therefore due.

B) <u>The Refusal To Comply With The Vaccine Mandate Order Is Analogous To Other Situations Treated As Disciplinary And Requiring Due Process</u>

In addition to charges alleging that an unvaccinated teacher is unfit for duty on medical grounds (which the UFT does not believe are the most appropriate to the situation), there are several other types of disciplinary charges that might be appropriately brought in connection with a failure to vaccinate: there is nothing novel about such charges such that due process could be avoided. For example, teachers who refuse to undergo a statutorily authorized medical examination before returning to work may be subject to discipline for insubordination. <u>See Gargiul v. Bd. of Educ.</u>, 69 A.D.2d 986 (4th Dep't 1979). Similarly, an unauthorized absence from work may be grounds for discipline, which may be available even in cases where the teacher has medical issues as long as leave is not granted. <u>See Appeal of Elaine Cuoco</u>, 31 Ed Dept. Rep., Decision No. 12582 (1991); <u>see also Kuhnle v. Ambach</u>, 91 A.D.2d 779 (3d Dep't 1982) (three-month unauthorized absence). Failing to maintain necessary but non-statutory qualifications may be grounds for dismissal, but may also be grounds for suspension until qualifications are obtained. <u>See Appeal of the Bd. of Educ. of the City Sch. Dist. of the City of Oswego</u>, 31 Ed. Dept. Rep., Decision No. 12593, *2 (1991) (respondent Latin teacher who did not obtain new qualifications while Latin enrollment declined was not terminated for incompetence, even as the school had no other work for which the respondent was eligible). In all cases though, process was due under § 3020-a prior to termination.

13

The facts of <u>Gargiul</u> are particularly instructive. There, a teacher was excluded from the workplace for refusal to undergo a medical procedure. 69 A.D.2d at 986. When she refused on conscience-based grounds, the school district successfully sought to terminate her for insubordination and incompetency, and the court upheld the termination, as well as refused to award back pay for the time when she was validly excluded from the classroom—but not yet terminated—on medical grounds. <u>Id</u>. The import though is not that she was terminated, but that despite being excluded from the classroom and refusing to undertake a medical procedure that would allow her to return, she was *entitled to and received due process* before being terminated.

The DOE makes the bare assertion that unilaterally separated teachers are not being disciplined. Yet, New York courts and the New York Commissioner of Education have found that comparable conduct constitutes grounds for discipline that may or may not conclude in termination. As such, adequate process under existing disciplinary procedures is due.

C) <u>The Award Does Not Waive DOE Employees' Due Process Rights</u>

The DOE also argues that even if the termination of unvaccinated public employees is disciplinary, no process is due because the Award eliminated those rights for those who remain unvaccinated after December 1. DOE Br. at 20-21. While the Award modifies the UFT-DOE collective bargaining agreement in a number of respects, contrary to the DOE's stance, however, and as indicated *supra*, the Award does not waive covered employees' right to a disciplinary proceeding meeting the constitutional standard for due process. Whether, as the DOE claims, another form of due process would be constitutionally adequate is misdirection. The only question is if due process attaches at all. If it does, then state law and contract provides what process is due and the DOE may not ignore its obligations.

Under New York state law, "waivers of rights in contract will not be inferred unless the intent to waive is clear." <u>Seven–Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc.</u>, 686 F.Supp.

1015, 1023 (S.D.N.Y.1988) (internal citations omitted). Implied waiver is especially disfavored

when the rights at issue are statutory, and courts will not infer such a waiver from a general

contractual provision unless the waiver is "explicitly stated" and "clear and unmistakable."

Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80 (1998) (holding that a union waiver

of employee rights to a federal judicial forum for employment discrimination claims had to be

clear and unmistakable); see also Conde v. Yeshiva Univ., 16 A.D.3d 185 (1st Dep't 2005)

(same). The same is true of constitutional rights. See Legal Aid Society v. City of New York,

114 F. Supp. 2d 204, 227 (S.D.N.Y. 2000) ("[A] waiver of constitutional rights in any context

must, at the very least, be clear.") (internal citations omitted). Moreover, in interpreting state law

and regulations, New York courts "construe the tenure system broadly in favor of the teacher,

and…strictly police procedures which might result in the corruption of that system." Ricca v. Bd.

of Educ. of City School Dist. of City of N.Y., 47 N.Y.2d 385, 391 (1979). A binding arbitration

award is treated as "redefining" the terms of the collective bargaining agreement. See Town of

Southampton v. N.Y. State Pub. Emp. Rels. Bd., 2 N.Y.3d 513, 523 (2004).

Pursuant to the terms of the Award, DOE employees who are not vaccinated and have not

received an accommodation may either (a) take unpaid leave; or (b) voluntarily separate. Award

at II-III. The Award states that the unpaid leave is not disciplinary. The Award then provides that

the DOE may only "seek to unilaterally separate" employees who have not selected either unpaid

leave or voluntary separation from employment after December 1, 2021, but that "except for the

express provisions contained, herein, all parties retain all legal rights at all times." Award at

III(B)-(C). No further reference is made to due process rights, there is no mention of the waiver

of any rights with regard to termination, and—as the Award recognizes in its introduction—the

DOE vaccine mandate order did not itself "address matters of due process with regard to job and benefits protection." Award at 3.

The "unilateral separation" described in the Award is clearly different from either the voluntary extended LWOP or voluntary bilateral separation put forward as explicitly non-disciplinary options under the Award. Indeed, both the bilateral separation and extended LWOP options require employees to sign separate, individual waivers to their right to challenge the leave or separation, respectively, including through a contractual or statutory disciplinary process, as consideration for the benefits of those options. Award at III(A)-(B). Conversely, "unilateral separation" is not described as non-disciplinary, does not mention waiver, and the arbitrator's use of "seek to" shows that the process is not automatic.[8] The Award's statement that "all legal rights" are retained by "all parties" specifically addresses the current matter, confirming that no due process rights have been waived or bargained away under the Award. This is also consistent with discussions and arguments had during the mediation and arbitration, where the parties raised the issue of whether charges would need be brough and differed on the issue. See Klinger Suppl. Decl., at ¶ 10. Accordingly, not only is there no clear intent to waive due process rights in the language of the Award but just the opposite is true: There is a clear intent to *preserve* legal rights which are not explicitly modified by the Award.

Moreover, following Ricca, any matter affecting the stability of the tenure system should be construed in favor of maintaining tenure and its attended rights. 47 N.Y.2d at 391. The treatment of easily modifiable non-statutory requirements implemented through executive

---

[8] Merriam-Webster defines "seek" as: "1: to resort to : go to; 2(a): to go in search of : look for, [or] (b): to try to discover; 3: to ask for; 4: to try to acquire or gain[, to] aim at; [or] 5: to make an attempt – [this definition] used with to and an infinitive." *Definition of "Seek"*, Merriam-Webster, https://www.merriam-webster.com/dictionary/seek (last visited: Dec. 7, 2021). Definitions 3, 4 and 5 are most applicable in the context, and all three imply the possibility of failure for the party "seeking" the outcome. Interpreting the Award to allow automatic unilateral separation of unvaccinated employees after December 1 would not be the best reading of the language.

discretion—such as vaccination by an arbitrary date (with different dates assigned to different workforces)—as qualifications that waive due process prior to termination risks "corrupting" that system. The Court of Appeals in Ricca warned correctly that "[e]ven good faith violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions." 47 N.Y.2d at 391. As maintaining due process prior to "unilateral separation" is not only a plausible reading, but the preferred one, it should be upheld as a matter of public policy.

If employees do not abide by the options in the Award, the DOE may *seek* to dismiss them for not abiding by the terms of the Award and the mandate. But nowhere in the Award does the UFT waive the applicability of § 3020-a, any other statutory or contractual processes, or the concomitant due process protections for same. The failure of public employees to comply with the terms of the DOE's implementation of the mandate is squarely a disciplinary matter within the scope of these procedures.

## **CONCLUSION**

For the reasons set forth herein and in the accompanying submissions, the UFT respectfully requests that the Court:

1. hold that employees who have refused to comply with the vaccine mandate may only be terminated pursuant to disciplinary procedures under Education Law §3020-a, Civil Service Law § 75, and/or the due process procedures in their respective collective bargaining agreements; and

2. award such other and further relief as the Court deems just and proper.


Dated: December 7, 2021                          Respectfully submitted,

/s/ ALAN M. KLINGER

STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
Dina Kolker, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com
dkolker@stroock.com

- and –

Beth A. Norton, Esq.
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
bnorton@uft.org

*Co-counsel for Defendant UFT*