UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,

Plaintiffs,

No. 21 Civ 6387 (KAM)(LB)

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual capacities,
UNITED FEDERATION OF TEACHERS, LOCAL 2,
AMERICAN FEDERATION OF TEACHERS, AFL-CIO,
MICHAEL MULGREW, in his official and individual
capacities, JOHN DOE #1-10, in their official and individual
capacities; and JANE DOE #1-10 in their official and
individual capacities,

Defendants.

---------------------------------------------------------------------- x

**DEFENDANTS NEW YORK CITY DEPARTMENT OF EDUCATION AND MEISHA
PORTER'S SUPPLEMENTAL BRIEFING AS TO THE ISSUE OF VACCINATION AS
A JOB REQUIREMENT**

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants DOE and Porter
100 Church Street
New York, New York 10007

*Of Counsel:*     Andrea O'Connor
               Iván A. Méndez, Jr.
               Maxwell Leighton

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT .................................................................................................................. 3

    A.    THE COH ORDER CREATES A LAWFUL CONDITION
        OF EMPLOYMENT .................................................................................3

    B.    PLAINTIFFS HAVE BEEN PROVIDED ALL DUE
        PROCESS OWED ..................................................................................10

        1) NOTICE.............................................................................................11

        2) OPPORTUNITY TO BE HEARD ....................................................12

    C.    EDUCATION § 3020-a AND CIVIL SERVICE LAW § 75
        ARE NOT APPLICABLE .......................................................................17

CONCLUSION ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Adrian v. Bd. of Ed.</u>,
   92 A.D.3d 1272 (4th Dep't 2012), <u>leave to appeal granted</u>, 19 N.Y.3d 804
   (2012)........................................................................................................................10, 11

<u>Beck-Nichols v. Bianco</u>,
   20 N.Y.3d 540 (2013) ...........................................................................................10, 13, 14

<u>Brown v. Bd. of Educ.</u>,
   2009 N.Y. Misc. LEXIS 5475 (Sup. Ct. N.Y. Co. July 22, 2009)..........................................10

<u>C.f.</u> <u>Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.</u>,
   2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009)........................................................7, 11

<u>Cafeteria Workers v. McElroy</u>,
   367 U.S. 886 (1961)..............................................................................................................15

<u>Capul v. City of N.Y.</u>,
   No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27,
   2020), <u>aff'd</u> 832 F. App'x. 766 (2d Cir. 2021) .................................................................18, 19

<u>Carr v New York State Dep't of Transportation</u>,
   70 A.D.3d 1110, <u>lv to app. den.</u>, 14 N.Y.3d 709 (2010).........................................................11

<u>City School District v. McGraham</u>,
   17 N.Y.3d 917 (2011) ..........................................................................................................11

<u>Cleveland Bd. of Educ. v. Loudermill</u>,
   470 U.S. 532 (1985)..............................................................................................................15

<u>Cravatta v New York State Dep't of Transportation</u>,
   77 A.D.3d 1399 (4th Dep't 2010) ........................................................................................11

<u>Ezekwo v. N.Y.C. Health & Hosps. Corp.</u>,
   940 F.2d 775 (2d Cir. 1991)............................................................................................16, 18

<u>Felix v. Dep't of Citywide Admin. Servs.</u>,
   3 N.Y.3d 498 (2004) ...................................................................................................... passim

<u>Garland, et al. v. New York City Fire Department, et al.</u>,
   Docket No. 21 CV 6586 (KAM)(CLP)...................................................................... passim

<u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>,
   101 F.3d 877 (2d Cir. 1996), <u>cert. denied</u>, 521 U.S. 1140 (1997) ..........................................19

Holt v. Bd. of Educ.,
    52 N.Y.2d 625 (1981) ....................................................................................10

In the Matter of Ingrid Romero v. The Board of Education of the City School
    District of the City of New York, et al.,
    Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty.) ..................................................21

Johnston v. Tn. of Orangetown,
    562 F. App'x 39 (2d Cir. 2014) ........................................................................20

Kane v. de Blasio,
    21 Civ. 7863 (S.D.N.Y.) (VEC)......................................................................5, 8

Keil v. The City of New York, et al.,
    21 Civ. 8773 (SDNY)(VEC)...........................................................................5, 8

Matter of Koutros v. Dep't of Educ. of City of N.Y.,
    2013 NY Slip Op 33491 (Sup. Ct. N.Y. County October 22, 2013) affirmed at
    129 A.D.3d 434 (App. Div. 1st Dept.).................................................................12

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001)............................................................................20

Mandelkern v. City of Buffalo,
    64 A.D.2d 279 (4th Dept. 1978) .......................................................................12

Maniscalco v. N.Y. City Dept. of Educ.,
    No. 21 Civ.5055 (E.D.N.Y.) (BMC)................................................................5, 8

Mathews v. Eldridge,
    424 U.S. 319 (1976).........................................................................15, 16, 18

Moogan v. N.Y. State Dep't of Health,
    8 A.D.3d 68 (1st Dep't 2004) ....................................................................11, 18

Morrissey v. Brewer,
    408 U.S. 471 (1972).....................................................................................15

Naliboff v. Davis,
    133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988).............................11

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82
    v. Cuomo,
    64 N.Y.2d 233 (1984) .....................................................................................7

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ..........................................................................10, 13, 14

O'Connor v. Board of Education,
    48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)
    ................................................................................................................................... passim

In the Matter of Rachel Maniscalco v. The Board of Education of the City School
    District of the City of New York, et al.,
    Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.) ....................................................21

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987)....................................................................................15

Schrimer v. Town of Harrison,
    98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) .....................11

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006)....................................................................................20

Sorano v. City of Yonkers,
    37 A.D.3d 839 (2d Dep't 2007) ..............................................................................15

Tessler v. Paterson,
    768 F. Supp. 2d 661 (S.D.N.Y. 2011).....................................................................20

In the matter of the Application of Andrew Ansbro, as President of the Uniformed
    Firefighters Association v. de Blasio, et al.,
    Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) .....................................................22

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
    New York, et al.,
    Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ................................................6, 8

We the Patriots USA, Inc. v. Hochul,
    Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021)
    opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov.
    12, 2021). Here, the COH Order...............................................................................7

## PRELIMINARY STATEMENT

This memorandum of law is submitted by Defendants New York City Department of Education ("DOE") and Meisha Porter (collectively "DOE Defendants"), pursuant to the Court's November 23, 2021 order directing the parties to "provide supplemental briefing as to the issue of vaccination as a job requirement and any corresponding due process rights." See ECF Minute Entry for proceedings held before Judge Kiyo A. Matsumoto: Show Cause Hearing held on 11/23/2021.

As set forth in this memorandum, the order issued by the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dave A. Chokshi, requiring DOE employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (the "COH Order") created a lawful condition of employment. The COH Order states, in pertinent part, that: "No later than September 27, 2021[1], or prior to beginning employment, the following individuals must provide proof of vaccination as described below: a. DOE staff must provide proof of vaccination to the DOE; b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer . . ."

The COH Order is unequivocal. It requires all DOE employees, both current and prospective, to be vaccinated. The COH Order is also lawful. See, e.g., Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ.5055 (E.D.N.Y.) (BMC); Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC); The New York City

---

[1] This date was later amended to October 1, 2021. See https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf. Last accessed on Dec. 1, 2021.

Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).

Furthermore, on December 6, 2021, this Court determined that a nearly identical order issued by Commissioner Chokshi on October 20, 2021 requiring all New York City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021 ("Citywide COH Order") created a "condition of employment" for employees of the New York City Fire Department ("FDNY"). See Memorandum and Order in Garland, et al. v. New York City Fire Department, et al., Docket No. 21 CV 6586 (KAM)(CLP), ECF Doc. No. 24 (hereinafter "Garland Order"). Similarly, the COH Order at issue here creates an unassailably clear and legally sound condition of employment for all DOE employees.

Because the COH Order creates a condition of employment for DOE employees to be vaccinated against COVID-19, well-settled case law firmly establishes that DOE can terminate those employees, including tenured employees, who fail to satisfy that condition without invoking any disciplinary process provided under N.Y. Education § 3020-a ("§ 3020-a") or N.Y. Civil Service Law § 75 ("§ 75"). In examining the Citywide COH Order, this Court determined that the "termination of a public employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the [applicable] disciplinary procedures." See Garland Order at 12. The same analysis holds here. Finally, and as detailed below, plaintiffs have been provided with notice and ample opportunities to be heard and therefore have been afforded all process owed to them under the due process clause of the U.S. Constitution.

## STATEMENT OF FACTS

For a full and complete recitation of the facts applicable to this supplemental memorandum of law, DOE Defendants respectfully refer the Court to the Statement of Facts contained in their Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary

Injunction, dated November 19, 2021 ("DOE Defendants' Opposition Memo").  See ECF Dkt. No. 18.

## ARGUMENT

### A.  The COH Order Created a Lawful Condition of Employment

As detailed in DOE Defendants' Opposition Memo, the DOE, as a government employer, has a duty to maintain a safe workplace.  See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the municipal employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  The DOE, consistent with that obligation, and in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform work for the DOE.  When employees are ineligible to perform their duties under these circumstances, they are not being "suspended" but rather are unable to work due to ineligibility caused by their failure to comply with a lawful job requirement.  C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)(teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).

Indeed, the Second Circuit earlier this month upheld vaccination as a "condition of employment" in the healthcare field.  We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021) opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov. 12, 2021).  Here, the COH Order no less establishes that a COVID-19 vaccination is a "condition of employment" for DOE employees.

Despite this, plaintiffs contend the COH Order did not create a lawful job requirement because such a requirement may only be established via a legislative act or contract.

See Plaintiffs' Memorandum of Law Regarding New York City Department of Education's Threat to Unilaterally Terminate the Plaintiffs on or After December 1, 2021, dated November 30, 2021 ("Plaintiffs' Supplemental Memo") at 9.  Not so.

Pursuant to Section 3.01(d) of the New York City Health Code, Commissioner Chokshi is authorized to issue orders and take actions that he deems necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect against an existing threat and a public health emergency has been declared pursuant to that section.  In exercising this power, Commissioner Chokshi issued the COH Order "to prevent, mitigate, control and abate" the public health emergency created by COVID-19.  The COH Order then requires DOE employees to provide proof of vaccination.  Given these facts, it is without question that the COH Order created a lawful, enforceable job requirement that all DOE employees must meet in order to remain employed.[2]  See e.g. Maniscalco, No. 21 Civ.5055 (E.D.N.Y.) (BMC)[3]; Kane, 21 Civ. 7863 (S.D.N.Y.) (VEC); Keil., 21 Civ. 8773 (SDNY)(VEC); MLC, Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).

In examining this issue in connection with the Citywide COH Order, this Court held that "[g]iven the state of public health emergency that our nation finds itself in due to the Coronavirus, the more transmissible Delta and Omicron variants, and the nature of Plaintiffs' job as firefighters and EMT employees, interacting with members of the public on an emergency basis, and living in close quarters during their shifts the [DOHMH] Commissioner was within his powers

---

[2] Notably, since issuing the COH Order pertaining to DOE employees, Commissioner Chokshi further has issued health orders mandating vaccination for employees of childcare and early intervention programs and within nonpublic schools.  See https://www1.nyc.gov/site/doh/about/hearings-and-notices/official-notices.page.  With that, the issuance of COVID-19 vaccination mandates for essentially all employees charged with the care and education of New York City children altogether solidifies the unassailable fact that it is a job requirement.

[3] Plaintiff Maniscalco, who is a plaintiff in this action, is also the lead plaintiff in Maniscalco.

to require COVID-19 vaccination as a qualification of employment for FDNY employees." See Garland Order at 14.

Here, the same analysis applies. The nature of plaintiffs' jobs as DOE teachers and staff necessarily requires prolonged contact with the children in DOE's care—hundreds of thousands of whom are unvaccinated, and many of whom have underlying health conditions that make them more at risk of severe illness in the event of COVID-19 infection. Requiring DOE employees to be vaccinated significantly decreases the risk of children getting sick and/or needing to quarantine, and in turn helps reduce interruptions of in-person instruction, which is a critical priority for the City of New York's one million school children after multiple school years affected by COVID-19. Moreover, requiring DOE employees to be vaccinated reduces the risk of COVID-19 spreading throughout DOE schools and broader communities. Thus, just as the Citywide COH Order created a lawful condition of employment for FDNY employees, the COH Order creates one for plaintiffs.

Because it is clear that a COVID-19 vaccination is a condition of employment for DOE employees, the only questions that remain are whether: (1) the notice and processes provided by DOE Defendants comport with constitutional due process; and (2) DOE can terminate employees that do not meet this condition of employment without the processes detailed in § 3020-a or § 75. As detailed below, the notice provided to plaintiffs and processes available to them more than satisfy the constitutional minimum and well-settled case law firmly establishes that DOE can terminate employees, including tenured employees, without invoking the § 3020-a or § 75 disciplinary procedures, for failing to maintain a condition of employment. [4]

---

[4] Plaintiffs' Supplemental Memo makes reference to Executive Orders 75 and 78. However, these Executive Orders are only applicable to City employees employed at City agencies. These Executive Orders are therefore not applicable to DOE. Nevertheless, the condition that new employees of the City and of the DOE must be vaccinated against COVID-19 only certifies that it

**B. Education Law § 3020-a and Civil Service Law § 75 are Not Applicable**

"The purpose of [Education Law § 3020-a] is to protect teachers from arbitrary imposition of formal <u>discipline</u>.  It was not intended to interfere with the day-to-day operation of the educational system . . . ."  <u>Holt v. Bd. of Educ.</u>, 52 N.Y.2d 625, 632 (1981) (emphasis added). Because of that, § 3020-a and/or § 75 hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency."  <u>O'Connor v. Bd. of Educ.</u>, 48 A.D.3d 1254, 1255 (4th Dep't 2008) (3020-a hearing not required when teacher is terminated for failure to comply with residency requirement as this constitutes a job qualification, not discipline), <u>appeal dismissed</u>, 10 N.Y.3d 928 (2008); <u>Adrian v. Bd. of Ed.</u>, 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), <u>leave to appeal granted</u>, 19 N.Y.3d 804 (2012); <u>Beck-Nichols v. Bianco</u>, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); <u>Brown v. Bd. of Educ.</u>, 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009) ("The termination of Petitioner did not implicate the procedural protections of Education Law § 3020-a because Petitioner's termination was due to her legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence on her part.")(citations omitted); <u>Felix v. Dep't of Citywide Admin. Servs.</u>, 3 N.Y.3d 498, 505 (2004)(failure to maintain residency requirement does not trigger the protections of Civil Service Law § 75 because it is a matter of job eligibility, not discipline for misconduct).

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary

---

constitutes a categorical job requirement, whether for those seeking to enter the position or incumbent employees.

procedures, from a "qualification of employment" which is not subject to such procedures.  Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011); Cravatta v New York State Dep't of Transportation, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); Carr v New York State Dep't of Transportation, 70 A.D.3d 1110 (3d Dep't), lv to app. den., 14 N.Y.3d 709 (2010) (same; loss of CDL); Moogan v. N.Y. State Dep't of Health, 8 A.D.3d 68, 69 (1st Dep't 2004) (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses.  Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); Naliboff v. Davis, 133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988); Schrimer v. Town of Harrison, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

While providing proof of a COVID-19 vaccination is a new condition of employment put in place to combat a novel virus, the analysis remains unchanged.  DOE is enforcing the lawful COH Order by removing unvaccinated employees from the workplace because they are no longer eligible for employment.  Thus, plaintiffs are not entitled to a § 3020-a or § 75 hearing in advance of being placed on leave without pay ("LWOP") or ultimately separated.  In arguing otherwise, plaintiffs seek to redefine "discipline" to include a failure to meet a qualification of their DOE employment.  The Courts have repeatedly rejected such attempts, including this Court in the Garland Order. See Garland Order at 11-13; O'Connor, 48 A.D.3d at 1255; Adrian, 92 A.D.3d at 1273; Brown, 2009 N.Y. Misc. LEXIS 5475, at *9-10; Felix, 3 N.Y.3d at 505.

Indeed, in O'Connor, the petitioners were tenured teachers employed by the Niagara Falls Board of Education who were terminated for their failure to comply with a residency requirement.  O'Connor, 48 A.D.3d 1254, 1255.  In bringing a procedural due process claim challenging their termination, the petitioners argued that they could not be terminated without the Board of Education first issuing disciplinary charges against them, followed by a hearing under § 3020-a.  Id.

The Court disagreed, holding that § 3020-a was inapplicable because that section deals solely with "issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto."  Id.  In contrast, the residency requirement was a "qualification of employment" that was "unrelated to job performance, misconduct or competency" and therefore the Board of Education "may impose it if [it] chooses to do so without running afoul of the Constitution or general laws of the State."  Id., citing Mandelkern v. City of Buffalo, 64 A.D.2d 279, 281 (4th Dept. 1978).

Similarly, in Matter of Koutros v. Dep't of Educ. of City of N.Y., 2013 NY Slip Op 33491 (Sup. Ct. N.Y. County October 22, 2013) affirmed at 129 A.D.3d 434 (App. Div. 1st Dept.), the Court held that the termination of a tenured teacher did not implicate the procedural protections of § 3020-a because plaintiff's termination was due to his legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence.

N.Y. Education Law § 2573, which mandates that a teacher must complete four years of service to achieve tenure, is instructive.  See O'Connor Decl., dated November 18, 2021, Ex. E, Affidavit of Vicki Bernstein at 2, ECF Dkt. No. 19-5.  New York State's Education Department permits a teacher to begin teaching with what is referred to as an "Initial Certificate," which is valid for five years, during which time the teacher is expected to obtain a master's degree and a "Professional Certificate" and complete all necessary certification requirements.  Id.  A teacher

may complete probation during this time period and, pursuant to the collective bargaining agreement between the Department and UFT, thereupon becomes entitled to the protections afforded by Education Law § 3020-a. Id.

Each year, the DOE reviews certification statuses for teachers and other staff and identifies staff who have an expired Initial Certificate (including teachers and other pedagogical staff who have completed probation) and who have not completed the necessary certifications. Id. at 4. Once identified, the DOE then separates these employees from service without a hearing pursuant to § 3020-a. Id. Indeed, the union representing most of the plaintiffs in this case, the United Federation of Teachers, on its own website, cautions that "although you can be tenured while holding an initial certificate, you can be terminated without the right to due process for failure to complete the requirements for the professional certificate in the same license area" See id., citing "How do I achieve Tenure" *available at* https://www.uft.org/teaching/new-teachers/tenure; last accessed on Nov. 18, 2021. For example, in the 2018-19 school year, DOE separated 136 staff (131 teachers, 3 guidance counselors, and 2 social workers); in the 2019-20 school year, DOE separated 30 staff (27 teachers, and 3 social workers); and in the 2020-2021 school year, DOE separated 217 staff (198 teachers, 3 guidance counselors, 15 social workers, 1 psychologist) from service based on their failure to obtain the required certifications. Id. at 5.

Similarly, under Civil Service Law § 75, it is equally well-settled that the failure to maintain eligibility for employment is not an act of misconduct or related to job performance so as to implicate the disciplinary procedures mandated by Civil Service Law § 75. See Lanterman, 14 N.Y.3d at 282 (2010); Felix, 3 N.Y.3d 498 at 505.

In the Garland Order, this Court cited approvingly to O'Connor, Beck-Nichols and Felix in holding that "the Court need not consider whether section 15-113 of the New York City Administrative Code was correctly followed because under New York law, the termination of a

public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth section 15-113." See Garland Order at 12.  This Court further held that "[l]ike the state statutory provisions that were considered in O'Connor [§ 3020], Beck-Nichols [§ 3020] and Felix [§ 75], section 15-113 of the New York City Administrative Code is related to discipline of FDNY members based on their job performance, misconduct, or competency.  Discipline of Plaintiffs for job performance, misconduct, or competency is not at issue here." Id. at 13.  Therefore, this Court held that the applicable disciplinary procedures contained in the Administrative Code are not implicated when a FDNY employee is terminated based on their "failure to satisfy a qualification of employment." Id.  Here, as was the case in Garland, plaintiffs face termination due to their failure to maintain qualification of employment and therefore termination is warranted without resort to the § 3020-a or § 75 processes.  See id.; see also Lanterman, 14 N.Y.3d at 282.

Here, the City's Health Commissioner promulgated a lawful job requirement: to be eligible to perform work for DOE, an individual must provide proof of vaccination against COVID-19.  Plaintiffs have not complied with that lawful requirement and are therefore subject to termination without a disciplinary hearing.  Plaintiffs' failure to maintain this job requirement in no way implicates the disciplinary procedures delineated in § 3020-a and § 75 because it does not pertain to misconduct or job performance.  Thus, they can be separated from service without statutory disciplinary procedures.

C. **Plaintiffs Have Been Provided All Due Process Owed**

To begin, plaintiffs conflate the process they believe they are owed under § 3020-a and § 75, with the constitutional minima required by the Due Process Clause. However, the processes provided by these statutes are not co-extensive with, and far exceed, the constitutional minima. Thus, the Court's inquiry here (as this case is premised solely on federal question

jurisdiction), is not whether the process being afforded to plaintiffs prior to being terminated comports with § 3020-a and § 75. Rather, the Court's inquiry should be limited to whether the requirements of <u>constitutional</u> due process have been met.  See <u>Garland</u> Order at 10 <u>quoting</u> <u>Robison v. Via</u>, 821 F.2d 913, 923 (2d Cir. 1987).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976); <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985) ("The essential requirements of due process…are notice and an opportunity to respond."); <u>Felix</u>, 3 N.Y.3d at 504-06 ("A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement"; here the process provided in Administrative Code § 12-120, which provides for notice and an opportunity to refute allegations of non-residence, are all the process due); <u>Sorano v. City of Yonkers</u>, 37 A.D.3d 839 (2d Dep't 2007)(in accordance with <u>Felix</u>, a police officer can be terminated for non-residency without § 75 process but due process requires that the employee be provided with notice of the non-compliance and an opportunity to respond prior to termination).  Moreover, as the Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895 (1961). '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)." <u>Mathews</u>, 424 U.S. 319 at 334.

### 1)  Notice

All plaintiffs were provided with ample notice that they were being placed on LWOP and that, as a result of their non-compliance with the COH Order, they would be separated from the DOE.  In fact, the vast majority of plaintiffs have had notice of these potential outcomes since

September 10, 2021, when the highly publicized Impact Arbitration Decision was issued. Furthermore, on October 2, 2021, nearly immediately after the September 27, 2021 implementation date for the COH Order, plaintiffs were notified that they were not in compliance with the order and therefore would be placed on LWOP as of October 4, 2021, and that DOE would seek to separate them as of December 1, 2021 if they did not opt to extend their LWOP status and remained out of compliance with the mandate.  See Dkt. No. 1-1.  Additionally, the October 2, 2021 set forth the below-described processes that plaintiff could – and, in some instances, did -- avail themselves of.  Id.  In sum, any DOE employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal, or could have voluntarily separated from the DOE via a number of different avenues.  After this notice was given, plaintiffs certainly could have sought – and in the case of Plaintiffs Maniscalco and Romero did seek -- relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy.  Thus, it is undisputed that DOE Defendants have satisfied the notice requirement.

2)  **Opportunity to be Heard**

Following the issuance of the October 2, 2021 email, DOE Defendants provided plaintiffs with multiple and various opportunities to be heard.   The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required."  Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991).

The October 2, 2021 email to plaintiffs laid out all of the processes available to them via the Impact Arbitration Decision.  First, the Impact Arbitration Decision established a process

by which DOE employees could apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remained unable to mount an immune response.  See O'Connor Decl., Exh. A, Impact Arbitration Decision at 6-13. The Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Id.  Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of this process to seek an accommodation with respect to the DOE Vaccination Mandate, including appealing to the arbitrator panel.  See O'Connor Decl. at Ex. F.

Next, the Impact Arbitration Decision set forth a process for separation from employment or the extension of LWOP.  See id. at 16-17.  Under this process, DOE employees who had not complied with the DOE Vaccination Mandate by October 29, 2021, could have opted to be separated from employment and continue to be eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from another source.  Id. at 16. Employees could have, in the alternative, opted to have their leave without pay extended through September 5, 2022, and maintain health coverage.  Id. at 17. To the extent those employees who chose to extend their LWOP did not come into compliance with the COH Order by the end of that ultimate period, they will be deemed to have voluntarily resigned.  Id.  DOE employees had through October 29, 2021 to select the separation option provided by the Impact Arbitration Decision, and through November 30, 2021 to select to extend their leave without pay with health benefits.  Those who did not avail themselves of either of these options were subject to unilateral separation by DOE beginning December 1, 2021.  Id.

That plaintiffs may not like this process, and certain plaintiffs may have chosen not to avail themselves of these options, but that does not change the fact that this process was available

to them.  See Garland Order at 18 ("Plaintiffs, not having availed themselves of the pre-deprivation

opportunity to be heard, cannot now claim that they were deprived of their constitutional right to

due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727,

at *39  (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process

protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766

(2d Cir. 2021).  Indeed, in examining a nearly identical notice and process in Garland in connection

with the Citywide COH Order, this Court found that "there was sufficient pre-deprivation notice

and opportunity to respond."  See Garland Order at 17.

   To the extent plaintiffs contend that due process requires a hearing to be held, such

contention is unsupported.  Ezekwo makes clear that an "opportunity to be heard" does not equate

to a "hearing."  940 F.2d at 786.  This is particularly true when there are no factual disputes that

require resolution via a hearing.  This is precisely the point of the Supreme Court's teaching that

"due process is flexible and calls for such procedural protections as the particular situation

demands." Mathews, 424 U.S. at 334 (emphasis added).  For example, in Moogan, it was

undisputed that the plaintiff failed to maintain a qualification of employment, namely, his EMT

certification.  See Moogan, 8 A.D.3d at 69.  Because of that, the Court held that there was "no

factual issue to be determined at a hearing" and therefore neither "§ 75 or federal constitutional

due process" required a hearing before his termination.  Id.  Here, the same is true.  Plaintiffs

unquestionably failed to maintain a qualification of employment, namely, providing proof of a

COVID-19 vaccine.  Thus, there is "no factual issue" necessitating a full adversarial or fact-finding

hearing.

   Plaintiffs further contend that they are entitled to hearings pursuant to their

respective collective bargaining agreements.  See Dkt. No. 2-10, Plaintiffs' Memorandum of Law

at 16-17. This argument again conflates the constitutional minimum required by the due process

clause with contractual agreements that do not implicate the United States Constitution. Moreover, the collective bargaining agreements governing the terms of plaintiffs' employment establish grievance and arbitration procedures that plaintiffs could use to challenge the so-called "disciplinary actions" taken against them. Thus, plaintiffs' procedural rights were also adequately protected by the grievance procedures contained in the applicable collective bargaining agreements. The fact that plaintiffs chose not to utilize such procedures does not change this outcome. Cf. Capul., 2020 U.S. Dist. LEXIS 92727, at *39 (holding that City employees' failure to avail themselves of adequate post-deprivation remedies did not render their procedural due process claims viable).

To the extent that certain plaintiffs are claiming that UFT was "not accepting" grievances prior to November 12, 2021, see Dkt. No. 2-3, Affidavit of Jeannine Lam, that allegation does not impact the constitutional analysis vis-à-vis the DOE, and, in any event, has been directly controverted by their own union. Indeed, while plaintiffs may be claiming that UFT breached its duty of fair representation by allegedly failing to accept grievances, that alleged failure on UFT's part does not change the fact that plaintiffs had ample process at their disposal via their collective bargaining agreements (or via Article 78 proceedings brought in New York State Supreme Court). Thus, UFT's supposed – and contested - failure to bring grievances does not suffice to establish a Constitutional violation against DOE.

Finally, while it is clear that DOE Defendants provided plaintiffs with a full panoply of processes, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997).

Here, the post-deprivation procedures provided by DOE Defendants clearly satisfy the constitutional minimum.  As indicated above, the Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Additionally, while an appeal is pending, the employee would remain on payroll pending the appeal.  See O'Connor Decl., Exh. A, Impact Arbitration Decision at 11.  In the event an appeal was denied, the employee would be placed on LWOP.  Id. at 14.  If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same school within a week of providing proof of vaccination to DOE.  A nearly identical process applied to those plaintiffs who are covered by the DC 37 Agreement.  These post-deprivation processes satisfy the constitutional minimum for due process.  See Garland Order at 18.

Finally, the availability of an Article 78 review further precludes plaintiffs' due process claims.  Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge [the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).[5]

---

[5] Indeed, Plaintiffs Maniscalco and Romero has already availed themselves of this remedy and have filed Article 78 proceedings in New York State Supreme Court challenging their placement on LWOP and possible termination as violative of their due process rights pursuant to § 3020-a.

Given all of the notice and opportunities to be heard plaintiffs have admittedly been provided, and the availability of an Article 78 proceeding, they have been afforded all process due to them.

### C.   Education Law §§ 913 and 2568 are Not Applicable

Plaintiffs' Supplemental Memo argues that the vaccine requirement contained in the COH Order necessarily invokes the procedures set forth in Education Law §§ 913 and 2568. These sections permit the DOE to require an employee to submit to a medical examination to determine the mental or physical capacity of the employee to continue to perform their job duties. See Plaintiffs' Supplemental Memo at 5-6.  Thus, plaintiffs are arguing that – in advance of enforcing the COH Order – DOE should have required all unvaccinated employees to submit to an involuntary physical examination by a physician of DOE's choosing and to have that physician issue a written report regarding the unvaccinated employee's fitness for duty.   Plaintiffs hypothesize that this physical examination would "likely include a blood test to determine whether the Plaintiffs have antibodies to the COVID-19 virus" and that any plaintiff with antibodies would be deemed "fit for duty without the vaccine because the fitness must be whether a NYCDOE employee has antibodies to COVID." Id. at 6.

The absurdity of this argument cannot be overstated.  Initially, it is **not** DOE Defendants' position that unvaccinated employees are physically or mentally incapable of performing their job duties.  Rather, it is DOE Defendants' position that the COH Order creates a lawful condition of employment that plaintiffs do not currently meet and are therefore ineligible

---

See In the Matter of Ingrid Romero v. The Board of Education of the City School District of the City of New York, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty.); In the Matter of Rachel Maniscalco v. The Board of Education of the City School District of the City of New York, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.).

for continued employment.  Therefore, DOE Defendants respectfully submit that the Court need not even entertain this argument.

And, even so, plaintiffs' reasoning for why §§ 913 and 2568 would arguably apply, i.e. that detectable COVID-19 antibodies in a blood sample is a substitute for vaccination, is as wrong as it is irresponsible.  This notion of "natural immunity as a substitute for vaccination" has been widely rejected, including by reliable medical authorities like the CDC which has determined that a prior COVID-19 infection is no substitute for the robust protections afforded by vaccination. See New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection, U.S.     Centers     for     Disease     Control,     August     6,     2021; https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html.

Indeed, Michelle Morse, M.D., M.P.H, the Chief Medical Officer for DOHMH, has illustrated the highly compelling grounds for mandating vaccination against COVID-19 even for those with a prior COVID-19 infection.  See Affirmation of Michelle E. Morse, M.D., M.P.H. in In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty); NYSCEF Doc. No. 20.[6]  As Dr. Morse explains, "the level and duration of immune protection that results from a prior COVID-19 infection (sometimes referred to as 'natural immunity') remains uncertain and can vary based on individual characteristics. Those who have had prior COVID-19 infection also get additional benefit from vaccination. There is evidence that vaccines may provide better protection against current variants than natural immunity, and studies have shown that people who are unvaccinated have higher rates of reinfection compared to people who are vaccinated." See id.

---

[6] A copy of Dr. Morse's Affirmation is annexed hereto for the Court's convenience as Appendix A.

The COH Order itself mandates vaccination – there is no reference to so-called natural immunity to exclude anyone from that mandate.  Thus, plaintiffs' contention that the COH Order somehow invokes §§ 913 and 2568 because a DOE employee with COVID-19 antibodies would be "fit for duty" is entirely misplaced and, frankly, reckless in light of the ample medical evidence that both supports and urges vaccination for individuals with prior COVID-19 infections.

## **CONCLUSION**

For the foregoing reasons, DOE Defendants respectfully submit that this Court issue a determination that (1) the COH Order creates a lawful condition of employment, (2) DOE can terminate employees, including tenured employees, without invoking the § 3020-a, § 75, or any other similar disciplinary procedures for failing to maintain that lawful condition of employment, and (3) plaintiffs have been provided all constitutional process owed to them in connection with their placement on LWOP and potential termination.

Dated:        New York, New York
                   December 7, 2021

                                         GEORGIA M. PESTANA
                                         Corporation Counsel of the
                                            City of New York
                                         Attorney for Defendants DOE and Porter
                                         100 Church Street, Room 2-100
                                         New York, New York 10007
                                         212-356-4015


                                         By:  _____/s/_____
                                                Andrea O'Connor
                                                Assistant Corporation Counsel

19