UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, MICHELLE MARTINO, GINA
PORCELLO, AMOURA BRYAN, RENA GELLMAN,
FOTINA LAMBOS, KERRY BEN-JACOB,
EKATERINA UDINA, ANDREA TICHIO,
MARIANNA CIACCA-LISS, ANITA QUASH,
KELLY DIXON, FELICIA HAGAN, MARITZA
ROMERO, MARIA RUSCELLI, BETZIADA CRUZ,
FRANCINE TRAPANI, JEANNINE LAM, JESSICA
NARCISO, BRIANNA PEREZ, NICOLETTA
MASULLO, ANASTASIA CHRISTOPOULOS, FAYE
KOTZER, BENEDICT LOPARRINO, YADITZA
RODRIGUEZ, RAFAEL ADRIAN TORO, SERINA
MENDEZ, DINA HUSSIEN, HERENDYRA
PEREYRA, ROSA ABREU, JOAN GIAMMARINO,
ANDREA JACKSON, MARIA KLAPAKIS, STELLA
PORTO, TONIANN MIRAGLIA, ROSEANNA
SILVESTRI-INCANTALUPO, JULIA A. MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF,
DIANE PAGEN, LYNN PEPE, STEPHANIE
EDMONDS, YVONNE COSTELLO, DEBBY HARTZ,
SORAYA SANCHEZ, MONIQUE MOORE, ANGELA
VELEZ, SALLY MUSSAFI, JESSICA NICCHIO,
DORCA GENAO, RACHEL MANISCALCO, JAMES
HOFFMAN, SHARLAYNE JACOBS, CRYSTAL
SALAS, FRANCES DIPROSSIMO, CAROLA
MARTINEZ-VAN BOKKEM, AYSE USTARES,
ELIZABETH FIGUEROA, DIANNE BAKER-PACIUS,
NICOLE MOORE, ELIZABETH PLACENCIO,
DEBBIE BERTRAM, KIMBERLI MADDEN, FRAN
SCHMITTER, VICTORIA RUSSO, PAUL
CIFARELLI, DANIELLE HEAL, SARA COOMBS-
MORENO, LISA SIMO, TAMI BENEDUCE,
ZABDIEL VALERA, NATHALIE CHARLES,
JANELLE LOTITO, JEANEAN SANCHEZ, MARIE
MOSLEY, TARA PALLADINO, DANIELLE
MCGUIRE, JULIA HARDING, LEAH KUKLA,
STEPHANIE FRANZESE, JULIA BALASIS-
MARING, BETH SCHIANO, MEAGAN VELEZ,
JENNIFER ZACCARIELLO, ELENI GERASIMOU,
LAURA SALAMONE, AUBREY JOERGENS,
DEIDRA STATUTO, LORRAINE MASCIARELLI,
HENRIETTA SHAYA, AURA MOODY, ELIZABETH
LOIACONO, RICHARD JOSEPH, on behalf of
themselves and all other similarly situated employees of
the New York City Department of Education,

                                        Plaintiffs,

                    -against-

INDEX NO. 21-cv-06387

AMENDED COMPLAINT

JURY TRIAL DEMANDED

1

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER, in her official and individual capacities, UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, MICHAEL MULGREW, in his official and individual capacities, COUNCIL OF SUPERVISORS AND ADMINISTRATORS, MARK CANNIZZARO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372, SHAUN D. FRANCOIS I, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251, FRANCINE FRANCIS, in her official and individual capacities, MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC, JOHN DOE #1-10, in their official and individual capacities; and JANE DOE #1-10 in their official and individual capacities,

Defendants.

----------------------------------------------------------------------X

The Plaintiffs by their attorneys, The Scher Law Firm, LLP, alleges the following as their Complaint:

## I.    PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff NICOLE BROECKER ("Broecker") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the New York City Department of Education ("NYCDOE").

2.      The Plaintiff MICHELLE MARTINO ("Martino") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

3.      The Plaintiff GINA PORCELLO ("Porcello") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a secretary with the NYCDOE.

4.      The Plaintiff AMOURA BRYAN ("Bryan") was and still is a natural person who resides in and is a domiciliary of the County of Essex, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

5.      The Plaintiff RENA GELLMAN ("Gellman") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

6.      The Plaintiff FOTINA LAMBOS ("Lambos") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a school counselor with the NYCDOE.

7.      The Plaintiff KERRY BEN-JACOB ("Ben-Jacob") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

8.      The Plaintiff EKATERINA UDINA ("Udina") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

9.      The Plaintiff ANDREA TICHIO ("Tichio") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

10.     The Plaintiff MARIANNA CIACCA-LISS ("Ciacca-Liss") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

11.     The Plaintiff ANITA QUASH ("Quash") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a paraprofessional with the NYCDOE.

12.     The Plaintiff KELLY DIXON ("Dixon") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

13.     The Plaintiff FELICIA HAGAN ("Hagan") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

14.     The Plaintiff MARITZA ROMERO ("Romero") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

15.     The Plaintiff MARIA RUSCELLI ("Ruscelli") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

16.     The Plaintiff BETZIADA CRUZ ("Cruz") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

17.     The Plaintiff FRANCINE TRAPANI ("Trapani") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

18.     The Plaintiff JEANNINE LAM ("Lam") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

19.     The Plaintiff JESSICA NARCISO ("Narciso") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

20.     The Plaintiff BRIANNA PEREZ ("Perez") was and still is a natural person who resides in and is a domiciliary of the County of New York, State of New York and is employed as a Paraprofessional with the NYCDOE.

21.     The Plaintiff NICOLETTA MASULLO ("Masullo") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

22.     The Plaintiff ANASTASIA CHRISTOPOULOS ("Christopoulos") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured speech language pathologist with the NYCDOE.

23.     The Plaintiff FAYE KOTZER ("Kotzer") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured Principal with the NYCDOE.

24.     The Plaintiff BENEDICT LOPARRINO ("LoParrino") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

25.     The Plaintiff YADITZA RODRIGUEZ ("Rodriguez") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a Parent Coordinator with the NYCDOE.

26.     The Plaintiff RAFAEL ADRIAN TORO ("Toro") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

27.     The Plaintiff SERINA MENDEZ ("Mendez") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured teacher with the NYCDOE.

28.     The Plaintiff DINA HUSSIEN ("Hussein") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a Paraprofessional with the NYCDOE.

29.     The Plaintiff HERENDYRA PEREYRA ("Pereyra") was and still is a natural person who resides in and is a domiciliary of Westchester County, State of New York and is employed as a tenured teacher with the NYCDOE.

30.     The Plaintiff ROSA ABREU ("Abreu") was and still is a natural person who resides in and is a domiciliary of Bergen County, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

31.     The Plaintiff JOAN GIAMMARINO ("Giammarino") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher for the speech and hearing-handicapped with the NYCDOE.

32.     The Plaintiff ANDREA JACKSON ("Jackson") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

33.     The Plaintiff MARIA KLAPAKIS ("Klapakis") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

34.     The Plaintiff STELLA PORTO ("Porto") was and still is a natural person who resides in and is a domiciliary of the County of Middlesex, State of New Jersey and is employed as a tenured Assistant Principal with the NYCDOE.

35.     The Plaintiff TONIANN MIRAGLIA ("Miraglia") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

36.     The Plaintiff ROSEANNA SILVESTRI-INCANTALUPO ("Silvestri-Incantalupo") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

37.     The Plaintiff JULIA A. MAVIS ("Mavis") was and still is a natural person who resides in and is a domiciliary of the County of Monmouth, State of New Jersey and is employed as a Paraprofessional with the NYCDOE.

38.     The Plaintiff CHRISTOPHER HANSEN ("Hansen") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

39.     The Plaintiff ANNETE BACKOF ("Backof") was and still is a natural person who resides in and is a domiciliary of the County of Middlesex, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

40.     The Plaintiff DIANE PAGEN ("Pagen") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Social Worker with the NYCDOE.

41.     The Plaintiff LYNN PEPE ("Pepe") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

42.     The Plaintiff STEPHANIE EDMONDS ("Edmonds") was and still is a natural person who resides in and is a domiciliary of the County of Fairfield, State of Connecticut and is employed as a tenured teacher with the NYCDOE.

43.     The Plaintiff YVONNE COSTELLO ("Costello") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

44.     The Plaintiff DEBBY HARTZ ("Hartz") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a Guidance Counselor with the NYCDOE.

45.     The Plaintiff SORAYA SANCHEZ ("Sanchez") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured special education teacher with the NYCDOE.

46.     The Plaintiff MONIQUE MOORE ("Moore") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

47.     The Plaintiff ANGELA VELEZ ("Velez") was and still is a natural person who resides in and is a domiciliary of the County of Putnam, State of New York and is employed as a tenured School Counselor with the NYCDOE.

48.     The Plaintiff SALLY MUSSAFI ("Mussafi") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

49.     The Plaintiff JESSICA NICCHIO ("Nicchio") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

50.     The Plaintiff DORCA GENAO ("Genao") was and still is a natural person who resides in and is a domiciliary of the County of Fairfield, State of Connecticut and is employed as a Paraprofessional with the NYCDOE.

51.     The Plaintiff RACHEL MANISCALCO ("Maniscalco") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

52.     The Plaintiff JAMES HOFFMAN ("Hoffman") was and still is a natural person who resides in and is a domiciliary of the County of Fairfield, State of Connecticut and is employed as a tenured teacher with the NYCDOE.

53.     The Plaintiff SHARLAYNE JACOBS ("Jacobs") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

54.     The Plaintiff CRYSTAL SALAS ("Salas") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured speech-language teacher with the NYCDOE.

55.     The Plaintiff FRANCES DIPROSSIMO ("DiProssimo") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

56.     The Plaintiff CAROLA MARTINEZ-VAN BOKKEM ("Martinez-Van Bokkem") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a tenured teacher of the deaf with the NYCDOE.

57.     The Plaintiff AYSE USTARES ("Ustares") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured Social Worker with the NYCDOE.

58.     The Plaintiff ELIZABETH FIGUEROA ("Figueroa") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

59.     The Plaintiff DIANNE BAKER-PACIUS ("Baker-Pacius") was and still is a natural person who resides in and is a domiciliary of the County of New York, State of New York and is employed as a tenured teacher with the NYCDOE.

60.     The Plaintiff NICOLE MOORE ("Nicole") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

61.     The Plaintiff ELIZABETH PLACENCIO ("Placencio") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

62.     The Plaintiff DEBBIE BERTRAM ("Bertram") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

63.     The Plaintiff KIMBERLI MADDEN ("Madden") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a tenured teacher with the NYCDOE.

64.     The Plaintiff FRAN SCHMITTER ("Schmitter") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

65.     The Plaintiff VICTORIA RUSSO ("Russo") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

66.     The Plaintiff PAUL CIFARELLI ("Cifarelli") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

67.     The Plaintiff DANIELLE HEAL ("Heal") was and still is a natural person who resides in and is a domiciliary of the County of Monmouth, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

68.     The Plaintiff SARA COOMBS-MORENO ("Coombs-Moreno") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

69.     The Plaintiff LISA SIMO ("Simo") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

70.     The Plaintiff TAMI BENEDUCE ("Beneduce") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

71.     The Plaintiff ZABDIEL VALERA ("Valera") was and still is a natural person who resides in and is a domiciliary of the County of Essex, State of New Jersey and is employed as a tenured Special Education teacher with the NYCDOE.

72.     The Plaintiff NATHALIE CHARLES ("Charles") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

73.     The Plaintiff JANELLE LOTITO ("Lotito") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

74.     The Plaintiff JEANEAN SANCHEZ ("Jeanean") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

75.     The Plaintiff MARIE MOSLEY ("Mosley") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a Guidance Counselor with the NYCDOE.

76.     The Plaintiff TARA PALLADINO ("Palladino") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured teacher with the NYCDOE.

77.     The Plaintiff DANIELLE MCGUIRE ("McGuire") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

78.     The Plaintiff JULIA HARDING ("Harding") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured Education Administrator with the NYCDOE.

79.     The Plaintiff LEAH KUKLA ("Kukla") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

80.     The Plaintiff STEPHANIE FRANZESE ("Franzese") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

81.     The Plaintiff JULIA BALASIS-MARING ("Balasis-Maring") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

82.     The Plaintiff BETH SCHIANO ("Schiano") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

83.     The Plaintiff MEAGAN VELEZ ("Meagan") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

84.     The Plaintiff JENNIFER ZACCARIELLO ("Zaccariello") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Occupational Therapist with the NYCDOE.

85.     The Plaintiff ELENI GERASIMOU ("Gerasimou") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

86.     The Plaintiff LAURA SALAMONE ("Salamone") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

87.     The Plaintiff AUBREY JOERGENS ("Joergens") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

88.     The Plaintiff DEIDRA STATUTO ("Statuto") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

89.     The Plaintiff LORRAINE MASCIARELLI ("Masciarelli") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured teacher with the NYCDOE.

90.     The Plaintiff HENRIETTA SHAYA ("Shaya") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

91.     The Plaintiff AURA MOODY ("Moody") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured Social Worker with the NYCDOE.

92.     The Plaintiff ELIZABETH LOIACONO ("Loiacono") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

93.     The Plaintiff RICHARD JOSEPH ("Joseph") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a Paraprofessional with the NYCDOE.

94.     The Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") was and still is a municipal corporation duly organized under the laws of New York State with its principal place of business is located in the County of Kings, State of New York.

95.     The Defendant CITY OF NEW YORK ("NYC") was and still is a municipal corporation organized under the laws of the State of New York.

96.     The Defendant MEISHA PORTER ("Porter") was and still is a natural person whose principal place of business is located in the County of Kings, State of New York.

97.     The Defendant UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO ("UFT") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

98.     The Defendant MICHAEL MULGREW ("Mulgrew") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

99.     The Defendant COUNCIL OF SUPERVISORS AND ADMINISTRATORS ("CSA") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

100.    The Defendant MARK CANNIZZARO ("Cannizzaro") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

101.    The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO ("DC37") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

102.    The Defendant HENRY GARRIDO ("Garrido") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

103.    The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372 ("Local 372") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

104.    The Defendant SHAUN D. FRANCOIS I ("Francois") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

105.    The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251 ("Local 1251") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

106.    The Defendant FRANCINE FRANCIS ("Francis") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

107.   The Defendant MARTIN F. SCHEINMAN ("Scheinman") was and still is a natural person whose principal place of business is located in the County of Nassau, State of New York.

108.   Upon information and belief, the Defendant SCHEINMAN ARBITRATION AND MEDIATION SERVICES ("SAMS") was and still is a domestic company authorized to do business in New York, with its principal place of business located in the County of Nassau, State of New York.

109.   The Defendant SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC ("SAMS, LLC") is a domestic limited liability company authorized to do business in New York, with its principal place of business located in the County of Nassau, State of New York.

110.   The Defendants JOHN DOE #1-10 ("John Doe") are unknown persons who have directly participated in, have knowledge of, and have had personal involvement in the deprivation of the Plaintiffs' constitutional rights.

111.   The Defendants JANE DOE #1-10 ("Jane Doe") are unknown persons who have directly participated in, have knowledge of, and have had personal involvement in the deprivation of the Plaintiffs' constitutional rights.

112.   This is a civil action seeking injunctive relief, declarative judgment relief to protect the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

113.   This is a civil action seeking a monetary damages award on behalf of the Plaintiffs and against the Defendants pursuant to 42 U.S.C. § 1983 for a conspiracy to violate the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

114.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

115.   This Court has personal jurisdiction over the Defendants.

116.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(d), because, the Defendants have offices within this judicial district.

## II.     FACTS

### A.     Plaintiffs

117.     The Plaintiffs, except for Lambos, have not taken a COVID-19 vaccine.[1]

118.     The Plaintiffs have been suspended without pay for not taking a COVID-19 vaccine.

119.     The Plaintiffs are either: (1) tenured employees of the NYCDOE, entitled to the due process protections of N.Y. Education Law §§ 3020 and 3020-a; or (2) permanent employees of the NYCDOE, entitling them to the due process protections of N.Y. Civil Service Law § 75; or (3) entitled to due process protections through their union's collective bargaining agreement with the NYCDOE.

120.     The Plaintiffs are:

        (a)     A tenured principal (Kotzer);
        (b)     An assistant principal (Porto);
        (c)     Tenured teachers (Broecker, Martino, Bryan, Gellman, Ben-Jacob, Udina, Tichio, Ciaccia-Liss, Dixon, Hagen, Romero, Ruscelli, Cruz, Trapani, Lam, Narciso, Masullo, LoParrino, Toro, Mendez, Pereyra, Abreu, Giammarino, Jackson, Klapakis, Hansen, Backof, Pepe, Edmonds, Costello, Sanchez, Moore, Mussafi, Maniscalco, Hoffman, Jacobs, DiProssimo, Martinez-van Bokken, Figueroa, Baker-Pacius, Nicole, Placencio, Bertram, Madden, Russo, Cifarelli, Heal, Coombs-Moreno, Beneduce, Valera, Charles, Jeanean, Palladino, McGuire, Kukla, Franzese, Balasis-Marring, Schiano, Meagan, Gerasimou, Salamone, Joergens, Statuto, Masciarelli, Shaya, Loiacono);

---

[1] Lambos continues as a Plaintiff in this Action, seeking backpay for the period of time she was suspended without pay.

(d)     Paraprofessionals (Quash, Perez, Hussien, Miraglia, Silverstri-
Incantalupo, Mavis, Nicchio, Genao, Schmitter, Simo, Lotito,
Joseph);

(e)     Education Administrator (Harding)

(f)     Speech language pathologist (Christopoulos, Salas);

(g)     Social workers (Pagen, Ustares, Moody);

(h)     Parent Coordinator (Rodriguez);

(i)     Guidance counselors (Hartz, Mosley);

(j)     School counselors (Lambos, Velez);

(k)     Secretary (Porcello); and

(l)     Occupational Therapist (Zaccariello)

**B.     Defendants**

1.     <u>NYCDOE</u>

121.    The NYCDOE is a State actor.

122.    Porter was the Chancellor of the NYCDOE during all relevant times that are at issue in this Action.

2.     <u>UFT</u>

123.    "The UFT, which represents nearly 200,000 members, is the sole bargaining agent for most of the non-supervisory educators who work in the New York City public schools." **Exhibit A**, a copy of the UFT's webpage "About the UFT" (visited December 27, 2021).

124.    "The UFT represents approximately 75,000 teachers and 19,000 classroom paraprofessionals, along with school secretaries, attendance teachers, school counselors, psychologists, social workers, adult education teachers, administrative law judges, nurses, laboratory technicians, speech therapists, family child care providers and 64,000 retired members." **Exhibit A**.

125.    Mulgrew is President of the UFT.

3.      CSA

126.    "The Council of School Supervisors and Administrators is the collective bargaining unit for 6,100 Principals, Assistant Principals, Supervisors and Education Administrators who work in the NYC public schools and 200 Directors and Assistant Directors who work in city-subsidized Centers for Early Childhood Education (ECE). CSA also has more than 10,000 members in its Retiree Chapter." **Exhibit B**, a copy of the CSA's webpage "What is CSA" (visited December 27, 2021).

127.    Cannizzaro is President of the CSA.

4.      DC37

128.    DC37 has two local units that represent NYCDOE employees.

129.    Garrido is the Executive Director of DC37.

130.    The members of Local 372 are "Community Assistant, Community Associate, Community Coordinator, Consumer Advocates, Family Assistant, Family Associate, Family Auxiliaries, Family Auxiliary Paraprofessionals, Family Worker, Film Inspection Assistant, Health Aide, Health Service Aides, Instructor of Addiction, Junior School Neighborhood Worker, Parent Program Assistant, Principal School Neighborhood Worker, School Aide, School Crossing Guard, School Health Service Aide, School Lunch Aide, School Lunch Assistant, School Lunch Assistant (Cook), School Lunch Helper, School Lunch Loader & Handler, School Neighborhood Worker, School Neighborhood Worker (Task Force Monitors), Senior School Lunch Aide, Senior School Lunch Aide (Cook), Senior School Lunch Helper, Senior School Neighborhood Worker, Senior School Neighborhood Worker (Aide), Substitute School Lunch Helper, Substitute Senior School Lunch Helper, Substance Abuse Prevention & Intervention Specialist and Task Force Monitor."   **Exhibit C**, a copy of Local 372's webpage "About Us" (visited December 27, 2021).

131.    Francois is the President of Local 372.

132.    The members of Local 1251 are: "Clerical Aides, Clerical Associates, Secretaries, Investigators and Interpreters. Local 1251 members work in a variety of job titles and at different levels."   **Exhibit D**, a copy of the Local 1251's webpage "About Us" (visited December 27, 2021).

133.    Francis is the President of Local 1251.

5.    Scheinman, SAMS and SAMS, LLC

134.    Scheinman was appointed by the New York State Public Employment Relations Board ("PERB") to mediate an impasse in the negotiations between the UFT and the NYCDOE regarding the New York Commissioner Of Health's COVID Vaccine Mandate.

135.    Instead of mediating the impasse, the UFT and the NYCDOE conspired with Scheinman to have Scheinman issue a binding arbitration award ("UFT Arbitration Award") that resolved the impasse between the UFT and the NYCDOE.  *See,* **Exhibit E**, a copy of the UFT Arbitration Award.

136.    There was no statutory or contractual authority for Scheinman to issue the UFT Arbitration Award.

137.    In the UFT Arbitration Award, Scheinman appointed SAMS to oversee the appeal process for any accommodation requests.  *See,* **Exhibit E**, at page 10.

138.    In the UFT Arbitration Award, Scheinman appointed SAMS, LLC to oversee the appeal process for any accommodation requests.  *See,* **Exhibit E**, at page 10.

139.    In addition, the CSA and the NYCDOE "reached out to [Scheinman] to similarly address" the implementation of the New York Commissioner Of Health's COVID Vaccine Mandate.  *See,* **Exhibit F**, a copy of Scheinman's Arbitration Award regarding the CSA, at page 2 ("CSA Arbitration Award").

140.    In the CSA Arbitration Award, Scheinman appointed SAMS to oversee the appeal process for any accommodation requests.  *See,* **Exhibit F**, at page 6-7.

141.    In the CSA Arbitration Award, Scheinman appointed SAMS, LLC to oversee the appeal process for any accommodation requests.  *See,* **Exhibit F**, at page 6-7.

### C.    New York Commissioner Of Health's COVID Vaccine Mandate

142.    On August 24, 2021, the New York City Commissioner of Health issued an Order requiring NYCDOE employees, contractors and others to obtain a COVID-19 vaccine.  *See,* **Exhibit G**, a copy of the August 24, 2021 Order of the Commissioner of Health and Mental Hygiene ("Vaccine Mandate Order").

143.    The Vaccine Mandate Order required all NYCDOE staff to provide proof of vaccination no later than September 27, 2021.  *See,* **Exhibit G**.

144.    On December 25, 2021, the *New York Post* reported that "City school employees who have not shown proof they got a second vaccine shot under Mayor de Blasio's mandate have been allowed to continue working a month past the deadline with "reminders" instead of being put on unpaid leave."  **Exhibit H**, a copy of the *New York Post* article entitled "DOE Skips Deadline To Suspend Employees Who Haven't Shown Proof Of Second Vax."

145.    According to the *New York Post* the deadline for NYCDOE employees to get a second vaccine was November 18, 2021.  *See,* **Exhibit H**.

### D.    UFT's Impact Bargaining With NYCDOE And Illegal Arbitration Award

146.    Pursuant to the New York Taylor Law (N.Y. Civil Service Law § 209.3(a)), the UFT and the NYCDOE entered into negotiations over the impact of the Vaccine Mandate Order.

147.    The UFT and the NYCDOE held bargaining sessions on August 25, 2021 and August 30, 2021.  *See,* **Exhibit I**, a copy of the UFT's Declaration of Impasse, at Schedule A.

148.    On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board over the impact of the Vaccine Mandate Order.  *See,* **Exhibit I**.

149.    Pursuant to N.Y. Civil Service Law § 209, PERB appointed Scheinman as a mediator to mediate the impact of the Vaccine Mandate Order.  *See,* **Exhibit J**, a copy of PERB's Appointment Of Mediator.

150.    Virtual mediation sessions between the NYCDOE and the UFT with Scheinman on September 2, 3, 4, and 5, 2021.  *See,* **Exhibit K**, a copy of the email from Alan M. Klinger ("Klinger") to PERB dated September 6, 2021.

151.    On September 6, 2021, the UFT informed PERB that "with the start of the school year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13th and Sept. 27th, respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce.  Arbitration sessions are being held on Sept. 6th."  **Exhibit K**.

152.    As a consequence of this agreement to move to "an expedited arbitration", on September 10, 2021, Scheinman issued the UFT Arbitration Award.  **Exhibit E**.

153.    Scheinman wrote: "in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand."  **Exhibit E**, at page 6.

154.    There was no statutory authority for Scheinman to arbitrate the impasse in negotiations over the impact of the Vaccine Mandate Order.

155.    N.Y. Civil Service Law § 209 does not authorize binding arbitration in school districts.  *See,* N.Y. Civil Service Law § 209.3(f).

156.   There was no contractual authority for Scheinman to arbitrate the impasse in negotiations over the impact of the Vaccine Mandate Order.  *See,* **Exhibit L**, a copy of the UFT collective bargaining agreement with the NYCDOE, at Article 22.C.

157.   The UFT's and the NYCDOE's collective bargaining agreements are consistent in that the arbitrator "shall limit his/her decision strictly to the application and interpretation of the provisions of this Agreement and he/she shall be without power or authority to make any decision: 1.  Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law…." **Exhibit L**, at Article 22.C.

158.   The UFT Arbitration Award exceeded Scheinman's authority since it modified and is inconsistent with applicable law since it violates the Plaintiffs' due process rights and property interests in their pay.

159.   The UFT and the NYCDOE did not negotiate a resolution of the impact of the Vaccine Mandate Order, but improperly, illegally, and without any contractual authority yielded their negotiation rights to Scheinman to impose a resolution.

### E.   CSA's Impact Bargaining With NYCDOE And Illegal Arbitration Award

160.   Following Scheinman's issuance of the illegal UFT Arbitration Award, the CSA and the NYCDOE "reached out to [Scheinman] to similarly address their concerns" regarding the Vaccine Mandate Order.  **Exhibit F**, at page 2.

161.   "Given the exigencies of the opening of school and the imminent effective date of the City's mandate, it was agreed the [CSA and the NYCDOE] would promptly move to arbitration." **Exhibit F**, at page 2.

162.   There was no statutory authority for Scheinman to promulgate the CSA Arbitration Award.

163.   There was no contractual authority for Scheinman to promulgate the CSA Arbitration Award.

**F.    DC37's Agreement With NYCDOE**

164.   On or about October 3, 2021, DC37 entered into a negotiated "agreement regarding a process for requests for exemptions to [the Vaccine Mandate Order] and the leave status of those who do not comply with the mandate." **Exhibit M,** a copy of the Memorandum of Agreement between DC37 and the NYCDOE.

165.   On or about October 3, 2021, Local 372 entered into a negotiated "agreement regarding a process for requests for exemptions to [the Vaccine Mandate Order] and the leave status of those who do not comply with the mandate." **Exhibit M.**

**G.    UFT's Arbitration Award Violated The Plaintiffs' Constitutional Rights**

166.   The UFT Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the UFT who did not take a COVID vaccine, thus violating the UFT members-Plaintiffs' constitutional rights to due process.

167.   The UFT Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the UFT who did not take a COVID vaccine, thus the UFT members-Plaintiffs' constitutional property right in their pay.

168.   The UFT conspired with the NYCDOE to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

169.    Mulgrew conspired with the NYCDOE to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

170.    The UFT conspired with Porter to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

171.    Mulgrew conspired with Porter to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

172.    As a result of the conspiracy between the UFT, NYCDOE, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

173.    As a result of the conspiracy between the UFT, Porter, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

174.    As a result of the conspiracy between the Mulgrew, NYCDOE, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

175.    As a result of the conspiracy between the Mulgrew, Porter, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

176.    The UFT-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

**H.    CSA's Arbitration Award Violated The Plaintiffs' Constitutional Rights**

177.    The CSA Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the CSA who did not take a COVID vaccine, thus violating the CSA members-Plaintiffs' constitutional rights to due process.

178.    The CSA Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the CSA who did not take a COVID vaccine, thus the CSA members-Plaintiffs' constitutional property right in their pay.

179.    The CSA conspired with the NYCDOE to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

180.    Cannizzaro conspired with the NYCDOE to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

181.    The CSA conspired with Porter to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

182.    Cannizzaro conspired with Porter to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

183.    As a result of the conspiracy between the CSA, NYCDOE, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

184.    As a result of the conspiracy between the CSA, Porter, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

185.    As a result of the conspiracy between the Cannizzaro, NYCDOE, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

186.    As a result of the conspiracy between the Cannizzaro, Porter, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

187.    The CSA-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

I.    **DC37's Agreement With The NYCDOE Violated The Plaintiffs' Constitutional Rights**

188.    DC37's Agreement with the NYCDOE authorized the NYCDOE to suspend without pay the members of DC37 who did not take a COVID vaccine, thus violating the DC37 members-Plaintiffs' constitutional rights to due process.

189.    DC37's Agreement, authorized the NYCDOE to suspend without pay the members of DC37 who did not take a COVID vaccine, thus the DC37 members-Plaintiffs' constitutional property right in their pay.

190.    Local 372's Agreement with the NYCDOE authorized the NYCDOE to suspend without pay the members of Local 372 who did not take a COVID vaccine, thus violating the Local 372 members-Plaintiffs' constitutional rights to due process.

191.    Local 372's Agreement, authorized the NYCDOE to suspend without pay the members of Local 372 who did not take a COVID vaccine, thus the Local 372 members-Plaintiffs' constitutional property right in their pay.

192.    Local 1251's Agreement with the NYCDOE authorized the NYCDOE to suspend without pay the members of Local 1251 who did not take a COVID vaccine, thus violating the Local 372 members-Plaintiffs' constitutional rights to due process.

193.    Local 1251's Agreement, authorized the NYCDOE to suspend without pay the members of Local 1251 who did not take a COVID vaccine, thus the Local 1251 members-Plaintiffs' constitutional property right in their pay.

194.    DC37 conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

195.    Local 372 conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

196.    Local 1251 conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

197.    Garrido conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

198.    Francois conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

199.    Francis conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

200.    DC37 conspired with Porter by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

201.    Local 372 conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

202.    Local 1251 conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

203.    Garrido conspired with Porter by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

204.    Francois conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

205.    Francis conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

206.    As a result of the conspiracy between the DC37 and the NYCDOE, the DC37 members-Plaintiffs' constitutional rights have been violated.

207.    As a result of the conspiracy between the DC37 and Porter, the DC37 members-Plaintiffs' constitutional rights have been violated.

208.    As a result of the conspiracy between Garrido and the NYCDOE, the DC37 members-Plaintiffs' constitutional rights have been violated.

209.    As a result of the conspiracy between Garrido and Porter, the DC37 members-Plaintiffs' constitutional rights have been violated.

210.    As a result of the conspiracy between Local 372 and the NYCDOE, the Local 372 members-Plaintiffs' constitutional rights have been violated.

211.    As a result of the conspiracy between Local 372 and Porter, the Local 372 members-Plaintiffs' constitutional rights have been violated.

212.    As a result of the conspiracy between Francois and the NYCDOE, the Local 372 members-Plaintiffs' constitutional rights have been violated.

213.    As a result of the conspiracy between Francois and Porter, the Local 372 members-Plaintiffs' constitutional rights have been violated.

214.    As a result of the conspiracy between Local 1251 and the NYCDOE, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

215.    As a result of the conspiracy between Local 1251 and Porter, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

216.    As a result of the conspiracy between Francis and the NYCDOE, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

217.    As a result of the conspiracy between Francis and Porter, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

218.    The DC37-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

219.    The Local 372-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

220.    The Local 1251-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

*****************

221.    The Plaintiffs' constitutional rights have been trampled on by the NYCDOE.

222.    The Plaintiffs' constitutional rights have been trampled on by Porter.

223.    The Plaintiffs' constitutional rights have been trampled on by the UFT.

224.    The Plaintiffs' constitutional rights have been trampled on by Mulgrew.

225.    The Plaintiffs' constitutional rights have been trampled on by the CSA.

226.    The Plaintiffs' constitutional rights have been trampled on by Cannizzaro.

227.    The Plaintiffs' constitutional rights have been trampled on by DC37.

228.    The Plaintiffs' constitutional rights have been trampled on by Garrido.

229.    The Plaintiffs' constitutional rights have been trampled on by Local 372.

230.    The Plaintiffs' constitutional rights have been trampled on by Francois.

231.    The Plaintiffs' constitutional rights have been trampled on by Local 1251.

232.   The Plaintiffs' constitutional rights have been trampled on by Francis.

233.   The Plaintiffs' constitutional rights have been trampled on by Scheinman.

234.   The Plaintiffs' constitutional rights have been trampled on by SAMS.

235.   The Plaintiffs' constitutional rights have been trampled on by SAMS, LLC.

**J.     Class Allegations**

236.   NYCDOE's suspension of the UFT members-Plaintiffs without pay without due process was pursuant to the illegal and unauthorized UFT Arbitration Award.

237.   NYCDOE's suspension of the CSA members-Plaintiffs without pay without due process was pursuant to the illegal and unauthorized CSA Arbitration Award.

238.   NYCDOE's suspension of the DC37 members-Plaintiffs without pay without due process was pursuant to the illegal and unauthorized DC37 agreement with the NYCDOE.

239.   The decision by the NYCDOE to authorize Scheinman to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

240.   The decision by the NYCDOE to authorize SAMS to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

241.   The decision by the NYCDOE to authorize SAMS, LLC to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

242.   The decision by the NYCDOE to authorize Scheinman to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

243.   The decision by the NYCDOE to authorize SAMS to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

244.   The decision by the NYCDOE to authorize SAMS, LLC to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

245.   The decision by the NYCDOE to enter into the agreement with DC37 was pursuant to policies, customs, and/or practices of the NYCDOE.

246.   The decision by the NYCDOE to enter into the agreement with DC37 was pursuant to policies, customs, and/or practices of the NYCDOE.

247.   The decision by the NYCDOE to enter into the agreement with DC37 was pursuant to policies, customs, and/or practices of the NYCDOE.

248.   The decision by the UFT to authorize Scheinman to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the UFT.

249.   The decision by the UFT to authorize SAMS to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the UFT.

250.   The decision by the UFT to authorize SAMS, LLC to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the UFT.

251.   The decision by the CSA to authorize Scheinman to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the CSA.

252.   The decision by the CSA to authorize SAMS to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the CSA.

253.   The decision by the CSA to authorize SAMS, LLC to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the CSA.

254.   The decision by DC37 to enter into the agreement with the NYCDOE was pursuant to policies, customs, and/or practices of DC37.

255.    The decision by DC37 to enter into the agreement with the NYCDOE was pursuant to policies, customs, and/or practices of the DC37.

256.    The decision by DC37 to enter into the agreement with the NYCDOE was pursuant to policies, customs, and/or practices of DC37.

257.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the UFT Arbitration Award was illegal and unenforceable.

258.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the CSA Arbitration Award was illegal and unenforceable.

259.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the agreement between the NYCDOE and DC37 was illegal and unenforceable.

260.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the NYCDOE's suspension of the Plaintiffs without pay without due process was illegal and a violation of the Plaintiffs' constitutional rights.

261.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order awarding the Plaintiffs back pay for the period of time that they were suspended without pay.

262.    Plaintiffs bring this Action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3).

263.    Plaintiffs seek a certification of a class defined as follows: All NYCDOE employees suspended without pay for not taking the COVID-19 vaccine who have a statutory or contractual right to charges and a hearing before the employee is disciplined or terminated.

264.    Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical.  Plaintiffs do not know the exact number of

class members.  Plaintiffs are informed and believe, and thereupon allege that there are more than 100 persons in the class defined above.

265.    Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are question of law and fact common to the class, including but not limited to:

(a)    Whether a NYCDOE tenured principal, assistant principal, or teacher possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

(b)    Whether a NYCDOE employee possessing N.Y. Civil Service Law § 75 possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

(c)    Whether a NYDOE employee whose collective bargaining agreement with the NYDOE grants the union member the right to charges and a hearing before discipline or termination possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

(d)    Whether a NYCDOE tenured principal, assistant principal, or teacher possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.;

(e)    Whether a NYCDOE employee possessing N.Y. Civil Service Law § 75 possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.;

(f)    Whether a NYDOE employee, whose collective bargaining agreement with the NYDOE grants the union member the right to charges and a hearing before discipline or termination possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.

266.    Pursuant to Federal Rules of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent.  The Plaintiffs have all been suspended without pay without due process.  Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class.  Each proposed class member suffered actual damages as a result of the challenged conduct.  Plaintiffs' claims arose because of the NYCDOE's policies, customs, and/or practices.

267.    Plaintiffs' claims arose because of the UFT's policies, customs, and/or practices.

268.    Plaintiffs' claims arose because of the CSA's policies, customs, and/or practices.

269.    Plaintiffs' claims arose because of the DC37's policies, customs, and/or practices.

270.    Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this Action against Defendants.  Counsel knows of no conflicts among members of the class, or between counsel and any members of the class.

271.    Pursuant to Federal Rules of Civil Procedure 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  If this action is certified as a class action, Plaintiffs contemplate that individual notice will be given to class members, at such last known address by first class mail, as well as notice by publication informing them of the following:

    i.       The pendency of the class action and the issues common to the class;

    ii.      The nature of the action;

    iii.     Their right to "opt-out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

    iv.     Their right to "opt-out" to be represented by their own counsel and to enter an appearance in the case; otherwise they will be represented by the named class plaintiffs and their counsel; and

    v.      Their right, if they do not "opt-out" to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

## III.    CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

272.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 271, as if fully set forth herein.

273.    The Plaintiffs are tenured employees of the NYCDOE who have statutory rights to due process pursuant to N.Y. Education Law § 3020.

274.    The Plaintiffs are employees that possess N.Y. Civil Service Law § 75 rights.

275.    The Plaintiffs are employee-union members entitled to charges and a hearing pursuant to their union's collective bargaining agreement with the NYCDOE.

276.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights.

277.    There is an actual controversy over whether what the NYCDOE did to the Plaintiffs, namely suspend the Plaintiffs without pay and without due process violating the Plaintiffs' Fourteenth Amendment rights.

278.    The Plaintiffs request an Order declaring that what the NYCDOE did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and violating the Plaintiffs' property right in their pay without due process.

279.    The Plaintiffs have no adequate remedy at law.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

280.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 279, as if fully set forth herein.

281.    There was no statutory authority for Scheinman to promulgate the UFT Arbitration Award.

282.    There was no contractual authority for Scheinman to promulgate the UFT Arbitration Award.

283.    Pursuant to N.Y. Civil Service Law § 209, Scheinman was appointed by PERB to mediate the impasse negotiations between the UFT and the NYCDOE regarding the impact of the COVID Vaccine Order.

284.    Pursuant to N.Y. Civil Service Law § 209.3(f), there is no statutory authority for binding arbitration between a school district and a union to resolve an impasse in negotiations.

285.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and the NYCDOE relies upon the UFT Arbitration Award as the basis for the Plaintiffs' suspension without pay.

286.    There is an actual controversy over the statutory and/or contractual authority Scheinman had to promulgate the UFT Arbitration Award.

287.    The Plaintiffs request an Order declaring that the UFT Arbitration Award was promulgated without any statutory authority.

288.    The Plaintiffs request an Order declaring that the UFT Arbitration Award was promulgated without any contractual authority.

289.    The Plaintiffs request an Order declaring that since the UFT Arbitration Award was promulgated without any statutory and/or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

290.    The Plaintiffs have no adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

291.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 290, as if fully set forth herein.

292.    There was no statutory authority for Scheinman to promulgate the CSA Arbitration Award.

293.    There was no contractual authority for Scheinman to promulgate the CSA Arbitration Award.

294.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and the NYCDOE relies upon the CSA Arbitration Award as the basis for the Plaintiffs' suspension without pay.

295.    There is an actual controversy over the statutory and/or contractual authority Scheinman had to promulgate the CSA Arbitration Award.

296.    The Plaintiffs request an Order declaring that the CSA Arbitration Award was promulgated without any statutory authority.

297.    The Plaintiffs request an Order declaring that the CSA Arbitration Award was promulgated without any contractual authority.

298.    The Plaintiffs request an Order declaring that since the CSA Arbitration Award was promulgated without any statutory and/or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

299.    The Plaintiffs have no adequate remedy at law.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**FOR DECLARATORY JUDGMENT**

300.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 299, as if fully set forth herein.

301.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and the NYCDOE relies upon the agreement between DC37 and the NYCDOE as the basis for the Plaintiffs' suspension without pay.

302.    There is an actual controversy over the contractual authority DC37 and the NYCDOE had to enter into the agreement.

303.    The Plaintiffs request an Order declaring that the agreement between DC37 and the NYCDOE was entered into without any contractual authority.

304.    The Plaintiffs request an Order declaring that the agreement between DC37 and the NYCDOE was entered into without any contractual authority and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

305.    The Plaintiffs have no adequate remedy at law.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**FOR DECLARATORY JUDGMENT**

306.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 305, as if fully set forth herein.

307.    The UFT Arbitration Award granted UFT members the option to choose, by November 30, 2021, to be placed on leave without pay due to vaccination status and if they do so, the UFT members would continue to receive health insurance through the NYCDOE.  *See,* **Exhibit E**, at Section III.B.

308.    "In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the [NYC] DOE which includes a waiver of the employee's rights to challenge the employee's resignation, including, but not limited to, through a contractual or statutory disciplinary process." **Exhibit E**, at Section III.B.

309.    The form created by the NYCDOE not only included the "waiver of the employee's rights to challenge the employee's resignation, including, but not limited to, through a contractual or statutory disciplinary process", but also included a general release of "the [NYC]DOE and any of its present or former employees or agents (collectively the "Release Parties"), from any and all claims, liabilities, or causes of action which were or could have been asserted by me against any of the Release Parties based upon anything that has happened up to now and including the date of the execution of this Attestation, including, but not limited to, any right or claim that may exist or arise up to and including the date that this Attestation is signed." **Exhibit N**, a copy of the waiver ("Release").

310.    The form created by the NYCDOE stated that "[i]n exchange for the right to return and extended health benefits as set forth herein" the UFT member was required to execute the Release.  **Exhibit N**.

311.    In addition, the form created by the NYCDOE included language regarding the Older Workers Benefit Protection Act ("OWBPA").  *See,* **Exhibit N**.

312.    Despite stating that the Plaintiffs had twenty-one (21) days to review the Release (**Exhibit N**), the first and only time the Plaintiffs could review the Release was when they clicked on the choice to extend their leave of absence without pay to September 2022.

313.    The Plaintiffs were not afforded the twenty-one (21) days to review the Release as required by the OWBPA.

314.    The Release that the NYCDOE required UFT members to extend their leave without pay and maintain health insurance conflicts with the UFT Arbitration Award because the UFT Arbitration Award did not require UFT members to execute a general release of the NYCDOE in order to extend their leave without pay and/or maintain their health insurance.

40

315.     The following Plaintiffs executed the Release under duress to obtain the extended leave without pay and their health insurance through September 2022: Martino, Ciacca-Liss, Hagan, Trapani, Masullo, Klapakis, Hartz, Schmitter, Lotito, Mosely, Blasis-Maring, Meagan, Joergens, and Shaya (collectively referred to as "Releasing Plaintiffs").

316.     The Release Plaintiffs are all UFT members.

317.     The Releasing Plaintiffs repudiate the Release.

318.     The Releasing Plaintiffs request an Order declaring that the Release in the form created by the NYCDOE violated the UFT Arbitration Award and is therefore voidable.

319.     The Releasing Plaintiffs request an Order declaring that the Release void and unenforceable.

320.     The Releasing Plaintiffs have no adequate remedy at law.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR PERMANENT INJUNCTION

321.     The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 320, as if fully set forth herein.

322.     The Plaintiffs have a high likelihood of success on the merits because the Plaintiffs possess a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution.

323.     The Plaintiffs have a high likelihood of success on the merits because the Plaintiffs possess a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.

324.     The Plaintiffs have a high likelihood of success on the merits because the NYCDOE has violated their property-based, procedural due process right to their pay.

325.   The Plaintiffs have a high likelihood of success on the merits because the NYCDOE has violated their procedural due process to their jobs.

326.   The violation of the Plaintiffs' constitutional rights constitutes irreparable harm.

327.   Without a permanent injunction, the Plaintiffs will have no adequate remedy at law.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NYCDOE, PORTER, UFT, MULGREW, SCHEINMAN, SAMS, and SAMS, LLC**

328.   The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 327, as if fully set forth herein.

329.   The NYCDOE is a State actor.

330.   Porter is a State actor.

331.   The UFT conspired with the NYCDOE to have Scheinman issue the UFT Arbitration Award.

332.   The UFT conspired with the NYCDOE to have SAMS issue the UFT Arbitration Award.

333.   The UFT conspired with the NYCDOE to have SAMS, LLC issue the UFT Arbitration Award.

334.   Scheinman, SAMS, and SAMS, LLC conspired with the UFT and the NYCDOE to grant to SAMS and SAMS, LLC authority to determine appeals from determinations regarding exemptions for religious and/or disability.

335.   The UFT Arbitration Award, in a form of kickback scheme, granted Scheinman, SAMS, and SAMS, LLC additional business at the expense of the Plaintiffs' constitutional rights.

336.    Scheinman did not have any statutory authority to issue the UFT Arbitration Award.

337.    Scheinman did not have any contractual authority to issue the UFT Arbitration Award.

338.    The UFT Arbitration Award was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution.

339.    The UFT, Mulgrew, Scheinman, SAMS, and SAMS, LLC conspired with the NYCDOE and Porter to provide the NYCDOE and Porter with a basis to suspend the Plaintiffs without pay even though there was no statutory or contractual basis for the UFT Arbitration Award.

340.    The NYCDOE through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

341.    The UFT conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

342.    The UFT conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

343.    The UFT conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

344.    Mulgrew conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

345.    Mulgrew conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

346.    Mulgrew conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

347.    The NYCDOE conspired with the UFT to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

348.    The NYCDOE conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

349.    The NYCDOE conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y.

Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

350.     Porter conspired with the UFT to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

351.     Porter conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

352.     Porter conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

353.     The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

354.     The NYCDOE is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

355.     But-for the UFT Arbitration Award, the NYCDOE would not have had any justification for the violation of the Plaintiffs' constitutional rights.

356.     The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in their jobs, and could not be suspended without pay without due process.

357.     As a result of the illegal and unauthorized UFT Arbitration Award, the NYCDOE has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected property interest.

358.     The NYCDOE, Porter, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Porter, John Doe and Jane Doe.

359.     The NYCDOE and Porter in a conspiracy with the UFT, Mulgrew, Scheinman, SAMS and SAMS, LLC acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

360.     As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, being subjected to scandalous claims and investigations and have suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to their reputation.

361.     As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continues to suffer suspension, leave of absence, diminished employment, and have suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

362.     As a result of the conspiracy between the NYCDOE, Porter, the UFT, Mulgrew, Scheinman, SAMS, and SAMS, LLC, Plaintiffs suffered and are entitled to, damage sustained to

date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

363.    As a result of the NYCDOE's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NYCDOE, PORTER, CSA, CANNIZZARO , SCHEINMAN, SAMS, and SAMS, LLC

364.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 363, as if fully set forth herein.

365.    The NYCDOE is a State actor.

366.    Porter is a State actor.

367.    The CSA conspired with the NYCDOE to have Scheinman issue the CSA Arbitration Award.

368.    The CSA conspired with the NYCDOE to have SAMS issue the CSA Arbitration Award.

369.    The CSA conspired with the NYCDOE to have SAMS, LLC issue the CSA Arbitration Award.

370.    Scheinman, SAMS, and SAMS, LLC conspired with the CSA and the NYCDOE to grant to SAMS and SAM, LLC authority to determine appeals from determinations regarding exemptions for religious and/or disability.

371.    The CSA Arbitration Award, in a form of kickback scheme, granted Scheinman, SAMS, and SAMS, LLC additional business at the expense of the Plaintiffs' constitutional rights.

372.    Scheinman did not have any statutory authority to issue the CSA Arbitration Award.

373.    Scheinman did not have any contractual authority to issue the CSA Arbitration Award.

374.    The CSA Arbitration Award was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

375.    The CSA, Cannizzaro, Scheinman, SAMS, and SAMS, LLC conspired with the NYCDOE and Porter to provide the NYCDOE and Porter with a basis to suspend the Plaintiffs without pay even though there was no statutory or contractual basis for the UFT Arbitration Award.

376.    The NYCDOE through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

377.    The CSA conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

378.    The CSA conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y.

Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

379.    The CSA conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

380.    Cannizzaro conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

381.    Cannizzaro conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

382.    Cannizzaro conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

383.    The NYCDOE conspired with the CSA to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

384.    The NYCDOE conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

385. The NYCDOE conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

386. Porter conspired with the CSA to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

387. Porter conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

388. Porter conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

389. The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

390. The NYCDOE is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

391. But-for the CSA Arbitration Award, the NYCDOE would not have had any justification for the violation of the Plaintiffs' constitutional rights.

392. The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in his job, and could not be suspended without pay without due process.

393.    As a result of the illegal and unauthorized CSA Arbitration Award, the NYCDOE has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

394.    The NYCDOE, Porter, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Porter, John Doe and Jane Doe.

395.    The NYCDOE and Porter in a conspiracy with the CSA, Cannizzaro, Scheinman, SAMS and SAMS, LLC acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

396.    As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, being subjected to scandalous claims and investigations and have suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to their reputation.

397.    As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continues to suffer suspension, leave of absence, diminished employment, and have suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

398.    As a result of the conspiracy between the NYCDOE, Porter, the CSA, Cannizzaro, Scheinman, SAMS, and SAMS, LLC, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

399.    As a result of the NYCDOE's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

**AS AND FOR A NINTH CAUSE OF ACTION**
**FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NYCDOE, PORTER, DC37,**
**GARRIDO, LOCAL 372, FRANCOIS, LOCAL 1251, and FRANCIS**

400.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 399, as if fully set forth herein.

401.    The NYCDOE is a State actor.

402.    Porter is a State actor.

403.    DC37 conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

404.    Garrido conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

405.    Local 372 conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

406.    Francois conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

407.    Local 1251 conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

408.    Francis conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

409.    The agreement between DC37 and the NYCDOE was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

410.    The agreement between Local 372 and the NYCDOE was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

411.    The agreement between Local 1251 and the NYCDOE was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

412.    The DC37, Garrido, Local 372, Francois, Local 1251, and Francis conspired with the NYCDOE and Porter to provide the NYCDOE and Porter with a basis to suspend the Plaintiffs without pay even though the agreement between DC37 and the NYCDOE violated the Plaintiffs' constitutional rights.

413.    The NYCDOE through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

414.    DC37 conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

415.    Local 372 conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

416.    Local 1251 conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service

Law § 75) or by contract (collective bargaining agreements between the Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

417.    Garrido conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

418.    Francois conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

419.    Francis conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

420.    The NYCDOE conspired with DC37 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

421.    The NYCDOE conspired with Local 372 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

422.    The NYCDOE conspired with Local 1251 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

423.    Porter conspired with DC37 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

424.    Porter conspired with Local 372 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

425.    Porter conspired with Local 1251 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

426.    The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

427.    The NYCDOE is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

428.    But-for the agreement between the DC37 and NYCDOE, the NYCDOE would not have had any justification for the violation of the Plaintiffs' constitutional rights.

429.    The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in his job, and could not be suspended without pay without due process.

430.    As a result of the DC37 and the NYCDOE, the NYCDOE has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

431.   The NYCDOE, Porter, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Porter, John Doe and Jane Doe.

432.   The NYCDOE and Porter in a conspiracy with DC37, Garrido, Local 372, Francois, Local 1251, and Francis acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

433.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, being subjected to scandalous claims and investigations and have suffered and continue to suffer distress, humiliation, great expense, embarrassment, and damages to their reputation.

434.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer suspension, leave of absence, diminished employment, and have suffered and continue to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

435.   As a result of the conspiracy between the NYCDOE, Porter, DC37, Garrido, Local 372, Francois, Local 1251, and Francis, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

436.    As a result of the NYCDOE's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

**AS AND FOR A TENTH CAUSE OF ACTION**
**FOR DIRECT PARTICIPATION AND AIDING AND ABETTING IN VIOLATION OF**
**42 U.S.C. § 1983 AGAINST PORTER, MULGREW, CANNIZZARO, GARRIDO,**
**FRANCOIS, FRANCIS, SCHEINMAN, JOHN DOE AND JANE DOE**

437.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 436, as if fully set forth herein.

438.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively did foster and encourage the NYCDOE to violate the Plaintiffs' constitutional rights.

439.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively, jointly and severally, violated the Plaintiffs' constitutional rights when they failed to stop the NYCDOE from suspending the Plaintiffs without pay without due process.

440.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively knew and had reason to know that the NYCDOE violated the Plaintiffs' constitutional rights when the NYCDOE suspended the Plaintiffs without pay without due process.

441.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively jointly and severally, did foster and encourage the NYCDOE to violate the Plaintiffs' constitutional rights by suspending the Plaintiffs without pay without due process.

442.    Based on the foregoing, the Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe directly participated in and/or tacitly condoned the violation of the Plaintiffs' constitutional rights, violating 42 U.S.C.§ 1983.

**WHEREFORE,** the Plaintiffs demand judgment:

(1)    on the First Cause of Action for a declaratory judgment, declaring that what the NYCDOE did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and to their pay without due process;

(2)    on the Second Cause of Action for a declaratory judgment, declaring that: (a) the UFT Arbitration Award was promulgated without any statutory authority; (b) the UFT Arbitration Award was promulgated without any contractual authority; and (c) since the UFT Arbitration Award was promulgated without any statutory or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay;

(3)    on the Third Cause of Action for a declaratory judgment, declaring that: (a) the CSA Arbitration Award was promulgated without any statutory authority; (b) the CSA Arbitration Award was promulgated without any contractual authority; and (c) since the CSA Arbitration Award was promulgated without any statutory or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay;

(4)    on the Fourth Cause of Action for a declaratory judgment, declaring that: (a) the agreement between DC37 and the NYCDOE was entered into

without any contractual authority; and (b) the agreement between DC37 and the NYCDOE was entered into without any contractual authority and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay;

(5)     on the Fifth Cause of Action for a declaratory judgment, declaring that: (a) that the Release in the form created by the NYCDOE violated the UFT Arbitration Award and is therefore voidable; and (b) the Release void and unenforceable.

(6)     on the Sixth Cause of Action for a permanent injunction, enjoining the NYCDOE from violating the Plaintiffs' constitutional rights;

(7)     on the Seventh Cause of Action for violation of 42 U.S.C. § 1983 against the NYCDOE, Porter, UFT, Mulgrew, Scheinman, SAMS, and SAMS, LLC for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial;

(8)     on the Eighth Cause of Action for violation of 42 U.S.C. § 1983 against the NYCDOE, Porter, CSA, Cannizzaro, Scheinman, SAMS, and SAMS, LLC for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial;

(9)     on the Ninth Cause of Action for violation of 42 U.S.C. § 1983 against the NYCDOE, Porter, DC37, Garrido, Local 372, Francois, Local 1251 and Francis for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial;

(10)   on the Tenth Cause of Action for violation of 42 U.S.C. § 1983 against Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe for direct participation in and aiding and abetting of the violation of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial; and

(11)   on all causes of action, an award of attorneys' fees, and costs; and

(12)   such other and further relief the Court deems just and fair.

Dated:   Carle Place, New York
January 10, 2022

*Austin Graff*

_____
Austin Graff
THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040