

February 4, 2022

Alan M. Klinger
Direct Dial: 212.806.5818
aklinger@stroock.com

Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Broecker, et al. v. New York City Department of Education, et al., 21-cv-6387

Dear Judge Matsumoto:

We represent defendants United Federation of Teachers ("UFT") and Council of School Supervisors & Administrators ("CSA"). We write in connection with the letter filed earlier today (Dkt. #72) by Plaintiffs seeking permission to file an emergency application in connection with the New York City Department of Education's (the "DOE") recent notice to unvaccinated employees advising that they will be summarily terminated on February 11, 2022 pursuant to notices issues earlier this week, on January 31, 2022, and your Honor's direction regarding same.

The UFT and the CSA, while disagreeing with Plaintiffs as to their attack on the Scheinman Arbitration Award, support the challenge to the summary termination of these employees and also seek to file an emergency application defending the due process rights of the DOE employees they represent. These employees are at risk of summarily losing essential health benefits for which they have foregone other gainful employment while on leave without pay ("LWOP").

As the Court is aware from prior briefing, the UFT and now CSA have consistently taken the position that employees may not be terminated without satisfaction of their respective due process rights under state law and contract. Indeed, public employees have constitutionally protected property interests in their continued employment. See Mem. and Order Den. Mot. Prelim. Inj. ("Order"), 18 (citing Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985)).

New York courts have consistently found that when public employers have any discretion to terminate a public worker's employment, the employee is entitled to procedural due process. And, as stated by this Court in Garland v. New York City Fire Department, 21-cv-6586 (KAM)(CLP), 2021 WL 5771687 at *6 n.8 (E.D.N.Y. Dec. 6, 2021), the key factor in determining if an employee can be terminated without due process is whether they are "legally ineligible" to maintain their employment. While this Court did not reach the question of whether process is due prior to termination, the legal standard identified by the Court is correct.

A protected property interest in employment can cease to exist only if the employer ceases to have discretion over the individual's continued employment. See Brown v. City of Syracuse, 673 F.3d 141, 147-50 (2d Cir. 2012). To validate summary dismissal, the requirement in question must expressly state that a qualification is mandatory for employment in the position.

Here, the Mandate does not require termination for the unvaccinated, and the DOE has granted myriad accommodations for those who have not undergone inoculation for medical and religious

reasons – thereby evidencing that vaccination status does not automatically qualify or disqualify an individual from service.

While the DOE may argue, as it has prior, that vaccination is a "qualification" or "condition" for employment, thereby removing termination on those grounds from the gamut of due process, this is incorrect and belied by their own employment decisions. *That some unvaccinated employees have been granted reasonable accommodations on medical, religious, and other grounds proves that vaccination is not an employment qualification, for one cannot accommodate for an immutable statutory requirement for employment.* Furthermore, the DOE continued health insurance for certain unvaccinated employees from December 1 onwards. Were vaccination truly a "qualification" for employment, the City would have revoked healthcare for the hundreds (if not thousands) of uninoculated immediately, as it could not legally continue to retain such individuals.

Under the Scheinman Awards, unvaccinated DOE employees may opt for LWOP while remaining DOE employees, retaining health insurance, retaining the right to return to their current position should they become vaccinated, and avoiding disciplinary action. This option carries a required waiver of rights as consideration of the benefits offered. Employees who receive medical or religious exemptions may continue to work remotely or be reassigned to a position where they are not in contact with students. The fact that these options exist demonstrates that the DOE has the discretion to find alternatives to termination and thus any termination is not *required*. Moreover, the Awards state that the DOE may only "seek to unilaterally separate" certain employees after December 1, 2021, but that "except for the express provisions contained, herein, all parties retain all legal rights at all times." No further reference is made to due process rights and there is no mention of the waiver of any rights with regard to termination.

While the DOE may attempt to obfuscate the need for due process by terming vaccination a "qualification" of employment, clever verbiage does not vitiate their constitutional, statutory, and contractual obligations. Under Education Law § 2590-j(7)(b), tenured pedagogues may be terminated under § 3020-a for a range of offenses, arguably including failure to vaccinate – but due process is due for all of them. See also N.Y. Educ. Law § 2590-j(7)b) (defining disciplinary matters subject to § 3020-a process). Likewise, N.Y. Civ. Serv. Law § 75 provides due process protections for covered civil service titles before they can be disciplined or terminated.

UFT and CSA satisfy all elements necessary for injunctive relief under Fed. R. Civ. P. 65.

As argued *supra*, employees are entitled to, and have in no way waived, due process prior to termination. Even assuming *arguendo* that vaccination is a "qualification" or "condition" of employment (which it is not), the DOE is obligated to satisfy statutory and contractual procedure prior to rendering an adverse employment action.

DOE's attempts to deprive employees of their procedural due process rights itself constitutes a sufficient showing of irreparable harm to support injunctive relief. See e.g., See Statharos v. N.Y.C. Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999) (recognizing that the alleged deprivation of a constitutional right sufficiently shows irreparable harm); see also, e.g., Connecticut Dep't of Envt'l Prot. v. O.S.H.A., 356 F.3d 226, 231 (2d Cir. 2004).

February 4, 2022

UFT's and CSA's represented employees, who are already on LWOP, will suffer irreparable harm manifesting in the loss of health benefits particularly during a pandemic. The cost of COBRA is significant, and will increase pressure on families with difficulties paying for housing, food, medical procedures, and medications. Myriad courts, including the Second Circuit, have found irreparable harm in situations implicating dangers to health, health insurance, and shelter. See, e.g., LaForest v. Former Clean Air Holding Co., Inc., 376 F.3d 48, 55 (2d Cir. 2004); Wheelan v. Colgan, 602 F.2d 1060, 1062 (2d Cir. 1979); Terrell v. Terrell, 279 A.D.2d 301, 303 (1st Dep't 2001). Similarly, the loss of healthcare on top of the loss of wages has been found to be an irreparable harm warranting injunctive relief. See Montgomery-Costa v. The City of New York, No. 114374-2009, 2009 WL 8639689 (Sup. Ct. N.Y. Cnty. Oct. 28, 2009)

Furthermore, when loss of health insurance amidst financial stress is considered in conjunction with the deprivation of rights at issue here, these harms elevate to the level of irreparable injury. See, e.g., U.S. Navy SEALs 1-26 v. Biden, __ F.Supp.3d __, 2022 WL 34443, at *12-13 (N.D. Tx. 2022) ("these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, this Court must conclude that Plaintiffs have suffered irreparable harm.").

The balance of equities also tips decidedly in UFT's and CSA's favor. To allow the DOE to willfully sidestep due process rights sets dangerous precedent undermining constitutional, statutory, and contractual protections for all municipal workers in the future. The DOE also suffers minimal harm in keeping the unvaccinated *unpaid* and on healthcare until due process is satisfied.

In contrast, the harm to employees cannot be overstated – the lack of health benefits on top of their lack of income will impair their ability to maintain necessary healthcare and stable finances, resulting in a downward spiral that may, for many, result in harms that cannot restituted.

On February 4, 2022 at 11:58 A.M., we advised counsel for the DOE defendants of our intent to make an emergency application by order to show cause.

Respectfully submitted,

/s/ ALAN M. KLINGER

STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com

*Co-Counsel for Defendants UFT and CSA*

CC: all counsel of record