# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*

JONATHAN L. SCHER**

AUSTIN R. GRAFF*

TEL: 516-746-5040

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1950-2012)

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

February 8, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:    Broecker, *et al.* v. New York City Department of Education, *et al.*
             Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

     This law firm represents all of the Plaintiffs in the above-referenced Action. This letter shall serve as the Plaintiffs' response to the pre-motion conference letters submitted by the Defendants New York City Department of Education ("NYCDOE") and Meisha Porter ("Porter") (collectively referred to as "NYCDOE Defendants") **(Docket No. 61)**, Defendant United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") **(Docket No. 62)** Defendant Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA") **(Docket No. 71)**, and the Defendants Martin F. Scheinman ("Scheinman"), Scheinman Arbitration and Mediation Services ("SAMS"), and Scheinman Arbitration and Mediation Services, LLC ("SAMS, LLC") (collectively referred to as "Scheinman Defendants") **(Docket No. 69)**, in support of their applications for Motions to Dismiss.

     The Plaintiffs are not challenging the COVID-19 vaccine mandate. The Plaintiffs, while they disagree with the mandate, assume the mandate is valid as a matter of law. This Action and the Plaintiffs' claims focus on the conduct of the NYCDOE Defendants', the UFT's and the other defendants' implementation of the mandate and the mandate's effects upon the Plaintiffs' employment with the NYCDOE. The Plaintiffs' claims are a challenge to the Arbitration Awards of Scheinman **(Docket No. 19-1** and **Docket No. 47-6)** that violated N.Y. Civil Service Law § 209.3(f) and resulted from conspiracy, collusion, and corruption between the NYCDOE Defendants, UFT, CSA, and Scheinman and his companies.

     This letter first addresses the NYCDOE Defendants' request for a pre-motion conference as a preliminary step to making a Motion to Dismiss. Then, the Plaintiffs will address the UFT's request for a pre-motion conference at which time the UFT will ask to make a Motion to Dismiss. The Plaintiffs will then address the CSA's request for a pre-motion conference. Finally, the Plaintiff will address the Scheinman Defendants request for a pre-motion conference. For the reasons discussed in this letter, the NYCDOE Defendants and UFT and the CSA should be denied an opportunity to make Motions to Dismiss because the Motions would be futile.

### A.     NYCDOE Defendants' Application Should Be Denied

#### 1.     The NYCDOE Cannot Unilaterally Create A Condition Of Employment

N.Y. Education Law and its implementing regulations set the qualifications for administrators, teachers, and other employees of the NYCDOE. *See, e.g.,* N.Y. Education Law § 3001; 8 N.Y.C.R.R § 80-2.4.

However, the NYCDOE is not required to limit itself to State-imposed qualifications and may set additional qualifications for those employed by the NYCDOE.

N.Y. Education Law § 2573.9. authorizes "a board of education may prescribe additional or higher qualifications for the persons employed in" the positions of principal, supervisor, director or teacher appointed to the teaching force of a city.

The NYCDOB is not governed by a Board of Education, but by a Panel for Educational Policy. *See,* https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws (visited January 26, 2022).

There is no evidence, and the NYCDOE Defendants do not argue that, the Panel for Educational Policy, pursuant to N.Y. Education Law § 2573.9. adopted a resolution that established that a qualification for employment with the NYCDOE is a vaccination against COVID-19.

Pursuant to N.Y. Education Law, only the NYCDOB's Panel for Education Policy can create new qualifications for employment for those employed by the NYCDOE, not, as the NYCDOE Defendants argue, the Commissioner of the New York City Department of Health and Mental Hygiene ("NYCDOH Commissioner").

In addition, N.Y. Civil Service Law §201.4. defines "terms and conditions of employment" to include "salaries, wages, hours, and other terms and conditions of employment." *See,* N.Y. Civil Service Law § 201.4. "Pursuant to article 14 [of the Civil Service Law (Taylor Law)], an employer is required to negotiate terms and conditions of employment." *Evans v Newman,* 71 A.D.2d 240, 243 (3d Dept 1979).

"The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a strong and sweeping policy of the State." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.,* 75 N.Y.2d 660, 667 (1990) (internal quotation marks omitted).

It is clear that based upon the position of the UFT and the CSA, which both support the Plaintiffs' position that the NYCDOE must employ N.Y. Education Law § 3020-a, Civil Service Law § 75 and/or collective bargaining agreement due process procedures before the NYCDOE disciplines the Plaintiffs **(Docket Entry No. 77)**, the NYCDOE has failed to negotiate and reach resolution with the UFT and the CSA as to whether the COVID-19 vaccine mandate is a condition of employment as that phrase is defined in N.Y. Civil Service Law § 201.4. The NYCDOE has failed to negotiate a condition of employment that is a mandatory subject of negotiation.

Further, the NYCDOE fails to set forth any statutory bases that establishes the authority of the NYCDOH Commissioner to impose a new qualification or even a condition of employment on the employees of the NYCDOE without compliance with N.Y. Education Law § 2573.9. or the Taylor Law. To make matters worse, the language of the NYCDOH Commissioner's Order does not state that a vaccine is a condition of employment or a new qualification to be employed by the NYCDOE. The Order is silent as to these issues. *See,* **Docket Entry No. 47-7.**

As a result, the Defendants' argument that a COVID-19 vaccination is a condition of employment fails as a matter of New York law because there was no authority to impose it and it was not negotiated with the UFT or the CSA.

Finally, the NYCDOE cites to several New York State Article 78 proceeding decisions to support their argument that the vaccine is a condition of employment. However, the New York State Courts do not cite to any statutory authority that authorized the NYCDOE to unilaterally impose a condition of employment without N.Y. Education Law procedure being followed or a negotiated settlement with the

UFT, the CSA or the other unions regarding the matter. As a result, this Court should not rely upon those cases.

As a matter of law, just because the NYCDOE states that the vaccine is a condition of employment is insufficient and the State Courts should not have just blindly adopted the NYCDOE's position. The NYCDOE's position has to be based upon statutory authority, whether in N.Y. Education Law, the New York City Administrative Code, or after collective bargaining with the UFT, the CSA, and the other NYCDOE unions.

The NYCDOE does not cite to any authority it had to unilaterally create a new condition of employment out of whole cloth. The creation of the new condition of employment violated the Plaintiffs' constitutional rights and therefore the Plaintiffs' § 1983 claims against the Defendants are valid, enforceable, and can withstand a Rule 12(b)(6) Motion to Dismiss.

2. Plaintiffs' Due Process Claims Withstand A Motion To Dismiss

The NYCDOE Defendants argue that the Plaintiffs are not fit for employment because they have not taken a COVID-19 vaccination. Yet, the NYCDOE has permitted employees who have not completed the vaccine regimen to continue to work. *See*, https://nypost.com/2021/12/25/doe-skips-deadline-to-suspend-employees-who-havent-shown-proof-of-second-vax/ (visited January 27, 2022). The NYCDOE's actions are inconsistent with their argument in this Action.

Despite this inconsistency, and focusing on the Plaintiffs' due process rights, N.Y. Education Law has several provisions that govern situations where a school district does not believe that its employee is fit for duty. Both N.Y. Education Law §§ 913 and 2568 provide for procedures that a school district must follow before determining that an employee is unfit for duty. At no point has the NYCDOE followed either of these statutory provisions to determine the Plaintiffs' fitness for duty.

When the NYCDOE states it has an obligation to provide a safe workplace and therefore cannot permit the Plaintiffs-unvaccinated employees to perform their duties (**Docket No. 61**, at page 2), the NYCDOE's language is consistent with N.Y. Education Law § 913 that states: "[i]n order to safeguard the health of children attending the public schools, the board of education ... shall be empowered to require any person employed by the board of education ... to submit to a medical examination by a physician or other health care provider of his or her choice ... in order to determine the physical or mental capacity of such person to perform his or her duties."

The Plaintiffs have not been required to submit to medical examinations to determine their physical or mental capacity to perform their duties. As a result, the suspension of the Plaintiffs without pay based upon a perception that they are unfit, violates the Plaintiffs' due process rights and property rights. *See, Newman v. Bd. of Educ.*, 594 F.2d 299, 304 (2d Cir 1979).

The NYCDOE Defendants further argue that the Plaintiffs have no claims, pre-termination because they can avail themselves of Article 78 proceedings post-termination.

This Court should not force the Plaintiffs to file individual Article 78 proceedings in New York State Courts after termination when the issues are ripe for determination pre-termination. *See, Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex. 2022) (holding "requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to 'to bet the farm by taking the violative action before testing the validity of the law.' *Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010).").

The NYCDOE has not set forth a legally cognizable explanation why this Court should not determine the Plaintiffs' rights in this Action. The Plaintiffs' due process claims will survive a Motion to Dismiss and the Court should deny the Defendants permission to make the motion.

### 3. Conspiracy Claims

As discussed below when addressing the UFT's pre-motion conference request, the NYCDOE Defendants conspired with the UFT to violate N.Y. Civil Service Law § 209 when they colluded with the UFT and the "Arbitrator" to resolve impact bargaining over the COVID-19 vaccine mandate. N.Y. Civil Service Law § 209 does not authorize binding arbitration in impasse resolutions relating to schools. *See,* N.Y. Civil Service Law § 209.3(f). *See also, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.,* 75 N.Y.2d at 671. Therefore, any argument that the Arbitration Award binds the impact and the procedures regarding the mandate violates N.Y. Civil Service Law § 209.3(f) and therefore, the reliance upon the Arbitration Award to violate the Plaintiffs' constitutional rights was a conspiracy between the NYCDOE Defendants and the UFT and the NYCDOE Defendants and the CSA.

To make matters worse, the "Arbitrator" is a political contributor of former Mayor DeBlasio who even hosted a fundraiser for him in his home. *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited January 27, 2022). To further show the conspiracy and the misconduct relating to the Arbitration Award, any appeals of accommodation requests were handled by the Arbitrator's own company, resulting in a windfall profit center for the Arbitrator, a political contributor to the Mayor.

The whole "arbitration" process and award is infected with collusion, misconduct, and corruption. The Plaintiffs can state a claim for conspiracy against the NYCDOE Defendants for violating the Plaintiffs' constitutional rights. The Plaintiffs' conspiracy claims survive a Motion to Dismiss.

### 4. Class Claims

The Plaintiffs have valid claims against the Defendants. The Plaintiffs can meet the prerequisites pursuant to FRCP Rule 23(a), namely numerosity, common questions of law and fact, the class representatives' claims are typical of all of the class claims, and the representatives can fairly and adequately protect the interests of the class. The Plaintiffs' class claims survive a Motion to Dismiss.

### 5. Briefing Schedule

The Plaintiffs are suspended without pay. The Plaintiffs are entitled to a resolution of this matter in a relatively expedited manner. The NYCDOE Defendants' proposed schedule results in unnecessary delay. The Plaintiffs request a short briefing schedule, namely two weeks for motion papers, two weeks to oppose, and a week for reply.

### B. UFT's Application Should Be Denied

The NYCDOE Defendants/UFT and the Plaintiffs have a fundamental disagreement regarding whether N.Y. Civil Service Law § 209 permits a school district (NYCDOE) and a union (UFT) to go to mandatory, binding arbitration regarding impact bargaining. As a matter of clear, unambiguous statutory language, namely N.Y. Civil Service Law § 209.3(f), a PERB fact finder's report cannot be imposed upon the school district or the union. *See, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.,* 75 N.Y.2d at 671 (stating "the apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare,* Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f]).").

In addition, N.Y. Civil Service Law § 209.4. only permits binding arbitration in certain types of employment that the New York State Legislature deemed "essential to public health and safety." *See, Margiotta v Kaye,* 283 F.Supp.2d 857, 864 (E.D.N.Y. 2003).

The UFT relies upon *Margiotta* for the proposition that "under the Taylor Law, parties may agree to move to binding impasse arbitration rather than follow PERB's procedure." **Docket No. 62**, pages 2-3. But *Margiotta* actually supports the Plaintiffs' argument that the Arbitration Award agreed to by the UFT violated N.Y. Civil Service Law § 209. In *Margiotta*, the Court denied the Court Officers Benevolent Associations of Nassau County binding arbitration pursuant to N.Y. Civil Service Law § 209.4. because "[t]he legislature specifically determined that impasses by police officers, fire fighters, and other miscellaneous public safety employees, and employees of the transit authority should be resolved by compulsory arbitration. N.Y. Civil Service Law §§ 209.4, 209.5." *Margiotta v Kaye*, 283 F Supp 2d at 865.

The Plaintiffs are employees of a school district. There is a specific statutory provision barring the imposition of a fact finder's report on a school district and its union. *See*, N.Y. Civil Service Law § 209.3.(f). *See, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671 (1990) (stating "the apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare*, Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f]).").

Because the UFT agreed to and relinquished its power to bargain and come to (or not come to) a final agreement on the impact of the COVID-19 vaccine mandate, it participated in and conspired with the NYCDOE to violate the Plaintiffs' constitutional right to due process and constitutional property right interest in their pay.

Based solely upon the illegal Arbitration Award, the NYCDOE has suspended the Plaintiffs without pay. Without and but-for the UFT's affirmative consent to "binding" arbitration even though there is no legal authority for binding arbitration, the NYCDOE would not have had any legal basis to suspend the Plaintiffs without pay for not taking a COVID-19 vaccine.

The UFT argues that it is not a State actor and therefore not subject to 42 U.S.C. § 1983. However, in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007), the Court held "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

That is exactly what happened to the Plaintiffs. The UFT conspired with the NYCDOE to violate N.Y. Civil Service Law § 209.3(f) by agreeing to "binding" arbitration and the NYCDOE has used the "binding" arbitration award as a basis to suspend the Plaintiffs without pay in violation of their constitutional right to due process and constitutional property right in their pay.

Unlike what the UFT argues, there was no adversarial action between the UFT and NYCDOE, instead, there was actual consent to illegal "binding" arbitration. *See*, **Docket No. 21-3** (stating "the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce."). Yet, there is no statutory authority for "expedited arbitration". *See, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671.

If the UFT was truly adversarial to the NYCDOE it would have bargained until an agreement was reached (or not reached) regarding the impact of the COVID-19 vaccine mandate. If there was no agreement on the impact, that would have been acceptable because the UFT would have been acting in the best interests of those members who were opposed to the vaccine. Instead, the UFT kowtowed to the NYCDOE and relinquished its bargaining power to an arbitrator who had no legal authority to issue a binding arbitration award. *See*, N.Y. Civil Service Law § 209.3(f).

The Plaintiffs question the independence of the arbitrator, a political fundraiser for Mayor DeBlasio (https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited January 27, 2022)) and questions how the arbitrator was allowed to select his company to review the appeals of the accommodation requests, creating a financial windfall. *See*, **Docket No. 19-1**, at page 12.

The UFT did not defend its members who opposed the vaccine mandate. Instead, it relinquished its bargaining power and authority to negotiate a deal with the NYCDOE that would have represented the

# THE SCHER LAW FIRM, LLP

best interests of the UFT's members. The fact that the UFT agreed to "expedited arbitration" where the imposed Arbitration Award violated its members' due process rights and property rights in their pay, resulted in an illegal conspiracy between the UFT, the NYCDOE and Scheinman that resulted in the violation of the Plaintiffs' constitutional rights.

The UFT's request for a pre-motion conference should be denied because any Motion to Dismiss would be fruitless.

### C. CSA's Application Should Be Denied

The CSA admits in its letter that the CSA, the NYCDOE and Scheinman conspired, without the intervention of PERB to enter into "binding arbitration to resolve a looming bargaining dispute." **Docket No. 71**, at page 1. The CSA argues that it "submit[ted] an adversarial dispute to an arbitrator...." **Docket No. 71**, at page 2. But the COVID-19 mandate was something the CSA and the NYCDOE should have negotiated about and the CSA should have (or should not have) come to a negotiated settlement on the

impact of the COVID-19 mandate. But that is not what happened. Instead, the CSA agreed to binding arbitration.

Yet, the CSA cites no contractual or statutory authority for the CSA to resolve a bargaining dispute or an adversarial dispute in negotiations through binding arbitration. Oddly, the CSA argues that there is "no contractual prohibition in the CSA CBA against moving to binding arbitration to resolve a bargaining dispute..." **Docket Entry No. 71**, at page 2. Yet, the CSA does not identify an affirmative source granting the CSA authority to enter into binding arbitration to resolve a bargaining dispute.

Typically bargaining disputes are resolved by the parties through collective bargaining at a bargaining table. A mediator may be needed to help the parties resolve the matter, but the mediator never is the one that imposes a solution to the parties' bargaining dispute. The CSA does not argue that the arbitration was in response to the grievance mechanism in the parties' collective bargaining agreement, which would have made sense, but that is not what happened.

Instead, it cites to *Town of Southampton v NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513 (2004) for the proposition that the terms of the CSA Award was incorporated into the CBA. *See,* **Docket Entry No. 71**, at page 3. *Town of Southampton* concerns impasse negotiations between the town and the police officers' union and binding arbitration pursuant to N.Y. Civil Service Law § 209.4. Strangely, the CSA argues that PERB has no authority over what occurred between the CSA and NYCDOE because no impasse was declared. *See,* **Docket Entry No. 71**, at page 2. The citation to *Town of Southampton* and its position on PERB's involvement in the binding arbitration decision are contradictory and confusing.

What the CSA does admit to is that it conspired with the NYCDOE to agree to give away its bargaining power, bargaining authority, and ultimate consent to the outcome to Scheinman to make a decision over hot to resolve a "looming bargaining dispute" **(Docket No. 71**, at page 1) that it could not control, could not determine its outcome, and ultimately led to the violation of its members' constitutional rights.

In *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7, the Court held "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The CSA did just that by permitting Scheinman to issue an Arbitration Award that authorized the NYCDOE to deprive the Plaintiffs of their constitutional rights to due process and the property rights in their pay. There was no basis in law or contract for Scheinman to issue a binding arbitration award to "resolve a looming bargaining dispute" **(Docket No. 71**, at page 1) and when the Arbitration Award deprived the Plaintiffs of their constitutional rights, the CSA became liable in conspiracy for the damages incurred by the Plaintiffs-CSA members.

The CSA's request to make a Motion to Dismiss should be denied because the Motion would be fruitless.

### D. Scheinman Defendants' Request Should Be Denied

The Scheinman Defendants are seeking a pre-motion conference seeking permission to file a Motion to Dismiss based upon an "arbitrators' quasi-judicial immunity and a complete lack of any allegations giving rise to a cognizable § 1983 claim." **Docket Entry No. 69.**

The Arbitration Awards that serve as the basis for the NYCDOE to suspend the Plaintiffs without pay and without due process were issued by Scheinman. *See,* **Docket No. 19-1** and **Docket No. 47-6.** The Plaintiffs allege that the Scheinman Defendants conspired with the NYCDOE and the UFT and the NYCDOE and the CSA to violate N.Y. Civil Service Law § 209, which does not authorize binding arbitration to resolve impasse negotiations in a school district settling. *See,* N.Y. Civil Service Law § 209.3.(f). Additionally, the Arbitration Awards violate the Plaintiffs' due process rights and the Plaintiffs' constitutional property rights in their pay. But-for the Arbitration Awards the NYCDOE did not have any legal authority to suspend the Plaintiffs without pay without due process.

While the Scheinman Defendants argue "quasi-judicial immunity" the immunity cannot protect the Scheinman Defendants in this Action because: (1) Scheinman knew that there is no binding arbitration in school district settings and therefore he had no legal or contractual authority to issue the binding Arbitration Awards (N.Y. Civil Service Law § 209.3(f)); and (2) his Arbitration Awards awarded himself a financial windfall when he appointed SAMS to be the sole appellate review of all accommodation requests that were denied by the NYCDOE. *See,* **Docket No. 19-1**, at page 11; **Docket No. 47-6**, at page 6-7.

"[A]rbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process." *Austern v Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). However, these Arbitration Awards were not based upon any contract, but were issued in violation of N.Y. Civil Service Law § 209 and the Taylor Law and the manner in which Scheinman wove himself and his companies into the appeal process was not a determination within the scope of the arbitral process.

Scheinman did not just render an arbitration decision, SAMS became an integral part of the decision-making process regarding whether religious or medical exemptions/accommodations should be granted. Scheinman inserted SAMS directly into the process by which the Plaintiffs were denied due process. The continued oversight and control over the process defeats the Scheinman Defendants' quasi-judicial immunity argument.

Additionally, since the Scheinman Defendants were the sole appellate review of the NYCDOE's denial of accommodations, the Scheinman Defendants became State actors. When determining the appeals of the Plaintiffs who were denied accommodations, the Scheinman Defendants were acting under color of State law with the actual authority granted to it by the NYCDOE to conduct appellate review of the NYCDOE's initial determinations.

Accordingly, the Plaintiffs have stated a plausible claim of § 1983 violations and conspiracy by the Scheinman Defendants and therefore, a Motion to Dismiss would be fruitless.

*************

The Defendants' requests for a pre-motion conference should be denied because Motions to Dismiss would not be successful.

Very truly yours,
THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)