UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, et al.

Defendants.

**DEFENDANTS NEW YORK CITY DEPARTMENT
OF EDUCATION AND MEISHA PORTER'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
Attorney for Defendants DOE and Porter
100 Church Street
New York, NY 10007

Of Counsel: Andrea O'Connor
Tel: (212) 356-4015

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... i

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 5

ARGUMENT ............................................................................................................ 7

    A.    Plaintiffs' Motion is Duplicative of their Prior Application
        for Injuntive Relief........................................................................................7

    B.    Union Defendants Do Not Have Standing in Connection
        with Plaintiffs' Motion...............................................................................10

    C.    Plaintiffs Do Not Meet the Standard for a Preliminary
        Injunction ...................................................................................................13

            1.    Plaintiffs Cannot Establish Irreperable Harm ...........................14

            2.    Plaintiffs Are Unlikey to Suceed on the Merits.........................19

            3.    The Balance of Equities Does Not Tip in Plaintiffs'
                Favor and an Injunction is Not in the Public Interest ................32

CONCLUSION......................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Almontaser v. N.Y. City Dep't of Educ.,
    519 F.3d 505 (2d Cir. 2008) .................................................................................13

Anderson v. United Airlines,
    No. 21 CV 1050 (TJC)(LLL), 2021 U.S. Dist. LEXIS 249771 (M.D. Fla. Dec.
    30, 2021) ...............................................................................................................18

Bano v. Union Carbide Corp.,
    361 F.3d 696 (2d Cir. 2004) .................................................................................11

Beck-Nichols v. Bianco,
    20 N.Y.3d 540 (2013) ..........................................................................................21

Beckerich v. St. Elizabeth Med. Ctr.,
    2021 U.S. Dist. LEXIS 183757 (E.D. Ky. Sept. 24, 2021) ..................................18

Bilyeu v. Ut-Battelle,
    No. 21 CV 352, 2021 U.S. Dist. LEXIS 250124 (E.D. Tenn. Oct. 29, 2021) ........18

BST Holdings, L.L.C. v. OSHA,
    No. 21 CV 60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) ...................16, 17

Buckley v. N.Y. & Presbyterian Hosp.,
    No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21,
    2021) .....................................................................................................................15

C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
    2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009) ........................................20

Cafeteria Workers v. McElroy,
    367 U.S. 886 (1961) .............................................................................................26

Carr v New York State Dep't of Transportation,
    70 A.D.3d 1110, lv to app. den., 14 N.Y.3d 709 (2010) ......................................22

City School District v. McGraham,
    17 N.Y.3d 917 (2011) ..........................................................................................22

Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) .....................................26

Cornejo v. Bell,
    592 F.3d 121 (2d Cir. 2010) .................................................................................18

Cravatta v New York State Dep't of Transportation,
    77 A.D.3d 1399 (4th Dep't 2010) ..........................................................................22

Dechberry v. N.Y.C. Fire Dep't,
    124 F. Supp. 3d 131 (E.D.N.Y. 2015) ...................................................................19

Donohue v. Mangano,
    886 F. Supp. 2d 126 (E.D.N.Y. 2012) ..................................................................16

E.E.O.C. v. Joint Apprenticeship Comm. Of Joint Indus. Bd. Of the Elec. Indus.,
    164 F.3d 89 (2d Cir. 1998).....................................................................................16

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
    940 F.2d 775 (2d Cir. 1991)............................................................................28, 29

Feds v. Biden,
    No. 21 CV 356, 2022 U.S. Dist. LEXIS 11145 (S.D. Tex. Jan. 21, 2022).......16, 17

Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) .................................................................................21, 22, 26

Ford v. Reynolds,
    316 F.3d 351 (2d Cir. 2003)...................................................................................16

Garland v. N.Y.C. Fire Dep't,
    No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y.
    Dec. 6, 2021) ................................................................................................ *passim*

Guitard v. United States Sec'y of Navy,
    967 F.2d 737 (2d Cir. 1992)...................................................................................16

Hellenic Am. Neighborhood Action Comm. v. City of New York,
    101 F.3d 877 (2d Cir. 1996)...................................................................................30

Holt v. Continental Group,
    708 F.2d 87 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ...........................15

Impax Media Inc. v. Northeast Adver. Corp.,
    No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. Jan. 10, 2018)............13

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013).....................................................................................19

Jayaraj v. Scappini,
    66 F.3d 36 (2d Cir. 1995).......................................................................................16

Johnston v. Tn. of Orangetown,
    562 F. App'x 39 (2d Cir. 2014) .............................................................................30

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990).........................................................................................13

Kane v. de Blasio,
    21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order) ........................................................17

Kane v. De Blasio,
    No. 21 CV 7863 (VEC), 2021 U.S. Dist. LEXIS 239124 (S.D.N.Y. Dec. 14,
    2021) ...................................................................................................................9, 15

Keil v. The City of New York, et al.,
    21 Civ. 8773 (SDNY)(VEC)...................................................................................17

Lanzer v. BOE, et al.,
    Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ..................................................2, 9

In re LIBOR-Based Fin. Instruments Antitrust Litig.,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014).........................................................................9

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001).....................................................................................31

MacFall v. City of Rochester,
    495 F. App'x 158 (2d Cir. 2012) .............................................................................19

Maniscalco v. N.Y. City Dept. of Educ.,
    No. 21 Civ.5055 (E.D.N.Y.) (BMC).......................................................................17

Massone v. Washington,
    No. 20 CV 7906 (LJL), 2021 U.S. Dist. LEXIS 163860 (S.D.N.Y. Aug. 30,
    2021) ........................................................................................................................11

Mathews v. Eldridge,
    424 U.S. 319 (1976)....................................................................................26, 27, 29

Moogan v. N.Y. State Dep't of Health,
    8 A.D.3d 68 (1st Dep't 2004) ............................................................................22, 29

Moore v. Consol. Edison Co. of N.Y., Inc.,
    409 F.3d 506 (2d Cir. 2005).....................................................................................16

Morrissey v. Brewer,
    408 U.S. 471 (1972).................................................................................................26

N.A.A.C.P. v. Acusport Corp.,
    210 F.R.D. 446 (E.D.N.Y. 2002) .......................................................................12, 13

N.Y.C. Mun. Labor Comm. V. City of N.Y.,
    2021 NY Slip Op 21260 (Sup. Ct.)..........................................................................15

N.Y.C. Mun. Labor Comm. V. City of N.Y.,
    2021 NY Slip Op 21260 (Sup. Ct.)....................................................................15

Naliboff v. Davis,
    133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988)..............22

Nat'l Ass'n of College Bookstores, Inc. v. Cambridge University Press,
    990 F. Supp. 245 (S.D.N.Y. 1997) ........................................................................12

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82
    v. Cuomo,
    64 N.Y.2d 233 (1984) ............................................................................................20

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ............................................................................................22

Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.,
    697 F.3d 209 (2d Cir. 2012).................................................................................16

O'Connor v. Board of Education,
    48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)......................22

O'Hailpin v. Hawaiian Airlines, Inc.,
    No. 22 CV 00007 (JAO)(KJM), 2022 U.S. Dist. LEXIS 18640 (D. Haw. Feb.
    2, 2022) ..................................................................................................................18

O'Reilly v. Bd. of Educ.,
    Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan.
    20, 2022) .......................................................................................................2, 3, 9, 21

O'Reilly v. Bd. of Educ.,
    Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan.
    20, 2022) ................................................................................................................21

Payton v. Walsh,
    No. 21 CV 02817 (JPH)(MG), 2022 U.S. Dist. LEXIS 3418 (S.D. Ind. Jan. 7,
    2022) ......................................................................................................................18

Piercy v. Fed. Rsrv. Bank of N.Y.,
    Nos. 02 CV 5005..................................................................................................14

In the Matter of Rachel Maniscalco v. The Board of Education of the City School
    District of the City of New York, et al.,
    Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.) .................................................31

Rodriguez v. Winski,
    444 F. Supp. 3d 488 (S.D.N.Y. 2020)...................................................................11

Romano v. Blue Cross Blue Shield of Mich.,
    No. 21 CV 12966, 2022 U.S. Dist. LEXIS 764 (E.D. Mich. Jan. 3, 2022) ...........18

Romero v. BOE, et al.,
    Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) .............................................................2, 9, 31

Russell v. Coughlin,
    910 F.2d 75 (2d Cir. 1990)...............................................................................................25, 26

Sambrano v. United Airlines, Inc.,
    No. 21 CV 1074-P, 2021 U.S. Dist. LEXIS 215285 (N.D. Tex. Nov. 8, 2021)
    denial of injunction aff'd at 2021 U.S. App. LEXIS 36679 (5th Cir. Dec. 13,
    2021) ......................................................................................................................................18

Sampson v. Murray,
    415 U.S. 61 (1974).................................................................................................................14

Schrimer v. Town of Harrison,
    98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) ....................................22

Score, Inc. v. Cap Cities/ABC, Inc.,
    724 F. Supp. 194 (S.D.N.Y. 1989) .......................................................................................13

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006)..................................................................................................31

Sorano v. City of Yonkers,
    37 A.D.3d 839 (2d Dep't 2007) ............................................................................................26

Tessler v. Paterson,
    768 F. Supp. 2d 661 (S.D.N.Y. 2011)...................................................................................31

In the matter of the Application of Andrew Ansbro, as President of the Uniformed
    Firefighters Association v. de Blasio, et al.,
    Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) ....................................................................25

The New York City Municipal Labor Committee, et al. v. City of New York, et
    al.,
    Index No........................................................................................................................11

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
    New York, et al.,
    Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ..................................................................17

Together Emples. v. Mass Gen. Brigham Inc.,
    No. 21 CV 1909, 2021 U.S. App. LEXIS 34298 (1st Cir. Nov. 18, 2021) ............................18

Trump v. Deutsche Bank AG,
    943 F.3d 627 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct.
    2019 (2020)............................................................................................................................31

United States v. Tenzer,
    213 F.3d 34 (2d Cir. 2000).......................................................................................................9

We the Patriots USA, Inc. v. Hochul,
    Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021)
    opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov.
    12, 2021) ................................................................................................................20

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982).................................................................................................31

Winter v. Natural Res. Def. Council, Inc.,
    555 U.S. 7 (2008)................................................................................................13, 31

**Statutes**

Civil Service Law Section 201.4 ...................................................................................23

Education Law Sections 913 and 2568 ...............................................................23, 24, 25

Education Law Section 2573(9)......................................................................................23

Education Law § 3020-a ......................................................................................... passim

N.Y. Civil Service Law § 75 ................................................................................... passim

N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a ...........................................................21

N.Y. Labor Law § 27-a .................................................................................................20

## PRELIMINARY STATEMENT

On February 8, 2022, Plaintiffs filed a second motion for a temporary restraining and preliminary injunction ("Plaintiffs' Motion") seeking to enjoin the terminations of 43 Plaintiffs[1] for their failure to comply with the August 24, 2021 Order issued by the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (hereinafter "COH Order").[2]  Moments after Plaintiffs' Motion was filed, Defendants UFT and CSA filed a letter in support of Plaintiffs' Motion.  As detailed below, Plaintiffs' Motion must be denied as they cannot meet the high standard for injunctive relief.  Further, Defendants UFT and CSA's (collectively "Union Defendants") support of Plaintiffs' Motion must be disregarded by the Court given those defendants' lack of standing on this issue.

The COH Order is unequivocal.  It requires all DOE employees, both current and prospective, to be vaccinated.  The COH Order, and the nearly identical order issued by the DOHMH Commissioner applicable to employees of the City of New York ("City"), has been repeatedly upheld as lawful by every Court that has considered it.  Thus, the COH Order is unassailable and legally sound.

Critical to this case is that the COH Order creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated.  The DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent an exemption or accommodation required by law, to perform work for the DOE.  On this point, Your Honor recently held that the

---

[1] Plaintiffs identify the 43 Plaintiffs in Dkt. No 76-1.

[2] COH Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf. Last accessed on Feb. 9, 2022.  Note that the September 27, 2021 deadline was extended to October 1, 2021 via a subsequent order.

nearly identical order issued by the DOHMH Commissioner requiring vaccination against COVID-19 for all City employees (hereinafter "City COH Order") created a "qualification of employment" for City employees employed at the New York City Fire Department.  See Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021).

In addition, the New York Supreme Court also recently issued decisions on this exact issue in connection with three Article 78 proceedings filed by tenured teachers who failed to comply with the COH Order and were challenging their placement on leave without pay ("LWOP") as "constructive terminations" without due process.  See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty)(denying the petition and holding that petitioner is not entitled to a hearing under § 3020-a in advance of her placement on LWOP and/or termination because those employment actions are not a "disciplinary consequence" of the petitioner's failure to comply with the COH Order); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty)(same).[3]

In O'Reilly, the petitioner, a tenured teacher, argued that her placement on LWOP was an effective "termination" and that her "dismissal" violated her due process because she was not afforded "notice and evidentiary hearing required by Education Law § 3020-a."  22 N.Y. Slip. Op. 30173(U) ¶ 2.  The Court, however, found that the petitioner "chose to ignore all of the[] options" available to her in that "she did not show proof of vaccination, did not apply for an accommodation and did not seek to extend her leave without pay in exchange for extended health benefits."  Id.  The Court therefore held that the employment actions taken by DOE as a result of

---

[3] The decisions in Lanzer and Romero are not yet published.  For the Court's convenience, copies of those decisions are annexed hereto as Appendix A.

her inaction were "not discipline under the Education Law and instead was merely a response to petitioner's refusal to comply with a condition of employment." Id. at ¶ 2. Notably, the Court went on to hold that "[d]iscipline involves alleged misconduct, not a **prerequisite** to doing the job in the first instance." Id. at ¶ 3. In denying the Article 78 petition, the Court noted that the petitioner was "seek[ing] an end run around challenging the legality of the mandate by classifying it [i.e. her placement on LWOP and termination] as discipline – [which is] a completely different situation. The requirement to follow the mandate at issue is, as stated above, a condition of employment and petitioner admits that she did not satisfy that condition or seek an exemption." Id. at ¶ 5.

Despite this firm precedent that Plaintiffs relegate to a footnote in their motion, Plaintiffs now – once again – seek the Court's emergency intervention to enjoin the consequence of 43 of the Plaintiffs' failure to comply with a lawful condition of their DOE employment. Plaintiffs do not dispute the legitimacy of the COH Order. Rather, they just failed to comply with the condition of employment it creates. They refuse to do so despite the fact that they have been afforded repeated notice of the COH Order's requirement and have been given **five** months to come into compliance with it. They have also failed to request an exemption or accommodation to the COH Order. Similarly, they have failed to avail themselves of one of the offered extended leave options in order to maintain their health benefits. These 43 Plaintiffs have chosen inaction, and now seek the Court's emergency intervention to enjoin the consequence of their failure to avail themselves of the various options negotiated by their unions and offered to them.

In seeking yet another order prohibiting their termination, Plaintiffs merely reup the claim they made in their first preliminary injunction motion; namely, that any termination without resort to the processes detailed in Education Law § 3020-a ("§ 3020-a"), or N.Y. Civil Service Law § 75 ("§ 75") violates their procedural due process rights. For this reason, Plaintiffs'

Motion must be denied because the Court has already ruled on this issue and denied an identical request for injunctive relief. In so doing, this Court held that the processes available to Plaintiffs comport with constitutional due process and that Plaintiffs' anticipated terminations do not amount to irreparable harm. See Dkt. No. 33, Memorandum and Order dated November 24, 2021 (herein after "November 24 Order"). As detailed below, there is no compelling reason to disturb these holdings and therefore, based on law of the case doctrine, Plaintiffs' Motion must similarly be denied.

Next, DOE Defendants respectfully submit that the Court should not consider the letter submitted by Union Defendants in support of Plaintiffs' Motion. As detailed below, Union Defendants do not have standing in connection with Plaintiffs' Motion.

Further, because the COH Order creates a condition of employment for DOE employees to be vaccinated against COVID-19, well-settled case law firmly establishes that the DOE can terminate those employees, including tenured employees, who fail to satisfy that condition without invoking disciplinary processes. And, as detailed below, Plaintiffs have been provided with notice and ample opportunities to be heard and therefore have been afforded all process owed to them under the due process clause of the U.S. Constitution. As such, Plaintiffs' due process claim has no likelihood of success on the merits.

Finally, Plaintiffs also cannot establish that any alleged harm they may suffer, absent the requested relief is irreparable, as termination from employment is a quintessential **_reparable_** harm. Nor can Plaintiffs demonstrate the balance of equities tip in their favor. Accordingly, Plaintiffs' Motion must be denied.

## STATEMENT OF FACTS

For a full and complete recitation of applicable facts, DOE Defendants respectfully refer the Court to the Statement of Facts contained in their Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated November 19, 2021. See ECF Dkt. No. 18.

Briefly, on August 23, 2021, Mayor de Blasio and the DOHMH Commissioner announced that DOE employees would be subject to a "vaccine only" mandate, as opposed to a vaccination-or-testing requirement, as described thereafter in the COH Order. See COH Order. Under this policy, by September 27, 2021, DOE employees were required to submit proof that they were fully vaccinated; or received a single dose vaccine, or the second dose of a two-dose vaccine; or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter. Id.

On September 10, 2021, Defendant UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the COH Order. See O'Connor Decl., dated Nov. 19, 2021, Exh. A, (hereafter "Impact Arbitration Decision"), at 4. PERB then appointed an arbitrator and several days of discussions were held. Id. On September 10, 2021, the arbitrator issued a decision, which established: (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits or extend the LWOP available for employees who did not comply with the Vaccination Mandate; and (3) that the DOE may "unilaterally separate employees" who have not complied with the Vaccination Mandate or do not have an approved exemption or accommodation or have not either opted for separation or extended their LWOP pursuant to the provisions set forth in the Impact Arbitration Decision. Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of

vaccination, remain unable to mount an immune response. See id. at 6-13. It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on LWOP by the DOE starting September 28, 2021. See id. at 13. While on leave without pay, employees continue to be eligible for health insurance. Id. at 15. Employees who submit proof of vaccination before November 30, 2021, will be eligible to return to their school within one week of submitting their documentation to the DOE. Id. at 14.

The Impact Arbitration Decision also sets forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of LWOP and with health benefits. See id. at 14. DOE employees who did not comply with the COH Order could opt to either separate from service by October 29, 2021 and receive enhanced payment of accrued paid time off and health insurance through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16. Alternatively, as a second option, employees could have opted to have their LWOP extended through September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who chose to extend their LWOP ultimately do not comply with the COH Order by the end of the leave period, they will be deemed to have voluntarily resigned. Id. In addition, the Impact Arbitration Decision provides that starting on December 1, 2021, DOE can unilaterally separate employees who remain out of compliance with the COH Order and have not applied for either the extended leave or separation. Id.

Critically, and as Plaintiffs' Motion makes clear, more than half of the Plaintiffs availed themselves of one of these processes and therefore will not be terminated from the DOE. See ECF Dkt. No. 76-1 (identifying the 43 Plaintiffs that received notices of termination).

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the remaining unions representing DOE employees, including Defendant CSA and Defendant District Council 37, City of New York ("DC

37"). Similar to the process that led to the Impact Arbitration Decision – which covers the majority of plaintiffs herein – the negotiations with CSA reached an impasse and the parties proceeded to arbitration. <u>See</u> O'Connor Decl. dated Nov. 19, 2021 at Ex. B. On September 15, 2021, an arbitration award was issued that exactly mirrors that of the Impact Arbitration Decision. <u>Id.</u>

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave procedures for those DOE employees who do not comply with the DOE Vaccination Mandate and, again, reached an agreement that mirrors that of the Impact Arbitration Decision. <u>See</u> O'Connor Decl. dated Nov. 19, 2022 at Ex. C, Memorandum of Agreement District Council 37, City of New York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021.[4]

## **<u>ARGUMENT</u>**

### **A.    Plaintiffs' Motion is Duplicative of Their Prior Application for Injunctive Relief**

On November 17, 2021, Plaintiffs filed an emergency motion for injunctive relief seeking to enjoin their terminations during the pendency of this litigation. <u>See</u> Dkt. No. 2 (Plaintiffs seeking an order "enjoining and restraining [DOE] from disciplining, including but not limited to **terminating** any and all tenured [Principals, Assistant Principals, employees covered by the DC 37 agreement and] teachers who have failed to take a COVID-19 vaccine without proffering charges and specifications and granting the [employee] a hearing on the charges")(emphasis added). Plaintiffs' November 17 motion was fully briefed and argued prior to that motion being denied by the Court via the November 24 Order. <u>See</u> November 24 Order. Plaintiffs did appeal the November 24 Order, and their time to do so has long expired.

---

[4] Because the applicable CSA decision and the DC 37 agreement are identical in all relevant respects to the Impact Arbitration Decision, for ease of reference this memorandum will refer to all three as the Impact Arbitration Decision.

In analyzing whether Plaintiffs' November 17 Motion demonstrated a likelihood of success on the merits, this Court held that "both the pre-deprivation and post-deprivation processes currently afforded to Plaintiffs were and are constitutionally adequate." See November 24 Order at 19. In so doing, this Court found that "Plaintiffs received ample notice of (1) the Vaccination Mandate, (2) their ability to seek religious and medical exemptions and appeals, (3) their placement on LWOP if they continued to be noncompliant with the terms of the Vaccination Mandate, and (4) their options and opportunity to respond." Id. at 19.

With respect to post-deprivation processes, this Court held that – in addition to remedies available to them via their respective collective bargaining agreements – "Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York State Supreme Court. The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy." Id. at 22 citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy."). Indeed, Plaintiffs can still file Article 78 proceedings challenging their terminations – notably, Plaintiffs Giammarino, Salas, Maniscalco and Romero already have. As for irreparable harm, this Court held that "should Plaintiffs prevail, monetary relief will be available to compensate their loss of income. Consequently, injunctive relief is not warranted." See November 24 Order at 24.

Despite these unequivocal holdings, Plaintiffs now seek a second bite at the injunctive relief apple. Plaintiffs' Motion sets forth the exact same arguments that were asserted by Plaintiffs in their November 17 application. Compare Dkt. No. 2 with Dkt. No. 76-13. Indeed, Plaintiffs' Motion argues that Plaintiffs' anticipated terminations violate their procedural due

process rights because DOE did not follow the disciplinary procedures set forth in § 3020-a or § 75 in advance of taking the challenged employment actions.  See Dkt. No. 76-13.  This is the exact same argument made by Plaintiffs in support of their November 17 motion.  See Dkt. No. 2-10.  Further, Plaintiffs' Motion asserts that the termination notices received by certain Plaintiffs states that vaccination is a "condition of employment" and that their failure to become vaccinated will result in their termination.  See Dkt. No. 72.  This is the exact same argument asserted by DOE Defendants in opposition to Plaintiffs' November 17 motion and was therefore before the Court during its consideration of Plaintiffs' November 17 motion.  See Dkt. No. 18.  Thus, Plaintiffs' Motion sets forth no facts or arguments that were not before the Court in deciding Plaintiffs' November 17 motion.

Under the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless 'cogent and compelling reasons militate otherwise.'"  In re LIBOR-Based Fin. Instruments Antitrust Litig., 27 F. Supp. 3d 447, 473 (S.D.N.Y. 2014) quoting Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009); see also United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although not binding, law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons).  Here, the Court previously denied the exact same injunctive relief sought now.  Further, the arguments and facts set forth in Plaintiffs' Motion are duplicative of those asserted by Plaintiffs during the litigation of their November 17 preliminary injunction motion.

In addition, since the issuance of the November 24 Order: (1) this Court issued a decision denying injunctive relief in Garland in connection with the City COH Order; (2) the Southern District of New York in Kane v. De Blasio, No. 21 CV 7863 (VEC), 2021 U.S. Dist.

LEXIS 239124 (S.D.N.Y. Dec. 14, 2021)[5] denied injunctive relief to DOE tenured teachers seeking to enjoin their terminations for failure to comply with the COH Order; and (3) the New York Supreme Court has held that tenured DOE employees may be terminated for failure to comply with the COH Order without resort to statutory disciplinary procedures.  See O'Reilly, 2022 N.Y. Slip. Op. 30173(U), ¶ 3; Lanzer, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero, Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty).  Thus, since the issuance of the November 24 Order there has been intervening case law that further supports this Court's prior denial of injunctive relief.

Therefore, because there is no "cogent and compelling reason" for the Court to revisit its prior denial of Plaintiffs' request for an order enjoining their terminations, Plaintiffs' Motion should be denied.

**B.     Union Defendants Do Not Have Standing in Connection with Plaintiffs' Motion**

On February 4, 2022, Union Defendants filed a request for a pre-motion conference in connection with an unspecified "emergency application defending the due process rights of the DOE employees they represent." See Dkt. No. 73.  However, during a conference on February 7, 2022, counsel for Union Defendants stated that they would not seek to file their own motion for injunctive relief but rather would file a letter in support of Plaintiffs' Motion.  This is a distinction without a difference because, as explained below, Union Defendants do not have standing in connection with Plaintiffs' Motion.

As an initial matter, DOE Defendants respectfully submit that the letter filed by Union Defendants at Docket Number 77 is not a "related letter of support," which was the form of the  submission contemplated by the Court following the February 7, 2022 conference.  See Minute

---

[5] This denial of injunctive relief was affirmed by the Second Circuit on February 3, 2022.  A copy of the Second Circuit's decision is annexed hereto as Appendix B.

Entry for 2/7/21 Conference. Rather, Union Defendants' February 8 Letter is quite clearly a standalone application for injunctive relief. The February 8 Letter makes brand new arguments and assertions completely separate and apart from those asserted in Plaintiffs' Motion. It is also quite clear that Union Defendants are seeking relief on behalf of non-parties in that they advocate for the Court to enjoin <u>all</u> terminations of non-compliant DOE employees and not just the termination of those 43 Plaintiffs at issue here. <u>See</u> Dkt. No. 77 at 5 ("Union Defendants urge the Court to grant the sought injunction against the DOE's imminent terminations of its employees without due process."). For this reason, the Court should decline to consider the February 8 Letter because, as explained below, Union Defendants lack standing to seek this relief.

However styled, it is clear that Union Defendants are seeking relief on behalf of non-parties that they do not represent in this action. Because of this, DOE Defendants respectfully submit that Union Defendants' submission in support of Plaintiffs' Motion must be disregarded by the Court. It should go without saying that counsel for Union Defendants do not represent the specific Plaintiffs who received a termination notice and for whom the instant motion seeks relief. In fact, Union Defendants are adverse to these Plaintiffs—they have sought leave from this Court to dismiss their claims as against the Unions, including claims that their Unions and DOE conspired to deprive them of their constitutional rights. Further, to the extent Union Defendants are seeking relief on behalf of DOE employees for whom UFT and CSA are the bargaining agents, these "DOE employees" are non-parties and are therefore unable to obtain relief in this case. Plainly, Union Defendants have no dog in this particular fight.[6]

---

[6] DOE Defendants note that Union Defendants, along with dozens of other unions, filed an action against the City and DOE today by order to show cause seeking, in part, a temporary restraining order enjoining the City and DOE from terminating employees to their failure to comply with the COH Order or the City COH Order. <u>See</u> <u>The New York City Municipal Labor Committee, et al. v. City of New York, et al.</u>, Index No. Unassigned, (N.Y. Sup., N.Y. Cnty).

Further, Union Defendants do not have either organizational or representative standing in this action to support relief requested on behalf of Plaintiffs or non-party DOE employees.  See Rodriguez v. Winski, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) ("Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and (2) associational standing.").  Union Defendants cannot establish that they have organizational standing because their application articulates harm to only their members and not any distinctive injury to the unions.   Massone v. Washington, No. 20 CV 7906 (LJL), 2021 U.S. Dist. LEXIS 163860, at *9-10 (S.D.N.Y. Aug. 30, 2021).

Union Defendants also cannot establish representative standing.   Whether an association has standing to seek relief on behalf of its members is governed by the three-part test articulated in Bano v. Union Carbide Corp., 361 F.3d 696 (2d Cir. 2004). Under Bano, an association has standing if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit" Id. at 713-14.  Even assuming Union Defendants could establish the first and second Bano factors, they cannot establish the third.  "In order to establish that the participation of individual members is not required, the organization must show that there is no conflict of interest or diversity of views that would prevent the organization from effectively representing its membership." N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446, 458 (E.D.N.Y. 2002).

To assess "the severity of the internal dissent," Courts generally look to two factors: "First, whether the decision to bring suit was made in accordance with the association's normal procedures, and second, the extent to which the suit brings members' interests into actual or potential conflict."  Nat'l Ass'n of College Bookstores, Inc. v. Cambridge University Press, 990 F. Supp. 245, 251 (S.D.N.Y. 1997).

In this case, Union Defendants represent no individual members. There is also no evidence in the record regarding whether UFT and CSA's decision to support Plaintiffs' Motion was made in accordance with their "normal procedures." Further, it is clear from the face of the Amended Complaint that there is a deep and divisive conflict between the interests of UFT and CSA members. Indeed, Plaintiffs herein claim that Union Defendants conspired to deprive them of their constitutional rights in connection with the issuance of the Impact Arbitration Award. Based on that allegation alone, there is clearly a conflict between UFT and CSA and Plaintiffs. Further, the Impact Arbitration Decision impacted tens of thousands of DOE employees. But only 95 of those impacted DOE employees have chosen to join this action as a plaintiff. This is further evidence that that there is an "actual or potential conflict" between the Plaintiffs herein and other UFT or CSA members who chose not to join this action.[7] As such, Union Defendants lack standing in this action to "support" the relief requested in Plaintiffs' Motion and their submission must be disregarded by the Court.

To the extent the Court considers Union Defendants' submission, DOE Defendants respectfully refer the Court to the below arguments as to why injunctive relief is not warranted and therefore Plaintiffs' Motion should be denied.

## C.  Plaintiffs Do Not Meet the Standard for a Preliminary Injunction

In order to justify a preliminary injunction, Plaintiffs must demonstrate: (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) the balance of equities tips decidedly in their favor; and (4) that the public interest weighs in favor of granting an injunction. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser

---

[7] DOE Defendants also note that Union Defendants have filed a joint application seeking to dismiss the Amended Complaint in this action "in its entirety." See Dkt. No. 62. The Amended Complaint seeks a permanent injunction enjoining Plaintiffs' terminations. As such, on one hand Union Defendants are arguing that Plaintiffs' Amended Complaint should be dismissed in its entirety and on the other hand are now arguing in support of the claim made in the Amended Complaint for injunctive relief.

<u>v. N.Y. City Dep't of Educ.</u>, 519 F.3d 505, 508 (2d Cir. 2008). Of these requirements, a showing of likely irreparable harm is often referred to as the **most** important. <u>See, e.g.</u>, <u>Citibank, N.A.</u>, 756 F.2d at 275. An injunction is unwarranted because Plaintiffs cannot demonstrate any of these requirements.

### 1) Plaintiffs Cannot Establish Irreparable Harm

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" <u>Impax Media Inc. v. Northeast Adver. Corp.</u>, No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009)). In making a showing of irreparable harm, Plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. <u>See</u> <u>Score, Inc. v. Cap Cities/ABC, Inc.</u>, 724 F. Supp. 194, 198 (S.D.N.Y. 1989). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 79 (2d Cir. 1990). As the Supreme Court has held "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974).

Plaintiffs' Motion asserts two alleged harms: loss of employment and a so-called "impossible choice" of choosing between getting vaccinated and maintaining their public employment.

Turning first to the loss of employment, Plaintiffs' Motion and the accompanying affidavits from Plaintiffs Hoffman, Charles, Mendez, Palladino and Lotito make clear that the only

harm flowing from their termination is economic harm in the form of continued lost wages and the costs associated with obtaining alternative healthcare via COBRA.  <u>See</u> Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, dated February 8, 2022 (hereinafter "Plaintiffs' Memorandum"), at 4-5.  The caselaw of this Circuit and of New York State is quite clear that these alleged economic harms do not warrant equitable relief.

In <u>Garland</u>, this Court held that "to demonstrate an entitlement to injunctive relief, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. As noted decades ago by the United States Supreme Court, the type of harm Plaintiffs allege, loss of employment and pay, are definitionally reparable."  <u>See</u> <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142 at *22-23 <u>citing Sampson v. Murray</u>, 415 U.S. 61, 89-92, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)(holding that injuries generally associated with discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute "irreparable harm"); <u>Piercy v. Fed. Rsrv. Bank of N.Y.</u>, Nos. 02 CV 5005, 02 CV 9291 (DC), 2003 U.S. Dist. LEXIS 379, 2003 WL 115230, at *3 (S.D.N.Y. Jan. 13, 2003) ("Plaintiffs wrongfully discharged from employment generally may be made whole by monetary damages and reinstatement after a full trial on the merits.").  This Court went on to hold that the plaintiffs failed to make a showing of irreparable harm because "loss of employment and pay constitute harm that may be remedied through money damages."  <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142 at *22-23.

Similarly, in examining the COH Order in <u>N.Y.C. Mun. Labor Comm. V. City of N.Y.</u>, 2021 NY Slip Op 21260 (Sup. Ct.), New York Supreme Court held that the petitioners were "unlikely to be succeed on the second prong of the preliminary injunction test as they cannot establish an irreparable harm as the loss of employment is compensable by money damages and

reinstatement to said employment. Petitioners represented employees who refuse to accept vaccination and are ineligible for an exemption are still entitled to contest any negative outcome through their union procedures and additionally are able to pursue their profession outside of those schools impacted by the Order." See N.Y.C. Mun. Labor Comm. V. City of N.Y., 2021 NY Slip Op 21260, ¶ 5 (Sup. Ct.).

Further, the plaintiffs in Kane, like Plaintiffs here, are tenured DOE teachers who have not complied with the COH Order and sought a preliminary injunction to enjoin their terminations. In their application, the Kane plaintiffs argued that the irreparable harm they faced absent injunctive relief was termination and an attendant "loss of health insurance and other benefits." Kane, 2021 U.S. Dist. LEXIS 239124 at *10. In denying the plaintiffs' motion, the Court found that because "the only alleged harm is economic," the plaintiffs "are not entitled to injunctive relief because they have not demonstrated irreparable harm." Id. As noted above, the Second Circuit recently affirmed this denial of injunctive relief.

These recent holdings are in line with the well-established case law that the "loss of employment is insufficient to carry [Plaintiffs'] burden of showing irreparable harm because [they] make no showing that the loss of [their] employment cannot be remedied with money damages." Buckley v. N.Y. & Presbyterian Hosp., No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21, 2021); see also Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ("the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."); Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992)("injuries that generally attend a discharge from employment — loss of reputation, loss of income and difficulty in finding other employment — do not constitute the irreparable harm necessary to obtain a preliminary injunction")(internal citations omitted).

Further, even a loss of "benefits" attendant to employment does not constitute irreparable harm.  See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012) (back pay includes lost fringe benefits such as vacation pay and pension benefits); E.E.O.C. v. Joint Apprenticeship Comm. Of Joint Indus. Bd. Of the Elec. Indus., 164 F.3d 89, 101 (2d Cir. 1998)(holding same); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(a reinstatement order issued by the District Court could award "full pension benefits, including an award of seniority status covering the interim between termination and a final disposition of the parties' rights.").

Further, with respect to alleged constitutional violations as the claimed "harm," an allegation of a constitutional violation "is insufficient to automatically trigger a finding of irreparable harm," unless "the constitutional deprivation is convincingly shown and that violation carries **noncompensable** damages..."  Donohue v. Mangano, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012)(emphasis added).  Here, however, the alleged harm that flow from the claimed procedural due process violation, i.e. termination, is undoubtedly **reparable** harms.  See Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005); Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003).

Turning to Plaintiffs' "impossible choice" theory of irreparable harm, Plaintiffs' reliance on BST Holdings, L.L.C. v. OSHA, No. 21 CV 60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) and Feds v. Biden, No. 21 CV 356, 2022 U.S. Dist. LEXIS 11145 (S.D. Tex. Jan. 21, 2022) is misplaced.  BST Holdings is a recent decision staying the OSHA emergency temporary standard requiring COVID vaccinations at large private employers. That decision is based primarily on administrative law and the OSHA enabling statute.  See generally BST Holdings, L.L.C., 2021 U.S. App. LEXIS 33698.  Nevertheless, in both BST Holdings and Feds, the plaintiffs sought to enjoin the enforcement of federally-imposed vaccine mandates during the

pendency of the underlying litigation – litigation which will determine whether such mandates were legally enforceable. Given that the enforceability of the mandates themselves had not yet been decided, the Southern District of Texas, in reliance <u>BST Holdings</u>, held that "no legal remedy adequately protects the liberty interests of employees who must choose between violating a mandate of doubtful validity or consenting to an unwanted medical procedure that cannot be undone" and therefore found there was irreparable harm sufficient to warrant injunctive relief. 2022 U.S. Dist. LEXIS 11145 at *12.

This case is in a much different procedural posture. The validity of the COH Order has been fully litigated and decided—repeatedly. The COH Order is fully enforceable as to Plaintiffs. <u>See</u> <u>Maniscalco v. N.Y. City Dept. of Educ.</u>, No. 21 Civ.5055 (E.D.N.Y.) (BMC); <u>Kane v. de Blasio</u>, 21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order); <u>Keil v. The City of New York, et al.</u>, 21 Civ. 8773 (SDNY)(VEC); <u>The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al.</u>, Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.). Therefore, <u>BLS Holdings</u> and <u>Feds</u> are inapplicable because here the COH Order has already been deemed as legally enforceable as to DOE employees.

Setting aside the inapplicability of <u>BLS Holdings</u> and <u>Feds</u>, Plaintiffs assert a theory of irreparable harm amounting to that they are being forced to choose between their livelihood and getting vaccinated against COVID-19.[8] This "impossible choice" theory of irreparable harm is, however, inapplicable here as the deadline for being vaccinated has long since passed. Thus, there is no "impossible choice" left for Plaintiffs to make. They have already made their choice to not (1) get vaccinated, <u>**or**</u> (2) seek an accommodation from the mandate, <u>**or**</u> (3) choose among any of the leave options negotiated by their unions to avoid termination.

---

[8] Notably, not a single Plaintiff herein submitted an affidavit in connection with this motion detailing the basis for their objection to the vaccination.

In any event, this "impossible choice" theory of irreparable harm as it pertains to vaccination mandates has been widely rejected by the Courts, including the First and Fifth Circuits. See e.g. Sambrano v. United Airlines, Inc., No. 21 CV 1074-P, 2021 U.S. Dist. LEXIS 215285 (N.D. Tex. Nov. 8, 2021) denial of injunction aff'd at 2021 U.S. App. LEXIS 36679 (5th Cir. Dec. 13, 2021); Together Emples. v. Mass Gen. Brigham Inc., No. 21 CV 1909, 2021 U.S. App. LEXIS 34298 (1st Cir. Nov. 18, 2021); Bilyeu v. Ut-Battelle, No. 21 CV 352, 2021 U.S. Dist. LEXIS 250124 (E.D. Tenn. Oct. 29, 2021); Anderson v. United Airlines, No. 21 CV 1050 (TJC)(LLL), 2021 U.S. Dist. LEXIS 249771 (M.D. Fla. Dec. 30, 2021); O'Hailpin v. Hawaiian Airlines, Inc., No. 22 CV 00007 (JAO)(KJM), 2022 U.S. Dist. LEXIS 18640 (D. Haw. Feb. 2, 2022); Payton v. Walsh, No. 21 CV 02817 (JPH)(MG), 2022 U.S. Dist. LEXIS 3418 (S.D. Ind. Jan. 7, 2022); Romano v. Blue Cross Blue Shield of Mich., No. 21 CV 12966, 2022 U.S. Dist. LEXIS 764 (E.D. Mich. Jan. 3, 2022); Beckerich v. St. Elizabeth Med. Ctr., 2021 U.S. Dist. LEXIS 183757 (E.D. Ky. Sept. 24, 2021). DOE Defendants respectfully submit that the "impossible choice" theory of irreparable harm asserted here is similarly insufficient to warrant injunctive relief.

Because Plaintiffs are unable to demonstrate irreparable harm, Plaintiffs' Motion must be denied.

## 2) Plaintiffs Are Unlikely to Succeed on the Merits

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v.

N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." Id. (internal citation and quotation marks omitted). "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." MacFall v. City of Rochester, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994). In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it. Id. (quoting McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)).

Plaintiffs argue that, absent injunctive relief, they will be terminated without the due process owed to them and therefore they are likely to succeed on the merits. Plaintiffs are incorrect.

### a) Plaintiffs Are Not Being Subject to Discipline

Plaintiffs premise their procedural due process claim on the faulty notion that they are being subjected to "discipline" without the process owed to them via Education Law § 3020-a or Civil Service Law § 75. Not so. Rather, by virtue of Plaintiffs' unwillingness to comply with the COH Order, their unwillingness to seek an accommodation in connection with the COH Order

and their unwillingness to opt for any of the separation options offered detailed in the Impact Arbitration Decision, they cannot continue their public employment with the DOE.

The DOE, as a government employer, has a duty to maintain a safe workplace.  See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the municipal employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  Here, all parties agree that the COH Order is both lawful and enforceable in that it requires all DOE employees to be vaccinated, absent a granted exemption or accommodation.  Given these facts, it is without question that the COH Order creates a lawful, enforceable condition of employment that all DOE employees must meet in order to remain employed.  See Garland, 2021 U.S. Dist. LEXIS 233142 at *25; see also We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021) opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov. 12, 2021)(upholding vaccination as a "condition of employment" in the healthcare field).

Thus, DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform work for the DOE. When employees are ineligible to perform their duties under these circumstances, their removal from the workplace is not "discipline." Rather their ineligibility to work is caused by their failure to comply with a lawful job condition.  C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)(teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).

In addition, "under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance,

misconduct, or competency does not implicate the disciplinary procedures set forth" in the applicable disciplinary statute. See Garland, 2021 U.S. Dist. LEXIS 233142 at **11-12 citing O'Connor, 852 N.Y.S.2d at 538; Beck-Nichols v. Bianco, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures ").

Further, and as indicated above, just last month the New York Supreme Court held that the COH Order created a lawful condition of employment, i.e. vaccination against COVID-19, for DOE employees. See O'Reilly, 2022 N.Y. Slip. Op. 30173(U) at ¶ 3. In O'Reilly, the Court went on to hold that employment actions taken by the DOE as a result of a teacher's non-compliance with the COH Order was "in response to [the teacher]'s refusal to comply with a **condition of employment**[,]" namely, vaccination against COVID-19. See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022)(emphasis added). While Plaintiffs dismiss these cases as inapplicable, they are, in fact, directly on point.

Because it is clear that a COVID-19 vaccination is a condition of employment for DOE employees, well-settled case law firmly establishes that DOE can terminate employees, including tenured employees, without invoking the applicable disciplinary procedures, for failing to maintain a condition of employment. Indeed, the Court of Appeals has upheld the distinction

between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary procedures, from a "condition of employment" which is not subject to such procedures. Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011); Cravatta v New York State Dep't of Transportation, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); Carr v New York State Dep't of Transportation, 70 A.D.3d 1110 (3d Dep't), lv to app. den., 14 N.Y.3d 709 (2010) (same; loss of CDL); Moogan v. N.Y. State Dep't of Health, 8 A.D.3d 68, 69 (1st Dep't 2004) (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses. Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); Naliboff v. Davis, 133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988); Schrimer v. Town of Harrison, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

Section 3020-a hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency." O'Connor, 48 A.D.3d at 1255 (citation omitted). Indeed, the Court of Appeals has explicitly held that termination for failure to have a teaching certification is not discipline and termination is required. Lanterman, 14 N.Y.3d at 282; see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011). Similarly, under Civil Service Law § 75, it is equally well-settled that the failure to maintain eligibility for employment is not an act of misconduct or one related to job performance so as to implicate the disciplinary procedures mandated by Civil Service Law § 75. See Lanterman, 14 N.Y.3d at 282 (2010); Felix, 3 N.Y.3d 498 at 505.

Here, it is undisputed that in order to maintain employment at the DOE, an individual must be vaccinated against COVID-19.  Plaintiffs are not vaccinated against COVID-19 and therefore cannot maintain their DOE employment.  This ineligibility in no way implicates the disciplinary procedures delineated in Education Law § 3020-a or Civil Service Law § 75 because it does not pertain to misconduct or job performance.  Therefore, Plaintiffs can be separated from service without the disciplinary procedures delineated in § 3020-a and/or § 75.

### b) Education Law Section 2573(9) is Inapplicable and DOE has Complied with the Taylor Law

Despite the clear legal precedent articulated above, Plaintiffs further argue that a condition of employment can only be created via the process detailed in Education Law Section 2573(9).  See Plaintiffs' Memorandum at 6.  However, Section 2573(9) states: "No principal, supervisor, director, or teacher shall be appointed to the teaching force of a city who does not possess qualifications required under this chapter and under the regulations prescribed by the commissioner of education for the persons employed in such positions in the schools of the cities of the state, but a board of education may prescribe additional or higher qualifications for the persons employed in any of such positions."  In relying on 2573(9), Plaintiffs are conflating the minimum qualifications an individual must possess in order to be appointed as pedagogical staff with a condition of employment imposed by DOE.  As such, Section 2573(9) is inapplicable.

Plaintiffs' argument with respect to Civil Service Law Section 201.4 also fails because Plaintiffs ignore the fact that the DOE and the affected unions **did** collectively bargain over the impact of the COH Order.  These negotiations ultimately led to the Impact Arbitration Award – which permits the DOE to seek to unilaterally separate non-compliant employees – and the agreement between DC 37 and the City – which also permits the DOE to seek to unilaterally separate non-compliant employees.  As such, DOE and the City complied with all applicable provisions of the Taylor Law and Plaintiffs' arguments otherwise are without merit.

### c) Education Law Sections 913 and 2568 are Inapplicable

Plaintiffs' further argue that the vaccine requirement contained in the COH Order necessarily invokes the procedures set forth in Education Law §§ 913 and 2568. These sections permit the DOE to require an employee to submit to a medical examination to determine the mental or physical capacity of the employee to continue to perform their job duties. Thus, Plaintiffs are arguing that – in advance of enforcing the COH Order – DOE should have required all unvaccinated employees to submit to an involuntary physical examination by a physician of DOE's choosing and to have that physician issue a written report regarding the unvaccinated employee's fitness for duty. Plaintiffs hypothesize that if they were required to submit to a medical examination "many of the Plaintiffs would be able to show that they have natural immunity from the COVID-19 virus." Plaintiffs' Memorandum at 12.

The absurdity of this argument cannot be overstated. Initially, it is **<u>not</u>** DOE Defendants' position that unvaccinated employees are physically or mentally incapable of performing their job duties. Rather, it is DOE Defendants' position that the COH Order creates a lawful condition of employment that certain Plaintiffs do not currently meet and are therefore ineligible for continued employment. Therefore, DOE Defendants respectfully submit that the Court need not even entertain this argument.

And, even so, Plaintiffs' reasoning for why §§ 913 and 2568 would arguably apply, i.e. that detectable COVID-19 antibodies in a blood sample is a substitute for vaccination, is as wrong as it is irresponsible. This notion of "natural immunity as a substitute for vaccination" has been widely rejected, including by reliable medical authorities like the CDC which has determined that a prior COVID-19 infection is no substitute for the robust protections afforded by vaccination. <u>See</u> <u>New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection</u>,

U.S. Centers for Disease Control, August 6, 2021; https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html.

Indeed, Michelle Morse, M.D., M.P.H, the Chief Medical Officer for DOHMH, has illustrated the highly compelling grounds for mandating vaccination against COVID-19 even for those with a prior COVID-19 infection.  See Dkt. No. 37-1, Affirmation of Michelle E. Morse, M.D., M.P.H. in In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty).  As Dr. Morse explains, "the level and duration of immune protection that results from a prior COVID-19 infection (sometimes referred to as 'natural immunity') remains uncertain and can vary based on individual characteristics. Those who have had prior COVID-19 infection also get additional benefit from vaccination. There is evidence that vaccines may provide better protection against current variants than natural immunity, and studies have shown that people who are unvaccinated have higher rates of reinfection compared to people who are vaccinated."  See id.

The COH Order itself mandates vaccination – there is no reference to so-called natural immunity to exclude anyone from that mandate.  Thus, Plaintiffs' contention that the COH Order somehow invokes §§ 913 and 2568 because a DOE employee with COVID-19 antibodies would be "fit for duty" is entirely misplaced and, frankly, reckless in light of the ample medical evidence that both supports and urges vaccination for individuals with prior COVID-19 infections.

### d)  Plaintiffs Have Been Provided All Process Owed to Them

To begin, Plaintiffs conflate the process they believe they are owed under § 3020-a and § 75, with the constitutional minima required by the Due Process Clause. However, the processes provided by these statutes are not co-extensive with, and far exceed, the constitutional minima.  As this Court held in Garland, "to determine whether process is adequate, the Court looks to '[f]ederal constitutional standards rather than state statutes [to] define the requirements of

procedural due process.'" <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142, at *11 (alternation in original) <u>quoting</u> <u>Robison v. Via</u>, 821 F.2d 913, 923 (2d Cir. 1987); <u>also</u> <u>citing</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); <u>Russell v. Coughlin</u>, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). Thus, and contrary to Union Defendants' argument, "at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution." <u>Id.</u>

      "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976); <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985) ("The essential requirements of due process…are notice and an opportunity to respond."); <u>Felix</u>, 3 N.Y.3d at 504-06 ("A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement"; here the process provided for in Administrative Code § 12-120, which provides for notice and an opportunity to refute allegations of non-residence, are all the process due); <u>Sorano v. City of Yonkers</u>, 37 A.D.3d 839 (2d Dep't 2007)(in accordance with <u>Felix</u>, a police officer can be terminated for non-residency without a Civil Service Law § 75 process but due process requires that the employee be provided with notice of the non-compliance and an opportunity to respond prior to termination). Moreover, as the Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical

conception with a fixed content unrelated to time, place and circumstances.' <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895 (1961). '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)." <u>Mathews</u>, 424 U.S. 319 at 334.

All Plaintiffs were provided with ample advance notice that, as a result of their non-compliance with the COH Order, they would be terminated from the DOE. In fact, the vast majority of plaintiffs have had notice of this outcome since September 10, 2021, when the highly publicized Impact Arbitration Decision was issued. Furthermore, on October 2, 2021, nearly immediately after the October 1, 2021 deadline to submit proof of vaccination under the COH Order, Plaintiffs were notified that they were not in compliance with the order and therefore would be placed on LWOP as of October 4, 2021, and that DOE would terminate them if they did not opt to extend their LWOP status and remained out of compliance with the mandate. <u>See</u> Dkt. No. 1-1. Additionally, the October 2, 2021 email set forth the below-described processes that a plaintiff could – and, in some instances, did available themselves of. <u>Id.</u> In sum, any DOE employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal, <u>or</u> could have voluntarily separated from the DOE or extended their LWOP with health benefits. After this notice was given, plaintiffs certainly could have – and in the case of some Plaintiffs did -- sought relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy.

In addition to the notice provided in October, on January 31, 2022, non-compliant DOE employees received **<u>another</u>** notification that they would be terminated effective February 11, 2022 due to their failure to comply with the COH Order. <u>See</u> Dkt Nos. 76-7 at Exhibits A-1 through A-4. This January 31, 2022 notice also provided the recipients with the opportunity to

advise DOE if they were receiving the notification in error in advance of the termination date.  See id.  Thus, it is undisputed that DOE Defendants have satisfied the notice requirement.

Following the issuance of the October 2, 2021 email, DOE Defendants provided Plaintiffs with multiple and various opportunities to be heard.   The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required."  Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991).

The October 2, 2021 email to Plaintiffs laid out all of the processes available to them via the Impact Arbitration Decision.  First, the Impact Arbitration Decision established a process by which DOE employees may apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remained unable to mount an immune response.  See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact Arbitration Decision at 6-13.  The Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Id.  Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of this process to seek an accommodation with respect to the DOE Vaccination Mandate, including appealing to the arbitrator panel.  See O'Connor Decl., dated Nov. 19, 2021, at Ex. F.

Next, the Impact Arbitration Decision set forth a process for separation from employment or the extension of LWOP.  See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact Arbitration Decision at 6-13.  Under this process, DOE employees who had not complied with the

DOE Vaccination Mandate by October 29, 2021, could have opted to be separated from employment **and continue to be eligible for health insurance** through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16. Employees could also, in the alternative, opt to have their LWOP extended through September 5, 2022**, and maintain health coverage**. Id. at 17. To the extent those employees who chose to extend their LWOP did not come into compliance with the COH Order by the end of that ultimate period, they will be deemed to have voluntarily resigned. Id. DOE employees had through October 29, 2021 to select the separation option provided by the Impact Arbitration Decision, and through November 30, 2021 to select to extend their LWOP **with** health benefits. In accordance with the Impact Arbitration Decision, those who did not avail themselves of either of these options were notified that they would be terminated. Id.

   That Plaintiffs may not like these processes, and 43 out of the 95 Plaintiffs may have chosen not to avail themselves of these options, does not change the fact that these processes were available to all of them. See Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18 ("Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766 (2d Cir. 2021). Indeed, in similar processes in Garland, the Court found that "there was sufficient pre-deprivation notice and opportunity to respond." See Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18.

   To the extent plaintiffs contend that due process requires a hearing to be held, such contention is unsupported. Ezekwo makes clear that an "opportunity to be heard" does not equate to a "hearing." 940 F.2d at 786. This is particularly true when there are no factual disputes that

require resolution via a hearing. This is precisely the point of the Supreme Court's teaching that "due process is flexible and calls for such procedural protections <u>as the particular situation demands</u>." <u>Mathews</u>, 424 U.S. at 334 (emphasis added). For example, in <u>Moogan</u>, it was undisputed that the plaintiff failed to maintain a qualification of employment, namely, his EMT certification. <u>See</u> <u>Moogan</u>, 8 A.D.3d at 69. Because of that, the Court held that there was "no factual issue to be determined at a hearing" and therefore neither "§ 75 or federal constitutional due process" required a hearing before his termination. <u>Id.</u> Here, the same is true. Forty-three of the 95 Plaintiffs unquestionably failed to maintain a condition of employment, namely, providing proof of a COVID-19 vaccine. Thus, there is "no factual issue" necessitating a full adversarial or fact-finding hearing.

Plaintiffs further contend that they are entitled to hearings pursuant to their respective collective bargaining agreements. <u>See</u> Plaintiffs' Memorandum at 15-17. This argument again conflates the constitutional minimum required by the due process clause with contractual agreements that do not implicate the United States Constitution.

While it is clear that DOE Defendants provided plaintiffs with a full panoply of processes, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." <u>Hellenic Am. Neighborhood Action Comm</u>, 101 F.3d at 880.

Here, the post-deprivation procedures available to Plaintiffs clearly satisfy the constitutional minimum. As indicated above, for employees who sought exemptions from the vaccination requirement, the Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.

Additionally, while an appeal was pending, the employee remained on payroll pending the appeal. See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact Arbitration Decision at 11.  In the event an appeal was denied, the employee would be placed on LWOP.  Id. at 14.  If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same school within a week of providing proof of vaccination to DOE.  A nearly identical process applied to those plaintiffs who are covered by the DC 37 Agreement.  These post-deprivation processes satisfy the constitutional minimum for due process.  See Garland, 2021 U.S. Dist. LEXIS 233142, at *16.

Finally, the availability of an Article 78 review further precludes Plaintiffs' due process claims.  Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge [the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).[9]

Given all of the notice and opportunities to be heard plaintiffs have admittedly been

---

[9] Indeed, Plaintiffs Maniscalco and Romero has already availed themselves of this remedy and have filed Article 78 proceedings in New York State Supreme Court challenging their placement on LWOP and possible termination as violative of their due process rights pursuant to § 3020-a.  See In the Matter of Ingrid Romero v. The Board of Education of the City School District of the City of New York, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty.); In the Matter of Rachel Maniscalco v. The Board of Education of the City School District of the City of New York, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.).

provided, and the availability of an Article 78 proceeding, they have been afforded all process due to them. Therefore, their procedural due process claims are not likely to succeed.

### 3) The Balance of Equities Does Not Tip in Plaintiffs' Favor and an Injunction is Not in the Public Interest

Even if Plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor. Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020). To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief. Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of DOE. The City's public health experts, who are charged with ensuring the safety and wellbeing of the City's residents, determined that the most effective means of containing the deadly COVID-19 pandemic in schools and keep school children safe was to mandate that school staff be vaccinated. The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the CDC's extolling vaccination as the primary strategy to stop the spread of COVID-19 and recommending that teachers, school administrators and other employees working in school building be vaccinated as soon as possible to help schools safely resume full operations. Further, and to that end, DOE is the largest school district in the country, with around one million students, hundreds of thousands of whom are not yet vaccinated. Simply put, the COH Order is fully premised on potentially saving lives, protecting public health, and promoting public safety as well as minimizing disruption to in-person classroom disruption. The harm DOE seeks to

prevent here, the death or serious illness of students and staff, and further disruption to the education of approximately one million students, is not compensable.

By contrast, Plaintiffs are not in danger of irreparable harm. Should they succeed in this litigation, they can be made whole and compensated. In light of the foregoing, it is plain that the equities tip heavily in favor of the DOE.

In examining the City COH Order in <u>Garland</u>, this Court found that both "the balance of equities and the public interest in protecting the public health disfavor the injunctive relief requested by Plaintiffs." <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142, at *24. In so doing the Court noted it had the "difficult task of balancing the needs of the vast majority against the concerns of a few, and here, the public health and safety concerns far outweigh the concerns of Plaintiffs." <u>Id.</u> Finally the Court held that

> All of us have been navigating unchartered waters over the course of the pandemic, including health and government officials, who have been tirelessly pursuing and implementing the best means to provide for the health and safety of all. Ultimately, it is up to local government, not the courts, to balance the competing public health and business interests, and here, the New York City government and the FDNY have done so in issuing and enforcing the vaccination requirement for employees of the FDNY.

<u>Id.</u> at *26 (internal quotations and alterations omitted).

As such, it is clear that the balance of the equities tips in DOE Defendants' favor and a denial of the requested injunction is in the public interest.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be

denied.

Dated:     New York, New York
           February 8, 2022

                         **GEORGIA M. PESTANA**
                         Corporation Counsel of the
                           City of New York
                         Attorney for Defendants DOE and Porter
                         100 Church Street, Room 2-100
                         New York, New York 10007
                         212-356-4015


                    By: _____/s/_____
                         Andrea O'Connor
                         Assistant Corporation Counsel