UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

NICOLE BROECKER, *et al.*, on behalf of themselves and all other similarly situated employees of the New York City Department of Education,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION, *et al.*,

Defendants.

----------------------------------------------------------------------X

**INDEX NO. 21-cv-6387**

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND IN REPLY TO THE OPPOSITION SUBMITTED BY THE DEFENDANT NEW YORK CITY DEPARTMENT OF EDUCATION**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

PLAINTIFFS' RESPONSES TO THE NYCDOE'S ARGUMENTS ..... 3

A. The Court Did Not Address Whether The Plaintiffs Are Entitled To Due Process Before Termination ..... 3

B. The Plaintiffs Can Show Irreparable Harm ..... 3

C. The Vaccine Mandate Is Not A Condition Of Employment ..... 4

1. NYCDOE's Changing Nomenclature ..... 4

2. The Comparison Between The COVID Vaccine Mandate With Residency Requirements And Licensing Requirements Supports The Plaintiffs' Argument ..... 6

3. COVID-19 Vaccine Mandate Not Type Of Condition Of Employment That Obviates Due Process ..... 7

D. The Arbitration Awards Violated N.Y. Civil Service Law § 209.3.(f) ..... 8

E. The Court Should Reject The NYCDOE's Argument That Post-Deprivation Article 78 Review Is The Proper Mechanism For Review ..... 9

F. Balance of the Equities ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## Cases

*Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990) ........ 6, 10

*Biden v Missouri*, __ U.S.__, 142 S Ct 647 (2022) ........ 1, 11

*BST Holdings, L.L.C. v OSHA*, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir 2021) ........ 5

*Communications Workers of Am., Dist. One v Nynex Corp.*, 898 F2d 887, 891 (2d Cir 1990) ........ 5

*Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex. 2022) ........ 11

*Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *26, n 18 (2d Cir 2021) ........ 4

*Richie v Coughlin*, 148 A.D.2d 178, 182-183 (3d Dept 1989) ........ 9

*Whelan v Colgan*, 602 F.2d 1060, 1062 (2d Cir 1979) ........ 5

## Statutes

N.Y. Civil Service Law § 209.3.(f) ........ 10

N.Y. Education Law § 2568 ........ 7

N.Y. Education Law § 2573.9. ........ 6

N.Y. Education Law § 3001 ........ 9

N.Y. Education Law § 3001.2. ........ 9

N.Y. Education Law § 3012.2(a) ........ 2

N.Y. Education Law § 913 ........ 7

N.Y. Public Officers Law § 3.2 ........ 9

**Other Authorities**

Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections | medRxiv (visited February 9, 2022) .......... 6

*https://patch.com/new-york/new-york-city/nypd-officers-should-live-nyc-mayor-says* (visited February 9, 2022) .......... 7

https://thelawdictionary.org/?s=insubordination (visited February 9, 2022) .......... 2

*https://www.bloomberg.com/news/articles/2022-01-13/nyc-mayor-to-consider-temporary-remote-option-for-schools* .......... 6

Natural immunity gets another boost from two new U.S. studies – ClarkCountyToday.com (visited February 9, 2022) .......... 6

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs in further support of their Motion seeking a Temporary Restraining Order and Preliminary Injunction enjoining the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") from terminating forty-three Plaintiffs without due process afforded to them by the Fourteenth Amendment to the United States Constitution.

The COVID-19 pandemic did not grant the Commissioner of the New York City Department of Health and Mental Hygiene ("DOH") unlimited and universal power and authority. *See, Biden v Missouri*, __ U.S.__, 142 S Ct 647 (2022) (opining "[t]he challenges posed by a global pandemic do not allow a federal agency to exercise power that Congress has not conferred upon it. At the same time, such unprecedented circumstances provide no grounds for limiting the exercise of authorities the agency has long been recognized to have.").

The NYCDOE argues that the "the COH Order creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated." **Docket Entry No. 79**, at page 1.

Yet, the NYCDOE does not identify any statutory provision, administrative code provision, New York City Charter provision, or any other legal authority that granted to the Commissioner of the DOH the authority to create a condition employment for the NYCDOE. By failing to identify any legal authority for the Commissioner of the DOH to create a new condition of employment unilaterally, the NYCDOE tacitly acknowledges that the Commissioner of the DOH had no authority to create a condition of employment for NYCDOE employees.

The Plaintiffs are not questioning the authority of the Commissioner of DOH to issue the vaccine, but the NYCDOE is taking the mandate to the additional step that is unsupported by the language of the Commissioner's Order or any statutory or administrative authority. The NYCDOE is converting the Commissioner's Order into grounds for terminating forty-three Plaintiffs without establishing how the Commissioner's Order morphed into a condition of employment without any statutory or administrative authority or any language in the Commissioner's Order stating that it is a condition of employment.

The NYCDOE's citation to New York State Supreme Court decisions does not relieve the NYCDOE from setting forth the statutory or administrative authority it relies upon to convert the Commissioner's Order into a new condition of employment for all current NYCDOE employees.

Despite the NYCDOE's argument that the mandate is a condition of employment, the NYCDOE actually argues that the forty-three Plaintiffs facing termination "have been afforded repeated notice of the COH Order's requirement and have been given **five** months to come into compliance with it." **Docket Entry No. 79**, at page 3 (emphasis in original). In addition, the NYCDOE states that the Plaintiffs are being terminated "by virtue of Plaintiffs' unwillingness to comply with the COH Order, their unwillingness to seek an accommodation in connection with the COH Order and their unwillingness to opt for any of the separation options offered…they cannot continue their public employment with the DOE. **Docket Entry No. 79**, at pages 20-21.

In other words, the Plaintiffs are being terminated for not coming into compliance with a lawful directive to become vaccinated, which by definition is insubordination. Insubordination is one of the few statutory grounds for terminating a tenured employee under N.Y. Education Law. *See,* N.Y. Education Law § 3012.2(a).

Insubordination is defined as "to have a lack of respect or the refusing to obey orders of a person in authority." https://thelawdictionary.org/?s=insubordination (visited February 9, 2022).

What the Plaintiffs are being terminated for is insubordination and under New York law as tenured professionals, they are entitled to the due process procedures set forth in N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, and their collective bargaining agreements. *See,* N.Y. Education Law § 3012.2(a).

The NYCDOE's arguments to the contrary have no justification in the law and there is no legal authority for the Commissioner of the DOH to create a new condition of employment that impacts NYCDOE employees. Just by repeating the phrase "condition of employment" does not make it so. There needs to be a legal basis for the creation of such a condition of employment. The NYCDOE has not set forth such a basis because none exist.

Accordingly, the Plaintiffs' Motion should be granted and the NYCDOE should be restrained and enjoined from terminating the Plaintiffs' employment without complying with due process.

## PLAINTIFFS' RESPONSES TO THE NYCDOE'S ARGUMENTS

### A. The Court Did Not Address Whether The Plaintiffs Are Entitled To Due Process Before Termination

The NYCDOE makes an argument that this Court previously addressed the issue of the NYCDOE's entitlement to terminate the Plaintiffs without due process, but that simply is unsupported by the Court's own decision and the subsequent conduct of the parties.

This Court specifically stated at Footnote 5 in its November 24, 2021 Memorandum and Order that while the NYCDOE was arguing that the Plaintiffs' separation was not discipline but rather ineligibility for employment, the Court was not going to address the issue in its decision. The Court clearly and unequivocally stated "the parties have requested, and the Court has granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation are being "disciplined" or subject to a legitimate condition of employment, and thus the Court will not reach that issue here." **Docket Entry No. 33,** at Footnote 5.

Then, on November 30, 2021 and December 7, 2021, the Plaintiffs, the UFT, and the NYCDOE submitted the supplemental briefing as directed by the Court. *See,* **Docket Entry Nos. 34, 35**, and **37**.

The Court did not address the issue in this Motion in its prior decision, namely whether the Plaintiffs' termination is disciplinary, and if it is disciplinary, entitling the Plaintiffs to N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, and/or their collective bargaining agreements due process procedures or whether the NYCDOE can unilaterally terminate the Plaintiffs because the vaccine is a condition of employment.

Since the Court did not address this issue in its prior decision, the NYCDOE's argument fails, and the matter is now ripe for this Court's determination.

### B. The Plaintiffs Can Show Irreparable Harm

Since this Court issued its decision in November 2021, several Courts have adopted the irreparable harm standard that requiring a jab or lose one's job is irreparable harm.

The Second Circuit in *Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *26, n 18 (2d Cir 2021) (emphasis in original) recognized that the loss of employment does not *usually* constitute

irreparable injury, however, the Court cited to *BST Holdings, L.L.C. v OSHA*, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir 2021), for the proposition that irreparable harm can be found where reluctant recipients were put to a choice between their job(s) and their jab(s).

The citation to *BST Holdings, LLC* by the Second Circuit raises the specter that in this Circuit, the choice between a job and a jab is considered irreparable harm.

This is exactly what the Plaintiffs are facing – if they do not get the vaccine they are going to be terminated. The holding in *BST Holdings, LLC* and its acceptance and recognition by the Second Circuit in *Kane* provides the legal basis for the Plaintiffs' irreparable injury such that this Court should grant the Plaintiffs an injunction.

In addition, the Plaintiffs have produced uncontested Declarations that the Plaintiffs risk loss of health insurance benefits which will adversely affect their medical conditions and those of their family members. *See,* **Docket Entries 76-2; 76-3; 76-4; 76-5**.

The Second Circuit has repeatedly held that the threat of the loss of health benefits constitutes irreparable injury. *See, Communications Workers of Am., Dist. One v Nynex Corp.*, 898 F2d 887, 891 (2d Cir 1990), (holding "the threat of termination of medical benefits to striking workers has been held to constitute irreparable harm."); *Whelan v Colgan*, 602 F.2d 1060, 1062 (2d Cir 1979), (holding "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury.").

The Plaintiff can satisfy the irreparable injury standard.

## C. The Vaccine Mandate Is Not A Condition Of Employment

### 1. NYCDOE's Changing Nomenclature

The NYCDOE makes a blanket, unsupported statement that the Commissioner's Order is a condition of employment.

The NYCDOE admits that the vaccine mandate is being "imposed by DOE" but it is also not a qualification for employment. *See,* **Docket No. 79**, at page 24. Yet, in the past, the NYCDOE has argued that the due process procedures in N.Y. Education Law, N.Y. Civil Service Law, or in collective bargaining agreements requiring the NYCDOE to pursue when an employee commits

misconduct, is different from qualifications of employment which are not subject to due process procedures. *See,* **Docket No. 37**, at pages 6-7.

The NYCDOE previously called the vaccine mandate a qualification of employment, stating that the vaccine is a "qualification of their DOE employment." **Docket Entry No. 37**, at page 7.

However, faced with the statutory authority in N.Y. Education Law § 2573.9. that authorizes only a Board of Education (in the case of the NYCDOE, the Panel for Educational Policy) to create a new qualification for employment, the NYCDOE has changed its argument (and its nomenclature) and now admits that the vaccine mandate is not a qualification of employment because the Panel for Educational Policy has not approved it to be a qualification. This change in position reflects that the NYCDOE is trying to fit its mandate into a legal phrase so that the NYCDOE can terminate the Plaintiffs without due process in violation of their constitutional rights.

The NYCDOE also ignores the fact that it did not negotiate the new condition of employment with its labor unions. The UFT and CSA both disagree that the Arbitration Awards grant to the NYCDOE *carte blanche* termination authority to non-compliant employees of the NYCDOE. *See,* **Docket Entry No. 77**.

The NYCDOE has violated the Taylor Law when it failed to collectively bargain with the NYCDOE's unions a new condition of employment. "The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a strong and sweeping policy of the State." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990) (internal quotation marks omitted).

The NYCDOE does not explain how it can, as it says "impose[ ]" a new condition of employment upon the employees of the NYCDOE without collectively bargaining the issue at the bargaining table. *See,* **Docket Entry No. 79**, at page 24.

Finally, the NYCDOE changed its argument in another significant way. The NYCDOE had previously argued that the unvaccinated Plaintiffs "lack fitness [to perform their job functions] under the COH Order." **Docket Entry No. 18**, at page 16.

Now, when faced with the fact that N.Y. Education Law § 913 and N.Y. Education Law § 2568 both provide due process rights to NYCDOE employees who the NYCDOE believes is unfit to perform their duties, the NYCDOE again changes its nomenclature. At one point in this Action,

the NYCDOE used the word "unfit" to describe the unvaccinated NYCDOE employees. The phrase has a statutory meaning, but because it does not fit within the NYCDOE's paradigm, the NYCDOE scoffs at the argument and does not address the statutory rights that a purported unfit NYCDOE employee has under N.Y. Education Law.[1]

While the NCDOE dismisses the idea, it is possible that a fitness for duty examination of the 43 Plaintiffs may show that they have natural immunity, which, as new studies show, may be better than a vaccine. The NYCDOE has a myopic view of COVID-19 prevention, even though the recent Omicron variant showed that the vaccine did not prevent infection in NYCDOE schools. *See* *https://www.bloomberg.com/news/articles/2022-01-13/nyc-mayor-to-consider-temporary-remote-option-for-schools* (visited February 9, 2022) (identifying over 1,000 staff members (who were presumably vaccinated) were infected with COVID-19).

In any event, the Plaintiffs who will be terminated without due process are having their fundamental constitutional rights violated. The NYCDOE cannot decide whether the vaccine mandate is a qualification (**Docket Entry No 37**, at page 4), fitness for duty matter (**Docket Entry No. 18**, at page 16), or a condition of employment (**Docket Entry No. 79**, at page 1). Each and every one of the NYCDOE's arguments fail entitling the Plaintiffs to due process rights in accordance with N.Y. Education Law, N.Y. Civil Service Law or the collective bargaining agreements. Accordingly, the Court should grant the Plaintiffs an injunction.

2. The Comparison Between The COVID Vaccine Mandate With Residency Requirements And Licensing Requirements Supports The Plaintiffs' Argument

The NYCDOE compares the vaccine mandate to a residency requirement or a licensing requirement whereby the NYCDOE can terminate an employee without due process if the employee does not comply with the residency requirement or the licensing requirement. However, there is a very significant distinction between the vaccine mandate and the residency/licensing

[1] It is important to note that the NYCDOE's citation to studies relating to natural immunity are contradicted by other studies that support the natural immunity over vaccinations. *See*, Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections | medRxiv (visited February 9, 2022) (stating that the study demonstrated that natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity.); Natural immunity gets another boost from two new U.S. studies – ClarkCountyToday.com (visited February 9, 2022).

requirements – a residency requirement and/or a licensing requirement are imposed pursuant to statute or by legislative acts, not by an Order from a Commissioner of Health who has no legal authority to impose a new condition of employment upon NYCDOE employees.

In January 2022, newly-sworn-in Mayor Eric Adams endorsed a change in the **law** that would require New York City Police Officers to reside in New York City. *See, https://patch.com/new-york/new-york-city/nypd-officers-should-live-nyc-mayor-says* (visited February 9, 2022). But Mayor Adams cannot direct the NYPD Commissioner to execute an Order to change the residency requirement. Only the State Legislature can make the change. *See,* N.Y. Public Officer Law § 3.2.

Similarly, when the NYCDOE argues that a licensing requirement is similar to the vaccine mandate, N.Y. Education Law § 3001 requires the "possession of a teacher's certificate" in order for a teacher to teach in the public schools in New York. N.Y. Education Law § 3001.2.

While the Commissioner of the DOH had the legal authority to impose a COVID-19 mandate, he did not have any authority to create a new condition of employment for the employees of the NYCDOE. The NYCDOE does not cite a single statute, administrative code section, or the New York City Charter provision that granted the Commissioner of the DOH authority to create the condition of employment. Unlike the statutory authority regarding residency (N.Y. Public Officers Law § 3.2) or licensing (N.Y. Education Law § 3001), the entity that imposed such a condition of employment or qualification (the State Legislature) had the legal authority to impose it, unlike the Commissioner of the DOH and the COVID-19 vaccine mandate.

3. COVID-19 Vaccine Mandate Not Type Of Condition Of Employment That Obviates Due Process

The NYCDOE has had discretion and has exercised that discretion whether to grant accommodations to NYCDOE employees for religious or medical reasons. Unlike a licensing requirement for teachers, where the State statute requires a license to teach in New York (N.Y. Education Law § 3001), where the NYCDOE has no authority to retainer or hire an unlicensed teacher, the NYCDOE has discretion and exercised that discretion to determine whether a person who is unvaccinated can continue to be employed by the NYCDOE.

New York State Courts have held that when the public employer has discretion regarding conditions of employment, the non-compliant employee must be provided due process before termination. *See, Richie v Coughlin*, 148 A.D.2d 178, 182-183 (3d Dept 1989).

The fact that some of the NYCDOE employees do not have to comply with the Commissioner's Order, but others who were denied accommodations and therefore must comply makes the decision to terminate the forty-three Plaintiffs a discretionary decision. Since it is discretionary and not mandatory, the Plaintiffs should be granted due process pursuant to N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or pursuant to a collective bargaining agreement.

Finally, since the Commissioner's Order does not state that the vaccine is a condition of employment or that if the vaccine is not taken by a NYCDOE employee that employee is subject to termination, the NYCDOE must provide due process to those it is choosing to terminate for non-compliance, *i.e.*, insubordination.

The Court should grant the Plaintiffs an injunction.

**D. The Arbitration Awards Violated N.Y. Civil Service Law § 209.3.(f)**

The NYCDOE relies upon the Arbitration Awards to argue that the Plaintiffs received all of the due process they were entitled to under the Constitution. *See,* **Docket Entry No. 79**, at page 28.

The Arbitration Awards were impact bargaining "binding" arbitration awards that violated N.Y. Civil Service Law § 209.3.(f), which states "where the public employer is a school district" there is no binding arbitration or any legal mechanism for the school district to impose a resolution in impact bargaining.

In fact, the New York State Court of Appeals recognized that there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations…." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671.

The NYCDOE's reliance upon illegal Arbitration Awards to support its argument that the Plaintiffs have received all the due process they are entitled to receive is a way for the NYCDOE to violate the Plaintiffs' due process rights. The Arbitration Award, arrived out through a

conspiracy between the NYCDOE and its unions and the Arbitrator in order to further the NYCDOE's mission to terminate the Plaintiffs without due process must be rejected by the Court.

Since there was no statutory authority for the NYCDOE and its unions to permit an "Arbitrator" to resolve a school district impasse bargaining dispute, the reliance upon the Arbitration Awards to provide due process to the Plaintiffs must be rejected by the Court.

**E. The Court Should Reject The NYCDOE's Argument That Post-Deprivation Article 78 Review Is The Proper Mechanism For Review**

The NYCDOE argues that the Plaintiffs' Motion should be denied because the Plaintiffs can seek N.Y. CPLR Article 78 review post-termination. However, the NYCDOE does not explain why this Court should not determine the issues in this Motion instead of leaving it to a post-termination determination.

This Court should not force the Plaintiffs to file individual N.Y. CPLR Article 78 proceedings in New York State Courts after termination when the issues are ripe for determination pre-termination before this Court. *See, Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex. 2022) (holding "requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to 'to bet the farm by taking the violative action before testing the validity of the law.' *Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010).").

The Court should reject the NYCDOE's argument that a N.Y. CPLR Article 78 proceeding is a substitute for a determination in this proceeding.

**F. Balance of the Equities**

As the United States Supreme Court made clear "[t]he challenges posed by a global pandemic do not allow a federal agency to exercise power that Congress has not conferred upon it. At the same time, such unprecedented circumstances provide no grounds for limiting the exercise of authorities the agency has long been recognized to have." *Biden v Missouri*, __ U.S.__, 142 S Ct 647 .

The same is true for State and City agencies. The Commissioner of the DOH has no authority, legally or administratively, to impose a new condition of employment upon NYCDOE

employees. The NYCDOE has not identified a source of law that granted the Commissioner such authority.

Since the Commissioner had no authority to unilaterally create a new condition of employment and by using the newly created condition of employment to violate the Plaintiffs' constitutional rights to due process, the balance of the equities balances in favor of the Plaintiffs because the Plaintiffs should not suffer a deprivation of their constitutional rights when the Commissioner did not have the authority to create a new condition of employment on his own.

As Governor Hochul recognized on February 9, 2022, New York is no longer in a crisis with COVID and has lifted the New York State indoor mask mandate. This decision by the Governor reveals that the State and City are no longer in a crisis situation and the conditions regarding COVID are improving. To continue to treat COVID as an imminent crisis ignores reality and using COVID to violate the constitutional rights of the Plaintiffs is improper, illegal, and unconstitutional.

The equities balance in favor of the Plaintiffs.

## CONCLUSION

For the reasons argued in this Reply Memorandum of Law and in the papers submitted in support of the Motion, the Plaintiffs' Motion should be granted and the NYCDOE should be barred from terminating the Plaintiffs without due process afforded to them by N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, and the collective bargaining agreements with the NYCDOE.

Dated: Carle Place, New York
February 10, 2022

Respectfully submitted

THE SCHER LAW FIRM, LLP

Austin Graff, Esq.
*Attorneys for the Plaintiffs*
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 7460-5040