# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L. SCHER**

AUSTIN R. GRAFF*

TEL: 516-746-5040

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1959-2012)

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

February 24, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Broecker, *et al.* v. New York City Department of Education, *et al.*
Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs in the above-referenced Action. This letter shall serve as the Plaintiffs' response to the pre-motion conference letter submitted by the Defendants Martin F. Scheinman ("Scheinman"), Scheinman Arbitration and Mediation Services ("SAMS") and Scheinman Arbitration and Mediation Services, LLC ("SAMS, LLC") (collectiely referred to as "Scheinman Defendants") **(Docket No. 93)** in support of their application for a Motions to Dismiss.

But-for Scheinman's "Arbitration Award" there would have been no legal or contractual grounds for the Defendant New York City Department of Education ("NYCDOE") to place the Plaintiffs on leave without pay for not taking a COVID-19 vaccine or even terminating the Plaintiffs' employment for not taking a COVID-19 vaccine.

Despite attempts by the Defendants NYCDOE, the United Federation of Teachers ("UFT") and the Defendant Council of School Supervisors & Administrators ("CSA") to try and convince this Court that the "agreement" between the NYCDOE and the UFT and the NYCDOE and the CSA to allow Scheinman to impose an arbitration award on how the parties resolved the impact of the COVID-19 vaccine had a basis in law, the Scheinman Defendants' February 23, 2022 letter reveals that there was no legal basis and the attempt by the Scheinman Defendants to torture the language of N.Y. Civil Service Law § 209 to find a legal rationale reveals the conspiracy between the Scheinman Defendants, the NYCDOE, the UFT, and the CSA.

The Scheinman Defendants purposefully fail to cite or quote N.Y. Civil Service Law §209.3.(f) that specifically bars the resolution of an impasse between a school district and its unions to be resolved through anything but negotiations between the parties.

As the New York Court of Appeals opined, there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations...." *Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 671 (1990).

So, since the New York Court of Appeals has determined that there is no statutory authority that creates a final impasse resolution mechanism in the case of school district negotiations, the "Arbitration Award" that was the NYCDOE's, the UFT's, and the CSA's mechanism to conspire with the Scheinman Defendants to impose a system that ultimately led to the deprivation of the Plaintiffs' constitutional rights to their property (their pay) and their due process was illegal, unauthorized, and improper. The UFT and the CSA ceded their authority to negotiate an impasse resolution with the NYCDOE to Scheinman who was just a mediator appointed by PERB. *See,* **Docket Entry No. 21-2**.

The Scheinman Defendants argue that the Taylor Law grants the parties statutory authority to choose to mutually agree to binding arbitration by citing to *Margiotta v. Kaye*, 283 F.Supp.2d 857, 864-865 (E.D.N.Y. 2003), but in *Margiotta*, the Court rejected mandatory binding arbitration to resolve impasse in negotiations between the State and the Court Officers' union and held:

> [t]he impasse procedures in N.Y. Civil Service Law § 209 is the most detailed of the Taylor Law's several provisions. To ensure the "orderly and uninterrupted operations and functions of government," the legislature deemed it important to have a compulsory arbitration process in place to resolve labor disputes in certain areas. N.Y. Civil Service Law § 200. The legislature specifically determined that impasses by police officers, fire fighters, and other miscellaneous public safety employees, and employees of the transit authority should be resolved by compulsory arbitration. N.Y. Civil Service Law §§ 209.4, 209.5.

Specifically excluded from compulsory arbitration is impasse disputes regarding school districts. *See*, N.Y. Civil Service Law §209.3.(f).

The Scheinman Defendants' argument that PERB's decision should be accorded deference and therefore, the "Arbitration Award" had statutory or at least administrative authority makes no sense as a matter of fact. Scheinman was not appointed as an arbitrator by PERB and PERB did not impose mandatory arbitration with Scheinman as the arbitrator.

The documentary evidence submitted by the UFT to this Court is that PERB appointed Scheinman as "mediator". *See*, **Docket Entry No. 21-2**. And it was the UFT and the NYCDOE who "agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce." **Docket Entry No. 21-3**. PERB was not involved in the decision to have Scheinman act as arbitrator to impose a binding arbitration award. It was the UFT and the NYCDOE who conspired with Scheinman to have Scheinman impose a binding arbitration award upon the Plaintiffs without any statutory authority to do so.

The binding arbitration award was issued without any statutory authority, which directly led to the violation of the Plaintiffs' constitutional rights in their pay (property interest) and due process. The Scheinman Defendants knew that there was no statutory authority to issue the Arbitration Award and when the Scheinman Defendants conspired with the NYCDOE and the UFT and then the NYCDOE and the CSA to issue awards that violated N.Y. Civil Service Law § 209.3.(f)., the Scheinman Defendants became liable for the Plaintiffs' damages for the violation of their constitutional rights.

There is nothing vague about the Plaintiffs' allegations against the Scheinman Defendants. Scheinman, in an overt act, conspired with the NYCDOE and the UFT and then the NYCDOE and the CSA to impose Arbitration Awards that he had no legal or contractual authority to impose. The Arbitration Awards were relied upon by the NYCDOE (a State actor) to suspend the Plaintiffs without pay when they did not comply with the vaccine mandate and then, on February 11, 2022 to terminate the employment of 43 Plaintiffs because they did not comply with the vaccine mandate. Without the Scheinman Defendants' Arbitration Awards, the NYCDOE could not violate the Plaintiffs' constitutional rights.

Finally, the Scheinman Defendant argue that the Arbitration Awards were within the scope of his role as arbitrator and therefore is entitled to absolute immunity.

First, Scheinman was not appointed by PERB to be an arbitrator, but to be the parties' mediator. When he agreed to be an arbitrator who had no statutory, administrative, or contractual authority to issue the Arbitration Award, Scheinman acted outside the scope of his appointment as a mediator. *See*, **Docket Entry No. 21-2**. Therefore the Scheinman Defendants are not entitled to absolute immunity.

Second, as an Arbitrator it is inappropriate to insert himself into the appeal process regarding his own award. Scheinman appointed SAMS to be the appeal board for the NYCDOE's denials of UFT members' and CSA members' requests for accommodations. *See*, **Docket Entry No. 47-5**, at page 10;

**Docket Entry No. 47-6**, at pages 6-8. While an Arbitrator may keep jurisdiction to enforce the award, Scheinman actually created a self-dealing, money-making process for himself and SAMS to continue his involvement in the determination as to whether the Plaintiffs and other similarly situated NYCDOE employees were to receive accommodations for religious or medical conditions.

"[A]rbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process." *Austern v Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). However, these Arbitration Awards were not based upon any contract, but were issued in violation of N.Y. Civil Service Law § 209 and the Taylor Law and the manner in which Scheinman wove himself and his companies into the appeal process was not a determination within the scope of the arbitral process.

Scheinman did not just render an arbitration decision, SAMS became an integral part of the decision-making process regarding whether religious or medical exemptions/accommodations should be granted. Scheinman inserted SAMS directly into the process by which the Plaintiffs were denied due process. The complete control over the appellate process by SAMS defeats the Scheinman Defendants' absolute immunity argument. *See,* **Docket Entry No. 47-6**, at page 9 (stating "[t]he process set forth, herein, [SAMS being the sole appellate review of denials of accommodation requests] shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school.").

Additionally, since the Scheinman Defendants were the sole appellate review of the NYCDOE's denial of accommodations, the Scheinman Defendants became State actors. When determining the appeals of the Plaintiffs who were denied accommodations, the Scheinman Defendants were acting under color of State law with the actual authority granted to it by the NYCDOE to conduct appellate review of the NYCDOE's initial determinations.

Finally, Scheinman's neutrality must be questioned. The vaccine mandate was imposed by former Mayor Bill de Blasio. Scheinman was a prolific fundraiser for Mayor de Blasio, going so far as hosting a fundraiser for the Mayor's re-election campaign in his own home. *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio. There was certainly a conflict of interest for the Mayor's fundraiser to be the "arbitrator" to determine the impact of Mayor de Blasio's vaccine mandate on the NYCDOE's employees. *See,* https://www.ny1.com/nyc/all-boroughs/news/2022/02/04/adams-vaccine-mandate-unvaccinated-city-workers (visited February 24, 2022) (reporting that Mayor Eric Adams saying "he would stick with former Mayor de Blasio's COVID-19 vaccine mandate timeline…."). But-for Scheinman's sole determinations (**Docket Entry No. 47-5**, at page 6 (stating: "While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone.")), the NYCDOE and Mayor de Blasio could not have imposed such a harsh penalty upon those NYCDOE employees who did not take a COVID-19 vaccine, including termination of those employees. Scheinman's close relationship with Mayor DeBlasio raises serious concerns and issues regarding Scheinman's neutrality.

Accordingly, the Plaintiffs have stated a plausible claim of § 1983 violations and conspiracy by the Scheinman Defendants and therefore, a Motion to Dismiss would be fruitless.

With respect to the briefing schedule, the Plaintiffs want a short briefing schedule. The only issue is that I will be away from April 18 through April 21, but I anticipate having the Plaintiffs' opposition to the Motions filed by then.

The Plaintiffs thank the Court for its consideration of this matter.

Respectfully submitted,
THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)