Index No. 21 Civ 6387 (KAM)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICOLE BROECKER, et al., on behalf of themselves and all other similarly situated employees of the New York City Department of Education,

                                                    Plaintiffs,

                        -against-

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

                                                    Defendants.

## MEMORANDUM OF LAW

### HON. SYLVIA O. HINDS-RADIX

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-100
New York, New York 10007-2601

*Of Counsel:*   Andrea O'Connor
*Tel:*  (212) 356-4015
*Email:* aoconnor@law.nyc.gov

Matter No. 2021-038953

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT

     POINT I

          PLAINTIFFS' DUE PROCESS CLAIMS ARE
          BARRED BY THE LAW OF THE CASE
          DOCTRINE ...................................................................................6

     POINT II

          PLAINTIFFS' DUE PROCESS CLAIMS MUST
          BE DISMISSED ....................................................................... 11

          A.   Applicable Law ...............................................................11

          B.   Plaintiffs' Placement on LWOP and/or
              Terminations Is Not Discipline .........................................12

          C.   Plaintiffs' Members Have Been Afforded All
              Process Owed to Them.....................................................15

     POINT III

          PLAINTIFFS' CONSPIRACY CLAIMS MUST BE
          DISMISSED ........................................................................... 23

     POINT IV

          PLAINTIFFS' CLASS CLAIMS MUST BE
          DISMISSED ........................................................................... 24

CONCLUSION............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)........................................................................................24

Beck-Nichols v. Bianco,
   20 N.Y.3d 540 (2013) ...............................................................................14

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)....................................................................................24

Cafeteria Workers v. McElroy,
   367 U.S. 886 (1961)....................................................................................17

Capul v. City of N.Y.,
   No. 19 CV 4313 (KPF),
   2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27, 2020),
   aff'd 832 F. App'x. 766 (2d Cir. 2021)......................................................21

Carr v New York State Dep't of Transportation,
   70 A.D.3d 1110,
   lv to app. den., 14 N.Y.3d 709 (2010) ......................................................14

City School District v. McGraham,
   17 N.Y.3d 917 (2011) ...............................................................................14

Clarke v. BOE, et al.,
   Index No. 160787/2021 ...............................................................................9

Cleveland Bd. of Educ. v. Loudermill,
   470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).........................16

Cornejo v. Bell,
   592 F.3d 121 (2d Cir. 2010).......................................................................11

Cravatta v New York State Dep't of Transportation,
   77 A.D.3d 1399 (4th Dep't 2010) ..............................................................14

Dechberry v. N.Y.C. Fire Dep't,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) ......................................................11

Dwares v. N.Y.C.,
   985 F.2d 94 (2d Cir. 1993).........................................................................23

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
   940 F.2d 775 (2d Cir. 1991).................................................................19, 21

**Cases**                                                                                                    **Pages**

Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) .........................................................................................14, 16

Garland v. N.Y.C. Fire Dep't,
    No. 21 CV 6586 (KAM)(CLP),
    2021 U.S. Dist. LEXIS 233142
    (E.D.N.Y. Dec. 6, 2021) .....................................................9, 12, 14, 16, 20, 21, 22

Giammarino v. BOE, et al.,
    Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty) .....................................................9

Hellenic Am. Neighborhood Action Comm. v. City of New York,
    101 F.3d 877 (2d Cir. 1996)..................................................................................22

Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.,
    No. 21 CV 00038 (MKV)
    2021 U.S. Dist. LEXIS 27205 (S.D.N.Y. Feb. 12, 2021) .......................................8

Hogan v. Fischer,
    738 F.3d 509 (2d Cir. 2013)..................................................................................24

In re Initial Pub. Offering Sec. Litig.,
    214 F.R.D. 117 (S.D.N.Y. 2002) ..........................................................................24

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)....................................................................................11

Johnson v. Holder,
    564 F.3d 95 (2d Cir. 2009).....................................................................................8

Johnston v. Tn. of Orangetown,
    562 F. App'x 39 (2d Cir. 2014) .............................................................................23

Lanzer v. BOE, et al.,
    Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ..............................................10, 12

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001)..................................................................................23

MacFall v. City of Rochester,
    495 F. App'x 158 (2d Cir. 2012) ...........................................................................12

Maniscalco v. BOE, et al.,
    Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty) ...............................9, 12, 13, 20, 21

**Cases**                                                                                              **Pages**

Marciano v. De Blasio,
    No. 21-cv-10752 (JSR),
    2022 U.S. Dist. LEXIS 41151 (S.D.N.Y. Mar. 8, 2022) ...................................9, 13, 19, 21, 22

Martz v. Inc. Vill. of Valley Stream,
    22 F.3d 26 (2d Cir. 1994) ........................................................................................12

Mathews v. Eldridge,
    424 U.S. 319 (1976)..........................................................................................16, 21

Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,
    631 F.3d 57 (2d Cir. 2011)........................................................................................24

McCray v. Patrolman N.A. Caparco,
    761 F. App'x 27 (2d Cir. 2019) ...............................................................................23

McPherson v. New York City Dep't of Educ.,
    457 F.3d 211 (2d Cir. 2006)....................................................................................12

Morrissey v. Brewer,
    408 U.S. 471 (1972)................................................................................................17

Musacchio v. United States,
    577 U.S. 237 (2016)..................................................................................................8

Naliboff v. Davis,
    133 A.D.2d 632 (2d Dep't 1987),
    lv to app. den., 71 N.Y.2d 805 (1988) ....................................................................15

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
New York, et al.,
    Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.) .....................................................5

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ..............................................................................................14

O'Connor v. Pierson,
    426 F.3d 187 (2d Cir. 2005)...............................................................................14, 19

O'Reilly v. Bd. of Educ.,
    Index No. 161040/2021,
    2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan. 20, 2022) ................................ 9-10, 12, 13

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987)....................................................................................16

**Cases**                                                                                                                                    **Pages**

Romero v. BOE, et al.,
    Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) ...........................................................10, 12

Russell v. Coughlin,
    910 F.2d 75 (2d Cir. 1990)................................................................................16

Salas v. BOE, et al.,
    Index No. 160821/2021 ..................................................................................9

Schrimer v. Town of Harrison,
    98 Civ. 2582 (AGS),
    1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999).......................................................15

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006).............................................................................23

Sorano v. City of Yonkers,
    37 A.D.3d 839 (2d Dep't 2007).........................................................................16

Tessler v. Paterson,
    768 F. Supp. 2d 661 (S.D.N.Y. 2011)..................................................................23

U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.,
    No. 15 CV 4961 (LTS)(JLC),
    2020 U.S. Dist. LEXIS 87534 (S.D.N.Y. May 19, 2020) ......................................10

United States v. Quintieri,
    306 F.3d 1217 (2d Cir. 2002)............................................................................8

United States v. Tenzer,
    213 F.3d 34 (2d Cir. 2000)................................................................................8

Webb v. Goord,
    340 F.3d 105 (2d Cir. 2003).............................................................................23

Zinermon v. Burch,
    494 U.S. 113 (1990)......................................................................................11

**Statutes**

42 U.S.C. § 1983.................................................................................................23, 24

Fed. R. Civ. P. 12(b)(6).........................................................................................24

N.Y.C. Admin. Code § 12-120 ...............................................................................16

**Statutes**                                                                                    **Pages**

N.Y. Civ. Serv. Law § 75..................................................................2, 7, 12, 14, 15, 16, 22

N.Y. Educ. Law § 2509(2)........................................................................................14

N.Y. Educ. Law § 3020 ...........................................................................................14

N.Y. Educ. Law § 3020-a ..........................................................2, 7, 9, 10, 12, 13, 14

## PRELIMINARY STATEMENT

On August 24, 2021, the former Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dave A. Chokshi, issued a Commissioner's Order ("COH Order" or "Vaccination Mandate") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021. The COH Order is unequivocal. It requires all DOE employees, both current and prospective, to be vaccinated. The COH Order, and the nearly identical order issued by the DOHMH Commissioner applicable to employees of the City of New York ("City Order"), has been repeatedly upheld as lawful by every Court that has considered it. Thus, the COH Order is unassailable and legally sound.

Critical to this case is that the COH Order creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated. The DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent an exemption or accommodation required by law, to perform work for the DOE. On this point, the law of the case is clear. This Court has unequivocally held that "the Vaccination Mandate is a lawful condition of employment." See Dkt. No. 89 at 21.

The law of this case – as well as holdings in similar cases brought in the Southern District of New York and New York Supreme Court – is likewise clear that because vaccination against COVID-19 is a condition of employment, non-compliant employees can be terminated based on their failure to satisfy this condition without invoking applicable disciplinary procedures.

Despite these clear holdings, Plaintiffs, in their Amended Complaint, continue to press legal theories that have been considered and wholly rejected by this Court as well as every other court that has considered the same or similar arguments. Here, plaintiffs are tenured DOE employees who failed to comply with the COH Order and now challenge the consequence of that

non-compliance. Plaintiffs commenced this action on behalf of themselves and a putative class alleging, among other things, that DOE Defendants: (1) violated their procedural due process rights guaranteed by their collective bargaining agreements, New York Education Law Section 3020-a, New York Civil Service Law Section 75 and the Fourteenth Amendment by "suspending" them without pay and subjecting them to potential separation; and (2) conspired to deprive plaintiffs of these due process rights. For the reasons set forth below, these claims are without merit and should be dismissed.

## STATEMENT OF FACTS

In an effort to avoid restating the same facts that have been before the Court in connection with Plaintiffs' two applications for injunctive relief in this case, DOE Defendants respectfully refer the Court to the Statements of Facts contained in their: (1) Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated November 19, 2021, see ECF Dkt. No. 18; and (2) Memorandum of Law in Opposition to Plaintiffs' and Union Defendants' Motion for a Preliminary Injunction, dated February 11, 2022, see ECF Dkt. No. 86.

Briefly, however, on August 24, 2021, former Mayor de Blasio and former Commissioner Chokshi announced that DOE employees would be subject to a "vaccine only" mandate, as opposed to a vaccination-or-testing requirement, as described thereafter in the COH Order. See COH Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf (last accessed on March 20, 2022). Under this policy, by September 27, 2021, DOE employees were required to submit proof that they were fully vaccinated; or received a single dose vaccine, or the second dose of a two-dose vaccine; or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter. Id.

On September 10, 2021, Defendant UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the COH Order. See O'Connor Decl., dated Nov. 19, 2021, Exh. A, (hereafter "Impact Arbitration Decision"), at 4. PERB then appointed an arbitrator and several days of discussions were held. Id. On September 10, 2021, the arbitrator issued a decision, which established: (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits or extend the leave without pay ("LWOP") available for employees who did not comply with the Vaccination Mandate; and (3) that the DOE may "unilaterally separate employees" who have not complied with the COH Order or do not have an approved exemption or accommodation or have not either opted for separation or extended their LWOP pursuant to the provisions set forth in the Impact Arbitration Decision. Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response. See id. at 6-13. It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on LWOP by the DOE starting September 28, 2021. See id. at 13. While on LWOP, employees continue to be eligible for health insurance. Id. at 15. Employees who submitted proof of vaccination before November 30, 2021, were eligible to return to their school within one week of submitting their documentation to the DOE. Id. at 14.

The Impact Arbitration Decision also set forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of LWOP with health benefits. See id. at 14. DOE employees who did not comply with the COH Order could have opted to either separate from service by October 29, 2021 and receive enhanced payment of

accrued paid time off and remain eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from another source. Id. at 16. Alternatively, as a second option, employees could have opted by November 30, 2021 to extend their LWOP through September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who chose to extend their LWOP ultimately do not comply with the COH Order by the end of the leave period, they will be deemed to have voluntarily resigned. Id. In addition, the Impact Arbitration Decision provided that starting on December 1, 2021, DOE can unilaterally separate employees who remain out of compliance with the COH Order and have not applied for either the extended leave or separation. Id.

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the remaining unions representing DOE employees, including Defendant CSA and Defendant District Council 37, City of New York ("DC 37"). Similar to the process that led to the Impact Arbitration Decision – which covers the majority of Plaintiffs herein – the negotiations with CSA reached an impasse and the parties proceeded to arbitration. See O'Connor Decl. dated Nov. 19, 2021 at Ex. B. On September 15, 2021, an arbitration award was issued that exactly mirrors that of the Impact Arbitration Decision. Id.

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave procedures for those DOE employees who did not comply with the COH Order and, again, reached an agreement that mirrors that of the Impact Arbitration Decision. See O'Connor Decl. dated Nov. 19, 2022 at Ex. C, Memorandum of Agreement District Council 37, City of New

York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021.[1]

Critically, **76 of the 91** Plaintiffs availed themselves of either the above-described reasonable accommodation procedures and/or the extended leave and separation options. See Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

Plaintiffs contend that on January 31, 2022, 43 Plaintiffs received notices from DOE that, due to their non-compliance with the COH Order, they would be terminated effective February 11, 2022. See Dkt. No. 76-1, Affirmation of Austin Graff, dated February 8, 2022. On February 8, 2022, Plaintiffs moved to enjoin these terminations. See Dkt. No. 76. Defendants UFT and CSA filed a letter in support of this motion. See Dkt. No. 77. The Court denied Plaintiffs' motion to enjoin these terminations on February 11, 2022. See Dkt. No. 89.

Additionally, on February 8, 2022, Defendants UFT and CSA filed a separate action in New York State Court and sought a temporary restraining order and preliminary injunction seeking to enjoin the City and DOE from "terminating employees represented by Plaintiffs due to vaccination status." The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). The motion for a temporary restraining order seeking to enjoin the February 11, 2022 terminations was denied on February 10, 2022. See The New York City Municipal Labor Committee, et al. v. The City of New York, et al., Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.), NYSCEF Dkt. No. 52

On February 11, 2022, DOE effectuated the terminations of those employees that had not complied with the COH Order, had not opted to extend their LWOP or elect an enhanced

---

[1] Because the applicable CSA decision and the DC 37 agreement are identical in all relevant respects to the Impact Arbitration Decision, for ease of reference this memorandum will refer to all three as the Impact Arbitration Decision.

separation option, and had not received a reasonable accommodation in connection with the COH Order.

## ARGUMENT

### POINT I

### PLAINTIFFS' DUE PROCESS CLAIMS ARE BARRED BY THE LAW OF THE CASE DOCTRINE

On November 17, 2021, Plaintiffs filed an emergency motion for injunctive relief seeking, among other things, to enjoin their terminations during the pendency of this litigation. See Dkt. No. 2. Plaintiffs' November 17 motion was fully briefed and argued prior to it being denied by the Court via the November 24 Order. See November 24 Order. Plaintiffs did not appeal the November 24 Order, and their time to do so has long expired. In analyzing whether Plaintiffs' November 17 Motion demonstrated a likelihood of success on the merits, this Court held that "both the pre-deprivation and post-deprivation processes currently afforded to Plaintiffs were and are constitutionally adequate." See November 24 Order at 19. In so doing, this Court found that "Plaintiffs received ample notice of (1) the Vaccination Mandate, (2) their ability to seek religious and medical exemptions and appeals, (3) their placement on LWOP if they continued to be noncompliant with the terms of the Vaccination Mandate, and (4) their options and opportunity to respond." Id. at 19.

With respect to post-deprivation processes, this Court held that – in addition to remedies available to them via their respective collective bargaining agreements – "Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York

State Supreme Court. The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy." Id. at 22.

Plaintiffs then filed a second motion for injunctive relief on February 8, 2022 seeking to, again, enjoin their terminations for failure to comply with the COH Order. See Dkt. No. 76. In their February 8 Motion, Plaintiffs again argued that their anticipated terminations violated their procedural due process rights because DOE did not follow the disciplinary procedures set forth in § 3020-a or § 75 in advance of taking the challenged employment actions. See Dkt. No. 76-13. This is the exact same argument made by Plaintiffs in support of their November 17 motion. See Dkt. No. 2-10.

On February 11, 2022, the Court denied Plaintiffs' February 8 Motion seeking to enjoin the terminations of certain Plaintiffs. As detailed below, in issuing this decision, the Court specifically reached the issue of "whether noncompliant NYC DOE employees facing separation were being 'disciplined' or subject to a legitimate condition of employment." See Dkt. No. 89 at 12.

With respect to Plaintiffs' due process claim, the February 11 Decision and Order made four critical holdings. First, the February 11 Decision and Order held that the COH Order was lawfully issued and enforceable against DOE employees. See id. at 22-23. Second, the February 11 Decision and Order unequivocally held that the "Vaccination Mandate is a lawful condition of employment." Id. at 21. Third, the February 11 Decision and Order held that "[t]he termination of NYC DOE employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary" and therefore "the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a or Civil Service Law Section 75 prior to terminating NYC DOE employees due to their noncompliance with the

Vaccination Mandate." See id. at 31, 33.  Fourth and finally, the February 11 Decision and Order "reaffirmed" its holding in the November 24 Order which found "that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate." See id. at 15.  Plaintiffs did not appeal the February 11 Decision and Order and their time to do so has expired.

Under the law of the case doctrine, "when a court decides upon **a rule of law**, that decision should continue to govern the same issues in subsequent stages in the same case." Musacchio v. United States, 577 U.S. 237 (2016)(emphasis added); see also United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although not binding, law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons).  A court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting United States v. Quintieri, 306 F.3d 1217, 1230 (2d Cir. 2002)). Further, a written opinion issued in connection with a denial of a preliminary injunction is sufficient to invoke the law of the case doctrine.  See Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P., No. 21 CV 00038 (MKV) 2021 U.S. Dist. LEXIS 27205, at *13-14 (S.D.N.Y. Feb. 12, 2021)

Here, the Court's four critical holdings identified above wholly foreclose Plaintiffs' due process claims as a matter of law and there is no cogent or compelling reason for the Court to depart from these rulings.

There has been no intervening case law issued that would preclude this Court from adhering to its prior rulings.  In fact, intervening law **supports** this Court's prior holdings.  Since

the issuance of the February 11 Decision and Order, on March 8, 2022, the Hon. Jed S. Rakoff in the Southern District of New York held that the City Order created a "condition of employment" for City employees and that "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the [applicable] disciplinary procedures." Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022) quoting Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021). This reiterates the prior order of the Eastern District in Garland which reached the same result with respect to the City Order. See Garland, 2021 U.S. Dist. LEXIS 233142 at * 14.

Similarly, on March 16, 2022, the Hon. Lynn R. Kotler in New York Supreme Court issued a decision in connection with four Article 78 proceedings filed by tenured teachers who failed to comply with the DOE Order and were challenging their placement on LWOP as "constructive terminations" without due process. See Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021 (collectively "Maniscalco Art. 78 Decision").[2] In denying the petitions, the Court held that § 3020-a "does not apply here because the DOE mandate and subsequent IAA [i.e. Impact Arbitration Decision] create an employment qualification, not a disciplinary action." See Maniscalco Art. 78 Decision at p. 9. This decision reiterates that of three other New York Supreme Court decisions that held that tenured DOE employees may be terminated for failure to comply

---

[2] For the Court's convenience, a copy of this unpublished decision is annexed to the Affirmation of Andrea O'Connor, dated April 4, 2022, as Exhibit A.

with the COH Order without resort to statutory disciplinary procedures.  See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty)(denying the petition and holding that petitioner is not entitled to a hearing under § 3020-a in advance of her placement on LWOP and/or termination because those employment actions are not a "disciplinary consequence" of the petitioner's failure to comply with the DOE Order); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty)(same).

Likewise, there is no new evidence or allegations for the Court to consider in connection with deciding this motion to dismiss.  Plaintiffs' second motion for injunctive relief was made after the filing of the Amended Complaint and after certain Plaintiffs had received notice of their anticipated terminations.  Thus, there are no new allegations or facts that could be considered by the Court in connection with this motion that were not before the Court when it issued the February 11 Decision and Order.  Therefore, the law of the case doctrine applies.  See U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co., No. 15 CV 4961 (LTS)(JLC), 2020 U.S. Dist. LEXIS 87534, at *8 (S.D.N.Y. May 19, 2020)(where a party presents the same allegations or factual record previously deemed deficient by a court, the law of the case doctrine forecloses reconsideration of the court's conclusion).

Finally, there is no clear error in the Court's prior decisions that requires correcting. This is a point that Plaintiffs concede as evidenced by their decision not to appeal either of the Court's prior orders.  Nor is a departure from the Court's prior rulings necessary to "prevent manifest injustice."  As the recent case law contained in this memorandum makes clear, this Court's prior holdings in this case are exactly in line with the decisions of the other Courts that have considered the same or similar issues pertaining to the COH Order and/or the City Order.

Therefore, because there is no "cogent and compelling reason" for the Court to revisit its prior holdings in this case, DOE Defendants respectfully submit that Plaintiffs' procedural due process claims are barred by the law of the case doctrine and therefore must be dismissed.

## POINT II

### PLAINTIFFS' DUE PROCESS CLAIMS MUST BE DISMISSED

In the event the Court does not dismiss Plaintiffs' due process claims as barred by the law of the case doctrine, City Defendants respectfully submit that these claims are otherwise without merit and must be dismissed as a matter of law.

### A.     Applicable Law

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of that right, and third show

that the deprivation was effected without due process." Id. (internal citation and quotation marks omitted). "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." MacFall v. City of Rochester, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994). In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it. Id. (quoting McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)).

**B.      Plaintiffs' Placement on LWOP and/or Terminations Is Not Discipline**

As noted above, the February 11 Decision and Order conclusively ruled that Plaintiffs' placement on LWOP and their terminations do not constitute discipline. See Dkt. No. 89 at 31-33. Despite that ruling, the Amended Complaint adheres to the faulty notion that Plaintiffs are being subjected to "discipline" without the process owed to them via Education Law § 3020-a or Civil Service Law § 75. Not so. Rather, by virtue of Plaintiffs' unwillingness to comply with the COH Order, their inability or unwillingness to obtain an accommodation in connection with the COH Order and their unwillingness to opt for any of the separation or leave options offered in the Impact Arbitration Decision, they cannot continue their public employment with the DOE.

On this point, every Court that has encountered this question – including this one – has unequivocally held that the COH Order creates a lawful condition of employment and that the termination of a public employee for failure to satisfy that condition is unrelated to job performance, misconduct, or competency and therefore does not implicate applicable disciplinary procedures. See Dkt. No. 89 at 21; see also Maniscalco Art. 78 Decision at p. 9; O'Reilly, 2022 N.Y. Slip. Op. 30173(U), ¶ 3; Lanzer, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero,

Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); Garland, 2021 U.S. Dist. LEXIS 233142 at *25 (City Order created condition of employment); Marciano, 2022 U.S. Dist. LEXIS 41151, at *25-26 (same).

In O'Reilly, the petitioner, a tenured teacher, argued that her placement on LWOP was an effective "termination" and that her "dismissal" violated her due process rights because she was not afforded "notice and evidentiary hearing required by Education Law § 3020-a." 22 N.Y. Slip. Op. 30173(U) ¶ 2. The Court, however, found that the petitioner "chose to ignore all of the[] options" available to her in that "she did not show proof of vaccination, did not apply for an accommodation and did not seek to extend her leave without pay in exchange for extended health benefits." Id.

The Court therefore held that the employment actions taken by DOE as a result of the petitioner's inaction was "not discipline under the Education Law and instead was merely a response to petitioner's refusal to comply with a condition of employment." Id. at ¶ 2. Notably, the Court further held that "[d]iscipline involves alleged misconduct, not a prerequisite to doing the job in the first instance." Id. at ¶ 3. In denying the Article 78 petition, the Court noted that the petitioner was "seek[ing] an end run around challenging the legality of the mandate by classifying it [i.e. her placement and LWOP and termination] as discipline – [which is] a completely different situation. The requirement to follow the mandate at issue is, as stated above, a condition of employment and petitioner admits that she did not satisfy that condition or seek an exemption." Id. at ¶ 5. Similarly, in denying the four separate petitions, the Court in the Maniscalco Art. 78 Decision, the Court held that § 3020-a "does not apply here because the DOE mandate and subsequent IAA [i.e. Impact Arbitration Decision] create an employment qualification, not a disciplinary action." See Maniscalco Art. 78 Decision at p. 9.

This recent precedent is in line with case law holding that "under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth" in the applicable disciplinary statute. See Garland, 2021 U.S. Dist. LEXIS 233142 at *11-12 citing O'Connor, 852 N.Y.S.2d at 538; Beck-Nichols v. Bianco, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures.").

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary procedures, from a "condition of employment" which is not subject to such procedures. Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011); Cravatta v New York State Dep't of Transportation, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); Carr v New York State Dep't of Transportation, 70 A.D.3d 1110 (3d Dep't), lv to app. den., 14 N.Y.3d 709 (2010) (same; loss of CDL); Moogan, 8 A.D.3d at 69 (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against

challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses. Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); <u>Naliboff v. Davis</u>, 133 A.D.2d 632 (2d Dep't 1987), <u>lv to app. den.</u>, 71 N.Y.2d 805 (1988); <u>Schrimer v. Town of Harrison</u>, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

Thus, the termination of City or DOE "employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary. Rather, Plaintiffs' separation is because of their failure to avail themselves of existing processes or comply with a lawful job condition. <u>See</u> Dkt No. 89.

**C.     Plaintiffs' Members Have Been Afforded All Process Owed to Them**

As detailed above, the Court has already ruled "that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate," <u>see</u> Dkt. No. 89 at 15, and that there is no basis to disturb this holding. DOE Defendants respectfully submit that this is an end to Plaintiffs' due process claim.

However, to the extent the Court provides fresh consideration to the process provided to Plaintiffs in advance of their placement on LWOP and/or termination, it is clear that Plaintiffs were provided with all the process owed to them in advance of their placement on LWOP and/or termination. Indeed, Plaintiffs conflate the process they believe they were owed under the various applicable disciplinary statutes with the constitutional minima required by the New York State and United States Constitutions. As the Court has held, Plaintiffs are incorrect. <u>See</u> Dkt. No. 89 at 18-19.

"[T]o determine whether process is adequate, the Court looks to '[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process.'" <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142, at *11 (alternation in original) <u>quoting</u> <u>Robison v. Via</u>, 821 F.2d 913, 923 (2d Cir. 1987); <u>also</u> <u>citing</u> <u>Cleveland Bd. of Educ. v.</u> <u>Loudermill</u>, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); <u>Russell v. Coughlin</u>, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires."). Thus, "at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution." <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142, at *11

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976); <u>Loudermill</u>, 470 U.S. 532 at 546; <u>Felix</u>, 3 N.Y.3d at 504-06 ("A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement"; here the process provided for in § 12-120, which provides for notice and an opportunity to refute allegations of non-residence, are all the process due); <u>Sorano</u> <u>v. City of Yonkers</u>, 37 A.D.3d 839 (2d Dep't 2007)(in accordance with <u>Felix</u>, a police officer can be terminated for non-residency without a Civil Service Law § 75 process but due process requires that the employee be provided with notice of the non-compliance and an opportunity to respond prior to termination). Moreover, as the Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place

and circumstances." <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).

All Plaintiffs were provided with ample advance notice that, as a result of their non-compliance with the COH Order, they would be terminated from the DOE. In fact, Plaintiffs have had notice of this outcome since September 10, 2021, when the highly publicized Impact Arbitration Decision was issued. Furthermore, on October 2, 2021, nearly immediately after the October 1, 2021 deadline to submit proof of vaccination under the COH Order, Plaintiffs were notified that they were not in compliance with the order and therefore would be placed on LWOP as of October 4, 2021, and that DOE would terminate them if they did not opt to extend their LWOP status and remained out of compliance with the mandate. <u>See</u> Dkt. No. 1-1. Additionally, the October 2, 2021 email set forth the below-described processes that a plaintiff could – and, in some instances, did avail themselves of. <u>Id.</u>

The Impact Arbitration Decision established a robust process by which DOE employees could apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response. <u>See</u> O'Connor Decl., Exh. A, Impact Arbitration Decision at 6-13. The Impact Arbitration Decision further provided that employees who sought to challenge the denial of an accommodation could do so via an additional arbitration. <u>Id.</u> Notably, 69 Plaintiffs in this case availed themselves of this reasonable accommodation process. <u>See</u> Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

The Impact Arbitration Decision set forth a process for separation from employment or the extension of LWOP. <u>See</u> O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact

Arbitration Decision at 6-13. Under this process, DOE employees who had not complied with the COH Order by October 29, 2021, could have opted to separate from employment and continue their health insurance through September 5, 2022. Id. at 16. Employees could have also, in the alternative, opted by November 30 to extend their LWOP through September 5, 2022, and maintain health coverage. Id. at 17. For those that chose to extend their LWOP, if they do not come into compliance with the COH Order by the end of that ultimate period, they will be deemed to have voluntarily resigned. Id. DOE employees had through October 29, 2021 to select the separation option provided by the Impact Arbitration Decision, and through November 30, 2021 to select to extend their LWOP with health benefits. In accordance with the Impact Arbitration Decision, those who did not avail themselves of either of these options were notified that they would be terminated. Id. In total, 15 Plaintiffs availed themselves of the extended LWOP or separation options. See Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

Thus, any DOE employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal, or could have voluntarily separated from the DOE **or** extended their LWOP with health benefits. After this notice was given, Plaintiffs certainly could have – and in the case of some Plaintiffs did -- sought relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy. Plaintiffs Maniscalco, Giammarino, Loiacono and Salas availed themselves of this remedy in advance of their terminations.

In addition to the notice provided in October, on January 31, 2022, non-compliant DOE employees received **another** notification that they would be terminated effective February 11, 2022 due to their failure to comply with the COH Order. See Dkt Nos. 76-7 at Exhibits A-1

through A-4. This January 31, 2022 notice also provided the recipients with the opportunity to advise DOE if they were receiving the notification in error in advance of the termination date. See id. Thus, it is undisputed that DOE Defendants have satisfied the notice requirement.

The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required." Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991).

In examining this exact issue, the Court in Marciano held that "[i]n order to satisfy the constitutional minimum, the predeprivation proceedings 'need not be elaborate.'" Marciano, 2022 U.S. Dist. LEXIS 41151, at *27-28 quoting O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005). In Marciano, the plaintiff – an NYPD detective – was provided notice of the requirement to be vaccinated (or to seek an accommodation) and "was given the opportunity to be heard as to the application of the [City] Order against him by seeking an accommodation through the appropriate channels." Id. The Court held that these "informal procedures" satisfied constitutional due process and therefore dismissed the plaintiff's entire complaint, including his procedural due process claim. Id. ("Marciano fails to articulate how this process falls below the constitutional floor; and, given the case law making clear that 'informal procedures,' as opposed to a 'formal hearing,' are sufficient prior to an employee's termination, see Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991), it appears that he was afforded constitutionally adequate process."). This holding, again, reiterates the Court's prior holdings in this case and in Garland which found that the above-described notice and opportunities to be heard provided "was sufficient

pre-deprivation notice and opportunity to respond."  See Dkt. No. 89 at 15; Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18.

Similarly, in the Maniscalco Art. 78 Decision, regarding the petitioners' due process claims, the Court first found that the petitioners had the option to seek a reasonable accommodation from the vaccination mandate.  Id. To the extent they did not seek an accommodation, or an accommodation request was denied, the petitioners then "had three choices:" (1) voluntarily separate and maintain health benefits; (2) extend their LWOP and maintain their health benefits; or (3) "do nothing" but risk that they "could be unilaterally separated from the DOE beginning on December 1, 2021."  Id.  The Court held that the petitioners "had ample notice of the consequences of any decision they made.  All petitioners decided to make no decision at all."  Id.  The Court held that this was constitutionally sufficient notice.  Id.

Regarding an opportunity to be heard, the Court in the Maniscalco Art. 78 Decision, held that the reasonable accommodation procedures, including the appeals process for denials of accommodation requests, along with the leave and separation options sufficed as opportunities to be heard because such opportunities "can also be procedure[s] that permit[] a party to appeal a decision or to elect a course of action."  See id. at 10 citing Garland 2021 U.S. Dist. LEXIS 233142, at *17-18.

In sum, Plaintiffs were all afforded an opportunity to be heard via an accommodation request and via the separation or extended LWOP process.  Notably, **76 of the 91** Plaintiffs herein availed themselves of either the above-described reasonable accommodation procedures and/or the extended leave and separation options.  See Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

That Plaintiffs may not like these processes, and – in very limited circumstances - may have chosen not to avail themselves of these processes, does not change the fact that these processes were available to them. See Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18 ("Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766 (2d Cir. 2021); see also Maniscalco Art. 78 Decision at 10 (the petitioners decision not to avail themselves of any of the processes available to them "does not mean petitioners were denied due process.").

To the extent Plaintiffs contend that due process requires an adversarial and/or evidentiary hearing to be held, such contention is unsupported. Ezekwo and, recently, Marciano and the Maniscalco Art. 78 Decision, make clear that an "opportunity to be heard" does not equate to a "hearing." Ezekwo, 940 F.2d at 786; see also Marciano, 2022 U.S. Dist. LEXIS 41151, at *27-28; Maniscalco Art. 78 Decision ("An opportunity to be heard does not equate to a hearing")(internal quotations omitted). This is particularly true when there are no factual disputes that require resolution via a hearing. This is precisely the point of the Supreme Court's teaching that "due process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334 (emphasis added).

For example, in Moogan, it was undisputed that the plaintiff failed to maintain a qualification of employment; namely, his EMT certification. See Moogan, 8 A.D.3d at 69. Because of that, the Court held that there was "no factual issue to be determined at a hearing" and

therefore neither "§ 75 or federal constitutional due process" required a hearing before his termination.  Id.  Here, the same is true.

Plaintiffs further contend that they are entitled to hearings pursuant to their respective collective bargaining agreements.  This argument again conflates the constitutional minimum required by the due process clause with contractual agreements that do not implicate the New York or United States Constitutions.

Further, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." Hellenic Am. Neighborhood Action Comm, 101 F.3d at 880.  Here, the post-deprivation procedures available to Plaintiffs clearly satisfy the constitutional minimum.  As indicated above, for the Plaintiffs who sought exemptions from the vaccination requirement, the Impact Arbitration Decision further provided an additional review layer, allowing employees to challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Additionally, while an appeal was pending, the employee remained on payroll pending the appeal.  In the event an appeal was denied, the employee would be placed on LWOP.  If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same school within a week of providing proof of vaccination to DOE.  These post-deprivation processes sufficiently satisfy the constitutional minimum for due process.  See Dkt. No. 89 at 15; Garland, 2021 U.S. Dist. LEXIS 233142, at *16; Marciano, 2022 U.S. Dist. LEXIS 41151, at *27-28.

Finally, the availability of an Article 78 review further precludes any due process claims.  Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge

[the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014)("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).

Given all the lengthy notice and repeated opportunities to be heard that Plaintiffs have been provided, and the availability of Article 78 proceedings, Plaintiffs have been afforded all constitutional process due to them. Therefore, Plaintiffs' due process claims must be dismissed.

## POINT III

### PLAINTIFFS' CONSPIRACY CLAIMS MUST BE DISMISSED

To state a viable § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." McCray v. Patrolman N.A. Caparco, 761 F. App'x 27,31 (2d Cir. 2019) (quotations omitted). Plaintiff "must [plead] some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Dwares v. N.Y.C., 985 F.2d 94, 100 (2d Cir. 1993).

Here, the Amended Complaint contains one boilerplate allegation that DOE Defendants "in a conspiracy" with each of the other defendants "have engaged in a course of action

and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983."  Beyond this recitation of the standard applicable to conspiracy claims, no factual allegations are contained in the Amended Complaint regarding the conspiracy claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hogan v. Fischer, 738 F.3d 509, 514 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (internal quotation omitted).  Thus, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Here, beyond a recitation of the standard applicable to conspiracy claims, no factual allegations are contained in the Amended Complaint regarding the conspiracy claim.  As such, this claim must be dismissed.

## POINT IV

### PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Because all of Plaintiffs' individual claims for damages and declaratory relief must be dismissed, Plaintiffs' class claims must be dismissed as well. See, e.g., In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 122 (S.D.N.Y. 2002)("Courts in this circuit have repeatedly held that,

'[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim . . . If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.'") (citation omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that their motion to dismiss the Complaint in its entirety be granted, that judgment in favor of defendants be entered, and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
           April 4, 2022

           **HON. SYLVIA O. HINDS-RADIX**
           Corporation Counsel of the
            City of New York
           **Attorney for Defendants DOE and Porter**
           100 Church Street, Room 2-100
           New York, New York 10007
           212-356-4015

           By: _____/s/_____
              Andrea O'Connor
              Assistant Corporation Counsel