UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BROECKER *et al.*,                                           :
                                                             :
                          Plaintiffs,                        :
                                                             :
         -against-                                           :
                                                             :        Case No. 21-cv-6387
                                                             :
NEW YORK CITY DEPARTMENT OF                                  :
EDUCATION, *et al.*,                                         :
                                                             :
                          Defendants.                        :
------------------------------------------------------------- X

**MEMORANDUM OF LAW OF DEFENDANTS UNITED FEDERATION OF
TEACHERS, MICHAEL MULGREW, COUNCIL OF SCHOOL SUPERVISORS AND
ADMINISTRATORS, AND MARK CANNIZZARO IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTS ................................................................................................ 4

I.     The DOE Vaccine Mandate and Related Litigation and Negotiations ................... 4

II.    The UFT and CSA Defendants Challenge Plaintiffs' Summary Terminations ........................................................................................... 7

ARGUMENT ........................................................................................................... 8

I.     PLAINTIFFS LACK STANDING TO DIRECTLY CHALLENGE THE AWARDS ......................................................................................... 8

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE UFT AND CSA DEFENDANTS ................................................................................ 9

     A.     Standard of Review Under Fed. R. Civ. P. 12(b)(6) .................................. 9

     B.     Plaintiffs Fail to Allege Facts Sufficient to Support Violations of 42 U.S.C. § 1983 By Defendants UFT, Mulgrew, CSA, or Cannizzaro ........................................................................................ 10

     C.     The UFT and CSA Awards Are Valid as a Matter of Law ...................... 16

CONCLUSION ...................................................................................................... 18

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Matter of Alden Cent. Sch. Dist. v. Watson,
    56 A.D.2d 713 (4th Dep't 1977) ............................................16

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...........................................................9

Bd. of Regents of State Colleges v. Roth,
    408 U.S. 564 (1972).........................................................18

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)......................................................9, 10

Broecker et al. v. New York City Dep't of Educ. et al.,
    __ F.Supp.3d __, 2021 WL 5514656 (E.D.N.Y. Nov. 24, 2021) ............................8

Burton v. Wilmington Parking Auth.,
    365 U.S. 715 (1961).........................................................12

Callaghan v. United Federation of Teachers,
    133 A.D.3d 412 (1st Dep't 2015) .........................................11

Ciambriello v. Cnty. Of Nassau,
    292 F.3d 307 (2d Cir. 2002)........................................10, 11, 13

Commodari v. Long Island Univ.,
    89 F. Supp. 2d 353 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir. 2003) .........................12

Cooper v. New York State Dep't of Labor,
    819 F.3d 678 (2d Cir. 2016)................................................10

Dennis v. Sparks,
    449 U.S. 24 (1980)..........................................................12

Driskell v. New York City,
    11 Civ. 4915 (BMC), 2011 WL 6812516 (E.D.N.Y. Dec. 27, 2011)...............................10, 11

Dykes v. Southeastern Pa. Transp. Auth.,
    68 F.3d 1564 (3d Cir. 1995)................................................15

Figueroa v. City of Camden,
    580 F. Supp. 2d 390 (D. N.J. 2008) ....................................10, 15

Fiore v. Town of Whitestown,
 125 A.D.3d 1527 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015) ....................9

Fleischer v. Barnard College,
 20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) ..............................................................8

Hanna v. Plumer,
 380 U.S. 460 (1965)...............................................................................................................10

Harmon v. Matarazzo,
 162 F.3d 1147 (2d Cir. 1998)..................................................................................................11

Jessamy v. City of New Rochelle, New York,
 292 F. Supp. 2d 498 (S.D.N.Y. 2003)....................................................................................13

Katir v. Columbia Univ.,
 15 F.3d 23 (2d Cir.1994)......................................................................................................8, 9

Leahy v. Board of Trustees,
 912 F.2d 917 (7th Cir. 1990) .................................................................................................13

Leblanc v. Security Servs. Unit Empls. of N.Y. State Law Enforcement Officers
 Union, Council 82, AFSCME, AFL-CIO,
 278 A.D.2d 732 (3d Dep't 2000) .............................................................................................9

Marciano v. De Blasio, et al.,
 __ F. Supp. 3d ___, No. 21-cv-10752 (JSR), 2022 WL 678779 (S.D.N.Y. Mar.
 8, 2022) ...................................................................................................................................16

Margiotta v. Kaye,
 283 F. Supp. 2d 857 (E.D.N.Y. 2003) ...................................................................................17

McGovern v. Local 456, Int'l Bhd. Of Trustees,
 107 F. Supp. 2d 311 (S.D.N.Y. 2000)....................................................................................11

Mehrhoff v. William Floyd Union Free School District,
 No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) .....................................11, 15

MLC et al. v. City of New York et al.,
 158368/2021 (Sup. Ct. N.Y. Cnty.) ....................................................................................5, 14

Matter of Municipal Labor Committee and City of New York,
 BCB 4458-21 (OCB 2021) ......................................................................................................2

Municipal Labor Committee v. City of New York,
    151169/2022 (Sup. Ct. N.Y. Cnty. 2022), CPLR 5704 application denied,
    2022-00618 (1st Dep't Mar. 10, 2022) ................................................................2, 7

Municipal Labor Committee v. City of New York,
    2021 WL 4502854 (Sup. Ct. N.Y. Cnty. Sept. 22, 2021), dismissed Municipal
    Labor Committee v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty.
    2021) ................................................................................................................2, 5

National Broadcasting Co. v. Communications Workers of America,
    860 F.2d 1022 (11th Cir. 1988) ..........................................................................12

New York Mun. Labor Comm. v. City of New York,
    73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021) ...................................................5, 15

Newburgh v. Pub. Emp. Rels. Bd.,
    97 A.D.2d 258 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984) ...............................17

In re Soto,
    7 N.Y.2d 397 (1960) ............................................................................................9

Sykes v. Bank of America,
    723 F.3d 399 (2d Cir. 2013)...............................................................................12

Town of Southampton v. New York State Pub. Empl. Rels. Bd.,
    2 N.Y.3d 513 (2004) .........................................................................................18

**Statutes**

42 U.S.C. § 1983 ...................................................................................... *passim*

N.Y. Civ. Serv.  L. § 75 .................................................................................5

N.Y. Civ. Serv.  L. § 209 ..............................................................................16

N.Y. Civ. Serv. L. § 200 ...........................................................................3, 10

N.Y. Civ. Serv L. § 208(1)(a) ........................................................................3

N.Y. Education Law § 3020 ............................................................................5

N.Y. Education Law § 3020-a ........................................................................5

**Other Authorities**

N.Y. CPLR 5704................................................................................................7

Fed R. Civ. P. 12(b)(1)..................................................................................4, 9

iv

Fed. R. Civ. P. 12(b)(6)................................................................................................4, 9

New York Constitution Amendment, Article 1 § 6 .........................................................5

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
    (Aug. 24, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe.pdf.........................................................................................................2

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
    (Sept. 15, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-2.pdf .....................................................................................................2

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
    Vaccination For Department of Education Employees, Contractors, Visitors,
    and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
    (Sept. 28, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-3.pdf .....................................................................................................2

## PRELIMINARY STATEMENT

Defendants United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), UFT President Michael Mulgrew ("Mulgrew") (UFT and Mulgrew, together, the "UFT Defendants"), Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA"), and CSA President Mark Cannizzaro ("Cannizzaro") (CSA and Cannizzaro, together, the "CSA Defendants") have, for years, fought for and protected the interests of their members – including Plaintiffs – through negotiations, mediations, arbitrations, and (when necessary) litigations opposite Plaintiffs' employer, Defendant New York City Department of Education (the "DOE"). In the face of these efforts, Plaintiffs confoundingly claim that the UFT and CSA Defendants (a) lack statutory authority to arbitrate on behalf of their members, despite clear, longstanding authority to do so; (b) conspired with the City Defendants and Arbitrator Scheinman to impinge on the rights of Plaintiffs, even though the UFT and CSA Defendants have previously lodged many of the same claims Plaintiffs have asserted in this action; and (c) aided and abetted the alleged violations of Plaintiffs' rights.  These claims are meritless.

The UFT and CSA Defendants are not state actors.  Nor have Plaintiffs alleged any facts sufficient to support a claim for conspiracy or aiding and abetting a state actor such that the UFT and CSA Defendants might be brought under color of state law.  Indeed, Plaintiffs' allegations, and indisputable facts in the public record, clearly evidence the opposite conclusion: the relationships between the UFT and CSA Defendants, respectively, and the DOE are inherently adversarial.  This is underscored by the myriad negotiations, arbitrations, and litigations against

the DOE and City not only prior to the pandemic, but during the pandemic *regarding many of the due process claims at issue here*.[1]

Indeed, while Plaintiffs could theoretically contend that these erstwhile foes somehow came together to deprive them of their rights on these issues, the facts prove otherwise.  For, it was due to the UFT and CSA Defendants' respective inability to reach agreement with Defendant DOE on the implementation of personnel and pay policies relating to the Department of Health and Mental Hygiene's ("DOHMH's") August 24, 2021 order requiring vaccination for workers in City educational facilities[2] (the "Mandate") that prompted the UFT and then CSA engagement of Defendant (and widely-respected arbitrator) Martin Scheinman to serve the traditional and lawful role of mediator (for the UFT) and arbitrator (initially for the UFT, and thereafter for CSA).

---

[1] See Municipal Labor Committee v. City of New York, 2021 WL 4502854  (Sup. Ct. N.Y. Cnty. Sept. 22, 2021) (facial challenge to DOHMH DOE Mandate for, *inter alia*, violations of substantive due process and lack of religious and medical exemptions), dismissed Municipal Labor Committee v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021); Matter of Municipal Labor Committee and City of New York, BCB 4458-21 (OCB 2021) (challenge to implementation of DOHMH DOE Vaccination Mandate without bargaining).  Moreover, the UFT and CSA Defendants supported Plaintiffs' application for a temporary restraining order enjoining summary termination in the instant action, and filed suit alongside some thirty other unions to enjoin summary terminations across the City.  See Broecker et al. v. New York City Dep't of Educ. et al., 1:21-cv-06387 (Dkt. # 71, 77); Municipal Labor Committee v. City of New York, 151169/2022 (Sup. Ct. N.Y. Cnty. 2022) (procedural due process challenge to summary terminations), CPLR 5704 application denied, 2022-00618 (1st Dep't Mar. 10, 2022).  Other individuals and entities have brought claims in federal and state court challenging the facial validity of the Mandate and DOE's implementation of same.  These have largely been unsuccessful.

[2]  See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.  That Order was amended twice – once to include reasonable medical and religious accommodations, Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf, and again following the dissolution of the Second Circuit's temporary restraining order in a separate matter challenging the Citywide Mandate.  Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf.

Contrary to Plaintiffs' assertions, no special statutory authority is required for a recognized public-sector employee organization to arbitrate a dispute with a public employer. Nevertheless, the Taylor Law clearly provides not only that the parties may agree to arbitrate, but also that public policy encourages public employers and employee organizations to agree on procedures to resolve disputes, favoring "harmonious and cooperative" bargaining relationships. See N.Y. Civ. Serv. L. § 200. Plaintiffs seemingly conflate (a) the power of the New York Public Employment Relations Board ("PERB") to impose interest arbitration on DOE employee unions, with (b) whether those unions may themselves agree to arbitrate a dispute. Likewise, Plaintiffs conflate contractual grievance arbitration, which employee organizations have the right to administer under N.Y. Civ. Serv L. § 208(1)(a), with arbitration intended to resolve an actual or prospective impasse in collective bargaining, which by definition is not limited to the four corners of an existing agreement. Arbitration of bargaining disputes, as here, is specifically designed to address instances where a new or amended agreement is required. To hold this process illegal, as Plaintiffs urge, would preclude all arbitrations in the collective bargaining context and invalidate all bargaining disputes that have been arbitrated by public sector unions to date. Indeed, Plaintiffs' sought relief would actually endanger their rights by weakening the ability of public sector unions to advocate on behalf of their members.

Thus, because the UFT and CSA Defendants are not state actors, and have not acted under color of state law, Plaintiffs' conspiracy and aiding and abetting claims should be dismissed.

Nonetheless, as explained herein, the arbitration awards issued in this matter are legally valid and satisfy the constitutional and statutory process due to Plaintiffs with regard to placement on leave without pay ("LWOP") while maintaining health benefits in certain specific

circumstances.  It is undisputed that the contours of public employee property rights in their occupations are defined by state law and contract.  Here, the awards inform the contours of Plaintiffs' rights in accordance with the aforementioned constitutional and statutory obligations, and amend the UFT and CSA Defendants' respective collective bargaining agreements ("CBAs") by law.

Finally, Plaintiffs lack standing to directly challenge the arbitration awards[3] at issue here, as Plaintiffs were not parties to the arbitrations or negotiations that resulted in the Awards.

Accordingly, all claims against the UFT and CSA Defendants should be dismissed for lack of standing under Fed R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## RELEVANT FACTS

I.   The DOE Vaccine Mandate and Related Litigation and Negotiations

On August 24, 2021, Respondent Dave A. Chokshi, Commissioner of DOHMH, imposed the initial version of the Mandate, which was superseded by two subsequent orders on September 15, 2021 and September 28, 2021 (allowing for reasonable accommodations and extending the compliance deadline, respectively).  The operative Mandate set forth that DOE employees' failure to provide proof of their first COVID-19 vaccine dose by October 1, 2021 would lead to exclusion from DOE facilities where students are present, beginning on October 4, 2021.[4]

The UFT and CSA Defendants proceeded on two tracks, both challenging the validity of the Mandate in court and seeking negotiation with the DOE over related pay and personnel

---

[3] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021) (the "UFT Award"), Amended Complaint Ex. E, and Board of Education of the City School District of the City of New York and Council of Supervisors and Administrators (Impact Bargaining), Arbitration Award (Sept. 15, 2021) (the "CSA Award"), Amended Complaint Ex. F (collectively, the "Awards").

[4] See supra n.2.

policies the DOE sought to implement.  In New York Supreme Court, the UFT and CSA Defendants, together with the MLC and other unions, argued that the Mandate *itself* (a) violates employees' individual bodily integrity and right to refuse medical treatment by forcing employees to undergo unwanted medical procedures or be precluded from engaging in their chosen professions; (b) violates employees' due process rights by involuntarily preventing permanently-appointed DOE and City employees declining vaccination from engaging in their employment, resulting in a deprivation of their vested property rights in violation of the Fourteenth Amendment, Article 1 § 6 of the New York Constitution, N.Y. Education Law §§ 3020 and 3020-a, and N.Y. Civil Service Law § 75; and (c) fails to provide required exceptions for those with medical contraindications or sincerely-held religious objections to inoculation.[5]

The court (Love, J.S.C.) initially granted a temporary restraining order due to the Mandate's failure to provide for medical and religious objections. When that was cured by an amended order, the court denied the requested preliminary injunction.  However, the court did not make any findings with regard to the DOE's then-planned pay and personnel policies – it only considered the Mandate's requirement that one need be vaccinated to enter a DOE facility where students are present, provided no medical or religious accommodation applied.[6]

The DOE initially engaged in bargaining with the UFT on the impact and implementation of the Mandate, and on September 1, 2021, the UFT filed a Declaration of Impasse with PERB. (Amended Complaint ¶ 148).  PERB found the matter appropriate for impasse assistance, and appointed Defendant Martin F. Scheinman to mediate the matter.  (Amended Complaint ¶ 134).

---

[5] MLC et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

[6] See, generally, New York Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021)

On September 10, 2021, after expedited mediation and then binding arbitration between the UFT, the City, and the DOE, covering a period of 18 days, Arbitrator Scheinman issued the UFT Award (Amended Complaint Ex. E) concerning pay and personnel policies related to the implementation of the Mandate.

Simultaneously, and separately, CSA was also engaged in negotiations with the City and DOE regarding pay and personnel policies applicable to their constituents.  These negotiations also went to binding arbitration and produced its own award from Arbitrator Scheinman on September 15, 2021.  (Amended Complaint Ex. F).

Although the arguments and relief sought in each arbitration was specific to those unions, the Awards generally provide, as relevant here, that:

a.  Employees had until November 30, 2021 to elect to either (1) separate from service with incentives or (2) remain on an extended unpaid leave through September 5, 2022 with health benefits and an ability to return upon vaccination or lifting of the Mandate.

b.  If an unvaccinated employee did not select either of these options by the deadline, as of December 1, 2021, the City employers "shall ***seek to*** unilaterally separate employees who have not opted" to either separate from service or remain on an unpaid leave.  However, all parties reserved their existing rights in this regard, as the Awards explicitly state: "except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein."[7]

The terms of the Awards are incorporated into the UFT Defendants' and CSA Defendants' respective CBAs.

---

[7] See Amended Complaint. Ex. E at 17-18 and Ex. F at 14 (emphasis added).

II.     The UFT and CSA Defendants Challenge Plaintiffs' Summary Terminations

On January 31, 2022, the DOE disseminated summary termination notices to unvaccinated employees who had not obtained an accommodation or elected an extended leave, where applicable, stating that their employment would cease on February 11, 2022.  See Memorandum & Order, Dkt. # 89, at *4-5.  Although the UFT and CSA Defendants disagree with Plaintiffs' contentions that the unions conspired in, or aided and abetted, alleged violations of Plaintiffs' statutory and contractual rights, the UFT and CSA Defendants agreed with Plaintiffs that the DOE terminations noticed on January 31, 2022 were violations of employee due process rights.[8]

The UFT and CSA Defendants and – separately – Plaintiffs filed letters before this Court seeking leave to move to enjoin these terminations.  (Dkt. # 72, 73).  On February 7, 2022, the Court denied the UFT and CSA Defendants' request, questioning whether the UFT and CSA Defendants had standing to make the argument in the instant action; however, the Court allowed Plaintiffs' motion to proceed.  The UFT and CSA then submitted a letter in support of Plaintiffs' application for a temporary restraining order.  (Dkt. #77).

In an attempt to enjoin the summary terminations of employees Citywide, the UFT and CSA Defendants, along with a broader coalition of unions led by the Municipal Labor Committee, brought suit by order to show cause in the Supreme Court, New York County.  See Municipal Labor Committee v. City of New York, 151169/2022 (Sup. Ct. N.Y. Cnty. 2022).  There, Justice Kim denied the unions' application for a temporary restraining order.  A CPLR 5704 motion for emergency reconsideration of the application for a temporary restraining order

---

[8] While Plaintiffs allege that the UFT and CSA Defendants conspired with other Defendants to infringe on their due process rights vis-à-vis, inter alia, LWOP, Plaintiffs do not allege that the unions conspired to deprive Plaintiffs of their right to statutory and contractual procedures regarding termination.

to enjoin the terminations was also rejected by the First Department.  See 2022-00618 (1st Dep't

Mar. 10, 2022).

Subsequently, Plaintiffs' motion for emergency relief in this case was rejected.  See

Memorandum & Order, Dkt. # 89.[9]

While the UFT and CSA Defendants do not here rehash those arguments, the unions'

adversity to the DOE (and alignment with Plaintiffs) on this issue further belies Plaintiffs'

arguments that the UFT and CSA Defendants have conspired with, or aided and abetted, the

DOE in violation of Plaintiffs' rights.  Rather, the UFT and CSA have continued to fight for

those rights, thereby obviating Plaintiffs' allegations.

## ARGUMENT

## I.     PLAINTIFFS LACK STANDING TO DIRECTLY CHALLENGE THE AWARDS

As this Court has recognized,[10] "an individual employee represented by a union generally

does not have standing to challenge an arbitration proceeding to which the union and the

employer were the only parties."  See also Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d

Cir.1994) (employee lacked standing to challenge disciplinary arbitration award); Fleischer v.

Barnard College, 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18, 2021) (accord).

Likewise, New York state courts have held that current or former union members cannot

challenge the validity of CBAs as non-parties to, or third-party beneficiaries of, those

---

[9] The UFT and CSA Defendants believe, as they have previously argued both before this Court and the Supreme Court, New York County, that (a) the Awards do not give the DOE the right to summarily terminate unvaccinated employees who have not selected from the personnel policies available to them by November 30, 2021; and (b) vaccination is not a "condition" or "qualification" for employment that removes employment decisions on that basis from the gamut of statutory or contractual disciplinary processes.  Rather, the Awards state that the City can "seek to" terminate those employees from December 2021 onwards, which they have now done in a manner which Plaintiffs **and** the UFT and CSA Defendants believe impermissible, given the Awards' explicit reservation of rights.

[10] Broecker et al. v. New York City Dep't of Educ. et al.,__ F.Supp.3d __, 2021 WL 5514656, at *6 (E.D.N.Y. Nov. 24, 2021)

agreements.  See Fiore v. Town of Whitestown, 125 A.D.3d 1527, 1530 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015); see also Leblanc v. Security Servs. Unit Empls. of N.Y. State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, 278 A.D.2d 732, 733-34 (3d Dep't 2000) (affirming dismissal of employees' breach of contract claims against union, reasoning that the employees were not parties to the CBA and lacked third-party beneficiary standing).  Therefore, Plaintiffs' standing to challenge the propriety of the Awards' issuances is dubious at best, for they were not directly involved in the arbitrations and negotiations that resulted in the Awards.  See, e.g., Katir, 15 F.3d at 24 ; In re Soto, 7 N.Y.2d 397, 399 (1960).

Therefore, Plaintiffs' claims regarding the purported invalidity of the Awards should be dismissed under Fed. R. Civ. P. 12(b)(1).

## II.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE UFT AND CSA DEFENDANTS

### A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible when it has "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  If plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.  Courts must accept as true the allegations in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

9

Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.  Federal courts apply this standard to claims under both state and federal law.  See Hanna v. Plumer, 380 U.S. 460, 465 (1965); Cooper v. New York State Dep't of Labor, 819 F.3d 678, 680 (2d Cir. 2016).

Plaintiffs cannot satisfy this standard as against the UFT and CSA Defendants.  Rather, they assert barebone (and arguably frivolous) allegations of conspiracy between unions and the DOE – which have an inherently adversarial relationship – and besmirch a neutral arbitrator. They fail to expound on the details of this alleged conspiracy, including how or why it arose, or what benefits anyone (especially the UFT and CSA Defendants) would glean from such a scheme.  See, e.g., Ciambriello v. Cnty. Of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (affirming 12(b)(6) dismissal of, inter alia, § 1983 conspiracy claims, and holding that "conclusory allegations are insufficient to state" such a claim).  Plaintiffs' aiding and abetting allegations are similarly infirm.  See, e.g., Figueroa v. City of Camden, 580 F. Supp. 2d 390, 401-02 (D. N.J. 2008) (citing Ciambriello and dismissing claims that a union aided and abetted a § 1983 violation where "nothing in the pleadings indicate that the Unions were acting 'under color of state law'" and the complaint, on its face contained "no specific factual allegations to support a claim that the Unions conspired with the state actors in violation of § 1983.").  These claims should be dismissed.

B.   Plaintiffs Fail to Allege Facts Sufficient to Support Violations of 42 U.S.C. §1983 By Defendants UFT, Mulgrew, CSA, or Cannizzaro

Defendants UFT and CSA are public employee labor organizations pursuant to New York Civ. Serv. L. § 200 et seq., and Defendants Mulgrew and Cannizzaro are private individuals who have been elected presidents of their respective unions.  State and federal courts – including this Court – have explicitly recognized that the UFT is not a state actor.  See Driskell

10

v. New York City, 11 Civ. 4915 (BMC), 2011 WL 6812516, at *3 (E.D.N.Y. Dec. 27, 2011)

(citing Ciambriello, 292 F.3d 307, 323 (2d Cir. 2003)) ("Plaintiff does not allege that the UFT is

a state actor, nor could she."); see also Callaghan v. United Federation of Teachers, 133 A.D.3d

412 (1st Dep't 2015) (in action against the UFT and its president, holding that the UFT is a

private actor, and that "courts in this State have consistently held that unions, even those

representing public employees, such as the UFT, are not state actors").  Likewise, CSA also

represents public employees, and is not itself a state actor.

Furthermore, as a general rule, labor unions – including public-sector unions – and their

agents are not state actors.  See Ciambriello, 292 F.3d at 323 (stating that New York's Civil

Service Employees Association (CSEA) was not a state actor for the purposes of 42 U.S.C. §

1983).  Nor does the mere fact that a union represents public employees render that union a state

actor.  See Harmon v. Matarazzo, 162 F.3d 1147 (2d Cir. 1998) (Table) (dismissing plaintiff's §

1983 claim against president of the Patrolmen's Benevolent Association, and noting that the

Patrolmen's Benevolent Association is an independent private entity that is in no way

intertwined with the police department, except to the extent that its members are police officers).

Rather, the UFT and CSA Defendants maintain an "inherently advers[ar]ial" relationship

with the state employers who employ their members and others they represent.  See Mehrhoff v.

William Floyd Union Free School District, No. 04-CV-3850, 2005 WL 2077292, at * 4

(E.D.N.Y. Aug. 22, 2005); see also McGovern v. Local 456, Int'l Bhd. Of Trustees, 107 F. Supp.

2d 311, 317-18 (S.D.N.Y. 2000).  This is true even where some union members are dissatisfied

with the result of negotiations.  See McGovern, 107 F. Supp. 2d. at 318 ("The Union's failure to

'win' on every point…and its compromise with the County result[ing] in the agreement, do

not…transform the Union's activity into state action.").

11

Therefore, Plaintiffs' burden is high, and unsatisfied.  To survive a motion to dismiss, Plaintiffs must allege facts showing that UFT and CSA Defendants were acting under the color of state law when engaging in the alleged violation.  See Dennis v. Sparks, 449 U.S. 24, 27 (1980).  In general, there are three main situations where private action is treated as state action under § 1983: "(1) when the private actor performs a traditional state function; (2) when a symbiotic relationship or close nexus exists between the private actor and the state; and (3) when the private actor is a willful participant in joint activity with the State or its agents."  See Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 373 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir. 2003) (internal citations and quotations omitted).  None of these factors are satisfied here.

The UFT and CSA Defendants are not performing a traditional state function, which is limited to actions which are "traditionally the exclusive prerogative of the State." National Broadcasting Co. v. Communications Workers of America, 860 F.2d 1022, 1026 (11th Cir. 1988) (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1988)).  Similarly, the UFT and CSA Defendants have no close nexus with the DOE or any other state institution, which exists when a private actor's conduct "has sufficiently received the imprimatur of the State so as to render it an action of the State." Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013) (internal citations omitted).

There is also no symbiotic relationship between the UFT and CSA Defendants and the City Defendants.  To establish such a relationship, Plaintiffs must show that the UFT and CSA Defendants "ha[ve] so far insinuated [themselves] into a position of interdependence with [the City Defendants] that [they] must be recognized as a joint participant in the challenged activity." See Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961).  Here, the UFT and CSA

12

Defendants have acted as a bulwark *against* the very City mandates Plaintiffs now challenge – a far cry from the symbiotic relationship or "willful participation" required under § 1983.

Nor have Plaintiffs mustered more than "mere[ ] conclusory allegation[s] that [UFT and CSA Defendants,] private entit[ies,] acted in concert with" the DOE, the City, or other Defendants.  See Ciambriello, 292 F.3d at 324 (holding that CSEA was not acting under color of state law, and dismissing § 1983).  Such "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct[,]" which Plaintiffs have not plead.  See Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)).  To the contrary, as evidenced supra, the UFT and CSA Defendants have actively sought to protect the interests of their respective members – including those who choose not to become vaccinated – throughout the announcement and implementation of the Mandate.  These actions constitute significantly more adversity to the interests of the City than courts have found necessary to stave off a § 1983 claim against a private actor.

Leahy v. Board of Trustees, 912 F.2d 917 (7th Cir. 1990), is instructive.  There, a college teacher brought suit against his public employee union under 42 U.S.C. § 1983 on grounds that the union had refused to take his grievance to arbitration.  The court found that he had alleged no facts "supporting the conclusion or inference that the Union has either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in his complaint."  See id. at 921.  Rather, the allegations of conspiracy and refusal to arbitrate grievances were held conclusory.  See id.; see also Ciambriello, 292 F.3d at 324 ("conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial relationship between the County and CSEA").

13

In the instant case, Plaintiffs allege no specific facts or instances of misconduct or conspiracy by the UFT or CSA Defendants. Instead, they make a series of nonspecific, repetitive claims that the UFT and CSA Defendants conspired with the City Defendants, Arbitrator Scheinman, SAMS, and SAMS LLC (in various combinations) to have Arbitrator Scheinman issue the awards, ¶¶ 135, 170-75, 179-86, 331-35, 341-47, 350, 359, 362, 367-371, 374-75, 377-83, 386, 395, 398, 438-442, purportedly as part of an unspecified "kickback" scheme that confoundingly included the goal of placing Plaintiffs on LWOP, ¶¶ 335, 338-39, 371, 374-75.[11] Furthermore, allegations relating to Defendants Mulgrew and Cannizzaro ring especially hollow. Defendants Mulgrew and Cannizzaro are the presidents of Defendants UFT and CSA, respectively. The Amended Complaint contains no specific allegations concerning actions either took as individuals, but instead imputes purported union malfeasance to their officers in conclusory fashion.

Contrary to Plaintiffs' allegations, the negotiations and arbitrations which produced the Awards do not constitute evidence of a conspiracy; they are evidence of adversity. The UFT and CSA Defendants protected the interests of their members – including those who choose not to become vaccinated – throughout the pandemic, challenging the Mandate and its implementation in both adversarial negotiations and in court: in fact, the UFT and CSA were part of the initial suit that compelled the City to consider medical and religious accommodation requests (which the City initially had declined to do).[12]

---

[11] It is particularly perplexing what benefits the UFT or CSA Defendants are alleged to have sought from this fictional scheme, the purported goals of which run contra to the *many* suits brought by the UFT and CSA in defense of Plaintiffs and others similarly situated.  See supra n.1.

[12] MLC et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

14

Plaintiffs also make nothing but conclusory allegations that the UFT and CSA Defendants' actions towards the DOE and Arbitrator Scheinman constitute a conspiracy.  The notion that submitting an adversarial dispute to a mediator (who by definition is called to help resolve a dispute) under the auspices of New York's Taylor Law, or an arbitrator, results in an actionable conspiracy under § 1983 would render essentially all public sector labor relations actions evidence of a conspiracy.  But that is not the law, and Plaintiffs therefore have no claim.

Likewise, Plaintiffs' "aiding and abetting"[13] theories are conclusory, unsupported by fact, and should be dismissed.  As argued supra, the UFT and CSA Defendants have engaged in no conduct with, or in support of, the City Defendants or any other Defendants capable of supporting an "aiding and abetting" claim under § 1983.  Rather, the UFT and CSA's litigations against the City, arbitrations, and prior precedent on the topic point to the simple truth that UFT and CSA Defendants' actions are – and have always been – both inherently adversarial to the City Defendants, and in Plaintiffs' interests.  See, e.g., New York City Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty.  2021); Mehrhoff, 2005 WL 2077292, at * 4.

Even if Plaintiffs could support conspiracy or aiding and abetting theories (which they cannot), their allegations of due process harms stemming from the Awards are legally and logically flawed.  Plaintiffs claim that but for the Awards, DOE would not have suspended Plaintiffs without pay in supposed contravention of their Fourteenth Amendment rights.  See, e.g., Amended Complaint ¶¶ 338, 339, 374, 375.  This is untrue.  Absent the Awards, Plaintiffs

---

[13] While 42 U.S.C. § 1983 does not explicitly account for "aiding and abetting" violations of the statute, several courts have recognized such claims as allegations of conspiracy.  See, Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995); Figueroa v. City of Camden, 580 F. Supp. 2d 390, 401-02 (D.N.J. 2008) ("While it is not entirely clear on the face of their Complaint, Plaintiffs clarify that they intended to allege that the Unions conspired with state and local officials in order to deprive Plaintiffs of their rights.").

would still be subject to exclusion from facilities where students are present if those Plaintiffs remain unvaccinated or cannot obtain an accommodation – yet they would lack the myriad procedural and post-LWOP protections/options (severance and extended leave) provided for in the Awards. See, e.g., Marciano v. De Blasio, et al., ___ F. Supp. 3d ___, No. 21-cv-10752 (JSR), 2022 WL 678779, at *10 (S.D.N.Y. Mar. 8, 2022) (denying public employee's challenge to LWOP for failure to vaccinate, where relevant union and employer lacked any award or agreement between the relevant union and public employer, and process for LWOP did not "fall[ ] below the constitutional floor").

What Plaintiffs fail to appreciate is that the Awards created a series of rights and procedures pertaining to the unvaccinated that would not otherwise be unavailable to them. These include the ability to remain on paid leave while applications for accommodation are pending, the option to extend LWOP (and therefore health benefits), the ability to appeal to an outside arbitrator, and the availability of enhanced severance. See Amended Complaint Exs. E and F.

Accordingly, claims that the Awards have somehow infringed on Plaintiffs' rights are simply inaccurate; rather, the Awards safeguarded and elevated Plaintiffs' rights.

C.      The UFT and CSA Awards Are Valid as a Matter of Law

Parties do not need to seek permission before voluntarily arbitrating disputes, and there is no prohibition on mutually agreeing to move to binding arbitration under the Taylor Law *even absent a declaration of impasse*. See generally Civil Service Law § 209. This is in keeping with the Taylor Law's policy of "encourag[ing] voluntary resolution of labor disputes involving public employees." Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713, 713 (4th Dep't 1977).

The Taylor Law is administered by PERB, whose decisions and interpretation of their statute should be accorded deference.  Newburgh v. Pub. Emp. Rels. Bd., 97 A.D.2d 258, 260 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984).  PERB found that the UFT and the DOE were at impasse in negotiations, appointed a mediator, and then permitted the UFT and the DOE to voluntarily move to arbitration.  See Amended Complaint ¶¶ 134, 148.  Separately, CSA and the DOE engaged in arbitration regarding the same issues.  See Amended Complaint ¶ 139.

This Court, too, has recognized that, under the Taylor Law, parties may agree to move to binding impasse arbitration rather than follow PERB's procedure.  See, e.g., Margiotta v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003).

Moreover, there is no contractual prohibition on moving to binding impasse arbitration. Plaintiffs seemingly conflate the limited authority of a grievance arbitrator under Article 22.C of the UFT-DOE CBA with the authority of an arbitrator empowered to make decisions to resolve contentious bargaining, which is not limited by the CBAs.  Tellingly, the Amended Complaint does not appear to cite to any provisions of the CSA CBA, relying instead on conclusory allegations of nonspecific violations.

Nor do the law or applicable CBAs prohibit an arbitrator's retention of jurisdiction where, as here, an award provides for possible future procedure.

In any event, the UFT and CSA, respectively, attempted to and could have negotiated implementation of the Mandate-related policies here – which several other unions did without resorting to mediation and arbitration.  Thus, there is no reason to hold that the parties are prohibited from arbitrating those very same issues.

The Awards and their substance are valid, and Plaintiffs' claims that they have been injured as a result of the Awards' procedures fail as a matter of law.  The contours of Plaintiffs'

17

property interests in their employment are defined by applicable statutes and/or contract.  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  The UFT Defendants' and CSA Defendants' respective CBAs with the DOE were modified by the Awards, the terms of which are incorporated into the CBAs by law, and which supersede provisions to the contrary. See Town of Southampton v. New York State Pub. Empl. Rels. Bd., 2 N.Y.3d 513, 523 (2004). Accordingly, any claims regarding placement on LWOP must be measured against Plaintiffs' rights under the CBAs as amended by the Awards.

## CONCLUSION

For the reasons set forth herein and in the accompanying submissions, the UFT and CSA Defendants respectfully request that the Court:

1.  Dismiss all claims against the UFT and CSA Defendants, including those (a) seeking a declaratory judgment that the UFT and CSA Awards were promulgated without statutory or contractual authority; and (b) alleging that UFT and CSA engaged in conspiracies regarding, or aided and abetted, violations of 42 U.S.C. § 1983; and

2.  award such other and further relief as the Court deems just and proper.

Dated: April 4, 2022                        Respectfully submitted,


/s/ ALAN M. KLINGER
STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
Dina Kolker, Esq.
Arthur J. Herskowitz, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com
dkolker@stroock.com
aherskowitz@stroock.com

18

- and -

Beth A. Norton, Esq.
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
(212) 701-9420
bnorton@uft.org

*Co-counsel for the UFT Defendants*

- and -

David A. Grandwetter, Esq.
COUNCIL OF SCHOOL SUPERVISORS
AND ADMINISTRATORS
40 Rector Street, 12th Floor
New York, NY 10006
(718) 852-3000
david@csa-nyc.org

*Co-counsel for the CSA Defendants*