UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, et al., on behalf of themselves and    DOCKET NO.
all other similarly situated employees of the New York City    21-CV-06387
Department of Education,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

Defendants.
-------------------------------------------------------------------X

**DEFENDANTS MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND
MEDIATION SERVICES, and
SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC
MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

**VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP**
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,
and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………… i-iii

PRELIMINARY STATEMENT ………………………………… 1

STANDARD FOR REVIEW ………………………………… 5

LEGAL ARGUMENT ………………………………… 6

POINT I.
NEW YORK CIVIL SERVICE LAW ARTICLE 14, §209 PERMITS THE PARTIES TO SUBMIT TO ARBITRATION, WHICH THE UNION DEFENDANTS AND THE CITY CHOSE TO DO, THEREFORE, ARBITRATOR SCHEINMAN ACTED WITH STATUTORY AUTHORITY TO ARBITRATE IMPASSE AND ISSUE BINDING ARBITRATION AWARDS **.**
………………………………… 6

POINT II.
CONSPIRACY CLAIMS AGAINST ARBITRATOR SCHEINMAN MUST FAIL (1) AS ALLEGATIONS ARE CONCLUSORY AND GENERAL AND MERE FACT THAT ARBITRATOR AGREED TO ARBITRATE IMPASSE IS INSUFFICENT TO GIVE RISE TO A CONSPIRACY CLAIM, (2) SAMS WAS NOT GRANTED POWER TO DECIDE APPEALS AND PLAINTIFFS DID NOT AVAIL THEMSELVES OF THE APPEALS PROCESS AND THUS FAILED TO SHOW INJURY.
………………………………… 10

POINT III.
ACTING WITHIN HIS AUTHORITY AND SCOPE, ARBITRATOR SCHEINMAN IS AFFORDED ABSOLUTE IMMUNITY ………………………………… 14

CONCLUSION ………………………………… 14

# TABLE OF AUTHORITIES

**Cases**

Arena v. Department of Social Services of Nassau County,
216 F.Supp.2d 146 (E.D.N.Y. 2002) …………………………………………….. 11

Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) …………………………………………….. 5

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
493 F.3d 87, 98 (2d Cir. 2007) ……………………………………… 5
Austern v. Chicago Bd. Options Exch., Inc.
898 F.2d 882, 886 (2d Cir.1990) ……………………………………………. 14

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 [2007]) …………………… 5

Bd. of Educ. of City Sch. Dist. of City of New York v. New York State Pub. Emp. Rels. Bd.
75 N.Y.2d 660, 669, 554 N.E.2d 1247, 1252 (1990) ………………………….. 9

Ciambriello v. County of Nassau,
292 F.3d 307, 324 (2d Cir. 2002) ……………………………………… 11

DeMarco v. City of New York,
No. 08–CV–3055 (RRM)(LB), 2011 WL 1104178 (E.D.N.Y. March 23, 2011).. 14

Dwares v. N.Y.C.,
985 F.2d 94, 100 (2d Cir. 1993) ……………………………………… 11

Hayden v. Paterson,
594 F.3d 150, 161 (2d Cir. 2010) ……………………………………… 5

Jacobs v. Mostow
271 F. App'x 85, 88 (2d Cir. March 27, 2008) ………………………………… 14

Margiotta v. Kaye
283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) ………………………………….. 6, 9, 10

Matter of Alden Cent. Sch. Dist. v. Watson
56 A.D.2d 713,713 (4th Dep't 1977) ……………………………………… 7

McCray v. Patrolman N.A. Caparco,
761 F. App'x 27,31 (2d Cir. 2019) ……………………………………… 11

Rodriguez v. Weprin
116 F.3d 62, 65-66 (2d Cir. 1997) ……………………………………… 11

Webb v. Goord
340 F.3d 105, 110-11 (2d Cir. 2003) …………………………………….    11

**Statutes**

Fed. Rules of Civ. Pro. 12(B) (6)    …………………………………    5, 11

Title 42 U.S.C. Section 1983         …………………………………    1, 14

NY Civil Service Law Article 14, ("The Taylor Law"), §209

# PRELIMINARY STATEMENT

This Brief is submitted by the Defendants Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services, LLC (hereinafter "Scheinman") to dismiss Plaintiffs' Amended Complaint for a failure to state a cause of action pursuant to Fed. Rules of Civ. Pro. 12(b) (6).

Plaintiffs allege that Defendant Arbitrator Scheinman (1) lacked authority to arbitrate impasse between the City and each of the labor union Defendants[1]—UFT, CSA, and District 37; (2) conspired with UFT, CSA, and District 37 to violate Plaintiffs constitutional rights under 42 U.S.C. §1983.

At issue here is the Vaccine Mandate issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene on August 24, 2021. The order required DOE employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021. Representing its members in bargaining negotiations, the various municipal unions, including Defendants UFT, CSA, District 37, viewed the policy as draconian and opposed the mandate. While the unions and the City worked closely together and attempted to negotiate in good faith, their efforts were unsuccessful. As the policy was scheduled to become effective on September 13, 2021, a Declaration of Impasse was filed with the Public Employment Relations Board ("PERB"). Thereafter, a PERB-appointed mediator, Defendant Scheinman, held multiple mediation sessions with the parties. While progress was made, with the start of the school year imminent, the parties agreed to move to an expedited arbitration. Following the arbitration sessions, Arbitrator Scheinman issued binding arbitration awards.

---

[1] The United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"); Counsel of Supervisors and Administrators ("CSA"), District Council 37, ("DC 37 Local 372").

1

The 93 named Plaintiffs are tenured DOE employees who failed to comply with the COH Order and have failed to avail themselves with the options provided to them in the arbitration awards. There is no allegation that any of the Plaintiffs filed for an exemption, was denied same, submitted himself/herself to an appeal process, and that the appeal was ultimately denied.

Plaintiffs now challenge the consequence of that non-compliance by alleging that the mandate is unconstitutional, and the arbitrations awards are invalid.

As set forth below, Scheinman Defendants are entitled to dismissal of the claims as (1) as the plain language of NY Civil Service Law Article 14, §209 empowers the labor unions and the City to voluntarily chose to arbitrate issues, which is what the parties did in this case thereby authorizing Arbitrator Scheinman to issue binding arbitration awards; (2) (a) mere conclusory assertions and conjectures—Arbitrator's agreement to arbitrate the impasse--fail to give rise to a cognizable §1983 conspiracy claim and (2) (b) SAMS neither determined the appeals nor there is an allegation that any of the Plaintiffs availed themselves of the process and were injured by it; and 2 (c) the claims are barred by the arbitrator's well-established absolute quasi-judicial immunity.

### FACTUAL BACKGROUND

On August 24, 2021, The Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") issued an order requiring all NYC DOE employees to show proof of compliance with the Vaccine Mandate, which required a receipt of at least one dose of vaccination against COVID-19 by September 27, 2021. (See **Exhibit A**, ECF No. 47, Amended Complaint; ECF No. 89, Order dated February 12, 2022). Plaintiffs are employed by the New York City Department of Education ("NYC DOE") and are represented in bargaining negotiations by the various labor unions, including Defendants the United Federation of Teachers, Local 2,

American Federation of Teachers, AFL-CIO ("UFT"); Counsel of Supervisors and Administrators ("CSA"), District Council 37, ("DC 37 Local 372"). Id. Each of the union Defendants, representing its member, viewed the policy as draconian and opposed the mandate. Id at 110. The implementation of the policy was deemed necessary to be negotiated. Id. at 111. Consequently, the union Defendants attempted engaged in intense bargaining negotiations with the City. Id. While the parties worked closely together and attempted to negotiate in good faith, their efforts were unsuccessful. Id. As the policy was scheduled to become effective on September 13, 2021 and given the reported "stalemate between the parties and the fleeting time before the upcoming school year, a Declaration of Impasse" was filed with the Public Employment Relations Board ("PERB") on September 1, 2021. Id. at 116. On September 2, 2021, PERB appointed Martin Scheinman to be a mediator, in the attempt to bridge the divide within the expedited timeframe. Id. at 153. The PERB-appointed mediator, Defendant Scheinman, held mediation sessions with the parties on each of September 2, 3, 4 and 5, with some days having multiple sessions. Id. at 155. While progress was made, with the start of the school year imminent along with the mandates scheduled to commence on September 13 and September 27, respectively, the parties agreed to move to an expedited arbitration due to the exigencies of these circumstances. Multiple arbitration sessions were held. Id. at 78. Following the arbitration sessions, on September 10, 2021, the arbitrator issued a binding arbitration decision between the City and UFT ("UFT Impact Arbitration Award") , which established in relevant part (1) a processes for religious and medical exemptions and accommodation requests, namely, processes for staff to apply for, and appeal from adverse determinations for medical and religious accommodations to an independent arbitration panel (and the ability to remain on the DOE payroll and continued medical benefits coverage while such applications and appeals are pending); (2) options to voluntarily separate from DOE service

with certain compensation benefits, or to elect for an extended non-disciplinary leave without pay ("LWOP"), all while maintaining health benefits until September 5, 2022; and (3) that as of December 1, 2021, the DOE may seek to unilaterally separate employees who have not complied with the Vaccination Mandate, or who have not obtained an approved exemption or accommodation and have not opted for either separation option. (See, ECF No. 19-1, Impact Arbitration Award at pp. 6-18).

Finally, the Impact Arbitration Award delineated an appeal's process for the NYC DOE employees challenging the denial of a request for an exemption. The award provided, in relevant parts:

> F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination ( . . . ). Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty-eight (48) hours after the appeal.
>
> *G. A panel of arbitrators identified by SAMS shall hear these appeals* ( . . . ).
>
> L. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution

(Id.).

The arbitration awards for CSA and District 37 were issued on September 15, 2021 and October 3, 2021, respectively, and mirrored the Impact Arbitration Award. (See ECF. No. 33 at 7, Order Denying TRO). All parties were subject to similar terms regarding the Vaccine Mandate procedures. (Id. at 8).

Lastly, Plaintiffs do not allege that any of them submitted himself/herself to the appeal process. (See, **Exhibit A**, ECF. No. 47; **Exhibit B** at 17, ECF No.89, Order Denying the TRO).

**STANDARD FOR REVIEW**

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim is well-settled. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 [2007]). In evaluating the sufficiency of a complaint "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id*., 594 F.3d at 161. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

**LEGAL ARGUMENT**

**POINT I. NEW YORK CIVIL SERVICE LAW ARTICLE 14, §209 PERMITS THE PARTIES TO SUBMIT TO ARBITRATION, WHICH THE UNION DEFENDANTS AND THE CITY CHOSE TO DO, THEREFORE, ARBITRATOR SCHEINMAN ACTED WITH**

**STATUTORY AUTHORITY TO ARBITRATE IMPASSE AND ISSUE BINDING ARBITRATION AWARDS.**

The allegations against Scheinman Defendants should be dismissed as UFT, CSA and District 37 and the NYC DOE submitted to voluntary arbitration pursuant to Civil Service Law Article 14, §209, therefore, Defendant Scheinman acted within his authority and scope when he issued the arbitrations awards.

The Public Employees Fair Employment Act of 1967 under NY Civil Service Law Article 14, ("The Taylor Law"), §209 provides, in parts, that:

2. Public employers are hereby empowered to enter into written agreements with recognized or certified employee organizations setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations. *Such agreements may include the undertaking by each party to submit unresolved issues to impartial arbitration.*

3. *On request of either party* or upon its own motion, as provided in subdivision two of this section, and in the event the board determines that an impasse exists in collective negotiations between such employee organization and a public employer as to the conditions of employment of public employees, *the board shall render assistance* as follows:
(a) to assist the parties to effect a voluntary resolution of the dispute, the board shall appoint a mediator or mediators' representative of the public from a list of qualified persons maintained by the board;
( . . . )
(d) . . . *[if] the impasse continues, the public employment relations board shall have the power to take whatever steps it deems appropriate to resolve the dispute, including* (i) the making of recommendations after giving due consideration to the findings of fact and recommendations of such fact-finding board, but no further fact-finding board shall be appointed and (ii) *upon the request of the parties, assistance in providing for voluntary arbitration.*

As the foregoing demonstrates, the parties have a statutory right, pursuant to the Taylor Law, to choose to mutually agree to a binding arbitration. See also, e.g., Margiotta v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003). In fact, this Court, in Margiotta v. Kaye, discussed the impasse procedure:

The first step of the impasse procedure for all covered employees is mediation. Id. §§ 209.3(a), 209.4(a). PERB appoints a mediator to assist the parties in reaching a voluntary resolution of their dispute. Id. With the exception of employees who are eligible for compulsory interest arbitration, if the dispute is still not settled,

impasses involving all public employees proceed next to a fact-finding board which is appointed by PERB to make findings and recommendations for resolution of the dispute. Id. § 209.3(b)-(d). In the alternative, the parties together may voluntarily submit to arbitration. Id. § 209.3(d)(ii).

The Public Employment Relations Board's (PERB) authority to administer the impasse resolution procedures, including interest arbitration, and the parties right to choose to submit to same is similarly noted on the official New York State governmental website [2].

Of note, the public policy behind the Taylor Law is to "encourage [the] voluntary resolution of labor disputes involving public employees." Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713,713 (4th Dep't 1977).

In the present case, PERB found that the parties were at impasse in negotiations, appointed a mediator, and, then, after the mediation was ultimately unsuccessful, permitted each of the union Defendants and the DOE to voluntarily move to arbitration. This is evidenced by a letter informing PERB of the union Defendants' and the City's decision to submit the impasse to a binding arbitration. (ECF No. 47 **Exhibit A** at 155, Amended Complaint).

> We write to advise you that PERE-appointed mediator Martin Scheinman held (virtual) mediation sessions with the parties on each of September 2, 3, 4 and 5, with some days having multiple sessions. While progress was made, with the start of the school year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13th and Sept. 27th, respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce. Arbitration sessions are being held on Sept. 6th. We will keep PERB apprised as to status.

These arbitrations were not imposed by the statute. These arbitrations were not mandated by PERB. They were not compulsory. They were the result of a voluntary agreement between the parties, which the statue specifically permits. Accordingly, Arbitrator acted within his authority

---

[2]https://perb.ny.gov/taylor
law/#:~:text=209%20Resolution%20of%20Disputes%20in,year%20of%20the%20public%20employer.

and scope arbitrate over the UFT, CSA and District 37 impasse and issue the binding arbitration awards.

Plaintiffs make two arguments to support their mistaken claim that Arbitrator Scheinman did not have authority to arbitrate the impasse. First, Plaintiffs cite and rely on § 209.3 (f). Plaintiffs' reliance on the section is misplaced; § 209.3 (f) is inapplicable here and therefore inconsequential. In that context, § 209(3) (f), provides:

> where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply, and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present; (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement. The board may provide such assistance as may be appropriate.

Further, § 209(3) (e ) provides that the following provisions do not apply to the school districts:

> (iii) the legislative body or a duly authorized committee thereof shall forthwith conduct a public hearing at which the parties shall be required to explain their positions with respect to the report of the fact-finding board; and (iv) thereafter, the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved.

As the foregoing section's plain language merely provides that, school districts, unlike other public employers, are not obligated to conduct a public hearing and that there is no imposition on a legislative body to take any actions regarding the fact-finding report.

It is evident that § 209(3)(f) has no application to the case at bar.

Second, Plaintiffs argued that Arbitrator Scheinman did not have contractual authority to arbitrate the impasse because the UFT's collective bargaining agreement limits an arbitrator's "decision strictly to the application and interpretation of the provisions of this Agreement and he/she shall be without power or authority to make any decision: 1. Contrary to, or inconsistent

with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law." (ECF No. 47 Amended Complaint, ¶157). Plaintiffs, therefore, argued that Arbitrator Scheinman exceeded his authority since the award modified and was inconsistent with the applicable law.

Again, plaintiff's reliance on the CBA is misplaced as the plain language of Article 22 of the CBA demonstrates that the article pertained strictly to grievance arbitration. A grievance arbitration is a process for union and employer to resolve disagreements concerning interpretations or application of an existing CBA. There is no ambiguity that the arbitrations at issue in this case were not grievance arbitrations. Accordingly, the CBA provision is inconsequential.

Lastly, and importantly, one crucial distinction must be noted. It is worth noting that within the meaning of the Taylor's Law, the purpose and interpretation of compulsory arbitrations is that it is an entitlement and not a punitive measure. Taylor's Law provides for an impasse mechanism for certain classes of public employees and differentiates between a compulsory and voluntary arbitration. Specifically, the statute provides that limited classes of public employees, such as police officers, firefighters and other miscellaneous public safety employees, are *entitled* to a compulsory arbitration. See, e.g. Margiotta, supra. At 860. In cases where public safety employees declare impasse, the Legislature imposed a mechanism where the parties must arbitrate in order to resolve the conflict. Id. In cases of impasse as to all other public employees, including school boards, the Legislature did not impose a mechanism for a final procedure. See, e.g. Bd. of Educ. of City Sch. Dist. of City of New York v. New York State Pub. Emp. Rels. Bd., 75 N.Y.2d 660, 669, 554 N.E.2d 1247, 1252 (1990). Rather, "the Legislature has manifested an intention to commit these decisions to the discretion of the public employer." Id. In other words, "The Taylor law neither creates nor confers any right or benefit in favor of employees" except for those

specifically delineated in the statue, such as public safety employees. <u>Margiotta</u>, <u>supra</u> at 865. As the Court in <u>Margiotta</u> noted, "[b]ecause the plaintiffs, [like Plaintiffs here] are not included in the list of employees *entitled* to compulsory arbitration, they have no due process entitlement to such a procedure in the event of impasse." <u>Id</u>. (*emphasis added).* However, while the parties have no duty to arbitrate, they have a right do same.  <u>Id.</u>; see also, Civil Service Law 209. There is no statute or decisional law prohibiting public employees and public employers to choose to submit to a voluntary binding arbitration to resolve their conflict.

This is precisely what took place in this case. The unions and the City were not statutorily mandated to arbitrate, rather, they voluntarily chose to submit the impasse to the arbitration.  <u>Id</u>. To reiterate, in this case, while the union Defendants were not statutorily entitled to an arbitration, they were statutorily permitted to choose to voluntarily submit their impasse to binding arbitrations, which is what they did.

**POINT II. CONSPIRACY CLAIMS AGAINST ARBITRATOR SCHEINMAN MUST FAIL (1) AS ALLEGATIONS ARE CONCLUSORY AND GENERAL AND MERE FACT THAT ARBITRATOR AGREED TO ARBITRATE IMPASSE IS INSUFFICIENT TO GIVE RISE TO A CONSPIRACY CLAIM, (2) SAMS WAS NOT GRANTED POWER TO DECIDE APPEALS AND PLAINTIFFS DID NOT AVAIL THEMSELVES OF THE APPEALS PROCESS AND THUS FAILED TO SHOW INJURY**.

Plaintiffs' conspiracy claim must fail as the allegation that arbitrating the impasse is evidence of conspiracy, in and of itself, is speculative, conclusory and insufficient to state a cognizable claim under Section 1985, and, as to the claims  regarding the appeal's procedure, Plaintiffs failed to allege injury.

On 12(b)(6) motions, a litigant's pleading obligations are not "toothless"; "the pleader must allege facts, either directly or inferentially, that satisfy each element required for recovery under some actionable legal theory." <u>Rodriguez v. Weprin,</u> 116 F.3d 62, 65-66 (2d Cir. 1997).  To state a claim under § 1983, a plaintiff must allege that the challenged conduct was attributable, at least in

part, to a person acting under color of state law. Arena v. Department of Social Services of Nassau County, 216 F.Supp.2d 146 (E.D.N.Y. 2002). When, like here, the § 1983 allegations involve a private actor, a plaintiff must plead a conspiracy claim and therefore allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." McCray v. Patrolman N.A. Caparco, 761 F. App'x 27,31 (2d Cir. 2019) (quotations omitted). Such private actors must be a "willfulparticipant in joint activity with the State or its agents." See Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (internal citations omitted). Importantly, "a merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Id. Therefore, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" should be "dismissed." Dwares v. N.Y.C., 985 F.2d 94, 100 (2d Cir. 1993). As such, Plaintiff "must [plead] some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).

To support their conspiracy claim, Plaintiffs make two points: (A) Plaintiffs believe that arbitrating the impasse and issuing the awards in and of itself constitutes evidence of conspiracy since Arbitrator Scheinman did not have either statutory or contractual to do so; (B) Plaintiffs also allege that Defendant Scheinman conspired with the parties because it granted "SAMS, LLC authority to determine appeals from determinations regarding exemptions for religious and/or disability."(Exhibit A ¶370).

Plaintiffs conspiracy argument has no basis in law and factually incorrect. As to point (A), this argument is circular as it's based on logical fallacy of assuming of what is intended to be proven. To state a cognizable conspiracy claim, the law requires that private actors, such as Arbitrator Scheinman, must be a "willfulparticipant in joint activity with the State or its agents." Here, Plaintiffs merely allege that the arbitrator conspired with the parties because he agreed to arbitrate the impasse. Plaintiffs alleged in a conclusory fashion, that Arbitrator Scheinman "failed to stop the NYCDOE from suspending the plaintiffs without pay due process" (Id. ¶439); "directly participated in and/or tacitly condoned the violations of the plaintiffs' constitutional rights." (Id. ¶442); "foster[ed] and encourage[ed] the NY DOE" (Id., ¶438), and "have engaged in a course of section and behavior rising to the level of a policy, and condoned practice" which has deprived Plaintiffs of their rights" (Id. ¶395).

This claim falls short of the requirement of being a willful participant. Plaintiff allege nothing mora than conclusory, vague, or general allegations. The conspiracy claim pleading is toothless and therefore is insufficient to survive the scrutiny of a 12(b) motion.

Additionally, the foregoing demonstrated that Arbitrator Scheinman acted pursuant to a statutory authority to arbitrate the impasse.

Plaintiffs remaining argument regarding the appeals process, as stated in point (B), must fail for two reasons. First, the allegation is factually incorrect. The award did not grant SAMS authority to *determine* appeal. Rather, SAMS was tasked with overseeing and streamlining the appeals procedure. Specifically, the decision to grant or deny a request for an exemption was submitted to an independent panel unrelated to SAMS. If the employee wishes to appeal a determination, the award further provided that "[a] panel of arbitrators *identified* by SAMS shall

hear these appeals." (See ECF No. 19-1, Impact Arbitration Award at pp. 6-18; ECF. No. 47 **Exhibit A** - Amended Complaint at pp. 76-90, Impact Arbitration Award)

With regard to appealing the denial, the award did not provide that Arbitrator Scheinman would decide any of these appeals. The award did not provide that any of SAMS' arbitrators would decide any of these appeals. Rather, SAMS was merely tasked with identifying an independent arbitrator, not SAMS's arbitrator, an independent panel of arbitrators. Scheinman Defendants were tasked to facilitate and oversee the process and were not active participants in the decision-making process.

Second, and more important, Plaintiffs failed to allege that they have availed themselves of the appeal process and have therefore failed to allege that they were injured by it. The Amended Complaint is entirely devoid of any allegations that any of the Plaintiffs opted to appeal a denial of a request for an exemption. Furthermore, Plaintiffs' Motion for Temporary Restraining Order (hereinafter "TRO") and Preliminary Injunction was similarly devoid of any allegations that the Plaintiffs were injured by the appeals process. In fact, Your Honor highlighted this deficiency in the Order denying the TRO, stating that:

> None of the other declarant-Plaintiffs state whether they availed themselves of any of the pre- or post- deprivation processes, and none of the declarant-Plaintiffs articulated their individual religious, medical, or other bases for refusing to receive a COVID-19 vaccination. Mr. Graff, counsel to Plaintiffs, did not include in his signed Affidavit any information regarding which of the ninety-three Plaintiffs, or the subset of forty-three Plaintiff members who allegedly received termination notices,[10] had availed themselves of any processes.(See ECF No. 76-1, Graff Aff.).

(**Exhibit B** at 17, ECF No.89).

Therefore, Plaintiffs have failed to show that they sustained any constitutional violation/or depravation of rights by the appeal's process.

**POINT III. <u>ACTING WITHIN HIS AUTHORITY AND SCOPE, ARBITRATOR SCHEINMAN IS AFFORDED AN ABSOLUTE IMMUNITY</u>.**

Finally, the claims against defendant Scheinman—all of which relate to his actions as the arbitrator—are barred by the doctrine of absolute immunity.

It is well settled that "any claims for damages against the arbitrator are barred by that individual's absolute immunity 'for all acts within the scope of the arbitral process.' " <u>Jacobs v. Mostow</u>, 271 F. App'x 85, 88 (2d Cir. March 27, 2008) (summary order) (quoting <u>Austern v. Chicago Bd. Options Exch., Inc.</u>, 898 F.2d 882, 886 (2d Cir.1990)); see also <u>DeMarco v. City of New York</u>, No. 08–CV–3055 (RRM)(LB), 2011 WL 1104178 (E.D.N.Y. March 23, 2011) ("Accordingly, as the arbitrator in Plaintiff DeMarco's § 3020–a proceeding, [the arbitrator] is entitled to absolute immunity from liability for acts committed in that capacity.").

As the foregoing demonstrates that the arbitrator acted within the scope of the arbitrator and, thus, are barred by the doctrine of absolute immunity. Moreover, with respect to any request for prospective relief, there is no allegation of a violation of a prior declaratory decree and, thus, no such relief is available under Section 1983. Accordingly, the claims against defendant Scheinman must be dismissed as a matter of law.

## CONCLUSION

The plain language of the Civil Service Law section 209 is unequivocal and specifically permits the parties to agree to a voluntary binding arbitration. Defendants UFT, CSA and District 37 and the City chose to submit the impasse to the arbitration pursuant to Taylor's Law thereby invoking Arbitrator Scheinman's authority to issue the binding arbitration awards.

Furthermore, Plaintiffs' claim that accepting assignment to arbitrate impasse is proof of conspiracy must fail as it is clearly insufficient to plead a cognizable claim of constitutional violations under 42 U.S.C. §1983. Additionally, and the appeal procedure is legal and valid and

did not empowered Arbitrator Scheinman or SAMS to decide the appeals. Rather, it simply facilitated the process for efficiency and expediency. Lastly, Plaintiffs' claims against Arbitrator Scheinman and SAMS are barred by the doctrine of absolute immunity.

Dated: Garden City, New York
April 4, 2022

Respectfully submitted,

VIGORITO, BARKER, PATTERSON,
NICHOLAS & PORTER, LLP

*Karolina Wiaderna*

Karolina Wiaderna
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,*
*and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355