UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
NICOLE BROECKER, *et al.,* on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                         Plaintiffs,

**INDEX NO. 21-cv-6387**

-against-

NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION, *et al.,*

                         Defendants.
--------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'
MOTIONS TO DISMISS**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iv

PRELIMINARY STATEMENT ..................................................................................... 1

    A.     DOE and UFT Collusion With Scheinman ........................................ 1

    B.     DOE and CSA Conspiracy With Scheinman...................................... 3

    C.     DC37 And DOE Collusion ................................................................ 4

POINT I.     STANDARD OF REVIEW FOR A MOTION TO DISMISS
                ................................................................................................. 5

    A.     FRCP 12(b)(1) ................................................................................... 5

    B.     FRCP 12(b)(6) ................................................................................... 6

POINT II.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE
             CLAIM FOR DECLARATORY JUDGMENT ON THE
             PLAINTIFFS' FIRST CAUSE OF ACTION SEEKING AN
             ORDER DECLARING THAT THE DOE'S SUSPENSION
             WITHOUT PAY AND WITHOUT DUE PROCESS
             VIOLATED THE PLAINTIFFS' CONSTITUTIONAL
             RIGHTS ............................................................................................. 7

POINT III.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE
             CLAIM FOR DECLARATORY JUDGMENT ON THE
             PLAINTIFFS' SECOND CAUSE OF ACTION SEEKING
             A DECLARATION THAT THE UFT ARBITRATION
             AWARD WAS PROMULGATED WITHOUT ANY
             STATUTORY OR CONTRACTUAL AUTHORITY ......................................... 10

    A.     Underlying Facts That Led To The UFT Arbitration Award .............................. 11

    B.     No Statutory Authority For Binding Arbitration To Resolve
         Impasse Negotiations In School Districts............................................................. 11

    C.     No Contractual Authority For Binding Arbitration To
         Resolve Impasse Negotiations In School Districts .............................................. 16

POINT IV.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' THIRD CAUSE OF ACTION SEEKING A DECLARATION THAT THE CSA ARBITRATION AWARD WAS PROMULGATED WITHOUT ANY STATUTORY OR CONTRACTUAL AUTHORITY ........................................ 17

POINT V.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FOURTH CAUSE OF ACTION SEEKING A DECLARATION THAT THE DC37 AGREEMENT WAS PROMULGATED WITHOUT ANY CONTRACTUAL AUTHORITY ...................................................... 19

POINT VI.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIFTH CAUSE OF ACTION SEEKING A DECLARATION THAT THE RELEASE EXECUTED BY PLAINTIFFS TO EXTEND THEIR LEAVE WITHOUT PAY IS VOID AND UNENFORCEABLE.......................................... 20

POINT VII.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A PERMANENT INJUNCTION ON THE PLAINTIFFS' SIXTH CAUSE OF ACTION...................................... 23

POINT VIII.   THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, THE UFT DEFENDANTS, AND THE SCHEINMAN DEFENDANTS ON THE PLAINTIFFS' SEVENTH CAUSE OF ACTION ........................................................ 24

A.   Factual Predicate For Cause Of Action ............................... 24

B.   Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants ............................................................. 25

C.   Plaintiffs Have Stated A Plausible Claim Against The UFT Defendants ............................................................. 26

D.   Plaintiffs Have Stated A Plausible Claim Against The Scheinman Defendants ................................................. 29

POINT IX.   THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, THE CSA

DEFENDANTS, AND THE SCHEINMAN DEFENDANTS ON THE PLAINTIFFS' EIGHTH CAUSE OF ACTION .................................................................................. 31

A.     Factual Predicate For Cause Of Action ................................................. 31

B.     Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants ................................................................................................. 32

C.     Plaintiffs Have Stated A Plausible Claim Against The CSA Defendants ................................................................................................. 33

D.     Plaintiffs Have Stated A Plausible Claim Against The Scheinman Defendants ..................................................................... 35

POINT X.     THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, AND THE DC37 DEFENDANTS ON THE PLAINTIFFS' NINTH CAUSE OF ACTION .................................................................................. 36

A.     Factual Predicate For Cause Of Action ................................................. 36

B.     Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants ................................................................................................. 37

C.     Plaintiffs Have Stated A Plausible Claim Against The DC37 Defendants ................................................................................................. 38

POINT XI.     THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST PORTER, MULGREW, CANNIZZARO, GARRIDO, FRANCOIS, FRANCIS, AND SCHEINMAN ON THE PLAINTIFFS' TENTH CAUSE OF ACTION .................................... 41

POINT XII.     THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR CLASS ACTION STATUS ......................................................... 43

POINT XIII.     THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT TO CORRECT ANY DEFICIENCIES IN THE AMENDED COMPLAINT ................................................................ 44

CONCLUSION.................................................................................................................... 45

# TABLE OF AUTHORITIES

**Cases**

*Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir 1998) ................................. 25, 32, 37

*Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d 660, 671 (1990) ................................. 1, 2, 3, 15

*City of Rochester*, 7 PERB P3060 (1974) ........................................................................ 17, 18, 20

*Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012) ..................................................................... 17, 18, 20

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ............................ 28, 35, 36, 40

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ........................................................................ 27, 34

*Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293 (D. Conn. 2013) ................................................. 38

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ................................................... 23

*Garcia v Coll. of Staten Is.*, 2012 US Dist LEXIS 128485, at *7-10 (E.D.N.Y. 2012) (Matsumoto, J.) ...................................................................... 6

*Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 274 (2d Cir 1992) ........................................................................ 8

*Grullon v. Delta Air Lines, Inc.*, 2021 U.S. App. LEXIS 38168, at *4-7 (2d Cir. 2021) ........................................................................ 21

*Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir 1994) ............................................................ 6

*Leahy v. Bd. of Trustees*, 912 F.2d 917, 921 (7th Cir. 1990) ........................................................ 3

*Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019) .................................................................... passim

*Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 US Dist LEXIS 2221, at *3 (S.D.N.Y. 1996) ................................................................ 8

*Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016) .............................................................. passim

*Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999) ................................................................ 14, 39

*McKenzie v. Grand Cent. Partnership*, 2016 US Dist LEXIS 39361, at *5-7 (E.D.N.Y. 2016) (Matsumoto, J.) ...................................................................................... 7

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977) ......................................... 41

*Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007) ................................................................................................ 28, 35, 40

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019) ................................. 28, 35, 36, 40

*Union Springs Cent. School Sch. Teachers' Assn*, 6 PERB P3074 (1973) .................... 17, 18, 19

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) ................................................................................................ passim

*Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir 1986) ......................................... 41

**Statutes**

29 U.S.C. § 626(f)(1)(F)(i). ....................................................................................... 21

N.Y. Civil Service Law § 209 ................................................................................... 11

N.Y. Civil Service Law § 209.2. ............................................................................... 12

N.Y. Civil Service Law § 209.3(a) ............................................................................ 11

N.Y. Civil Service Law § 209.3.(f) ..................................................................... passim

**Other Authorities**

https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022) ................................................. passim

**Rules**

FRCP Rule 23(a) ....................................................................................................... 43

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs in opposition to the Motions to Dismiss filed by the Defendants New York City Department of Education ("DOE") and Meisha Porter ("Porter") (collectively referred to as "DOE Defendants"), the Defendants United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") and Michael Mulgrew ("Mulgrew") (collectively referred to as "UFT Defendants"), the Defendants Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA") and Mark Cannizzaro ("Cannizzaro") (collectively referred to as "CSA Defendants"), the Defendants District Council 37, AFSCMA, AFL-CIO ("DC37"), Local 372 of DC37 ("Local 372"), Local 1251 of DC37 ("Local 1251"), Henry Garrido ("Garrido"), Shaun Francois ("Francois"), and Francine Francis ("Francis") (collectively referred to as "DC37 Defendants") and the Defendants MARTIN F. SCHEINMAN ("Scheinman"), SCHEINMAN ARBTRATION AND MEDIATION SERVICES ("SAMS"), and SCHEINMAN ARBTRATION AND MEDIATION SERVCIES LLC ("SAMS LLC") (collectively referred to as "Scheinman Defendants").

### A.    DOE and UFT Collusion With Scheinman

The DOE Defendants and the UFT Defendants rely upon the Impact Arbitration Award ("UFT Arbitration Award") issued by Scheinman (**Docket Entry No. 47-5**) as the basis for the implementation of the vaccine mandate issued by the Commissioner of the New York City Department of Health ("Vaccine Mandate"), but the DOE Defendants and the UFT Defendants ignore the clear and unambiguous statutory language in N.Y. Civil Service Law § 209.3.(f) and the holding in the New York State Court of Appeals case *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d 660, 671 (1990) that makes it clear that binding arbitration to resolve an impasse in collective bargaining in a school district context is illegal.

Yet, the DOE Defendants and the UFT Defendants ignore the statute, the binding case law, and do not identify any source of authority Scheinman had to issue the UFT Arbitration Award. Both the DOE Defendants and the UFT Defendants recognize that Scheinman was not appointed

1

by the New York State Public Employment Relations Board ("PERB") as an arbitrator, but as a mediator. *See also*, **UFT Defendants' Memorandum of Law**, at page 5.[1]

It was the UFT Defendants and the DOE Defendants who agreed to violate N.Y. Civil Service Law § 209.3.(f) and the holding in *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.*, 75 N.Y.2d at 671 to convert the mediation into an illegal binding arbitration. *See,* **Docket Entry No. 47-11**. Without this agreement to convert the mediation into binding arbitration, the DOE Defendants would not have had the authority to implement the vaccine mandate as a condition of employment against UFT members-Plaintiffs. *See,* **Docket Entry No. 89**, at page 24-25.

In fact, when the Plaintiffs argued that to create a condition of employment, the DOE had to negotiate with its unions because the Vaccine Mandate was a mandatory subject of negotiation pursuant to N.Y. Civil Service Law § 201.4., this Court held that because "the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards.... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at page 24-25.[2]

The UFT Defendants conspired with the DOE and the UFT Defendants willfully participated in joint activity with a State actor (the DOE) that resulted in the Plaintiffs' constitutional rights being violated.

---

[1] The City Defendants state that PERB appointed an arbitrator. *See,* **City Defendants' Memorandum of Law**, at page 3. Factually, this is wrong and misleading. Scheinman was appointed as a mediator, not as an arbitrator. *See,* **Docket Entry No. 47-10**.

[2] Interestingly, while the DOE argues that the vaccine mandate is a condition of employment and the DOE's actions towards the Plaintiffs were not disciplinary in nature, several Plaintiffs when applying for unemployment insurance has had their applications for unemployment insurance denied based upon a finding of "misconduct." *See,* **Exhibit G**, copies of New York State Department of Labor ("NYSDOL") findings of "misconduct" for not taking the vaccine. The inconsistencies in the DOE's words and the actions of the NYSDOL with respect to unemployment insurance creates a serious question because to make a finding of "misconduct" the DOE must report such "misconduct" to the NYSDOL in response to the Plaintiffs' application for unemployment insurance. Is the DOE telling this Court one thing and the NYSDOL something different? This Court should permit discovery on this issue, denying the DOE Defendants' Motion.

The UFT Defendants cite to *Leahy v. Bd. of Trustees*, 912 F.2d 917, 921 (7th Cir. 1990) in which the Court held:

> Leahy has clearly failed to allege any willful participation by the Union in any "joint" action. His complaint contains no allegations of fact supporting the conclusion or inference that the Union has either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in his complaint.

In this Action, the Plaintiffs have pled a plausible claim that the UFT were encouraged by the DOE to agree to arbitrate the impasse in negotiations, that ultimately led to the Plaintiffs' constitutional rights being violated. *See,* **Docket Entry No. 47,** at ¶¶ 146 through 159.

## B.    DOE and CSA Conspiracy With Scheinman

While the UFT Defendants sought PERB's assistance in mediating the impasse in impact bargaining regarding the Vaccine Mandate, the CSA did not even seek PERB's intervention. Instead, the CSA went directly into binding impasse arbitration. *See,* **UFT's Memorandum of Law, at page 4**. Scheinman, without any legal authority issued an arbitration award binding the CSA and the DOE on the impact of the Vaccine Mandate ("CSA Arbitration Award"). **Docket Entry No. 47-6**.

Neither the CSA Defendants nor the DOE Defendants even articulate any legal authority for binding arbitration to resolve an impasse in negotiations in a school district context.

As the *Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671 held there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare*, Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f])." Yet the CSA Defendants and the DOE Defendants agreed to violate the New York State Civil Service Law by crafting their own final impasse resolution

3

mechanism of binding arbitration to resolve the impasse in negotiations over the impact of the Vaccine Mandate without any statutory authority to do so.

Based upon the CSA Arbitration Award, the DOE was able to successfully argue to this Court that "the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at page 25. Without the CSA Defendants' agreement to violate the N.Y. Civil Service Law, the DOE would not have had the ability to argue that it successfully negotiated the impact of the Vaccine Mandate, and therefore had the legal authority to impose as a term and condition of employment, the vaccine.

The CSA Defendants conspired with the DOE and the CSA Defendants willfully participated in joint activity with a State actor (the DOE) that resulted in the Plaintiffs' constitutional rights to be violated.

### C.  DC37 And DOE Collusion

The Plaintiffs' claims against the DC37 Defendants are based upon the Memorandum of Agreement between the DOE and DC37 ("DC37 Agreement").  *See,* **Docket Entry No. 47-13**. While the D37 Agreement does not have the same infirmities as the CSA Arbitration Award or the UFT Arbitration Award, the DC37 Defendants conspired with the DOE and the DC37 Defendants willfully participated in joint activity with a State actor (the DOE) that resulted in the Plaintiffs' constitutional rights being violated.

The DC37 Agreement was the only negotiated agreement between the DOE and any of the DOE's unions.  The fact that there was a negotiated settlement regarding the impact of the Vaccine Mandate, the DC37 Agreement provided this Court with the factual underpinning to hold that the Vaccine Mandate was a condition of employment and that the DOE complied with N.Y. Civil Service Law § 201.4.  *See,* **Docket Entry No. 89**, at page 24-25.

The DC37 Defendants purport that the DC37 Agreement was adopted with statutory authority, the DC37 Defendants do not address the fact that the members of DC37 did not ratify

the DC37 Agreement, making it procedurally defective and not a finalized agreement between the DOE and DC37.   DC37 failed to take the steps necessary, in violation of its duty of fair representation to seek and obtain ratification from the members.   Instead, in collusion with the DOE, the DC37 Defendants skipped the approval process of its members and kowtowed to the DOE and permitted the DOE to suspend DC37's members and terminate those members without due process.

The DC37 Defendants colluded and conspired with the DOE to violate the Plaintiffs' due process rights and rights in their salary.   The DC37 Defendants' Motion should be denied.

*************

While all of the Defendants suggest they individually or collectively did nothing to impede, impact, or violate the Plaintiffs' constitutional rights this is simply not true.   Each of the Defendants conspired and colluded with the DOE to grant the DOE the perceived legal authority to have the Vaccine Mandate become a condition of employment that enabled the DOE to: (a) place the Plaintiffs on suspension without pay and without due process; and (b) terminate 49 Plaintiffs without due process for not complying with the Vaccine Mandate.

The Plaintiffs have stated plausible claims against the Defendants.   The Defendants' Motions to Dismiss should be denied.

## POINT I.   STANDARD OF REVIEW FOR A MOTION TO DISMISS

### A.   FRCP 12(b)(1)

The UFT Defendants and the CSA Defendants argue that the Plaintiffs lack standing to directly challenge the UFT Arbitration Award and the CSA Arbitration Award.   *See*, **UFT Defendants' Memorandum of Law**, at pages 8-9.

The UFT Defendants and CSA Defendants cite to *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir 1994) in which the Court held: "[i]f there is no claim that the union breached its duty of fair representation, an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties."

In this Action, the Plaintiffs argue that the UFT Defendants and the CSA Defendants breached their duty of fair representation by: (1) entering into an illegal arbitration agreement that violated N.Y. Civil Service Law § 209 (**Docket Entry No. 47**, at ¶¶ 155, 284); and (2) failed to bring the agreement between the DOE and the UFT/CSA to the members of the union for ratification.

Accordingly with these allegations of the UFT's and CSA's breach of their duty of fair representation, the Plaintiffs have standing to challenge the UFT Arbitration Award and the CSA Arbitration Award.

Finally, this Court has already determined that the Plaintiffs have standing to prosecute this Action. *See,* **Docket Entry December 22, 2021, Scheduling Order**.

**B.      FRCP 12(b)(6)**

In *Garcia v Coll. of Staten Is.*, 2012 US Dist LEXIS 128485, at *7-10 (E.D.N.Y. 2012) (Matsumoto, J.) this Court opined:

> On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Iqbal*, 556 U.S. at 679.

In *McKenzie v. Grand Cent. Partnership*, 2016 US Dist LEXIS 39361, at *5-7 (E.D.N.Y. 2016) (Matsumoto, J.), this Court held:

> Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations omitted); Fed. R. Civ. P. 12(b)(6). This plausibility standard is guided by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Plaintiffs have alleged sufficient facts that on the face of the Amended Complaint, the Plaintiffs have set forth plausible claims against all of the Defendants. Accordingly, the Defendants' Motions to Dismiss should be denied.

**POINT II.     THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIRST CAUSE OF ACTION SEEKING AN ORDER DECLARING THAT THE DOE'S SUSPENSION WITHOUT PAY AND WITHOUT DUE PROCESS VIOLATED THE PLAINTIFFS' CONSTITUTIONAL RIGHTS**

The Defendants suggest that the Court not revisit its prior determinations that: (1) the Plaintiffs' constitutional rights were not violated by the DOE suspending without pay (**Docket Entry No. 33,** at page 17); and (2) the DOE can terminate the Plaintiffs' employment without due process the Vaccine Mandate is a condition of employment to work at the DOE. *See,* **Docket Entry No. 89,** at page 25.

The DOE relies upon the UFT Arbitration Award that the DOE argues "established a robust process" to apply for exemptions to the Vaccine Mandate and "set forth a process for separation from employment or the extension of LWOP." **DOE Defendants' Memorandum of Law**, at page 17.

But what happens if this Court holds that the UFT Arbitration Award or the CSA Arbitration Award, or the DC37 Agreement are invalid, illegal, and unenforceable? The answer is that the DOE had no contractual or legal authority to create the scheme and process to suspend the Plaintiffs without due process and no contractual or legal authority to terminate the Plaintiffs' employment. If the UFT Arbitration Award and/or the CSA Arbitration Award and/or DC37 Agreement are illegal and unenforceable, then the DOE has violated the Plaintiffs' constitutional rights.

The DOE Defendants argue that the Court should not disturb its prior rulings in this Action. The Plaintiffs suggest that the Court is not bound by its prior determinations because the determinations were made on a record for a preliminary injunction.

In *Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 US Dist LEXIS 2221, at *3 (S.D.N.Y. 1996), the Court held: "the court's findings on a preliminary injunction motion are not law of the case."

In *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 274 (2d Cir 1992), the Court opined:

> the question posed is whether the same court that issued a preliminary injunction should revisit the issue of the Goodmans' good faith at a subsequent stage in the same litigation. Accordingly, to the extent that any form of preclusion might be considered applicable here, it would not be a rule of res judicata or collateral estoppel, but rather the somewhat more flexible law-of-the-case doctrine, under which courts "generally adhere to [their] own earlier decision on a given issue in the same litigation." *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir.), *cert. denied,* 493 U.S. 956, 110 S. Ct. 370, 107 L. Ed. 2d 356 (1989).

8

> In any event, no rule of preclusion may appropriately be applied in
> this case. A preliminary determination of likelihood of success on
> the merits in a ruling on a motion for preliminary injunction is
> ordinarily tentative, pending a trial or motion for summary
> judgment. *See A.J. Canfield Co. v. Vess Beverages, Inc.,* 859 F.2d
> 36, 38-39 (7th Cir. 1988). As we stated in *Sierra Club v. United
> States Army Corps of Eng'rs,* 732 F.2d 253, 256 (2d Cir. 1984): "A
> preliminary injunction is issued to maintain the *status quo* until there
> can be a hearing on the merits." *See also Abdul Wali v. Coughlin,*
> 754 F.2d 1015, 1025 (2d Cir. 1985); *Arthur Guinness & Sons, PLC
> v. Sterling Publishing Co.,* 732 F.2d 1095, 1099 (2d Cir. 1984);
> *Diversified Mortgage Investors v. U.S. Life Title Ins. Co.,* 544 F.2d
> 571, 576 (2d Cir. 1976). It would therefore be anomalous at least in
> most cases, and here, to regard the initial ruling as foreclosing the
> subsequent, more thorough consideration of the merits that the
> preliminary injunction expressly envisions.

As discussed at length in this Memorandum of Law, the UFT Arbitration Award **(Docket Entry No. 47-5)**, the CSA Arbitration Award **(Docket Entry No. 47-6)**, and the DC37 Agreement **(Docket Entry No. 47-13)** were implemented by the DOE and the Defendants without legal and/or contractual authority.

If the Court determines that the UFT Arbitration Award, the CSA Arbitration Award, and/or the DC37 Agreement were not proper whether pursuant to statute (N.Y. Civil Service Law § 209.3.(f)) or properly ratified by the members, then, the basis for the DOE's suspensions without pay and terminations without due process fail.

In addition, the DOE argues that the Court previously held that the Plaintiffs were afforded all pre- and post-deprivation process afforded them under the constitution, **(Docket Entry No. 89, at page 15)**, based upon the UFT Arbitration Award, CSA Arbitration Award, and the DC37 Agreement.  But if the UFT Arbitration Award, the CSA Arbitration Award and/or the DC37 Agreement are held to be invalid, then the pre- and post-deprivation process were also invalid and therefore, the Court's prior rulings must be revisited.

As this Court held: "[c]ontrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which

ultimately resulted in the Arbitration Awards …. Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

If the DOE and the Defendant unions' compliance with N.Y. Civil Service Law § 201.4. failed because of infirmities in the UFT Arbitration Award, the CSA Arbitration Award, and/or the DC37 Agreement, then the Court's holding that the Vaccine Mandate was a condition of employment, must be revisited.

Upon revisiting the issue, then the Court should hold that the Plaintiffs have plausibly pled a cause of action for a declaration that the DOE's suspensions without pay and without due process violated the Plaintiffs' constitutional rights. The DOE's Motion to Dismiss must therefore be denied.

**POINT III.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' SECOND CAUSE OF ACTION SEEKING A DECLARATION THAT THE UFT ARBITRATION AWARD WAS PROMULGATED WITHOUT ANY STATUTORY OR CONTRACTUAL AUTHORITY**

The DOE Defendants' and the UFT Defendants' defenses to the Plaintiffs' claims is the UFT Arbitration Award. If the UFT Arbitration Award was rendered without any statutory or contractual authority, then the DOE Defendants' and the UFT Defendants' defenses fail and everything that has happened to the Plaintiffs since the UFT Arbitration Award was issued violated their constitutional rights. As a result, the Plaintiffs have stated plausible claims against the DOE Defendants and the UFT Defendants.

Unfortunately for the DOE Defendants, the UFT Defendants, and the Scheinman Defendants, the UFT Arbitration Award was rendered without any statutory or contractual authority and this Court should deny the Motion to Dismiss the Plaintiffs' Second Cause of Action because the UFT Arbitration Award violated N.Y. Civil Service Law § 209.3(f).

**A.     Underlying Facts That Led To The UFT Arbitration Award**

Pursuant to the New York Taylor Law (N.Y. Civil Service Law § 209.3(a)), the UFT and the DOE entered into negotiations over the impact of the Vaccine Mandate. *See,* **Docket Entry No. 47,** at ¶ 116.

The UFT and the DOE held bargaining sessions on August 25, 2021 and August 30, 2021. *See,* **Docket Entry No. 47-9,** at Schedule A.  On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board over the impact of the Vaccine Mandate. *See,* **Docket Entry No. 47-9**.

Pursuant to N.Y. Civil Service Law § 209, PERB appointed Scheinman as a mediator to mediate the impact of the Vaccine Mandate. *See,* **Docket Entry No. 47-10**.

Virtual mediation sessions between the NYCDOE and the UFT with Scheinman on September 2, 3, 4, and 5, 2021. *See,* **Docket Entry No. 47-11**.

On September 6, 2021, the UFT informed PERB that "with the start of the school  year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13[th] and Sept. 27[th], respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce.  Arbitration sessions are being held on Sept. 6[th]." **Docket Entry No. 47-11**.

As a consequence of this "agreement" to move to "an expedited arbitration", on September 10, 2021, Scheinman issued the UFT Arbitration Award.  **Docket Entry No. 47,** at ¶ 152.

**B.     No Statutory Authority For Binding Arbitration To Resolve Impasse Negotiations In School Districts**

N.Y. Civil Service Law § 209 governs the methods by which public employers and public employee unions may resolve impasses in negotiations.  The DOE and the UFT resolved their impasse in negotiations by agreeing to binding arbitration, resulting in the UFT Arbitration Award.

11

The agreement by the UFT and the DOE to resolve the impasse in negotiations by binding arbitration violated the N.Y. Civil Service Law and therefore was illegal.

Scheinman disagrees that the arbitration proceeding he presided over was illegal and argues that "the parties have a statutory right, pursuant to the Taylor Law, to choose to mutually agree to a binding arbitration." **Scheinman Memorandum of Law,** at page 6.

To support this argument, Scheinman cites to N.Y. Civil Service Law § 209.2., which empowers public employers

> to enter into written agreements with recognized or certified employee organizations setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations. Such agreements may include the undertaking by each party to submit unresolved issues to impartial arbitration. In the absence or upon the failure of such procedures, public employers and employee organizations may request the board to render assistance as provided in this section....

N.Y. Civil Service Law § 209.2.

Contrary to Scheinman's argument, prior to the impasse over the impact of the Vaccine Mandate, the UFT and the DOE did not have any written agreement setting forth procedures to be invoked in the event of disputes which reach an impasse, which could have included impartial arbitration.[3]  The reason the Plaintiffs know this is because when there are no procedures, the

---

[3] Scheinman was not an impartial arbitrator.  The Vaccine Mandate was promulgated by Mayor Bill DeBlasio. Scheinman held a fundraiser for Mayor DeBlasio in his home.  *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).  Scheinman adopted his favored politician's positions in the UFT Arbitration Award, giving Mayor DeBlasio much, if not all that he wanted from negotiations with the UFT.  A comparison between the UFT Arbitration Award (**Docket Entry No. 47-5**) with the UFT's Impasse Statement to PERB reveals that many of the proposals made by the DOE at the bargaining table were adopted by Scheinman including "the City's extreme plan to place educators on involuntary leave violat[ing] statutory and related contractual disciplinary provisions, and strips teachers of their core due process rights as public employees." *Compare,* **Docket Entry No. 47-9**, at page 7 *with* **Docket Entry No. 47-5**, at pages 6-17.  Scheinman was far from neutral, but in reality was a biased "arbitrator" who did Mayor DeBlasio's political bidding in return for a financial windfall since "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-5**, at page 12, at § J.  The UFT Arbitration Award was a kickback scheme rewarding the Scheinman Defendants for granting the DOE all it could have wanted in an effort to force UFT members to kowtow to the Vaccine Mandate.  The agreement by the UFT to have Scheinman as the "arbitrator"

statute permits the DOE and/or the UFT to ask PERB to intervene and render assistance to overcome the impasse in negotiations. This is the precise procedure that the UFT followed on September 1, 2021, recognizing that there was no written agreement setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of their collective bargaining negotiations. *See,* **Docket Entry No. 47-9**.

On September 1, 2021, the UFT declared that the UFT and the DOE were at an impasse in negotiations over the impact of the Vaccine Mandate, triggering N.Y. Civil Service Law § 209 procedures. *See,* **Docket Entry No. 47-9**. The UFT wrote to PERB that "[t]he parties cannot bridge this divide without PERB's assistance." **Docket Entry No. 47-9**, at pages 2-3. If there was a prior written agreement between the DOE and the UFT regarding procedures to be invoked in the event of an impasse in negotiations, then the UFT would not have needed PERB to intervene and provide assistance. The impasse would have triggered those procedures.

Since there were no prior written agreements between the UFT and the DOE, Scheinman's argument regarding the legal authority he had to render the UFT Arbitration Award must be rejected by the Court.

Instead, the Court should examine the language of the statute, New York State Court of Appeals decision, and PERB's decisions regarding impasse negotiations that specifically apply to school districts. All of which make it clear and unambiguous that what the DOE and the UFT "agreed" to (**Docket Entry No. 47-11**) was illegal, violated N.Y. Civil Service Law § 209, and the UFT yielded and abdicated its power and authority to negotiate a resolution (which was a breach of the duty of fair representation), as required by the statute, to an arbitrator who had no authority to render such a decision.

N.Y. Civil Service Law § 209.3(f) states:

> 3.      On request of either party or upon its own motion, as
>         provided in subdivision two of this section, and in the event

---

determining the outcome of the impasse in negotiations was an abdication of its duty of fair representation to the Plaintiffs whose constitutional rights were violated as a consequence of the UFT Arbitration Award.

the board determines that an impasse exists in collective negotiations between such employee organization and a public employer as to the conditions of employment of public employees, the board shall render assistance as follows: …

(f)     where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply, and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present; (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement. The board may provide such assistance as may be appropriate.

There are several cases that interpret this section of the statute.  None of the cases support the UFT's, the DOE's or Scheinman's agreement to arbitrate a resolution to the impasse in negotiations in the school district context.  The UFT and the DOE abdicated their power and authority to reach a negotiated settlement to Scheinman who imposed an outcome, which violated N.Y. Civil Service Law § 209.3(f).

In *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999) (footnotes omitted), PERB held:

The parties to negotiations involving school district personnel and those to negotiations involving police and fire officers have identical collective bargaining rights and obligations in all relevant respects except as to the statutory system which becomes applicable if they reach an impasse in their negotiations. Although all public employers and public employees have mediation available to them, impasses involving police and fire personnel are subject to resolution by compulsory binding interest arbitration. School district negotiations are not subject to resolution by compulsory interest arbitration. If post-mediation fact-finding does not result in a settlement of the impasse, the parties themselves must resolve the impasse by reaching a new collective bargaining agreement.  PERB

may continue to render third-party assistance to help the parties reach an agreement, but an impasse in school district negotiations continues for however long it takes the parties to reach a collective bargaining agreement.

In *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016), PERB held:

> Generally, where the parties have been unable to resolve the dispute after fact-finding, PERB has considered the appropriateness of the appointment of a conciliator to mediate a settlement based on the fact finder's report and recommendations. This is particularly so in regard to school districts, where there is no option available to the parties other than continuing to negotiate until an "agreement" is reached.

Additionally in *Matter of Buffalo Teachers Federation*, 49 PERB P4560, PERB stated in footnote 93: "[s]chool districts and other educational institutions do not have the ability under the Act to unilaterally resolve the dispute after fact-finding through a process of public hearing and action by its legislative body, as do other public employers."

In *Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671, the New York State Court of Appeals stated that there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations."

Despite the clear and unambiguous language of the statute, the New York Court of Appeals holding and the PERB determinations, the DOE and the UFT illegally agreed to have Scheinman resolve the impasse in negotiations through binding arbitration.

The Scheinman Defendants state that "the parties agreed to move to an expedited arbitration due to the exigencies of these circumstances." **Scheinman Defendants Memorandum of Law**, at page 3. Yet, there is no exception in the statute for exigent circumstances. The parties just had to negotiate. There are no shortcuts in the statute because of the time frame imposed by the DOE to implement the Vaccine Mandate.

In support of their Motions to Dismiss, neither the DOE Defendants, the UFT Defendants, nor the Scheinman Defendants cite a single statute, case, PERB decision, or even a law review article that supports what they did --- the UFT and the DOE conspired to abdicate their authority to negotiate a settlement to resolve the impasse in negotiations to Mayor DeBlasio's fundraiser. *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).

The Scheinman Defendants argue that "[t]hese arbitrations were not mandated by PERB. They were not compulsory. They were the result of a voluntary agreement between the parties, which the statute [sic] specifically permits." **Scheinman Defendants' Memorandum of Law,** at page 7.

The Scheinman Defendants further argue "[t]here is no statute or decisional law prohibiting public employees and public employers to choose to submit to a voluntary binding arbitration to resolve their conflict." **Scheinman Defendants' Memorandum of Law,** at page 10.

The Scheinman Defendants ignore PERB's ruling that "in regard to school districts, … there is no option available to the parties other than continuing to negotiate until an "agreement" is reached." *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560.

Despite the Defendants' arguments, there was no statutory authority for Scheinman to issue the UFT Arbitration Award. Accordingly, the Court should deny the DOE Defendants', the UFT Defendants', and the Scheinman Defendants' Motions to Dismiss the Plaintiffs' Second Cause of Action.

### C.   No Contractual Authority For Binding Arbitration To Resolve Impasse Negotiations In School Districts

The Scheinman Defendants state "[t]here is no ambiguity that the arbitrations at issue in this case were not grievance arbitrations." **Scheinman Defendants' Memorandum Of Law,** at page 9.

The Plaintiffs agree.[4]

The DOE Defendants and the UFT Defendants do not cite to any contract between the DOE and the UFT that authorized binding arbitration to resolve an impasse in negotiations. As a result, Scheinman had no contractual authority to issue a binding arbitration award that directly resulted in the violation of the Plaintiffs' constitutional rights.

**********************

Since Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award, the Plaintiffs have stated a plausible claim for a declaration that the UFT Arbitration Award was promulgated without any statutory or contractual authority. Accordingly, the Defendants' Motions to Dismiss the Second Cause of Action must be denied.

**POINT IV.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' THIRD CAUSE OF ACTION SEEKING A DECLARATION THAT THE CSA ARBITRATION AWARD WAS PROMULGATED WITHOUT ANY STATUTORY OR CONTRACTUAL AUTHORITY**

The CSA Arbitration Award suffers from similar infirmities as the UFT Arbitration Award, but neither the CSA nor the DOE declared impasse nor sought PERB's assistance in mediating the impasse. *See,* **UFT Defendants' Memorandum of Law,** at page 6.

Instead, the DOE and the CSA could not come to a final resolution and just agreed to arbitrate the dispute. *See,* **UFT Defendants' Memorandum of Law,** at page 6. Neither the CSA nor the DOE argue or cite to any provision in the CSA's collective bargaining agreement or any

---

[4] While the UFT Defendants argue that the UFT Arbitration Award is "incorporated into the UFT' Defendants' … CBA[ ]" (**UFT Defendants' Memorandum of Law,** at page 6), the UFT did not seek a ratification from its members before the UFT Arbitration Award was implemented. This is another infirmity in the UFT Arbitration Award. *See, Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973); *City of Rochester,* 7 PERB P3060 (1974); *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau,* 45 PERB P3047 (2012).

other agreement that set forth "procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations." N.Y. Civil Service Law § 209.2.

Accordingly, when the CSA Defendants and the DOE Defendants agreed to resolve their impasse in negotiations by submitting to binding arbitration before Scheinman, they violated N.Y. Civil Service Law § 209.3(f).

The CSA Defendants and the DOE Defendants did not reach a negotiated settlement as required by the statute. As PERB stated in *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560, "in regard to school districts, where there is no option available to the parties other than continuing to negotiate until an 'agreement' is reached."

The CSA Defendants and the DOE Defendants did not negotiate until an agreement was reached, but yielded and abdicated their statutory authority and duties to negotiate to Scheinman who is a political fundraiser for Mayor De Blasio (*see,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022)) and who gave, in the CSA Arbitration Award, all that the DOE Defendants could have hoped for in implementing the Vaccine Mandate at the Plaintiffs' cost of the constitutional rights.[5]

Since Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award. As a result, the Plaintiffs have stated a plausible claim for a declaration that the CSA Arbitration Award was promulgated without any statutory or contractual authority. Accordingly, the Defendants' Motions to Dismiss the Third Cause of Action must be denied.

---

[5] While the CSA Defendants argue that the CSA Arbitration Award amended the CSA's collective bargaining agreement with the DOE, the CSA did not seek a ratification from its members before the CSA Arbitration Award was implemented. This is another infirmity in the CSA Arbitration Award. *See, Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973); *City of Rochester,* 7 PERB P3060 (1974); *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau,* 45 PERB P3047 (2012).

**POINT V.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FOURTH CAUSE OF ACTION SEEKING A DECLARATION THAT THE DC37 AGREEMENT WAS PROMULGATED WITHOUT ANY CONTRACTUAL AUTHORITY**

The Plaintiffs allege that the DC37 Agreement with the DOE regarding the impact of the Vaccine Mandate (**Docket Entry No. 47-7**) "was entered into without any contractual authority." **Docket Entry No. 47**, at ¶ 303.[6]

Neither the DC37 Defendants nor the DOE Defendants cite to any contractual authority for the DC37 Agreement.

Instead, the DC37 Defendants argue that they had "*statutory* authority to enter into" the DC37 Agreement, citing to N.Y. Civil Service Law § 204(1). *See,* **DC37 Defendants' Memorandum of Law**, at page 16.

However, the DC37 Defendants do not explain how they were able to enter into a significant modification and amendment to its current collective bargaining agreement with the DOE without a vote of the union's membership approving such a modification.

While DC37 may have had statutory authority to enter into the DC37 Agreement, the DC37 Agreement was never ratified by the union members and therefore could not amend the current collective bargaining agreement to strip away the Plaintiffs'-union members' rights.

In *Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973), PERB held that "having negotiated and approved of [a new collective bargaining agreement], they had an affirmative duty to seek its ratification."

---

[6] The Scheinman Defendants state that "[t]he arbitration awards for CSA and District 37 were issued on September 15, 2021 and October 3, 2021, respectively, and mirrored the Impact Arbitration Award." **Scheinman Defendants**, at page 4.  The Plaintiffs do not have any evidence that Scheinman issued any arbitration award to resolve the DC37 Agreement.  This representation by the Scheinman Defendants is strange because the Scheinman Defendants would know what awards Scheinman issued.

In *City of Rochester*, 7 PERB P3060 (1974), PERB held that "it is a violation of their duty to negotiate in good faith for negotiators who reach a tentative agreement not to seek approval of their agreement."

Further in *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012), PERB held that "when parties have agreed that a tentative agreement is to be ratified, each side is affirmatively obligated to present it to their ratifying entity and to support its approval."

DC37's failure to follow proper procedure to obtain the necessary approval from the DC37's membership for the DC37 Agreement, making the DC37 Agreement void.

Accordingly, the Plaintiffs have stated a plausible claim that the DC37 Agreement has serious procedural and contractual infirmities such that the Defendants' Motion to Dismiss the Fourth Cause of Action must be denied.

**POINT VI.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIFTH CAUSE OF ACTION SEEKING A DECLARATION THAT THE RELEASE EXECUTED BY PLAINTIFFS TO EXTEND THEIR LEAVE WITHOUT PAY IS VOID AND UNENFORCEABLE**

One of the most prominent arguments made by the DOE Defendants, the UFT Defendants, the CSA Defendants, and the DC37 Defendants is that through their arbitration awards/agreement, Plaintiffs were permitted to extend their leaves of absence for a year in return for continued health insurance coverage before they had to succumb to the Vaccine Mandate.

What the Defendants do not tell this Court is that in order to extend their leaves of absence, the Plaintiffs were required to sign a general release of all claims against the DOE. *See,* **Docket Entry No. 47-14**. *See also,* **Docket Entry No. 47**, at ¶ 309.

The release was beyond the release language authorized in both the CSA Arbitration Award (**Docket Entry No. 47-6**, at page 12) and the UFT Arbitration Award (**Docket Entry No. 47-5**, at

page 16) and the Plaintiffs who signed the release to extend their leave of absence did so under duress and to the extent it applied to them, without the twenty-one (21) days to review the release as required by the Older Workers Benefit Protection Act ("OWBPA). *See,* 29 U.S.C. § 626(f)(1)(F)(i).

There was no general release language authorized by the UFT Arbitration Award or the CSA Award. The DOE overstepped and sought to obtain a release from Plaintiffs who were vulnerable and desperate not to lose their jobs and their health insurance. The DOE took advantage of their weakened bargaining position and sought an unreasonable and improper general release.

The Plaintiffs who executed the improper release did so under duress and have repudiated the release. *See,* **Docket Entry No. 47**, at ¶ 317.

In *Grullon v. Delta Air Lines, Inc.*, 2021 U.S. App. LEXIS 38168, at *4-7 (2d Cir. 2021), the Court examined the issues and the law regarding releases executed under duress and the repudiation of those releases. The Court opined:

> "Under New York law, a contract or release, the execution of which is induced by duress, is voidable." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (internal quotation marks and alterations omitted). Construing the facts in favor of Grullon, as we must, we conclude that the release was executed under duress. Being escorted by airport security officials to their offices in the Punta Cana International Airport and told that Rodriguez intended to press charges against her might have created the "effect of precluding the exercise of free will" required to establish duress. *In re Guttenplan*, 222 A.D.2d 255, 257, 634 N.Y.S.2d 702 (1st Dep't 1995); *see also id.* (explaining that "a threat of criminal prosecution" can cause duress). The Release was therefore voidable.
>
> That said, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp.*, 244 F.3d at 122 (internal quotation marks omitted). A repudiation must be "clear and unequivocal." *Walton Mgmt., LLC v. Walton Apartments, LLC*, 298 A.D.2d 277, 278, 748 N.Y.S.2d 737 (1st Dep't 2002).

The District Court concluded that Grullon repudiated the Release ten months after she signed it by filing her complaint, and that her repudiation was therefore untimely. Special App'x 3; *see VKK Corp.*, 244 F.3d at 122 ("Delays as short as six months have been held to constitute forfeiture of the claim."); *see also Oquendo v. CCC Terek*, 111 F.Supp.3d 389, 410 (S.D.N.Y. 2015) (construing New York law and holding that a duress claim was forfeited by a delay of eight months).

On appeal, Grullon advances two arguments. First, she argues, as she did below, that her duress was ongoing, and that she therefore did not need to repudiate the Release. *See In re Guttenplan*, 222 A.D.2d at 257; *Sosnoff v. Carter*, 165 A.D.2d 486, 492, 568 N.Y.S.2d 43 (1st Dep't 1991) ("[W]here during the period of acquiescence . . . the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased."). We reject this argument. Once Grullon returned to the United States, her duress effectively ended. We need not rely, as the District Court did, on Grullon's voluntary return trip to the Dominican Republic, which she argues based on the record may have occurred after she filed her complaint repudiating the Release. At a minimum, the record shows that within three months of the incident, Grullon had retained counsel and was contemplating litigation, which belies the notion that a fear of prosecution still "preclud[ed] the exercise of [her] free will." *In re Guttenplan*, 222 A.D.2d at 257.

Those Plaintiffs who executed the release did so in November 2021 and December 2021. On January 10, 2022, the Amended Complaint was filed, which states clearly and unequivocally that those Plaintiffs who signed the release "repudiate the Release." **Docket Entry No. 47**, at ¶ 317.

While none of the Defendants have moved to dismiss the Plaintiffs' Fifth Cause of Action seeking a declaratory judgment declaring the release void and unenforceable, the Plaintiffs address this cause of action because it has caused serious trepidation, fear, and concerns about whether or not signing the release affects the Plaintiffs' rights *vis-a-vie* this Action and other pending litigation throughout the State.

Since none of the Defendants have sought to dismiss the Plaintiffs' Fifth Cause of Action, the Court should not dismiss the Plaintiffs' Fifth Cause of Action.

**POINT VII.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A PERMANENT INJUNCTION ON THE PLAINTIFFS' SIXTH CAUSE OF ACTION**

No Defendants have moved to dismiss the Plaintiffs' Sixth Cause of Action seeking a permanent injunction. However, the Plaintiffs address the Sixth Cause of Action because the Plaintiffs can state a plausible claim for a permanent injunction.

In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), the Court held:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

While at the earlier stages of this Action, the Court denied applications for preliminary injunctions (**Docket Entry No. 33** and **Docket Entry No. 89**), a permanent injunction is only issued once the parties have had an opportunity to conduct discovery and the full breadth of the Defendants' conduct has been examined through the adversarial process.

At this early stage of the litigation, without discovery, but with allegations concerning the illegality of the UFT Arbitration Award (Point III above) and the CSA Arbitration Award (Point IV above) and the DC37 Agreement's infirmities (Point V above), the Plaintiffs, may, at the conclusion of discovery, have sufficient evidence to establish the elements of a permanent injunction.

At this point in the litigation, the Plaintiffs only have to plead a plausible claim for a permanent injunction and the Plaintiffs have done so. Accordingly, the Plaintiffs' Sixth Cause of Action should not be dismissed.

**POINT VIII. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, THE UFT DEFENDANTS, AND THE SCHEINMAN DEFENDANTS ON THE PLAINTIFFS' SEVENTH CAUSE OF ACTION**

**A.    Factual Predicate For Cause Of Action**

The UFT Arbitration Award was issued in violation of N.Y. Civil Service Law. *See,* N.Y. Civil Service Law § 209.3(f).  Scheinman had no legal or contractual authority to issue the UFT Arbitration Award.  *See,* Point III above.

The DOE, relying upon the UFT Arbitration Award, argued to this Court that the Vaccine Mandate was a condition of employment for DOE employees.  *See,* **Docket Entry No. 79**, at page 24.

In response, this Court held: "[c]ontrary to Plaintiffs' argument, after reach an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards .... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

However, the UFT Arbitration Award did not comply with the N.Y. Civil Service Law and should be declared void by this Court as a matter of law.  Without the UFT Arbitration Award, the DOE's reliance upon it to impose the Vaccine Mandate as a condition of employment crumbles.

Without the UFT Defendants conspiring with the DOE to resolve the impasse in negotiations in violation of N.Y. Civil Service Law (**Docket Entry No. 47-11**), the UFT Arbitration Award would not have been issued.  Without the UFT Defendants' consent, the impasse in negotiations would have been resolved (or not resolved), not through binding arbitration, but through negotiations "until an 'agreement' is reached." *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560.

The DOE Defendants conspired with the UFT Defendants to retain Scheinman as the "arbitrator" to impose an arbitration award to resolve the impasse in negotiations in violation of law.  With this as a factual predicate to the Plaintiffs' Seventh Cause of Action, the Plaintiffs have stated a plausible claim against the DOE Defendants, the UFT Defendants, and the Scheinman Defendants for a violation of 42 U.S.C. § 1983.

### B.       Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir 1998).

The DOE is a State actor who, at all times, was acting under the color of state law. *See,* **Docket Entry No. 47**, at ¶ 121.  Porter was, at the time of the matters at issue in this Action, Chancellor of the DOE. *See,* **Docket Entry No. 47**, at ¶ 122.

The DOE implemented the Vaccine Mandate.  As a result of the DOE's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and ultimately, some were terminated from their employment without due process.

The DOE, relying upon the UFT Arbitration Award (**Docket Entry No. 47-5**) argued that the Vaccine Mandate was a condition of employment since the DOE's bargaining units agreed to and therefore consented to the DOE's conduct.

If the UFT Arbitration Agreement was illegal, improper, and violated N.Y. Civil Service Law, as argued by the Plaintiffs (Point III above), then as a result of the DOE's actions, the Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the DOE for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the DOE's Motion to Dismiss must be denied.

### C.    Plaintiffs Have Stated A Plausible Claim Against The UFT Defendants

The UFT Defendants argue that they are not State actors and therefore any of the Plaintiffs' claims pursuant to 42 U.S.C. § 1983, must be dismissed.

In *Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019), the Court opined:

> Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, see, *e.g., Jackson*, 419 U. S., at 352-354, 95 S. Ct. 449, 42 L. Ed. 2d 477; (ii) when the government compels the private entity to take a particular action, see, *e.g., Blum* v. *Yaretsky*, 457 U. S. 991, 1004-1005, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982); or (iii) when the government acts jointly with the private entity, see, *e.g., Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922, 941-942, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

The Plaintiffs allege that the UFT is a state actor in these circumstances because it acted jointly with the DOE with respect to the UFT Arbitration Award.

The UFT Defendants argue "the negotiations and arbitrations which produced the Awards do not constitute evidence of a conspiracy; they are evidence of adversity." **UFT Defendants' Memorandum of Law,** at page 14.

What the UFT Defendants ignore is that they were willful participants in the "arbitration" that resulted in the UFT Arbitration Award that was agreed to when there was no statutory or contractual authority to do so.[7] It is the UFT Arbitration Award that resulted in a deprivation of

---

[7] The UFT Defendants argue that "[t]he notion that submitting an adversarial dispute to a mediator (who by definition is called to help resolve a dispute) under the auspices of the New York's Taylor Law, or an arbitrator, results in an

the Plaintiffs' constitutional rights because but-for the UFT Arbitration Award, the DOE could not have created a condition of employment out of the Vaccine Mandate. *See,* **Docket Entry No. 89**, at pages 24-25.

In *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), the Court opined:

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

The UFT Defendants agreed with the DOE to violate N.Y. Civil Service Law to resolve the impasse in negotiations over the Vaccine Mandate through binding arbitration. *See,* **Docket Entry No. 47-11**.

This collusion and conspiracy resulted in an award by Scheinman (a political fundraiser for Mayor DeBlasio (https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022))) that granted to the DOE every possible benefit that it sought in negotiations. *Compare*, **Docket Entry No. 47-9**, at page 7 *with* **Docket Entry No. 47-5**.

Despite purportedly strongly opposing those same proposals during negotiations (**Docket Entry No. 47-9**, at page 7), the UFT Defendants failed to challenge the UFT Arbitration Award in State Court pursuant to CPLR Article 75 once Scheinman adopted what seemingly appears to be all of the DOE's positions. The UFT Defendants argue that "the UFT and CSA Defendants have actively sought to protect the interests of their respective members...." **UFT Defendants'**

---

actional conspiracy under § 1983 would render essentially all public sector labor relations actions evidence of a conspiracy." **UFT Defendants' Memorandum of Law**, at page 15. The Plaintiffs are not arguing nor should the Court hold that submitting a matter to a mediator or arbitrator is a conspiracy under § 1983. The Plaintiffs are arguing and the Court should hold that when the UFT and the DOE entered into arbitration to resolve their impasse in negotiations in violation of N.Y. Civil Service Law § 209, the collusion to violate the statute was an actual conspiracy under § 1983.

**Memorandum of Law,** at page 13.  Despite their words, the UFT Defendants' actions do not match its words.

The UFT Defendants just conceded and abdicated their authority, role, and responsibility to represent their members, the Plaintiffs by forcing the DOE to come to a negotiated resolution at the bargaining table to implement the Vaccine Mandate.  *See, Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560.

The UFT Defendants argue that they and the DOE "are inherently adversarial."  **UFT Defendants' Memorandum of Law,** at page 1.  While they are adversarial at times, the UFT Defendants and the DOE conspired in this instance and agreed to violate the N.Y. Civil Service Law to permit Scheinman to issue the UFT Arbitration Award without any authority. *See,* **Docket Entry No. 47-11.**

But-for the UFT Arbitration Award, the Plaintiffs-UFT members could not have been suspended without pay for not taking the vaccine and the Plaintiffs-UFT members could not have been fired from their employment.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007) held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The UFT Arbitration Award deprived the Plaintiffs-UFT members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019); *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d. Cir. 2019); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  As a result, the Plaintiffs has stated a plausible claim against the UFT Defendants for violation of 42 U.S.C. § 1983.

**D.     Plaintiffs Have Stated A Plausible Claim Against The Scheinman Defendants**

The UFT Defendants state the Scheinman is a "widely-respected arbitrator" (**UFT Defendants' Memorandum of Law**, at page 2), but the UFT Defendants do not disclose to this Court that he is a political fundraiser for Mayor DeBlasio, the same person who imposed the only vaccine mandate in the State upon school district employees and the same person who was promoting the vaccine mandate.

Scheinman not only donated to Mayor DeBlasio, which would not, in the Plaintiffs' opinion, be a disqualifying issue, but Scheinman held a political fundraising event for Mayor DeBlasio in his home.     *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).   Scheinman was not a neutral arbitrator, but a political player who participated in the collusion between the DOE and the UFT to abdicate their statutory authority and responsibility to negotiate a resolution as required by the N.Y. Civil Service Law.

Scheinman also used his authority "to arrive at a fair resolution of the matters at hand" (**Docket Entry No. 47-5**, at page 7) to create a financial windfall for himself and the Scheinman Defendants by requiring any appeals of requests for religious or medical exemptions to the Vaccine Mandate must brought "directly to SAMS for expedited resolution." **Docket Entry No. 47-5**, at page 14.[8]

Scheinman also wrote in the UFT Arbitration Award that "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-5**, at page 13.

---

[8] The Scheinman Defendants make a misleading argument that "SAMS was merely tasked with identifying an independent arbitrator, not SAM's arbitrator, an independent panel of arbitrators." **Scheinman Defendants' Memorandum of Law**, at page 13.  If the Scheinman Defendants were only "oversee[ing] the process and were not active participants in the decision-making process" then why did Scheinman include the language that "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-5**, at page 13.  **Scheinman Defendants' Memorandum of Law**, at page 13.  The arbitrators who denied the Plaintiffs' appeals of the denial of their accommodations were arbitrators who were Scheinman himself (**Exhibit A**), arbitrators who worked for SAMS (**Exhibit B**) or arbitrators who work for Scheinman Institute on Conflict Resolution at Cornell University (**Exhibit C, Exhibit D, Exhibit E, Exhibit F**).  For the Scheinman Defendants to argue to this Court that essentially, they did not inject themselves in the appellate process and did not make a financial windfall, is materially false and misleading.

Scheinman not only made a ruling but inserted him and the Scheinman Defendants in the appellate process for any aggrieved Plaintiff-UFT member who was not granted a religious or medical exemption, earning Scheinman a significant financial windfall.

Scheinman argues that he is immune from the Plaintiffs' claims based upon arbitrator immunity. *See,* **Scheinman Defendants' Memorandum of Law**, at page 14.[9]

The Plaintiffs would agree that Scheinman had arbitrator immunity if two conditions were present that are not present in this matter: (1) Scheinman had statutory or contractual authority "to arrive at a fair resolution of the matters at hand" (**Docket Entry No. 47-5**, at page 7), which he did not (*see,* Point III above); and (2) Scheinman did not insert the Scheinman Defendants in the appellate process for DOE's denials of exemptions to the Vaccine Mandate at the cost to the DOE of a financial windfall for the Scheinman Defendants. *See,* **Exhibits A** through **F.**

Scheinman unilaterally imposed the Scheinman Defendants upon the UFT and the DOE as the appellate process since, as Scheinman wrote "[w]hile some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone." **Docket Entry No. 47-5**, at page 7.

As "arbitrator", Scheinman did not have any legal or contractual authority to issue the UFT Arbitration Award. Scheinman was appointed by PERB as mediator (**Docket Entry No. 47-10**), not as arbitrator. As a result, Scheinman acted outside the scope of his appointment by PERB, without any authority and therefore any entitlement to immunity is defeated by the improper and illegal nature of the UFT Arbitration Award.

Accordingly, the Plaintiffs have stated a plausible claim against the Scheinman Defendants. The Scheinman Defendants' Motion to Dismiss should be denied.

---

[9] The Scheinman Defendants do not argue that they were not state actors. However, to resolve that issue, the Plaintiffs allege that the Scheinman Defendants are state actors in these circumstances because they acted jointly with the DOE, and the UFT with respect to the UFT Arbitration Award. *See, Manhattan Community Access Corp. v. Halleck,* 139 S.Ct. at 1928.

*************

The DOE Defendants', the UFT Defendants', and the Scheinman Defendants' Motions to Dismiss should be denied.

## POINT IX. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, THE CSA DEFENDANTS, AND THE SCHEINMAN DEFENDANTS ON THE PLAINTIFFS' EIGHTH CAUSE OF ACTION

### A.   Factual Predicate For Cause Of Action

The CSA Arbitration Award was issued in violation of N.Y. Civil Service Law. *See,* N.Y. Civil Service Law § 209.3.(f). Scheinman had no legal or contractual authority to issue the CSA Arbitration Award. *See,* Point IV above.

The DOE, relying upon the CSA Arbitration Award, argued to this Court that the Vaccine Mandate was a condition of employment for DOE employees. *See,* **Docket Entry No. 79**, at page 24.

In response, this Court held: "[c]ontrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards .... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

However, the CSA Arbitration Award did not comply with the N.Y. Civil Service Law and the Court should declare it void as a matter of law. Without the CSA Arbitration Award, the DOE's reliance upon it to impose the Vaccine Mandate as a condition of employment crumbles.

Without the CSA Defendants conspiring with the DOE to resolve the impasse in negotiations in violation of N.Y. Civil Service Law, the CSA Arbitration Award would not have

been issued.  Without the CSA Defendants' consent, the impasse in negotiations would have been resolved (or not resolved) through negotiations at the bargaining table.  *See, Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560.

The DOE Defendants conspired with the CSA Defendants to retain Scheinman as the "arbitrator" to impose an arbitration award to resolve the impasse in negotiations in violation of law.  With this as a factual predicate to the Plaintiffs' cause of action, the Plaintiffs have stated a plausible claim against the DOE Defendants, the CSA Defendants, and the Scheinman Defendants.

**B.      Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants**

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  *Annis v. County of Westchester*, 136 F.3d at 245.

The DOE is a State actor who, at all times was acting under the color of state law.  *See,* **Docket Entry No. 47**, at ¶ 121.   Porter was, at the time of the matters at issue in this Action, Chancellor of the DOE.  *See,* **Docket Entry No. 47**, at ¶ 122.

The DOE implemented the Vaccine Mandate.  As a result of the DOE's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and ultimately terminated from their employment without due process.

The DOE, relying upon the CSA Arbitration Award (**Docket Entry No. 47-6**) argued that the Vaccine Mandate was a condition of employment that the DOE's bargaining units agreed to and therefore consented to the DOE's conduct.

If the CSA Arbitration Agreement was illegal, improper, and violated N.Y. Civil Service Law, as argued by the Plaintiffs (Point IV above), then as a result of the DOE's actions, the

Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the DOE for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the DOE's Motion to Dismiss must be denied.

**C.      Plaintiffs Have Stated A Plausible Claim Against The CSA Defendants**

The CSA Defendants argue that they are not State actors and therefore any claims pursuant to 42 U.S.C. § 1983 must be dismissed.

In *Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. at 1928, the Court opined that "a private entity can qualify as a state actor in a few limited circumstances—including, for example … when the government acts jointly with the private entity." The Plaintiffs allege that the CSA Defendants are state actors in these circumstances because they acted jointly with the DOE with respect to the CSA Arbitration Award.

The CSA Defendants were willful participants in the "arbitration" that resulted in the CSA Arbitration Award. It is the CSA Arbitration Award that caused a deprivation of the Plaintiffs' constitutional rights because but-for the CSA Arbitration Award, the DOE could not have created a condition of employment out of the Vaccine Mandate. *See*, **Docket Entry No. 89**, at pages 24-25.

As Scheinman stated

> In the aftermath of the Arbitration Award issued by the undersigned to resolve the Impasse regarding the implementation of the City's Vaccine Only mandate between the United Federation of Teachers ("UFT"), on the one hand, and the City of New York and NYC Department of Education ("DOE"), dated September 10, 2021, on the other, the Council of Supervisors & Administrators ("CSA") and the City of New York ("City") reached out to me to similarly address

33

their concerns. Given the exigencies of the opening of school and the imminent effective date of the City's mandate, it was agreed the parties would promptly move to arbitration. Accordingly, an arbitration session was held on September 14, 2021, in which representatives of all parties participated.

**Docket Entry No. 47-6**, at page 2.

As Scheinman admits, the CSA Defendants agreed with the DOE and were willful participants with the DOE to violate N.Y. Civil Service Law to resolve the impasse in negotiations over the Vaccine Mandate through binding arbitration. *See*, **Docket Entry No. 47-6**. *See, Dennis v. Sparks*, 449 U.S. at 27-28.

This collusion and conspiracy resulted in an award by Scheinman (a political fundraiser for Mayor DeBlasio (https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022))) that granted to the DOE every possible benefit that it sought in negotiations. *Compare*, **Docket Entry No. 47-9**, at page 7 *with* **Docket Entry No. 47-6**.

The CSA Defendants did not even seek PERB intervention to resolve the impasse in negotiations, instead once the UFT Arbitration Award was issued, the CSA just rolled over and agreed that Scheinman could unilaterally impose a resolution regarding the impasse in negotiations in violation of N.Y. Civil Service Law. *See, Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560. *See also*, **Docket Entry No. 47-6**, at page 3 (stating "At the September 14, 2021, session, it became apparent much of the UFT/DOE Award would govern, here.").

But-for the CSA Arbitration Award, the Plaintiffs-CSA members could not have been suspended without pay for not taking the vaccine and the Plaintiffs-CSA members could not have been fired from their employment for not taking the vaccine.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The CSA Arbitration Award deprived the Plaintiffs-CSA members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

As a result, the Plaintiffs has stated a plausible claim against the CSA Defendants for violation of 42 U.S.C. § 1983.

## D.   Plaintiffs Have Stated A Plausible Claim Against The Scheinman Defendants

Scheinman was not a neutral "arbitrator" but a political hack that profited from his own "arbitration" award at the cost of the Plaintiffs' constitutional rights.

Scheinman not only donated to Mayor DeBlasio, which would not, in the Plaintiffs' opinion be a disqualifying issue, but Scheinman held a political fundraising event for Mayor DeBlasio in his home.   *See*, https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).   Scheinman is political player who colluded with the DOE and the CSA to abdicate their statutory authority and responsibility to negotiate a resolution as required by the N.Y. Civil Service Law.

Scheinman wrote in the CSA Arbitration Award that "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-6**, at page 9.

Scheinman not only made a ruling but inserted himself and the Scheinman Defendants in the appellate process for any aggrieved Plaintiff-CSA member who was not granted a religious or medical exemption, earning Scheinman a significant financial windfall. *See*, **Exhibit A** through **F**.

Scheinman argues that he is immune from the Plaintiffs' claims based upon arbitrator immunity. The Plaintiffs would agree if two conditions were present that are not present in this matter: (1) Scheinman had statutory or contractual authority to resolve the impasse in negotiations between the CSA and the DOE, which he did not (*see,* Point IV above); and (2) Scheinman did not insert the Scheinman Defendants in the appellate process for DOE's denials of exemptions to the Vaccine Mandate at the cost to the DOE of a financial windfall for the Scheinman Defendants.

As "arbitrator", Scheinman acted without authority and therefore any entitlement to immunity is defeated by the improper and illegal nature of the CSA Arbitration Award.[10]

Accordingly, the Plaintiffs have stated a plausible claim against the Scheinman Defendants. The Scheinman Defendants' Motion to Dismiss should be denied.

*************

The DOE Defendants', the CSA Defendants', and the Scheinman Defendants' Motions to Dismiss should be denied.

**POINT X.     THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, AND THE DC37 DEFENDANTS ON THE PLAINTIFFS' NINTH CAUSE OF ACTION**

**A.     Factual Predicate For Cause Of Action**

The terms of the DC37 Agreement violated the Plaintiffs constitutional rights in their pay and due process. *See, Tooly v. Schwaller,* 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.,* 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 546. DC37

---

[10] The Scheinman Defendants do not argue that they were not state actors. However, to resolve that issue, the Plaintiffs allege that the Scheinman Defendants are state actors in these circumstances because they acted jointly with the DOE, and the CSA with respect to the CSA Arbitration Award. *See, Manhattan Community Access Corp. v. Halleck,* 139 S.Ct. at 1928.

agreed to allow the DOE to suspend the Plaintiffs without pay and ultimately terminate their employment for not complying with the Vaccine Mandate.

The DOE, relying upon the DC37 Agreement, argued to this Court that the Vaccine Mandate was a condition of employment for DOE employees.

In response, this Court held: "[c]ontrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards …. Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

Without DC37 conspiring and colluding with the DOE to resolve the impasse by entering into an agreement that permitted the DOE to suspend the Plaintiffs without pay and ultimately terminate their employment, the DOE would not have had the legal authority to take the actions it did against the Plaintiffs.

**B.      Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants**

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d at 245.

The DOE is a State actor who, at all times, was acting under the color of state law. *See,* **Docket Entry No. 47**, at ¶ 121.   Porter was, at the time of the matters at issue in this Action, Chancellor of the DOE. *See,* **Docket Entry No. 47**, at ¶ 122.

The DOE implemented the Vaccine Mandate.  As a result of the DOE's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and ultimately terminated from their employment without due process.

The DOE, relying upon the DC37 Agreement (**Docket Entry No. 47-13**) argued that the Vaccine Mandate was a condition of employment that the DOE's bargaining units agreed to and therefore consented to the DOE's conduct.

If the DC37 Agreement was illegal, improper, and violated N.Y. Civil Service Law, as argued by the Plaintiffs (Point V above), then as a result of the DOE's actions, then the Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the DOE for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the DOE's Motion to Dismiss must be denied.

### C.   Plaintiffs Have Stated A Plausible Claim Against The DC37 Defendants

The DC37 Defendants argue that they are not State actors and therefore any claims pursuant to 42 U.S.C. § 1983 must be dismissed.

The DC37 Defendants are state actors in these circumstances because they acted jointly with the DOE with respect to the DC37 Agreement. *See, Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. at 1928.

The DC37 Defendants cite to *Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293 (D. Conn. 2013) for the proposition that just by negotiating a collective bargaining agreement it is not enough for a conspiracy claim against the union.

The DC37 Defendants overlook the Court's holding in *Eaddy* in which the Court criticized the plaintiff's pleading stating that "there is no allegation that the Union Defendants conspired with the City to engage in conduct *that itself* violated Plaintiffs' constitutional rights." *Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293, at *11.

Unlike the plaintiff in *Eaddy*, the Plaintiffs allege that as a result of the DC37 Agreement, the Plaintiffs' constitutional rights were violated. *See,* **Docket Entry No. 47,** at ¶¶ 188-220.

Despite the DC37 Defendants' argument that they were adversarial to the DOE (**DC37 Defendants' Memorandum of Law,** at page 11), the DC37 Defendants do not explain why they agreed and were willful participants in entering into the DC37 Agreement that permitted the DOE to suspend the Plaintiffs without pay and ultimately terminate their employment because the Vaccine Mandate became a condition of employment to remain employed by the DOE. *See,* **Docket Entry No. 89,** at pages 24-25.

This collusion and conspiracy between DC37 and the DOE resulted in the DC37 Agreement granting the DOE every possible benefit that it sought in negotiations. *See,* **Docket Entry No. 47-13**.

The DC37 Defendants argue that it was the DOE and not the DC37 Defendants that violated the Plaintiffs' constitutional rights when the Plaintiffs were placed on unpaid leave without a hearing. **DC37 Defendants' Memorandum of Law,** at page 15.

But the DC37 Defendants ignore the fact that DC37 just rolled over and accepted that the Vaccine Mandate was going to be imposed on the DOE's terms without challenging the fact that the Plaintiffs'-DC 37 members' constitutional rights would be violated, impaired, or impacted by DC37's agreement to allow the DOE to implement the Vaccine Mandate on the DOE's terms as opposed to the DC37 fighting and challenging the implementation.

DC37 was under no obligation to agree to the DC37 Agreement. "[A]n impasse in school district negotiations continues for however long it takes the parties to reach a collective bargaining agreement." *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999).

But-for the DC37 Agreement, the Plaintiffs-DC37 members could not have been suspended without pay for not taking the vaccine and the Plaintiffs-DC37 members could not have been fired from their employment for not taking the vaccine.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The DC37 Defendants argue that the Plaintiffs are asserting a claim for duty of fair representation and not a § 1983 claim against the DC37 Defendants. *See,* **DC37 Defendants' Memorandum of Law**, at page 12.

However, the Plaintiffs are arguing that the DC37 Defendants conspired with the DOE to come to an agreement (the DC37 Agreement) that deprived the Plaintiffs-DC37 members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546. While the DC37 Defendants may have breached their duty of fair representation, the Plaintiffs' complaint about the DC37 Defendants' conduct is that through the DC37 Defendants' collusion with the DOE and the willful participation of the DC37 Defendants in entering into an agreement that provided the DOE with the contractual authority to suspend Plaintiffs-DC37 members without pay and without due process, the Plaintiffs' constitutional rights have been violated. *See,* **Docket Entry No. 47**, at ¶¶ 188-220.

As a result, the Plaintiffs has stated a plausible claim against the DC37 Defendants for violation of 42 U.S.C. § 1983.

\*\*\*\*\*\*\*\*\*\*\*\*

The DOE Defendants' and the DC37 Defendants' Motions to Dismiss should be denied.

**POINT XI.   THE PLAINTFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST PORTER, MULGREW, CANNIZZARO, GARRIDO, FRANCOIS, FRANCIS,[11] AND SCHEINMAN ON THE PLAINTIFFS' TENTH CAUSE OF ACTION**

The Plaintiffs allege that the individual defendants – Porter (then-Chancellor of the DOE (**Docket Entry No. 47**, at ¶ 122)), Mulgrew (President of the UFT ((**Docket Entry No. 47**, at ¶ 125)), Cannizzaro (President of the CSA (**Docket Entry No. 47**, at ¶ 127)), Garrido (Executive Director of DC37 (**Docket Entry No. 47**, at ¶ 129)), Francois (President of Local 372 (**Docket Entry No. 47**, at ¶ 131)), and Scheinman ("arbitrator" who imposed the UFT Arbitration Award and the CSA Arbitration Award ((**Docket Entry No. 47-5**) (**Docket Entry No. 47-6**)) (collectively referred to as "Individual Defendants") – were personally involved in the deprivation of the Plaintiffs' constitutional rights.

In *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977), the Court held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

In *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir 1986), the Court opined:

> A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction, *see, e.g., Johnson v. Glick*, 481 F.2d 1028, 1033-34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973) (prison guard liable for beating inmate); *Sostre v. McGinnis*, 442 F.2d 178, 205 (2d Cir. 1971) (en banc), *cert. denied*, 404 U.S. 1049, 92 S. Ct. 719, 30 L. Ed. 2d 740 (1972) (Prison warden liable for ordering that inmate be placed in solitary confinement). A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong, *see, e.g., United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, *see, e.g., McCann, supra*, 698 F.2d at 125; *Turpin v. Mailet*, 619 F.2d 196, 201 (2d

---

[11] Based upon the representation made in the DC37's Memorandum of Law at page 16 that Francis and Local 1251 did not agree or approve the DC37 Agreement, the Plaintiffs dismiss all claims against Local 1251 and Francis.

Cir.), *cert. denied*, 449 U.S. 1016, 66 L. Ed. 2d 475, 101 S. Ct. 577 (1980); *Duchesne v. Sugarman*, 566 F.2d 817, 830-31 (2d Cir. 1977). Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event, *see, e.g., Wright v. McMann*, 460 F.2d 126, 135 (2d Cir. 1972) (warden responsible for condition of disciplinary units at prison). *Cf. Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S. Ct. 483, 62 L. Ed. 2d 407 (1979)(municipality liable for gross negligence in training its prison guards).

Each of the Individual Defendants had their own individual roles to play in the various organizations that ultimately led to the deprivation of the Plaintiffs' constitutional rights.

Porter, as Chancellor of the DOE had to be involved in the decision-making process or she created a policy that led to the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement. While at this stage of the litigation, without conducting discovery including an examination of emails and other documentary evidence, the Plaintiffs plausibly plead that Porter had a personal involvement in the deprivation of the Plaintiffs' constitutional rights since the DC37 Agreement violated the Plaintiffs' constitutional rights.

Mulgrew and Cannizzaro, as Presidents of their unions, it is unthinkable that they did not personally sign-off on the decision to end negotiations with the DOE and agree to an illegal "arbitration" to resolve the impasse in negotiations. Without conducting discovery, including obtaining the identity of those individuals who were on the bargaining teams during the impasse negotiations or in attendance on any hearing dates for the "arbitration", the Plaintiffs can plausibly plead that Mulgrew and Cannizzaro had a personal involvement in the deprivation of the Plaintiffs' constitutional rights.

With respect to Garrido and Francois, they personally executed the DC37 Agreement on behalf of DC37 and Local 372. *See,* **Docket Entry No. 47-13**, at page 8. As a result, the Plaintiffs can plausibly plead that Garrido and Francois had a personal involvement in the deprivation of the Plaintiffs' constitutional rights.

Finally, as to Scheinman, the author the UFT Arbitration Award and the CSA Arbitration Award (*see,* **Docket Entry No. 47-5** and **Docket Entry No. 47-6**), the Plaintiffs can plausibly plead that Scheinman had a personal involvement in the deprivation of the Plaintiffs' constitutional rights. It was Scheinman's decisions that started the snowball/domino effect resulting in the deprivation of the Plaintiffs' constitutional and statutory rights.

The Plaintiffs do not have to prove individual liability in their Amended Complaint, only that they have a plausible claim against the Individual Defendants. The Individual Defendants' Motion to Dismiss must be denied.

## POINT XII.  THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR CLASS ACTION STATUS

The Plaintiffs are 92 of the hundreds, if not thousands, of DOE employees who were adversely affected by the UFT Arbitration Award, the CSA Arbitration Award, or the DC37 Agreement. The Plaintiffs are 92 of the hundreds, if not thousands, of DOE employees who refused to take the vaccine and either extend their leave of absence or were fired by the DOE.

The Plaintiffs have plausibly stated claims against the Defendants. Since the Plaintiffs claims are representative of all DOE employees impacted by the UFT Arbitration Award, the CSA Arbitration Award, or the DC37 Agreement, the Plaintiffs can set forth valid claims for class action status.

FRCP Rule 23(a) states:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

While the Plaintiffs do not cross-move for class action status, the Defendants have moved to dismiss the Plaintiffs' allegations of class status.

The Plaintiffs can plausibly plead that the class is so numerous since, the estimation is that hundreds of DOE employees have already been fired for not taking the COVID vaccine.

It is also clear that the questions of law and fact are common to the class.

Also clear is that the claims of the representative parties are typical of the claims of the class since all of the DOE employees who refused to take the COVID vaccine are similarly situated with respect to the impact the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement had on their careers.

Finally, there are no arguments made by the Defendants that the representative parties cannot or will not fairly and adequately protect the interests of the class.

Accordingly, the Plaintiffs have plausibly pled class action claims. The Court should deny the Defendants' Motions to Dismiss.

## POINT XIII.   THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT TO CORRECT ANY DEFICIENCIES IN THE AMENDED COMPLAINT

The Plaintiffs request that, if the Court is inclined to dismiss any of the Plaintiffs' causes of action, the Court grant the Plaintiffs an opportunity to amend the Amended Complaint to cure any defects in the pleading that the Court believes that the Plaintiff can make such that a Second Amended Complaint would survive dismissal. *See, Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 796.

## CONCLUSION

For the reasons argued in this Memorandum of Law, the Defendants' Motions to Dismiss should be denied.

Dated:      Carle Place, New York
             May 9, 2022

Austin Graff
THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs*
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

45