UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BROECKER *et al.*,  :
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiffs,　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　-against-　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　Case No. 21-cv-6387
　　　　　　　　　　　　　　　　　　　　:
NEW YORK CITY DEPARTMENT OF　　　　　　:
EDUCATION, *et al.*,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendants.　　　　　　:
------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
UNITED FEDERATION OF TEACHERS, MICHAEL MULGREW, COUNCIL OF
SCHOOL SUPERVISORS AND ADMINISTRATORS, AND MARK CANNIZZARO IN
<u>SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

    **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

    I.    THE AWARDS ARE LEGALLY VALID................................................................ 2

        A.    Unions and School Districts May Agree to Engage in Binding Arbitration............................................................................................................ 2

        B.    The Awards Do Not Require Ratification ..................................................... 3

    II.    PLAINTIFFS FAIL TO PLEAD STATE ACTION OR CONSPIRACY.............. 4

    III.    PLAINTIFFS LACK STANDING TO CHALLENGE THE AWARDS............... 7

CONCLUSION........................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

In re 50 Pine Co., LLC,
   317 B.R. 276 (Bankr. S.D.N.Y. 2004) ............................................................................. 8

Matter of Alden Cent. Sch. Dist. v. Watson,
   56 A.D.2d 713 (4th Dep't 1977) ..................................................................................... 2

Bd. of Educ. of City Sch. Dist. v. New York State Pub. Empl. Relations Bd.,
   75 N.Y.2d 660 (1990) ..................................................................................................... 3

Broecker et al. v. New York City Dep't of Educ. et al.,
   __ F.Supp.3d __, 2021 WL 5514656 (E.D.N.Y. Nov. 24, 2021) ................................... 7

Matter of Buffalo Teachers Federation v. City School District of the City of
   Buffalo,
   49 PERB 4560 (2016) ..................................................................................................... 3

Callaghan v. United Federation of Teachers,
   133 A.D.3d 412 (1st Dep't 2015) ................................................................................... 5

Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC,
   16-CV-3181, 2020 WL 7042642 (E.D.N.Y. Nov. 30, 2020) ......................................... 8

Ciambriello v. Cnty. Of Nassau,
   292 F.3d 307 (2d Cir. 2002) .................................................................................. 4, 5, 6

Matter of City of Rochester,
   7 PERB 3060 (1974) ...................................................................................................... 4

Matter of Civil Service Employees Ass'n, Inc., Local 1000, AFSCME, AFL-CJO
   v. Cnty. of Nassau,
   45 PERB 3047 (2012) .................................................................................................... 4

Driskell v. New York City,
   11 Civ. 4915 (BMC), 2011 WL 6812516 (E.D.N.Y. Dec. 27, 2011) ............................ 5

Figueroa v. City of Camden,
   580 F. Supp. 2d 390 (D. N.J. 2008) ............................................................................... 5

Fiore v. Town of Whitestown,
   125 A.D.3d 1527 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015) .......... 8

Fleischer v. Barnard College,
   20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) .................................................... 8

Matter of Greenburgh No. 11 Federation of Teachers,
    32 PERB 3024 (1999) .................................................................................................. 3

Harmon v. Matarazzo,
    162 F.3d 1147 (2d Cir. 1998) ..................................................................................... 5

Hoffman v. Bd. of Educ. of City Sch. Dist. of City of New York,
    84 A.D.2d 840 (2d Dep't 1981) ................................................................................. 9

Ifill v. New York State Court Officers Ass'n,
    655 F. Supp. 2d 382 (S.D.N.Y. 2009) ....................................................................... 8

Katir v. Columbia Univ.,
    15 F.3d 23 (2d Cir.1994) ............................................................................................ 8

Leahy v. Board of Trustees,
    912 F.2d 917 (7th Cir. 1990) ..................................................................................... 6

Leblanc v. Security Servs. Unit Empls. of New York State Law Enforcement
    Officers Union, Council 82, AFSCME, AFL-CIO,
    278 A.D.2d 732 (3d Dep't 2000) ............................................................................... 8

Margiotta v. Kaye,
    283 F. Supp. 2d 857 (E.D.N.Y. 2003) ....................................................................... 2

McGovern v. Local 456, Int'l Bhd. Of Trustees,
    107 F. Supp. 2d 311 (S.D.N.Y. 2000) ....................................................................... 5

McKinnon v. Patterson,
    568 F.2d 930 (2d Cir. 1977) ....................................................................................... 6

Mehrhoff v. William Floyd Union Free Sch. Dist.,
    No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) ............................ 5

MLC et al. v. City of New York et al.,
    158368/2021 (Sup. Ct. N.Y. Cnty.) ........................................................................... 7

Rodriguez-Rivera v. City of New York,
    No. 05 Civ. 10897 LAP, 2007 WL 766195 (S.D.N.Y., Mar. 12, 2007) .................. 6

Tooly v. Schwaller,
    919 F.3d 165 (2d Cir 2019) ........................................................................................ 5

Matter of Union Springs Cent. Sch. Teachers' Assn,
    6 PERB 3074 (1973) .................................................................................................. 4

Vaughn v. Air Line Pilots Ass'n, Int'l,
    395 B.R. 520 (E.D.N.Y. 2008), aff'd, 604 F.3d 703 (2d Cir. 2010), aff'd sub
    nom. Vaughn v. Air Line Pilots Ass'n, 377 F. App'x 88 (2d Cir. 2010)..............................8, 9

Waronker v. Hempstead Union Free Sch. Dist.,
    788 F. App'x 788 (2d Cir. 2019) ....................................................................................5

Williams v. Smith,
    781 F.2d 319 (2d Cir. 1986)............................................................................................6

**Statutes**

42 U.S.C. § 1983..................................................................................................................1, 10

N.Y. Civ. Serv. Law § 209......................................................................................................1, 2

**Other Authorities**

CPLR 217...................................................................................................................................8

Fed. R. Civ. P. 12(b)(1)........................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1

# PRELIMINARY STATEMENT

The fundamental issue in this action is simple: do the UFT and CSA Defendants[1] have the right to agree to enter into binding arbitration with their employers to resolve collective bargaining disputes? The answer – as explained at length in the UFT and CSA Defendants' motion to dismiss and initial supporting papers – is also simple: they do.

Despite clarity on the issue, Plaintiffs erroneously continue to argue that N.Y. Civ. Serv. § 209 precludes this fundamental aspect of state collective bargaining law notwithstanding the lack of any prohibition. In so doing, Plaintiffs misrepresent the holdings of myriad federal and state courts, and PERB. The law precludes PERB or a school district from unilaterally imposing an agreement or binding arbitration. It does not preclude bilateral agreement to arbitrate.

Even if the UFT and CSA Defendants lacked the right to engage in binding arbitration, the Amended Complaint contains – at best – vague and conclusory allegations in support of Plaintiffs' § 1983 and conspiracy claims, which are insufficient to support Plaintiffs' action against the UFT, CSA, and their respective presidents. Moreover, the UFT and CSA Defendants are not state actors, but are collective bargaining organizations (and their leaders) that have an inherently adversarial relationship with their government employers.

The infirmity of their arguments laid bare and their standing to challenge the validity of the arbitration awards spurious, Plaintiffs now improperly plead additional flawed claims in their opposition brief, and seek leave to file *another* amended complaint. This Court should deny the request to amend as futile, and should dismiss this action in its entirety under Fed. R. Civ. P. 12(b)(1) and (6) as to the UFT and CSA Defendants.

---

[1] Capitalized terms have the same meanings ascribed to them in the UFT and CSA Defendants' prior submissions.

# ARGUMENT

## I. THE AWARDS ARE LEGALLY VALID

### A. Unions and School Districts May Agree to Engage in Binding Arbitration

Plaintiffs fundamentally misconstrue N.Y. Civ. Serv. § 209 ("§ 209") and related precedent, and erroneously argue that the Taylor Law prohibits a union and school district from agreeing to enter into binding arbitration.

The statutory language and cases Plaintiffs rely on (1) prohibit school districts from *unilaterally* imposing contract terms through a legislative process (something permitted to other public employers), see § 209.3(f); and (2) prohibit PERB from imposing binding arbitration on parties in the case of an impasse (again, something PERB is empowered to do for certain other workforces), see § 209.2. As set forth below and in our moving papers, *none of these prohibitions is aimed at the union*.

Plaintiffs begin with the incorrect premise that arbitration may only occur with explicit statutory authority. None is needed. Contracting parties, including public sector unions and employers, may agree to resolve negotiation disputes by arbitration. See, e.g., Margiotta v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) (recognizing that, under the Taylor Law, parties may agree to move to binding impasse arbitration rather than follow PERB's procedure). Nonetheless, the policy preference for such bilateral dispute resolution is clear from both the Taylor Law and cases interpreting it. See generally Civ. Serv. Law § 209 (no prohibition on mutually agreeing to binding arbitration *even absent a declaration of impasse*); see also Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713, 713 (4th Dep't 1977)

Plaintiffs' caselaw is in accord. Contrary to Plaintiffs' contention, nowhere does the Court of Appeals declare binding arbitration in the school district context illegal. Rather, the court recognizes that school districts and the legislature may not force "any final impasse

2

resolution mechanism" upon a union – leaving it to the parties to work out their differences. See Bd. of Educ. of City Sch. Dist. v. New York State Pub. Empl. Relations Bd., 75 N.Y.2d 660, 671 (1990) (noting Taylor Law's policy of "encourag[ing the] voluntary resolution of labor disputes involving public employees").

Matter of Greenburgh No. 11 Federation of Teachers, 32 PERB 3024 (1999), is inapposite, and concerns the application of the Cohoes doctrine.[2] As Plaintiffs note, PERB stated there that "[i]f post-mediation fact-finding does not result in a settlement of the impasse, the parties themselves must resolve the impasse by reaching a new [CBA.]" While not negotiating a successor agreement, this is precisely what the UFT and CSA Defendants did in agreeing to arbitrate the acute impact of the Mandate.

Plaintiffs' reliance on Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo, 49 PERB 4560 (2016), is equally perplexing. There, PERB stated that "**[s]chool districts and other educational institutions** do not have the ability under the Act to **unilaterally** resolve the dispute after fact-finding through a process of public hearing and action by its legislative body, as do other public employers." See id. n.93 (emphasis added). This is a restatement of § 209.3(f), and has no bearing on whether a union and employer may *bilaterally* agree to binding arbitration to resolve a dispute, as they have done here. See Amended Complaint Ex. K (Dkt. No. 47-11).

### B. The Awards Do Not Require Ratification

Plaintiffs raise ratification for the first time in their opposition papers, and therefore that claim should be disregarded. See infra at 8. Regardless, there is no legal requirement that the parties ratify the Awards. Setting aside the puzzling suggestion that an Award issued by an

---

[2] *I.e.*, that existing terms of a CBA are mandatory subjects of bargaining, even if originally permissive topics.

3

arbitrator need be (or even can be) ratified by union membership, even if the Awards were agreements on this discrete issue, ratification would not be required. All precedent cited by Plaintiffs for that contention either *support* the validity of the Awards sans-ratification, or are inapplicable. For instance, in Matter of Union Springs Cent. Sch. Teachers' Assn, 6 PERB 3074 (1973), PERB stated that "[t]he practice of ratification agreements derives from the authority of the parties and ***not from the Law***." (emphasis added). There, the union engineered the downvote of an agreed-upon bargaining term, which PERB held *enforceable despite non-ratification*. The remainder of Plaintiffs' "support" is equally misplaced. See Matter of City of Rochester, 7 PERB 3060 (1974) (parties who agree to terms *on condition of ratification* obliged to work towards ratification in good-faith); Matter of Civil Service Employees Ass'n, Inc., Local 1000, AFSCME, AFL-CJO v. Cnty. of Nassau, 45 PERB 3047 (2012) (same).

Accordingly, the Awards and their substance are valid, and Plaintiffs' claims that they have been injured as a result of the Awards' procedures fail as a matter of law.

## II. PLAINTIFFS FAIL TO PLEAD STATE ACTION OR CONSPIRACY

The central assertion on which all of Plaintiffs' claims against the UFT and CSA Defendants hinge is that the Awards are contrary to law. As argued *supra*, this is incorrect, and all of Plaintiffs' claims fail. Even if the UFT and CSA were wrong about their ability to agree to binding arbitration (which they were not), that honest mistake of law does not transform an adversarial process into a conspiracy to deny anyone any rights.

Indeed, the Amended Complaint contains only barebone allegations of state action by the unions, or conspiracy between the unions and the DOE, which have an inherently adversarial relationship. Plaintiffs have not, and cannot, expound on the details of this alleged conspiracy, including how or why it arose, or any benefit gleaned therefrom. See, e.g., Ciambriello v. Cnty. Of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (holding that "conclusory allegations are

4

insufficient to state" such a § 1983 conspiracy claim). Plaintiffs' aiding and abetting allegations are equally infirm. See, e.g., Figueroa v. City of Camden, 580 F. Supp. 2d 390, 402 (D. N.J. 2008) ("nothing in the pleadings indicate that the Unions were acting 'under color of state law'" and the complaint contained "no specific factual allegations to support a claim that the Unions conspired with the state actors in violation of § 1983").

The UFT and CSA Defendants are not state actors. See Driskell v. New York City, 11 Civ. 4915 (BMC), 2011 WL 6812516, at *3 (E.D.N.Y. Dec. 27, 2011) (citing Ciambriello, 292 F.3d 307, 323 (2d Cir. 2003)) ("Plaintiff does not allege that the UFT is a state actor, nor could she."); see also Callaghan v. United Federation of Teachers, 133 A.D.3d 412, 412 (1st Dep't 2015) ("courts in this State have consistently held that unions, even those representing public employees, such as the UFT, are not state actors"); see also See Ciambriello, 292 F.3d at 323; Harmon v. Matarazzo, 162 F.3d 1147 (2d Cir. 1998) (PBA not a state actor).

Nor does their "inherently advers[ar]ial" relationship with state employers generally and in this instance specifically lend itself to state action. See Mehrhoff v. William Floyd Union Free Sch. Dist., No. 04-CV-3850, 2005 WL 2077292, at * 4 (E.D.N.Y. Aug. 22, 2005); see also McGovern v. Local 456, Int'l Bhd. Of Trustees, 107 F. Supp. 2d 311, 317-18 (S.D.N.Y. 2000) ("The Union's failure to 'win' on every point…and its compromise with the County result[ing] in the agreement, do not…transform the Union's activity into state action.").

Although Plaintiffs cite myriad cases in support of their contention that the unions are state actors, these are inapposite or belie their argument. See Tooly v. Schwaller, 919 F.3d 165 (2d Cir 2019) (does not concern unions; holding that university president was entitled to qualified immunity, and did not violate employee's due process rights by placing employee on paid leave); Waronker v. Hempstead Union Free Sch. Dist., 788 F. App'x 788, 793 (2d Cir.

5

2019) (does not concern unions; affirming (a) finding that placement on administrative leave did not violate superintendent's due process rights; (b) denial of leave to amend complaint to include additional allegations of "stigmatizing statements"); Rodriguez-Rivera v. City of New York, No. 05 Civ. 10897 LAP, 2007 WL 766195 (S.D.N.Y., Mar. 12, 2007) (conclusory allegations insufficient to allege that UFT engaged in conspiracy with DOE).

Likewise, Plaintiffs' caselaw in support of conspiracy charges for UFT's and CSA's presidents are unavailing, especially in light of Plaintiffs' flimsy pleading. See McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977) (holding that there was inadequate personal involvement by certain named defendants to support § 1983 liability); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986) (prison superintendent who himself oversaw hearing where prisoner was disallowed witnesses had sufficient involvement to support possible claim).

Although Plaintiffs attempt to distinguish Leahy v. Board of Trustees, 912 F.2d 917 (7th Cir. 1990), they fail to point to any specific allegations in the Amended Complaint that the UFT or CSA Defendants were acting "as a state instrumentality, perform[ing] traditionally exclusive sovereign functions, or [being] compelled or even encouraged by the state to make the decisions challenged." See id. at 921. As here, the allegations of conspiracy in Leahy were conclusory. See id.; see also Ciambriello, 292 F.3d at 324 ("conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial relationship between the County and CSEA").

Plaintiffs allege no specific facts or instances of misconduct or conspiracy by the UFT or CSA Defendants. The only specific fact alleged is that the unions agreed to arbitrate the bargaining impasse. Instead, Plaintiffs make a series of nonspecific, repetitive claims that the UFT and CSA Defendants conspired with the City Defendants, Arbitrator Scheinman, SAMS, and SAMS LLC (in various combinations) to have Arbitrator Scheinman issue the awards, ¶¶

135, 170-75, 179-86, 331-35, 341-47, 350, 359, 362, 367-371, 374-75, 377-83, 386, 395, 398, 438-442, purportedly as part of an unspecified "kickback" scheme that confoundingly included the goal of placing Plaintiffs on LWOP, ¶¶ 335, 338-39, 371, 374-75.[3]

The obvious truth is that the UFT and CSA Defendants protected the interests of their members – including those who chose not to become vaccinated – throughout the pandemic, challenging the Mandate and its implementation in both adversarial negotiations and in court. In fact, the UFT and CSA were part of the initial suit that compelled the City to consider medical and religious accommodation requests (which the City initially had declined to do).[4]

The Awards created a series of rights and procedures pertaining to the unvaccinated that did not exist prior. These include the ability to remain on paid leave while applications for accommodation are pending, the option to extend LWOP (and therefore health benefits), the ability to appeal to an outside arbitrator, and the availability of enhanced severance. See Amended Complaint Exs. E and F.

Accordingly, claims that the Awards have somehow infringed on Plaintiffs' rights are simply inaccurate; rather, the Awards safeguarded and elevated Plaintiffs' rights.

### III. PLAINTIFFS LACK STANDING TO CHALLENGE THE AWARDS

As explained herein and in the UFT and CSA Defendants' prior submissions, the Awards are valid and Plaintiffs lack standing to attack them directly or collaterally.[5] Plaintiffs were not parties to the instant arbitration proceedings and therefore lack standing to challenge same. See Broecker et al. v. New York City Dep't of Educ. et al., __ F.Supp.3d __, 2021 WL 5514656, at

---

[3] It is particularly perplexing what benefits the UFT or CSA Defendants are alleged to have sought from this fictional scheme, the purported goals of which run contra to the *many* suits brought by the UFT and CSA in defense of Plaintiffs and others similarly situated.

[4] MLC et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

[5] Challenging the validity of the Awards is quite different from alleging that their provisions violate other rights.

*6 (E.D.N.Y. Nov. 24, 2021); see also Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir.1994) (employee lacked standing to challenge disciplinary arbitration award); Fleischer v. Barnard College, 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18, 2021) (accord). Likewise, New York state courts have held that current or former union members cannot challenge the validity of CBAs as non-parties to, or third-party beneficiaries of, those agreements. See Fiore v. Town of Whitestown, 125 A.D.3d 1527, 1530 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015); see also Leblanc v. Security Servs. Unit Empls. of New York State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, 278 A.D.2d 732, 733-34 (3d Dep't 2000).

Nor can Plaintiffs cure this infirmity by alleging new facts and inventing new claims in opposition briefing. See, e.g., Ifill v. New York State Court Officers Ass'n, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (denying summary judgment where "the amended complaint does not state a claim for breach of the duty of fair representation . . . . [Plaintiff] may not amend his complaint to add new claims by raising them for the first time in his motion papers."); In re 50 Pine Co., LLC, 317 B.R. 276, 284 (Bankr. S.D.N.Y. 2004) ("A plaintiff may not bootstrap a claim into a complaint merely by discussing it in its opposition brief."); Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC, 16-CV-3181, 2020 WL 7042642, at *10 (E.D.N.Y. Nov. 30, 2020) (refusing to consider new facts introduced in a declaration in opposition to a motion to dismiss);. In any event, an attempt to further amend their complaint to include a new claim for breach of the duty of fair representation would be futile as Plaintiffs would be unable to establish the needed elements and the claim would be untimely under the four-month limitations period in CPLR 217. See Vaughn v. Air Line Pilots Ass'n, Int'l, 395 B.R. 520, 536 (E.D.N.Y. 2008) (granting 12(b)(6) dismissal where plaintiff failed to plead "arbitrary, discriminatory" or "bad

faith" action by union, or that the challenged action had a causal connection to plaintiff's injuries), aff'd, 604 F.3d 703 (2d Cir. 2010), and aff'd sub nom. Vaughn v. Air Line Pilots Ass'n, 377 F. App'x 88 (2d Cir. 2010); Hoffman v. Bd. of Educ. of City Sch. Dist. of City of New York, 84 A.D.2d 840, 841 (2d Dep't 1981) (dismissing duty of fair representation claim where plaintiff failed to show bad faith, arbitrariness, or discriminatory conduct by union).

Furthermore, the duty of fair representation permits a union great leeway in representing its members. A plaintiff must plead discrimination or bad faith – not merely harm or error on the part of a union. See Vaughn, 395 B.R. at 536; Hoffman, 84 A.D.2d at 841.[6]

Plaintiffs' also misrepresent this Court's December 22, 2021 Scheduling Order, which concerned standing in response to the initial iteration of Plaintiffs' pleading. Since that ruling, Plaintiffs have amended their initial pleadings and have made numerous collateral attacks to the terms of the Awards themselves, despite their lack of standing to do so. The UFT and CSA Defendants challenge Plaintiffs' standing in light of these subsequent allegations and filings.

Therefore, Plaintiffs' claims regarding the purported invalidity of the Awards should be dismissed under Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

For the reasons set forth herein and in the accompanying submissions, the UFT and CSA Defendants respectfully request that the Court:

1. dismiss all claims against the UFT and CSA Defendants, including those (a) seeking a declaratory judgment that the UFT and CSA Awards were promulgated without statutory or contractual authority; and (b) alleging that UFT and CSA

---

[6] Regardless, failure to ratify the Awards cannot form the basis for a duty of fair representation claim. As set forth above, the law does not require ratification.

9

engaged in conspiracies regarding, or aided and abetted, violations of 42 U.S.C. § 1983;

2. deny Plaintiffs' request to file a second amended complaint; and

3. award such other and further relief as the Court deems just and proper.

Dated: May 24, 2022

Respectfully submitted,

/s/ DINA KOLKER
STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
Dina Kolker, Esq.
Arthur J. Herskowitz, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com
dkolker@stroock.com
aherskowitz@stroock.com

- and -

Beth A. Norton, Esq.
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO
52 Broadway
New York, New York 10004
(212) 701-9420
bnorton@uft.org

*Co-counsel for the UFT Defendants*

- and -

David A. Grandwetter, Esq.
COUNCIL OF SCHOOL SUPERVISORS
AND ADMINISTRATORS
40 Rector Street, 12th Floor
New York, New York 10006
(718) 852-3000
david@csa-nyc.org

*Co-counsel for the CSA Defendants*