UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, et al., on behalf of themselves and     DOCKET NO.
all other similarly situated employees of the New York City     21-CV-06387
Department of Education,

                                           Plaintiffs,

             -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

                                           Defendants.
-------------------------------------------------------------------X

**DEFENDANTS MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND
MEDIATION SERVICES, and
SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC
REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

**VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP**
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,
and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

# TABLE OF CONTENTS

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | ……………………………………… | i-iii |
| PRELIMINARY STATEMENT | ……………………………………… | 1 |
| CONCLUSION | ……………………………………… | 7 |

# TABLE OF AUTHORITIES

**Cases**

Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir.1990).19 ..2

Berlyavsky v. New York City Dep't of Env't Prot., No. 14-CV-03217
KAM RER, 2015 WL 5772266, at *18 (E.D.N.Y. Aug. 28, 2015) …………… 1, 2

Blum v. Yaretsky, 457 U.S. 991, 1004–05, 1982,
102 S.Ct. 2777, 73 L.Ed.2d 534)) ……………………………………….... 2

Board of Education of City School District v. New York State
*PERB* 75 N.Y.2d 660 (1990) …………………………………………………. 3, 5

Buffalo Teachers Federation v. City School District of the City of Buffalo
49 PERB 4560 (2016) …………………………………………………………. 6, 7

Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11
Union Free School District 32 PERB 3024 (1999) ……………………………… 5

Jacobs v. Mostow, 271 Fed. App'x 85, 88 (2d Cir.2008) ……………………… 2

Margiotta v. Kaye
283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) ………………………………….. 3, 4

Weinraub v. Glen Rauch Sec., Inc., 399 F. Supp. 2d 454 (S.D.N.Y. 2005)
aff'd, 180 F. App'x 233 (2d Cir. 2006). …………………………………. 1

Williams v. Smith, 781 F.2d 319 (1986) …………………………………. 1

**Statutes**

Title 42 U.S.C. Section 1983              ……………………………………… 1, 7
N.Y. Civil Service Law § 209.2            …………………………………….. 3
N.Y. Civil Service Law § 209(2)(d)(ii)    …………………………………….. 4, 5
N.Y. Civil Service Law § 209.3(a)         …………………………………….. 3
N.Y. Civil Service Law § 209.3(b)-(d)     …………………………………….. 3
N.Y. Civil Service Law § 209.3(d)(ii)     …………………………………….. 3
N.Y. Civil Service Law § 209(3)(e)        …………………………………….. 4
N.Y. Civil Service Law 209.4(a)           ........................................................ 4
N.Y. Civil Service Law § 209.3(f)         …………………………………….. 4

# PRELIMINARY STATEMENT

Plaintiffs argued that Arbitrator Scheinman engaged in conspiracy and was therefore subject to liability under 42 U.S.C Section 1983 of constitutional violations.

It is well settled that arbitrators are not state actors. Weinraub v. Glen Rauch Sec., Inc., 399 F. Supp. 2d 454 (S.D.N.Y. 2005), aff'd, 180 F. App'x 233 (2d Cir. 2006). The arbitrators are private actors, and their directives are not subject to the Due Process Clauses of the Constitution. Berlyavsky v. New York City Dep't of Env't Prot., No. 14-CV-03217 KAM RER, 2015 WL 5772266, at *18 (E.D.N.Y. Aug. 28, 2015), report and recommendation adopted as modified, No. 14-CV-3217 KAM RER, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015). When, like here, the § 1983 allegations involve a private actor, a plaintiff must plead conspiracy insomuch that the private actor must be shown to be a "willful participant in joint activity with the State or its agents."

To support their claim of conspiracy, Plaintiffs cited Williams v. Smith wherein the Court held that a defendant might be personally involved in a constitutional deprivation within the meaning 42 U.S.C Section 1983 by directly participating in an infraction. Williams v. Smith, 781 F.2d 319 (1986). Plaintiffs argued that Arbitrator Scheinman directly participated in the infraction because his awards/"decision started the snowball/domino effect resulting in the deprivation. (Plaintiffs Opposition at ¶43). The case is distinguishable and inapplicable here for 3 reasons. First, in Williams, the defendants--Superintendent of a correctional facility and a Correctional Office-- were state actors within the meaning of the statute. There was no dispute there that the defendants were subject to 42 U.S.C Section 1983. Second, Plaintiffs conflate the issue of a private actor with the issue of personal involvement. Personal involvement does not convert a private actor into a state actor and it does not demonstrate conspiracy. Third, Plaintiffs argument regarding the personal involvement would lead to absurd results. Adopting Plaintiffs reasoning would render

every arbitration award subject to constitutional challenge where a disfavored party disagrees with its outcome. Additionally, it would necessitate a finding that presiding over an arbitration in and of itself constituted an infraction. This, of course, has no support in law and would be entirely against public policy.

Plaintiffs argued that Arbitrator Scheinman orchestrated a kickback scheme and was biased. To support their utterly absurd claim, the plaintiffs pointed out that 9 years ago, Arbitrator Scheinman hosted a fundraising event for the then-mayoral candidate, Bill de Blasio. These claims are preposterous, offensive and are entirely without any basis. Arbitrator Scheinman has arbitrated over 20,000 cases since 1978. Arbitrator Scheinman has been regarded as an eminent arbitrator. Mr. Scheinman has been a long -standing member of PERB's Arbitration Panel and has enjoyed an excellent reputation among the public employers and public employees. PERB can and do remove arbitrators from its panel when warranted. If there was ever an indicium of bias, the parties could have chosen a different arbitrator. They did not. Plaintiffs' claim of conspiracy deserves no further consideration.

Clearly, Plaintiffs plead no facts to plausibly support "a nexus between the state and the specific [complained-of] conduct" to establish Arbitrator Scheinman as a state actor. Blum v. Yaretsky, 457 U.S. 991, 1004–05, 1982, 102 S.Ct. 2777, 73 L.Ed.2d 534)).

Additionally, Arbitrator Scheinman enjoys immunity from claims concerning her role in the arbitral process. Jacobs v. Mostow, 271 Fed. App'x 85, 88 (2d Cir.2008) (recognizing absolute immunity " 'for all acts within the scope of the arbitral process' " (quoting Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir.1990)).19; see also Berlyavsky, supra. Most importantly, the immunity enjoyed by these individuals " 'is not overcome by allegations of bad

faith or malice,' nor can a judicial officer be deprived of immunity 'because the action he took was in error or was in excess of his authority.' " Id.

Next, Plaintiffs argue that the arbitration awards were invalid and illegal.

What is conspicuously missing from Plaintiffs' opposition is any discussion of this Court's case directly on point, Margiotta v. Kaye, where this Court specifically discussed the impasse procedure as follows:

> The first step of the impasse procedure for all covered employees is mediation. Id. §§ 209.3(a), 209.4(a). PERB appoints a mediator to assist the parties in reaching a voluntary resolution of their dispute. Id. With the exception of employees who are eligible for compulsory interest arbitration, if the dispute is still not settled, impasses involving all public employees proceed next to a fact-finding board which is appointed by PERB to make findings and recommendations for resolution of the dispute. Id. § 209.3(b)-(d). In the alternative, the parties together may voluntarily submit to arbitration. Id. § 209.3(d)(ii).

Margiotta v. v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003).

Despite the plain language of the statute permitting the public employers, like the school districts, and the public employees, like the unions, to submit their impasse to an interest arbitration, Plaintiffs insist on turning the statute on its head. The lack of statutory obligation to arbitrate is not tantamount to a statutory prohibition to arbitrate if the parties voluntarily choose to do so.

While ignoring the holding in Margiotta, Plaintiffs argued that the arbitration awards were invalid and illegal and supported its argument by relying on (1) § 209.3(f) ; (2) *§ 209*.2 ; (3) Board of Education of City School District v. New York State *PERB* 75 N.Y.2d 660 (1990); and (4) two PERB decisions: Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District and Buffalo Teachers Federation v. City School District of the City of Buffalo.

For the reasons set forth below, the foregoing statutory provisions and decisional law are either inapplicable and in fact, directly support the movant's position.

3

First, § 209(3)(f) has no application to the case at bar. Specifically, the subsection provides:

> where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply *[ § 209(3) (e ) (iii) the legislative body or a duly authorized committee thereof shall forthwith conduct a public hearing at which the parties shall be required to explain their positions with respect to the report of the fact-finding board; and (iv) thereafter, the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved]* and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present; (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement. The board may provide such assistance as may be appropriate.

N.Y. Civil Service Law § 209(3)(e) and (f) *(emphasis added)*

The plain language merely provides that, school districts, unlike other public employers, are not obligated to conduct a public hearing and that there is no imposition on a legislative body to take any actions regarding the fact-finding report.

Second, §209 (2) provides, in parts, that: "[p]ublic employers are hereby empowered to enter into written agreements (. . . ) setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations." N.Y. Civil Service Law §209 (2). The operative word is "empowers." The statute does not impose an obligation to enter into such agreement, and, here, no such agreement existed.

Notably, however, §209 (2) further provides that "[*o]n request of either party* ( . . .) and in the event the board determines that an impasse exists (. . . ) the board shall render assistance as follows: (d) *the public employment relations board shall have the power to take whatever steps it deems appropriate to resolve the dispute, including* (ii) *upon the request of the parties, assistance in providing for voluntary arbitration.* N.Y. Civil Service Law 209(2)(d)(ii).

4

As this Court in Margiotta emphasized, **§**209(2)(d)(ii) is directly illustrative on the impasse procedure such as the procedure applicable to the case at bar.

Third, The Board of Education of City School District v. New York State *PERB* is not relevant to the issues here and is not determinative. The movant respectfully urges the Court to review the Court of Appeals decision in its entirety. Nothing in the holding or even dicta supports Plaintiffs position. In that case, the Court of Appeals simply noted that in cases involving the school districts, the parties cannot be compelled to arbitrate the impasse. The Court pointed out that the Legislature imposed a duty to arbitrate in cases of public safety employees insomuch that the public employer, City, may not choose to forgo it. Bd. of Educ. of City Sch. Dist. of City of New York v. New York State Pub. Emp. Rels. Bd., 75 N.Y.2d 660, 669, 554 N.E.2d 1247, 1252 (1990). Therefore, the language of the Court of Appeals, in dicta, that the Legislature's failure "to provide any final impasse resolution mechanism in the cases of school district" means nothing more than that a decision to arbitrate is voluntary. As the Board of Education Court noted, "the Legislature has manifested an intention to commit these decisions to the discretion of the public employer." Id. Like, here, the decision to arbitrate was voluntarily made by the public employer, Defendant DOE, and the public employees, the Union Defendants.

Neither the statute nor the decisional law precludes the parties to choose to arbitrate their impasse.

Next, Plaintiffs also relied on two PERB decisions, neither of which supports Plaintiffs' position. Specifically, In the Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District, at issue was a deletion, modification or continuation of any of the legal terms pertaining to the successor collective bargaining agreement. In the Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District 32

PERB 3024 (1999). Nowhere in Greenburgh did PERB hold or discuss that in cases involving school districts, the parties could not choose to arbitrate. By contrast, it held that "it bears emphasis that the impasse procedures applicable in school districts do not lack "finality." Id. It is true that finality to negotiations in school districts is obtained only by the parties themselves (. . .) and not, as with police or fire negotiations," compulsory arbitration award. "Finality exists in either circumstance, only the agents of that finality and the means by which that finality is achieved differ." "The parties themselves [who] are the agents of finality for purposes of school district negotiations."

As the foregoing demonstrates, contrary to the Plaintiffs' misrepresentation, the Greenburgh matter supports the movant's position.

Similarly, the Plaintiffs' reliance on the matter <u>Buffalo Teachers Federation v. City School District of the City of Buffalo</u> is misplaced. There, PERB held that:

> Generally, where the parties have been unable to resolve the dispute after fact-finding, PERB has considered the appropriateness of the appointment of a conciliator to mediate a settlement based on the fact finder's report and recommendations. This is particularly so in regard to school districts, where there **is no option available to the parties other than continuing to negotiate until an "agreement" is reached. (emphasis added).**

<u>In the Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo</u> 49 PERB 4560 (2016)

The Buffalo decision is distinguishable on the facts and supports the movant's position on the law. At issue there was the parties' unwillingness of negotiate in good faith after rejecting a fact-finding report. Here, unlike in <u>Buffalo</u>, the parties continued to bargain in good faith. Had either the Defendant DOE (public employer) or the Defendant Unions (public employees) refused to submit to the arbitration, there would be **no option available to the parties other than continuing to negotiate until an "agreement" is reached.** However, the parties chose to

6

continue to bargain in good faith and submit their impasse to the arbitration, which they have a statutory right to do.

Citing Buffalo, Plaintiffs also cited that "[s]chool districts and other educational institutions do not have the ability under the Act to ***unilaterally*** resolve the dispute after fact-finding through a process of public hearing and action by its legislative body, as do other public employers." In the Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo, 49 PERB ¶ 4560 (***emphasis added***).

The movant agrees with Plaintiffs that school districts do not have the ability to resolve the impasse unilaterally. Here, however, the DOE did not resolve the dispute unilaterally. By contrast, both parties decided to proceed to arbitration, reached out to PERB advising of same, and chose Arbitrator Scheinman from PERB's Arbitrators Panel.

## CONCLUSION

Arbitrator Scheinman is not a state actor. Plaintiffs' claim that accepting assignment to arbitrate impasse is proof of conspiracy must fail as it is clearly insufficient to plead a cognizable claim of constitutional violations under 42 U.S.C. §1983. Plaintiffs' claims against Arbitrator Scheinman and SAMS are barred by the doctrine of absolute immunity.

Finally, the plain language of the Civil Service Law section 209 is unequivocal and specifically permits the parties to agree to a voluntary binding arbitration. The Union Defendants and the City are permitted to choose to submit the impasse to the arbitration pursuant to Taylor's Law thereby invoking Arbitrator Scheinman's authority to issue the binding arbitration awards.

Dated: Garden City, New York
       May 24, 2022

                                    Respectfully submitted,

                                    VIGORITO, BARKER, PATTERSON,
NICHOLAS & PORTER, LLP
*Karolina Wiaderna*
Karolina Wiaderna
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,*
*and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355