1

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2  - - - - - - - - - - - - - - - X
                                 :
3  NICOLE BROECKER,              : 21CV638 (KAM)
                                 :
4          Plaintiff,            :
                                 :
5                                : United States Courthouse
6     -against-                  : Brooklyn, New York
                                 :
                                 :
7  NEW YORK CITY DEPARTMENT OF   : November 23, 2021
   EDUCATION, ET AL,             : 12:00 p.m.
8                                :
          Defendant.             :
9  - - - - - - - - - - - - - - - X
```

10          TRANSCRIPT OF CIVIL CAUSE FOR ORDER TO SHOW CAUSE
               BEFORE THE HONORABLE KIYO A. MATSUMOTO
11                  UNITED STATES DISTRICT JUDGE

12                      A P P E A R A N C E S:

13  For the Plaintiff:     THE SCHER LAW FIRM, LLP
                              One Old Country Road, Suite 385
14                            Carle Place, NY 11514
                           BY: AUSTIN R. GRAFF, ESQ.
15

    For the Defendant      NEW YORK CITY LAW DEPARTMENT
16  New York City             100 Church Street, Room 2-104
    Department of             New York, NY 10007
17  Education:             BY: ANDREA MARY O'CONNOR, ESQ.
                               IVAN A MENDEZ, JR., ESQ.
18

    For Defendant          STROOCK & STROOCK & LAVAN
19  United Federation         180 Maiden Lane
    of Teachers, Local        New York, NY 10038
20  2, American            BY: DINA KOLKER, ESQ.
    Federation of             ALAN M. KLINGER, ESQ.
21  Teachers, AFL-CIO:

22

    Court Reporter:  **SOPHIE NOLAN**
23                      225 Cadman Plaza East/Brooklyn, NY 11201
                        NolanEDNY@aol.com
24  *Proceedings recorded by mechanical stenography, transcript*
    *produced by Computer-Aided Transcription*
25
```

Proceedings                                                    2

1           (In open court.)

2           (The Hon. Kiyo A. Matsumoto, presiding.)

3           THE COURTROOM DEPUTY:  This is an order to show

4    cause hearing, docket number 20cv6387, *Broecker versus New*

5    *York City Department of Education and United Federation of*

6    *Teachers Local 2, American Federation of Teachers AFL-CIO.*

7           Will counsel on behalf of all plaintiffs state your

8    appearances.

9           MR. GRAFF:  Good afternoon.  Austin Graff from the

10   Sher Law Firm.

11          THE COURTROOM DEPUTY:  Counsel, state your

12   appearance and whom you represent.

13          MS. O'CONNOR:  Good afternoon, Your Honor.  Andrea

14   O'Connor representing the New York City Department of

15   Education.

16          THE COURT:  Good afternoon.  Thank you.

17          MR. MENDEZ:  Good afternoon, Your Honor.  Ivan

18   Mendez representing the Department of Education.

19          THE COURT:  Which of you is speaking for the

20   Department of Education?

21          MS. O'CONNOR:  I will, Your Honor.

22          THE COURT:  Thank you, sir.

23          Thank you, ma'am.

24          MS. KOLKER:  Dina Kolker from Strook & Strook for

25   United Federation of Teachers.

Proceedings                                    3

1           THE COURT:  Good afternoon.

2           And, sir?

3           MR. KLINGER:  Your Honor, Alan Klinger from Strook

4    as well as.  Ms.  Kolker will be the lead for us.

5           THE COURT:  All right, thank you.

6           I just want to note that certainly spectators are

7    always welcome in federal courtroom.  I would have appreciated

8    a heads up from plaintiff's counsel because as you do know we

9    have restrictions in place to safeguard the public safety.  I

10   would have arranged for an overflow room or video feeds.  Many

11   of these requests came in literally an hour before the

12   hearing.  We are trying hard to arrange and accommodate so

13   that folks can observe, but in the future going forward it's

14   really important to let the court know that you have these

15   needs.

16          MR. GRAFF:  My apologies, Your Honor.

17          THE COURT:  I want to establish some ground rules

18   for those present here today.  First, it is important for

19   everybody to remain calm and professional, those who are on

20   video or those who are participating here in the court.  We

21   are not going to permit any unruly behavior or outbursts or

22   comments.  I am sure as teachers and administrators you have

23   had that situation where you had to instruct those in your

24   classrooms that certain conduct is okay and certain conduct is

25   not okay and certainly that pertains in federal court.

Proceedings                                          4

1      Second of all, recordings, videotaping or

2  photographing of anything is absolutely prohibited.  We have a

3  court reporter here who is making an official transcript of

4  today's record and that will be what will govern any record in

5  this case.  Disseminating videos or recordings is forbidden by

6  this court and it will be deemed a contempt.

7      Third of all, I appreciate all of you wearing masks.

8  Masks must cover the nose and mouth at all times in this

9  courtroom and if you become uncomfortable or cannot wear your

10  mask, I ask that you please step outside the courthouse so you

11  can remove your mask.

12      Now, Mr. Graff, this is your order to show cause.

13  You have submitted papers, I would note, 44 days after your

14  clients were placed on leave without pay status, from what I

15  understand on October 4th.  But let me ask you the more

16  fundamental question with regard to standing which you did not

17  address in your papers and I do not believe your papers even

18  discussed the impact of the impact arbitration agreement that

19  had been entered between the various unions representing the

20  teachers, the administrators and supervisors and the DC 37

21  employees.

22      My question to you, and there's case law to support

23  my concern, is why do your clients have standing to bring this

24  case if their chosen bargaining unit has entered into this

25  arbitration award -- I'm sorry, the impact arbitration

1   agreement that binds the course of the implementation and the

2   remedies.  It's incorporated by reference in the collective

3   bargaining agreements and it is an agreement that their chosen

4   representative entered into to govern any disputes arising as

5   a result of the vaccine mandate.

6          MR. GRAFF:  Thank you, Your Honor, for hearing us

7   today.

8          THE COURT:  Please sit down.  Unfortunately you will

9   have to project.

10          MR. GRAFF:  Thank you, Your Honor, for hearing us

11   today.  The arbitration award was not an agreement.  The union

12   did not sign off on it.  It was -- the union and the New York

13   City Department of Education reached impasse on impact

14   bargaining.  That is under New York Civil Service Law Section

15   209.  Section 209 says that if there is an impasse in

16   collective bargaining, then the PERB, the Public Employment

17   Relations Board, appoints a mediator.  The meditator tries to

18   work out a deal.

19          In this situation, a deal could not be struck and

20   the parties somehow agreed that this meditator could impose

21   whatever he chose to impose, but that violates the Civil

22   Service Law Section 209.3(e) -- I'm sorry, 209.3(f).  Under

23   the civil service law, a factfinding decision cannot be

24   imposed upon a school district.  So, what they did was they

25   came to an agreement that there would be impact bargaining.

Proceedings                                                6

1   Impact bargaining resulted in arbitration which was actually a

2   factfinding decision under section 209.3(f).  Under the law of

3   New York State it cannot be imposed upon a school district.

4             Now, if New York City Department of Education does

5   not fall within Section F, Section E which permits the

6   legislative body to impose the factfinding decision and in

7   this situation the legislative body has not acted.  Separate

8   and apart from that, if the union is going to say or the

9   Department of Education is going to say that arbitration was

10  pursuant to the collective bargaining agreements, the

11  consulting agreements say that the arbitrator overstepped his

12  bounds.  The teachers union Article 22, Section C on page 176

13  of the collective bargaining agreement states --

14            THE COURT:  Did you raise any of this in your

15  papers?

16            MR. GRAFF:  I didn't get a reply.

17            THE COURT:  Okay.  Well, could you have briefed it

18  in your initial moving papers so that we could have a clear

19  idea of what the real grounds -- the real landscape was?  I

20  think this agreement is important and if you think that it

21  doesn't bind you on -- your clients and it shouldn't have been

22  entered into or it's somehow invalid or unlawful, you should

23  have laid it out in your papers because you have asked for

24  expedited relief.  You have asked for expedited relief by this

25  court.

Proceedings                                                7

1         MR. GRAFF:  Yes.

2         THE COURT:  You have asked the defendants to respond

3    in an expedited manner, but you didn't give us a full picture.

4    And, yes, you could have had a reply if you hadn't waited so

5    long to file your papers.  But we got your papers last week

6    around 5 o'clock.  We instantly read them, issued an order to

7    show cause to the defendants.  They worked virtually within 24

8    hours to put in papers by Friday.  We spent the weekend

9    reviewing the papers and, you know, it would have behooved

10   you, I think, to have given us a little bit better information

11   because right now you are just reciting agreements and

12   provisions that are not before me.

13        My question was a little more basic.  Show me you've

14   got standing.

15        MR. GRAFF:  What I was going to say is that the

16   union's collective bargaining agreements which are before you

17   do not permit the arbitrator to, in any way, violate or change

18   applicable law or rules or regulations having the force and

19   effect of law.

20        What the arbitrator did here is violate the

21   Constitutional rights of the plaintiffs by saying that they

22   could be on unpaid leave and also without providing due

23   process.  One of the issues we have in the papers that have

24   been submitted, Your Honor, is there's a conflict:  What's

25   going to happen on December 1?  The teacher's union says that

Proceedings                                                    8

1    on December 1st the DOE has to go through the 3020(a) process

2    or the procedural due process.  And that's what we're asking

3    for.  The New York City Department of Education says we can

4    unilaterally terminate.

5              THE COURT:  We're going to get to that conflict.

6    It's an obvious conflict but, all right, why don't we have the

7    union or the DOE respond to your position that they were

8    without authority to enter into this impact arbitration award.

9              I mean, the union, I believe in their papers,

10   indicated that they took prompt action to challenge the DOE's

11   plan and as a result on an expedited basis after the mandate

12   was issued in August, I believe, they were able to expedite

13   and everybody worked very hard to get some sort of an

14   agreement with the representatives for your clients by

15   September -- before September 25th when the school year

16   started, but let me --

17             MR. GRAFF:  If I could just respond to that.

18             THE COURT:  Yes, go ahead.

19             MR. GRAFF:  There was no agreement.  There was an

20   arbitrary ruling imposed and the Second Circuit just recently,

21   over the last several days, has said that there was problems

22   with the arbitration and sent it back because it violated

23   Title VII.  There are problems with the arbitration.

24             THE COURT:  So this particular arbitration violated

25   Title VII?

1          MR. GRAFF:  The way it's being implemented, yes.  I

2     believe that's what the holding is and it came out on the

3     15th.  I have it --

4          THE COURT:  It came out on the 15th.  Why didn't you

5     put that in your papers which you filed on the 17th?

6          MR. GRAFF:  I'm sorry, Your Honor, I did not.

7          If the plaintiffs --

8          THE COURT:  Wait.  Which case is that, sir?

9          MR. GRAFF:  It's Kane versus DeBlasio, index number

10    21-2678-CV, and it talks about --

11         THE COURT:  Sir, you are reading very fast and you

12    are not reading clearly.  Please speak slowly and clearly.

13         MR. GRAFF:  Paragraph two of the order says:  Such

14    consideration shall adhere to the standards established by

15    Title VII of the Civil Rights Act of 1964, the New York Human

16    Rights Law and the New York City Human Rights Law.  Such

17    consideration shall not be governed by the challenged criteria

18    set forth in IC of the arbitration award for the United

19    Federation of Teachers members.  Accommodations will be

20    considered for all sincerely held religious observances,

21    practices and beliefs.

22         THE COURT:  All right.  I don't know what the

23    circumstances of that case are.  Reading me an excerpt of a

24    decision, I don't know what the basis of that challenge was or

25    whether they even raised Title VII claims, but I will take a

1   look at that, okay?  Thank you.  Is there is there anything

2   else?

3           MR. GRAFF:  The issue here, and it's not addressed

4   in any of the papers is my clients have a right to their pay,

5   a Constitutional right to their pay.  They do not cite to the

6   *Veronca* (ph) case or any of the Second Circuit cases cited in

7   our briefs regarding the right to pay.  In fact, the Second

8   Circuit in that same case said if a plaintiff -- paragraph

9   five:  If a plaintiff's request is granted by the Citywide

10   panel, the plaintiff will receive back pay running from the

11   date they were placed on leave without pay.

12           They're raising issues and the UFT filed a complaint

13   in the early stages of the vaccine mandate which alleged that

14   there was a violation of the plaintiff's due process rights.

15   Those issues were not decided by the state court because

16   the -- there was an issue -- they decided on a different

17   ground regarding the religious and disability exemptions.  But

18   in this situation, my clients no matter when we filed they had

19   a violation of their Constitutional rights, whether was the

20   day before December 1st or several days before like we did.

21   The delay is still a Constitutional violation.  It's not

22   harming the DOE or the UFT.  It's harming my plaintiffs.

23           THE COURT:  Well, my understanding is that even as

24   late as November 15th -- let me ask you, how many of your

25   clients actually invoked the procedures of seeking a religious

1   or medical exemption?

2            MR. GRAFF:  I don't know the exact number of them.

3            THE COURT:  Did any of them?

4            MR. GRAFF:  Yes.

5            THE COURT:  My understanding based on the defense

6   papers is that only seven of the 80 some-odd did.  Does that

7   sound accurate?

8            MR. GRAFF:  That sounds about right.

9            THE COURT:  So the rest decided to forego those

10  procedures and come to federal court, is that it?

11           MR. GRAFF:  Yes, but we're talking about the vaccine

12  mandate here.  We're talking about their constitutional right

13  to pay and their constitutional right to due process.

14           THE COURT:  Well, the vaccine mandate is the

15  catalyst for the ultimate conclusion by the Department of

16  Education that those who did not avail themselves of the

17  vaccine by a date certain were no longer deemed to be fit for

18  duty or qualified for duty.

19           MR. GRAFF:  Yes.

20           THE COURT:  So based on that, I understand the DOE

21  takes the position that because this is not a disciplinary or

22  competency or performance issue, it is a qualification or a

23  fit-for-duty issue they don't have to go through the 3020

24  procedures.  But the union I believe thinks that that would be

25  the proper vehicle.  So we'll get to that.

Proceedings                                    12

1          MR. GRAFF:  Your Honor --

2          THE COURT:  But I would like to ask either the DOE

3     or the union to respond to your argument that this was not a

4     lawful or appropriate process by the chosen representatives to

5     resolve on a very expedited basis this vaccine mandate.

6          Who wants to be heard on the defense side of the

7     table?

8          MS. KOLKER:  Dina Kolker for the UFT.

9          I think there's a little bit of confusion between

10    contractual grievances in arbitrations which are things that

11    operate pursuant to the collective bargaining agreement that

12    are limited to, in large part, violation or misinterpretation

13    of the collective bargaining agreement that could ultimately

14    go to an arbitrator and arbitration in connection with

15    collective bargaining or new contractual terms which is what

16    we have here.

17         We had the health order issued by the Department of

18    Health and Mental Hygiene impacting the City's schools.  The

19    union, the UFT as well as other unions involved in this moved

20    on parallel tracks.  They challenged the mandate itself in

21    state court and I have to correct counsel, the judge in state

22    court initially granted a TRO primarily because the initial

23    health order did not provide for religious and medical

24    accommodations.  When that TRO was issued, the Department of

25    Health and Mental Hygiene issued a revised order explicitly

1    taking note of that and correcting it based on the union's

2    efforts in that case.

3            And then the unions briefed the remainder of the due

4    process issues before the Supreme Court New York County and

5    ultimately that court decided against the unions upholding the

6    vaccine mandate and that has been the result as is laid out in

7    the papers in every one of the challenges that we're aware of,

8    both in New York State and outside of New York State to these

9    types of vaxx mandates.

10           Recognizing that that may be the result of a court

11   challenge, the risk to move on a parallel track to negotiate

12   the implementation of this mandate.  The mandate in general

13   says, beyond this date people are who not vaccinated taking

14   into account the religious and medical accommodations, cannot

15   be present in school buildings with children who, particularly

16   at the time, were not, in large part, even able to be or even

17   eligible to be vaccinated.

18           So, the health order limits who can show up in a

19   school basically.  The union sought to implement how to

20   negotiate -- how that was implemented specifically because it

21   understood the concerns for those who chose for their own

22   reasons not to become vaccinated and recognizing that they

23   could soften the impact on the people who chose not to be

24   vaccinated regardless.

25           With the first day of school looming, that

Proceedings                                          14

1   bargaining had major issues between the parties not resolved.

2   They filed a declaration of impasse with the state Public

3   Employee Relations Board which administers the state public

4   employee relations law.  The City and the DOE did not oppose

5   that.  A mediator was assigned and breakneck mediation then

6   proceeded to try to reach agreement.

7           When that did not resolve all of the issues between

8   the parties, they agreed to move to expedited arbitration of

9   the issues which is what resulted in the arbitration award.

10  Now, it's true that the state Taylor Law the Pubic Employee

11  Relations Law in New York state, does have a procedure for

12  school districts where if there is an impasse you can go to

13  mediation and go to factfinding which is a longer arbitration

14  process that results in a recommendation which is designed to

15  assist the parties in ultimately reaching agreement.

16          The fact that that's the default statutory process

17  does not mean that the parties cannot agree to have that

18  factfinding panel or a different arbitrator issue a binding

19  award at the end of that process in which in light of the

20  urgency of the approaching beginning of school and the

21  approaching deadline of the health order itself which was

22  issued by the Department of Health that some sort of clarity

23  and finality was required, the parties agreed that it would be

24  a binding arbitration process and that's the award that

25  resulted.

1          Other unions also entered into arbitration.  Other

2     unions negotiated agreements regarding the implementation of

3     the mandate.  For the UFT in particular and I believe the

4     principal's union it was expedited arbitration that resulted

5     in an award.  That award becomes part of the collective

6     bargaining agreement under state law.  The terms of that award

7     to the extent they conflict with existing terms in the

8     collective bargaining agreement become part of the collective

9     bargaining agreement that is now binding upon the union and

10    the employer.

11          There are vehicles for challenging an arbitration

12    award under Section 75 and the CPLR in state court, but that's

13    not where we are right now.

14          THE COURT:  Well, is that a process that plaintiffs

15    may avail themselves of to challenge what has happened?

16          MS. KOLKER:  So the collective bargaining agreement

17    is between the union and the employer.  I think the City

18    addressed to some extent this issue of who can challenge the

19    arbitration award between the union and the employer in court

20    under Article 75 of the CPLR, but I think that one of the

21    things to keep in mind on this is that there's two separate

22    things that plaintiffs are talking about.

23          There is those groups of people who are placed on

24    leave without pay during this period through December 1st

25    where the arbitration award provides and the union fought hard

1    for various actions that they could collect from or take

2    advantage of.  And then there's what happens after December

3    1st.  In the UFT's view, what the arbitration award clearly

4    provides on its face is that they can't seek to separate from

5    service, to terminate, any of the people who have not yet

6    become vaccinated or received an accommodation, et cetera

7    before December 1st, right?  It's a limitation that they will

8    not seek to terminate anyone before December 1st.

9            And in large part that was to provide enough time

10   for people to see how their accommodation application may have

11   worked out or the resulting appeal, what their options are in

12   terms of either separation with incentive or the ability to

13   extend leave with health coverage September 5th of 2022.  So

14   people could take stock of their options and choices and make

15   a decision.  The arbitration award then says after December

16   1st the DOE can seek -- not that it can terminate -- it can

17   seek to terminate people who have not complied or chosen any

18   of the actions.

19            THE COURT:  So what does that look like in your

20   view?

21            MS. KOLKER:  The UFT's view is that there are

22   available right now before the arbitration award was issued,

23   now that the arbitration award was issued, various avenues

24   that the DOE has to seek to separate someone from service on

25   different grounds.  None of those have been changed.  One of

Proceedings                                    17

1    those did 3020(a) process for handling disciplinary charges.

2    For certain other employees, there's contractual processes.

3          All of these remain intact and it is the UFT's

4    position that should the DOE seek to terminate someone after

5    December 1st they would have to comply with existing

6    procedures.  Now, until all the papers are filed in this case,

7    it has not been communicated to the UFT what specifically the

8    DOE intended to do after December 1st, what avenue it intended

9    to take or that it was actually terminating people right after

10   December 1st and the union has always taken the position, and

11   took the position during the arbitration process that resulted

12   in the award, that the union believes all the existing due

13   process that is available is applicable and when the DOE

14   decides what it's going to do after December 1st, the UFT will

15   respond to accordingly, but we have to separate this question

16   of the leaves and the various options provided for in the

17   award and what happens after December 1st, which the award

18   doesn't speak to.

19         THE COURT:  Let me ask Mr. Graff, of the seven

20   plaintiffs that you represent who have sought accommodation,

21   how many of those seven have actually sought to go through the

22   appeals process to seek a three arbitrator panel to review?

23         MR. GRAFF:  I know there's at least one and I

24   believe she's --

25         THE COURT:  Well, who is it.

Proceedings                                    18

1          MR. GRAFF:  Ms. Lamb.

2          THE COURT:  Okay.  I saw in your papers that one of

3    your clients, Ms. Porcello withdrew her request for

4    accommodation.  Is that accurate?

5          MR. GRAFF:  I believe that's true.

6          THE COURT:  So she did not -- so she's not going to

7    request accommodation.  She just doesn't want to take the

8    vaccine is that it or we don't know why?

9          MR. GRAFF:  I believe there are a lot of plaintiffs

10   who are choosing not to take the vaccine for either personal

11   or --

12         THE COURT:  No, I understand that, but why aren't

13   they seeking relief based through an accommodation request

14   based on either religion or health reasons?

15         MR. GRAFF:  Because the thoughts of the plaintiffs

16   are that these requests are being denied without even

17   reviewing the papers.

18         THE COURT:  Well, let me ask the DOE, from what you

19   understand and I read Judge Caproni's oral argument, the

20   transcript, they had accommodated over 20 different religions,

21   requests for accommodation for over 100 people.  So your view

22   or your clients' view, I believe, is mistaken because at least

23   as of that time which was I think in October the DOE had

24   granted over 100 requests to 20 different religions.

25         Do you have updated information on the DOE's side,

1  please?

2          MS. O'CONNOR:  Yes, Your Honor.  This is Andrea

3  O'Connor for DOE.  I don't have exact numbers, but that is

4  accurate as of mid-October when Judge Caproni entered an order

5  to show cause in the *Kane* case that was referenced by counsel,

6  the merits panel just yesterday for the Second Circuit just

7  heard argument and has not yet issued a determination in

8  connection with that argument.  I believe what counsel was

9  citing was to the motion panel.  So the merits of that deal --

10 there has not been a decision issued yet unless it's been

11 issued since I have been here in court.

12          To address the issue of standing, I agree with

13 Ms. Kolker with respect to the process by which the impact

14 arbitration award was reached.  It was a lawful process and it

15 is binding on the plaintiffs as union members.  And as a

16 result of that there is no ability for an individual employee

17 to challenge the outcome of that lawful arbitration process.

18          And I will also note that while UFT and CSA were two

19 unions for which the plaintiffs belong, for those employees

20 that went down that arbitration track where they reached an

21 impasse and there was arbitration.  For DC 37 who is not a

22 party to this case there was an agreement reached and it was

23 not via arbitration.  It was through classic bargaining.

24          So particularly for those employees who were covered

25 by the DC 37 agreement, they don't have standing to challenge

Proceedings                           20

1    that either.  I can continue on to the merits, but that's with

2    respect to standing.

3                    THE COURT:  I would like to hear more on standing.

4                    MS. O'CONNOR:  Sure.

5                    THE COURT:  I think the plaintiff was done with his

6    standing argument; correct?  Basically, you dispute the

7    validity of the process and therefore you think you have

8    standing because your clients don't have to comply with the

9    process that they believe is invalid.

10                   MR. GRAFF:  There's just one issue that the UFT put

11   forth in their papers.  They cite to the case of *Town of*

12   *Southampton versus New York State Public Employee Relations*

13   *Board*.  It's 2 NY 3d 513.  And they cite it for the

14   proposition that the award is -- incorporates into the

15   collective bargaining agreement.  The problem with that is

16   this was a police award and under the civil service law

17   Section 209, police and fire are different than education.

18                   So under the statute, the Education -- it cannot

19   compel the Board of Education to accept an arbitration.  Now,

20   if the parties agree to an arbitration, we would never see an

21   arbitration agreement that was signed by both parties

22   entitling the arbitrator to make his award.  That's one issue.

23   And the other --

24                   THE COURT:  Would you agree that it was -- the whole

25   arbitration occurred because UFT sent out a notice of impasse

1    and they invoked the arbitration procedures?  Would you agree

2    with that?

3              MR. GRAFF:  There is no arbitration provision in

4    Section 209 of the civil service laws.

5              THE COURT:  That doesn't mean, sir, that a

6    collective bargaining agreement cannot exist coextensively

7    with the civil service laws.  The law has one set of mandates,

8    but the parties may still bargain and reach agreements.  I'm

9    not quite sure --

10             MR. GRAFF:  If the arbitration is under the

11   collective bargaining agreement then the arbitrator went

12   outside of his authority because he cannot modify or change

13   the law and he did this in this situation because he cut

14   people off from pay and did not provide for due process.

15             THE COURT:  But the argument of UFT is that this is

16   not -- this was not within the rubric of the arbitration

17   agreement as it existed then but this was an agreement where

18   the contractual terms of the CBA were altered.

19             Am I understanding your argument correctly?

20             MS. KOLKER:  Yes, Your Honor.  There is one kind of

21   arbitration that comes at the end of a contractual grievance

22   process where the arbitrator is constrained by the existing

23   collective bargaining agreement because the grievance process

24   limits the arbitrator to misapplications or misunderstandings

25   within the agreement.

Proceedings                                22

1          This is a separate process where the union, the UFT,

2    is in collective bargaining over, in the UTF's view, the

3    mandatory subject of bargaining and the implementation of this

4    mandate with the employer to reach new contractual terms and

5    the process that they invoke first went to across-the-table

6    bargaining, then a declaration of impasse and seeking to have

7    a mediator appointed, intense mediation, and then during that

8    mediation there was an agreement between the parties that it

9    should proceed to binding arbitration, not factfinding as the

10   next step given the urgency of the situation.

11         And, Your Honor, while there isn't a written

12   agreement on arbitration because one wasn't necessary, the

13   parties were attempting to engage in settlement and agreed to

14   this.  If you look at the declaration of Alan Klinger at

15   Exhibit C, the parties recorded --  we have Mr. Klinger's

16   e-mail to PERB on the status of mediation and that they had

17   agreed to an expedited arbitration due to the exigencies of

18   these circumstances and fairness of the effective workforce

19   and then discuss when arbitration discussions would be held.

20         This was the written report back to PERB on the

21   status of mediation and the parties' decision memorializing

22   the parties' agreement to move to expedite the arbitration and

23   that was part of the papers we submitted on Friday.

24         THE COURT:  One thing I didn't get from the DOE is

25   what does happen after December 1 when the DOE is unilaterally

1    authorized to seek separation?

2         MS. O'CONNOR:  Yes, Your Honor.  It is -- it's my

3    understanding that the DOE at some point after December 1st

4    for those individuals who -- and we're talking about a narrow

5    slice.  We're talking about those individuals who have

6    essentially taken no action, either they have not applied for

7    a reasonable accommodation, whether it's based on religion or

8    medical.  They have not appealed that or if they do not have

9    an appeal pending at that time, they have also not availed

10   themselves of the two different processes that are available

11   to them under the impact arbitration award, both of which

12   would extend their health benefits through September of 2022.

13        We're talking about this group of individuals that

14   have availed themselves of no processes that were afforded to

15   them under the impact arbitration award.  And for those

16   individuals at some point after December 1, yes, the DOE will

17   seek to separate them from employment.  It is the DOE's

18   position that 3020(a) for those individuals that are covered

19   by 3020(a), so again a subset of the affected employees that

20   are tenured teachers or covered by Section 75 of the Civil

21   Service Law, that the DOE can unilaterally separate them from

22   employment due to the fact that they are not complaint with

23   the lawful, valid Commissioner of Health's order which

24   requires them to be vaccinated.

25        As Your Honor noted at the beginning there is a

Proceedings                                              24

1   difference between the DOE and the UFT with respect to the

2   process for unilaterally which the award permits DOE and it

3   specifically states that the DOE may unilaterally seek to

4   separate the employees in that DOE there's significant law

5   requiring that a lawful job requirement -- when an employee is

6   not in complies with the lawful job requirements, that that

7   does not invoke the protection of 3020(a) or Section 75 and

8   when an employee falls out of compliance with that job

9   requirement, the employer is permitted to separate them

10  without process.  And that is the DOE's intention after

11  December 1.

12          THE COURT:  So, you are able to determine which of

13  the covered employees did not either seek accommodation,

14  pursue an appeal or ask to have their health benefits extended

15  up until 2022?  Those employees will be given notice that

16  they're being separated immediately or not?

17          MS. O'CONNOR:  Well, to answer Your Honor's first

18  question, yes the DOE can determine which individuals fall

19  into this section.  As Your Honor might imagine, it is a

20  moving number that moves daily.

21          THE COURT:  So it's not too late for some of these

22  employee to say, look, maybe I'm better off invoking the

23  recommended procedures, which is seek an accommodation, see

24  how far I get; maybe I'll be among those who are granted the

25  accomodation or at least that my health benefits continue

1    until 2022.

2              MS. O'CONNOR:  Correct, Your Honor.

3              THE COURT:  It's not too late; correct?

4              MS. O'CONNOR:  Correct, Your Honor.  It is not too

5    late and I want to make sure that I speak correctly.  It is

6    not too late.  And up until November 30th an employee may

7    elect to extend their leave to September 5th of 2022.  This,

8    again, would provide them with health benefits through that

9    entire period of that time.  Additionally, if they avail

10   themselves of that separation option or that leave option,

11   pardon me, at any point in time if they come in compliance

12   with the Commissioner of Health's order they can be restored

13   to their same school within two weeks of notifying the DOE

14   that they have now come in compliance with the Commissioner of

15   Health's order.  So they have the option to return if they

16   come into compliance.  So it is not too late.

17             THE COURT:  Do they retroactively receive their

18   benefits and everything else -- not benefits, but I think

19   they're worried about their pensions or other

20   employment-related benefits, status, seniority, whatever else

21   they may want to -- that they have now that they want to

22   preserve.

23             MS. O'CONNOR:  If an employee elects the extended

24   leave option and at some point during that extended leave

25   comes into compliance with the Commissioner of Health's order

1    and seeks to return to the Department of Education, they would

2    not receive back pay for that period of time that they were on

3    leave without pay, no.  I do not know the answer with respect

4    to seniority or pension credit.  I do imagine with respect to

5    pension credit, since that flows from pay, that that would

6    also not be restored.  They would have -- their health

7    benefits would be uninterrupted during that period of time,

8    though.

9              THE COURT:  Okay, thank you.

10             So, sir, do you know if any of your clients have

11   gotten vaccinated, any of the 80 some-odd plaintiffs that you

12   named?  Have any come into compliance and are they -- are all

13   of the named plaintiffs as stated in the original complaint

14   still actively resisting the vaccine and many of them still

15   not availing themselves of the procedures that were set forth

16   in the binding award?

17             MR. GRAFF:  None of the plaintiffs and I speak to

18   them through e-mail every day, no one has told me that they

19   have taken the vaccine.  I know that several people are

20   waiting to see what happens in court today because of the

21   November 30th deadline, but no one has, to my knowledge, taken

22   the vaccine that is named as a plaintiff and if they do, I

23   will ask them to be dismissed but I don't think that would be

24   an issue.

25             If I may, Your Honor, just one other point?

Proceedings                                27

1          THE COURT:  Sure.

2          MR. GRAFF:  Two things, sorry.  One is New York

3    City's Executive Order 75 makes the vaccine -- is a mandatory

4    vaccine requirement for new hires.  I don't see anything and I

5    don't think it's been produced by the defendant that says --

6    any entity has said that the vaccine is a job requirement for

7    the New York City Department of Education.  Although there's

8    an order from the Department of Health the New York City

9    Department of Education, I have looked online to see if there

10   is anything that they have adopted that says it's a job

11   requirement.  It's a job requirement for new hires.  It's on

12   the Department of Education's website, all persons newly

13   hired.  It doesn't say current employees.

14          And, second, they say it's fitness for duty.

15   Fitness for duty -- and they have meaning under the Education

16   Law.  Section 913 of the Education Law permits medical

17   examinations of teachers and other employees to show that

18   there's a fitness for duty and there's a procedure that has to

19   be followed.  There is also section --

20          THE COURT:  So how is a medical requirement that one

21   get a vaccine not something that is consistent with a

22   definition of fitness for duty?

23          MR. GRAFF:  There are some plaintiffs who have had

24   COVID and have antibodies.  So the antibodies could be the

25   same as the vaccine.

Proceedings                                    28

1          THE COURT:  I am not sure the literature is 100

2    percent in your favor on that.  I think there's a belief and

3    some evidence that antibodies are a residual of having had a

4    prior COVID infection, but those antibodies diminish over time

5    quite rapidly; in fact, more rapidly than a vaccine would.

6          MR. GRAFF:  We also know that the vaccine --

7    whatever the body's reaction to the vaccine, there's also news

8    reports that that's why we have to do a booster.

9          THE COURT:  Right.  Which is why the public health

10   officials are telling everyone to go out and get a booster.

11   This is a fast-mutating virus, from what I have read, in part

12   because when people aren't vaccinated it has an opportunity to

13   mutate so new strains like the Delta strain can develop and

14   become as devastating or as easily transmissible or more

15   transmissible than the prior strains and that's what happens.

16   It's a disease that public health officials are trying very

17   hard to get an understanding of and get control of and try to

18   thwart and one way is this vaccine process.

19          I will ask the City, the DOE -- the DOE, I'm sorry,

20   to comment to the issue whether the vaccine is now a job

21   requirement regardless of whether you are a new hire or a

22   compliant employee.

23          MS. KOLKER:  The Commissioner of Health is a duly

24   authorized state agent in order to promulgate lawful orders to

25   maintain the health and safety of the citizens of the City of

1   New York.  And, here the Commissioner Chokski promulgated what

2   everyone can agree is now a lawful order.  It has been

3   challenged and upheld and counsel indicated that he is not

4   challenging the lawfulness of the Commissioner of Health's

5   order.  That order indicated that no individual may enter a

6   DOE school unless they are vaccinated, again adults, inclusive

7   of DOE employees.

8           That created a job employment for employees similar

9   to a residency requirement.  The city has residency

10  requirements with respect to certain titles and classes of

11  employees.  When an employee falls out of compliance with

12  those job requirements, it does not invoke the 3020(a) or

13  Section 75 process.  Rather, they are ineligible to maintain

14  their employment and that is the case here.

15          Because the plaintiffs are not in compliance with

16  the Commissioner of Health's order, they are ineligible to now

17  maintain DOE employment.  So, yes, it is a job requirement, a

18  lawful one, and one that the case law cited to in DOE's briefs

19  supports that DOE can separate them for falling out of

20  compliance with that lawful job requirement.

21          MS. KOLKER:  Your Honor, if I may?

22          THE COURT:  This is counsel for the UFT.  Yes,

23  ma'am.

24          MS. KOLKER:  As Your Honor noted earlier, if the

25  union disagrees with this particular position that the DOE is

Proceedings                                                    30

1    taking, I -- I think we should also take a step back if we

2    can.  The only thing that has happened so far is that people

3    have been put on leave without pay pending these various

4    deadlines to choose their options and that is what the DOE

5    addressed in its papers.

6              This notion of what happens after December 1st, the

7    DOE hasn't done it yet so I don't believe that it's necessary

8    to address what the due process -- what due process attaches

9    or what the DOE doesn't attach once they take those actions

10   because they haven't taken those actions yet and the union has

11   not had a chance to address it, challenge it or do whatever

12   it's going to do about it.

13             I don't that we need to decide that future issue

14   which hasn't happened yet and if that is something the Court

15   believes it would like to address, the unions would like to do

16   additional briefs on the issue of due process because it is if

17   union's view that the health order actually does not create a

18   job requirement, it does not speak to employment in any way.

19   It creates a requirement that people entering a specific

20   facility be vaccinated or because of the union's challenge in

21   state court, the mandate was amended to include the fact or

22   there is a reasonable accommodation as required under law

23   based on medical exemption or a religious exemption.

24             That right there tells you that it's not a blanket

25   requirement.  Not only that but school buildings that students

Proceedings                                    31

1    attend are not the only facilities of the DOE and it's not the

2    only way that teachers and other staff can work at the DOE.

3    These 100 people that got accommodations, right, are doing

4    something.  They're not vaccinated, they're not entering the

5    school building.  So the union doesn't believe it's a

6    requirement like a residency requirement which literally is a

7    law that prohibits them from employing a person who doesn't

8    meet that requirement.  The health order doesn't say --

9    doesn't say anything about employment.  It doesn't say

10   anything about people taken off pay, given health, not given

11   health benefits, continue them or not.

12         Now, the DOE may take the position that they have a

13   really winning disciplinary claim against these people, a

14   disciplinary charge against them because of the mandate and

15   because of the circumstances but that belief does not deprive

16   the individual members of their right to the charges and the

17   hearing, which is the union's position.

18         Again, I don't actually think because the DOE hasn't

19   taken these actions, and so they haven't been addressed, that

20   it's necessary to determining the current application, which

21   is premised, in large part, about the current removal from pay

22   with continuing benefits and the various options.  I would

23   also just like to clarify one point about the *Kane* case that

24   was mentioned earlier.  The *Kane* case is limited to whether or

25   not the accommodation parameters for religious accommodation

Proceedings                                32

1   within the arbitration award and how it's been functioning

2   meet all of the requirements of federal law.

3          And the question there is not about whether the

4   award is valid or other components of the award are valid;

5   it's whether or not the parameters of the accommodation

6   evaluation should be adjusted in some way and as counsel

7   stated that's still pending but it is limited to that

8   component of the process set up by the award.

9          THE COURT:  All right.  Thank you.  The Second

10  Circuit has this under advisement.  It's a slightly different

11  issue, but it's still related.  I did not understand that the

12  plaintiff was challenging in this case the whole arbitration

13  award and its validity because it wasn't mentioned really in

14  the complaint or memoranda of law.  There wasn't anything

15  really devoted to it.  I think I have heard from the

16  plaintiff's counsel on this issue here at oral argument.

17         I think Mr. Graff -- and let me just say to your

18  hardworking, treasured teachers, administrators and all who

19  work within the DOE are to be respected that the law is not

20  currently favoring your position with regard to likelihood of

21  success on the merits of irreparable harm.  You are seeking

22  injunctive relief on an expedited basis.  There are two issues

23  that draw my attention.

24         One is that there was a delay in seeking relief at

25  all, even in the face of knowing since August that this was

Proceedings                                    33

1   coming.  I understand that certain plaintiffs may have or

2   certain teachers may have had to make decisions and it is a

3   shifting landscape at various times, but really you brought

4   this challenge in the latter half of November, just shy of the

5   November 30th deadline and the December 1st deadlines where

6   other acts would be taken by the DOE against those who remain

7   unvaccinated and who did not invoke any of their remedies

8   under the arbitration award, who did not pursue an appeal and

9   who did not take an option to at least remain on some status

10  with the DOE.

11          The second factor is that the cases that have looked

12  at this so far have upheld the ability of the City's agencies

13  to require a vaccine.  And with regard to the schools,

14  *Maniscalco* and *Kane*, those cases have recognized the critical

15  role that live education plays in the life of and the ability

16  of young people who are within the system to learn and the

17  adverse impacts that COVID brings and risks that COVID brings

18  to students and their families and the teachers who are in

19  those environments.

20          I think also that the Second Circuit has noted that

21  delay generally undercuts the urgency that -- which you bring

22  to this case for injunctive relief.  There was a fairly

23  significant delay and I think the Circuit has also held that

24  the loss of pay and one's position is not the kind of injury

25  that injunctive relief is designed to address because

Proceedings                                                    34

1    ultimately if the plaintiffs prevail, money damages are

2    available.

3            And I'm not saying this lightly because everybody

4    needs a paycheck.  So getting money a year or two or three

5    down the road is not necessarily going to be helpful to people

6    today who are not being paid especially as we approach the

7    holidays and the end of the year.  It's a very difficult time.

8            I think that the position of the DOE and the UFT are

9    at odds.  I believe the UFT is asking me not to decide the

10   issue now.  I don't know what the DOE's view is.  The

11   plaintiff --

12           And I am also welcoming your view on this point.  We

13   don't know what --

14           I think the DOE has been as candid as it can be

15   right now about what will happen on December 1st to that small

16   group of employees who haven't taken particular steps which

17   are still available to them.  But you are probably well aware

18   of the case law that says there is no fundamental

19   Constitutional right to a particular job or related property

20   interest related to their employment.  And the conduct I have

21   to examine is whether there is a pre or post deprivation

22   process.  Whether or not you and your clients agree that the

23   pre-deprivation process is appropriate, there is a process,

24   but --

25           And I respect the fact that some plaintiffs or the

Proceedings                                          35

1   majority of your clients have opted not to avail themselves of

2   it, but I think the DOE has been pretty frank today about what

3   will happen to that group who don't invoke any process at all

4   that come to court seeking injunctive relief.

5            The post depravation process I think -- the union

6   takes the position that, yes, if they become separated they

7   will take action or expect to take action on behalf of their

8   members.

9            Am I correct about that?

10           MS. KOLKER:  Yes, Your Honor.

11           THE COURT:  Now, one thing is we don't have an

12  understanding as to why the plaintiff didn't sue the unions

13  that are representing the administrators and supervisors --

14           MS. KOLKER:  The --

15           THE COURT:  The administrator supervisors and

16  principals for those who entered into the agreement on behalf

17  of the other employees.  DC 37 -- are you alleging that CSA

18  and DC 37 are also colluding or somehow acted unlawfully or

19  unlawfully not accepting grievances?

20           MR. GRAFF:  I have to speak to my clients about

21  that.

22           THE COURT:  Why did you only sue the UFT?  That's my

23  bottom line question when we have three other unions who are

24  representing the various plaintiffs that you represent.

25           MR. GRAFF:  Because a large majority, a super

Proceedings                                        36

1    majority, of my clients are UFT employees and their complaint

2    was with the UFT.

3          THE COURT:  So you can say that the members of the

4    CSA or DC 37 don't have grievance with their unions and the

5    processes and awards that they invoked.

6          MR. GRAFF:  They have a different situation because

7    of the collective bargaining negotiations -- this was an award

8    of the arbitrator that we have challenged and we've discussed

9    today whereas the DC 37 entered into a collective bargaining

10   agreement which was a different procedural implementation of

11   the rules.

12         THE COURT:  They might have gotten there differently

13   but the effect according to the UFT is the same in that the

14   agreement has been altered or amended to include provisions

15   for seeking accommodation and seeking appeals, et cetera and

16   for asking for extended benefits, et cetera.  So it just seems

17   inconsistent or makes it difficult to understand why only one

18   union has been sued here when you represent this broad panoply

19   of clients across the spectrum of teachers, administrators and

20   DC 37 employees.

21         MR. GRAFF:  I understand, Your Honor.

22         THE COURT:  Do you have a response?

23         MR. GRAFF:  There are additional plaintiffs and I

24   would ask to amend the complaint.  Obviously there hasn't been

25   an answer yet and I don't know what the Court's outcome on the

Proceedings                                               37

1   motion.  I anticipate I would amend to add the unions.  I

2   would add those defendants in my amended complaint.  I don't

3   have them today in my complaint.

4            THE COURT:  There's no motion to dismiss right now.

5   We're just here to see whether injunctive relief should be

6   ordered.

7            MR. GRAFF:  Understood.

8            THE COURT:  I do not know whether the defendants

9   would be moving to dismiss, maybe they will someday, but

10  that's not before me right now.

11           Why aren't damages sufficient or, you know,

12  reinstatement sufficient relief and why is injunctive relief

13  required?

14           MR. GRAFF:  Right now there are a number of

15  plaintiffs.  All of them who are on unpaid leave and while

16  money can give them a future right now they need their pay and

17  there are -- our argument is that there's a Constitutional law

18  violation and Constitutional violations, they in themselves

19  are irreparable harm.  And while what they're arguing is that

20  in Second Circuit cases where the plaintiffs have a property

21  interest in their pay, that that's a violation and therefore

22  irreparable harm that's ongoing day after day.

23           THE COURT:  Would you give me an explanation about

24  the delay that has gone on since your clients first became

25  aware that this was required and that there would be

1   consequences?

2           MR. GRAFF:  Apparently -- they have not been off --

3   they've only been off pay since sometime in late to

4   mid-October and there hasn't been an unreasonable delay in

5   processing it.  The group of plaintiffs have been working on

6   other cases and we met with them for the first time last

7   Monday and as soon as we were part of the case we got the

8   affidavits together and put everything together and filed as

9   quickly as we could.  There has been no unreasonable delay.

10           THE COURT:  Well, that's a call for me; isn't it?

11           MR. GRAFF:  Yes, it is.

12           THE COURT:  Unless anybody has something to say I

13  can take it under advisement.  I just got word that Courtroom

14  6-A can serve as an overflow room, but I think knows folks are

15  not -- I'm assuming everybody who is here is in the courtroom.

16  Maybe there are folks outside.

17           We also have word that those who are on chats are

18  chatting a lot about this proceeding.  It may be something

19  that they would want to do offline, because we can read all of

20  their chats.  I don't know what's going on in the chat room.

21  We made the forum available for folks to listen and to

22  understand what's going on.  Just as the folks who are here in

23  the courtroom, they're being respectful and not chatting.

24  Apparently some of the spectators are chatting and we are

25  reading the chats or we're able to read the chats and it's --

Proceedings                                                    39

1    you know, it's not a really a forum for doing that.

2              So, I would say for those who are listening and can

3    hear me, you might want to refrain because this is not an

4    appropriate use of the Court's facilities to be chatting away

5    during a court proceeding.

6              In any event, is there anything else that any of

7    parties want to bring to my attention?

8              MR. GRAFF:  My only concern is that if the Court

9    does not address the December 1st issue my, clients are going

10   to be in limbo.  What's going to happen to them December 1st,

11   whether the Union's argument is going to prevail or the DOE's

12   arguments are going to prevail and I would ask the Court to

13   take that under advisement and not allow the weekend to go by

14   or whenever the Court makes a decision to not allow it to be

15   in limbo and there should be some finality or knowledge of

16   what their risks are.

17             THE COURT:  We're going to do our best.  We have

18   been working as hard as we can through the weekend and into

19   the night.  It might have behooved you, as I said, to have

20   given us more time.  Maybe I shouldn't observe that either,

21   but I am trying to get to the point where we can makes a

22   decision.  I think the union had asked for additional time to

23   brief December 1st.  Do I understand you correctly?

24             MS. KOLKER:  Your Honor, if the Court is going to

25   rule on whether -- if the Court is going to address the

Proceedings                                                40

1    question of whether or not due process should attach, should

2    the DOE seek to terminate people after December 1st based on

3    their argument that this is a qualification and they can just

4    summarily terminate, the union would ask for an opportunity to

5    brief that specific issue on whether due process does attach

6    because we do disagree.  The union is anticipating -- you

7    know, waiting to see what the DOE is going to do and is going

8    to respond accordingly, but since the DOE has not taken

9    actions yet and these general statements that have been made

10   as the Court observed as frankly as they can, but the general

11   statements about their overall intent, we don't know when this

12   is going to happen and what specific form it's going to take.

13           And, so, if it is something the Court is going to

14   decide we would like to brief that specific issue.

15           THE COURT:  Do you want to be heard.

16           MS. O'CONNOR:  Yes, Your Honor.  I agree with

17   Ms. Kolker just as an initial matter that the Court need not

18   reach that question in order to resolve the motion that's

19   before Your Honor right now.  As we started with, plaintiffs

20   do not have standing to challenge this arbitration award nor

21   have they demonstrated any irreparable harm that would flow

22   from that arbitration award.

23           While, along with Your Honor I understand that the

24   deprivation of a paycheck and ultimately of employment is

25   significant, the case law is quite firm that that does not

1   represent irreparable harm including if it means that an

2   individual loses the benefits of employment like pension

3   credits or other credits.  All of those harms as the Second

4   Circuit has indicated over and over, that that is reparable.

5   So, the plaintiffs cannot overcome those initial two hurdles

6   of standing and demonstrating irreparable harm.

7          An irreparable harm is the most important factor

8   when determining an injunction and here, as counsel noted in

9   his papers, with respect to the leave without pay issue it's a

10  mandatory injunction.  We're not preserving the status quo.

11  We're reversing it and it's a higher standard.  I agree with

12  Ms. Kolker that the Court may not reach that December 1 issue

13  in order to determine whether or not plaintiffs have met the

14  threshold for preliminary injunction.  Certainly, I'm sure the

15  unions and the city will be discussing the December 1 deadline

16  in the coming days.

17         THE COURT:  I mean, I would like to think that that

18  the UFT and the DOE can come to some sort of agreement about

19  process and qualifications, et cetera and that you would me

20  apprised.  I agree the plaintiff framed the complaint, the

21  plaintiff presented the issues for my decision and that's what

22  I should be deciding, not something that -- I understand why

23  it's important, I absolutely understand why it's important,

24  but that's not what's before me.

25         MR. GRAFF:  Your Honor, we did --

Proceedings                                    42

1      THE COURT:  And if it is before me, certainly the

2  defendants have made pretty clear that they want an

3  opportunity to respond and brief the processes, the

4  qualification issue, it is.

5      MS. KOLKER:  Your Honor, just in terms of the

6  timing, we submitted our papers, we being the DOE defendant

7  and the UFT defendants basically at the same time.  We were

8  not able to address in our papers this because we submitted

9  the papers simultaneously and so if that is going to be an

10  issue I think that's something we would both like to brief and

11  of course the parties will be in communication with each other

12  and we will keep the Court apprised.

13      THE COURT:  What logically makes sense to me, sir,

14  Mr. Graff, is that I address what's before me.  If there's

15  more and you're expanding the scope of what you need me to

16  weigh in on, you will do that and the parties will be given a

17  briefing opportunity so that I can be fully informed because

18  it may be that there is going to be discussion now.  I didn't

19  give anyone a lot of time based on what I was given at 5

20  o'clock late last week, but, you know, I thought it was

21  important to at least have this and address the issues.  I

22  expect that I will be able to issue a decision very soon on

23  your motion as it currently is framed.

24      MR. GRAFF:  One of the requested reliefs in the

25  order to show cause is a request to stay the December 1st

1    deadline.

2         THE COURT:  Right, but what we don't know, given the

3    defendant's various views of this is, is there going to be

4    irreparable harm.  Is there a due process, is this process as

5    of December 1 deficient in some way?  I think it would be a

6    good idea to hear more.  I know you are taking very different

7    positions and that did trouble me because the DOE is going to

8    do what it's going to do and then the union is going to react.

9    From what I understand, you are planning to separate those

10   folks on December 1 who fall into those categories that you

11   described is that correct and get notices?

12        MS. O'CONNOR:  It may not be on December 1, Your

13   Honor.  I can't give a date on which that will happen but that

14   is the intention that on a date after December 1 that yes they

15   will be provided notice that they are or will be separated.

16        THE COURT:  But the language "seek to separate"

17   which I think you relied on that "seek to" language, what does

18   that mean?  Because it doesn't sound like what you're

19   describing is seeking, i.e., you know, there's some process

20   involved.  It's just here is your notice goodbye.  Is that

21   what you are thinking?

22        MS. O'CONNOR:  The language of the order provides

23   that DOE unilaterally --

24        THE COURT:  Seeks.

25        MS. O'CONNOR:  Seeks to separate.  And in DOE's

Proceedings                                        44

1  estimation that equates to providing notice that they are or

2  will be separated and provided that to the employee that there

3  is no other process owed.

4          THE COURT:  Well, I think for December 1 to really

5  be fully understood, I think you have to -- both parties have

6  to really address how this becomes a job qualification if, as

7  the UFT points out, the DOE is relying on the Department of

8  Health and the Department of Health doesn't describe the

9  vaccine mandate as a job qualification for the City of New

10 York for current employees.

11         MS. O'CONNOR:  And that may be an issue as to the

12 merits of plaintiff's due process arguments but that's not a

13 question that needs to be reached in order to resolve the

14 instant application for a preliminary or mandatory injunction.

15 That's the relief that plaintiffs are seeking.  They are

16 saying you have violated our due process rights, but that's a

17 merits question.  And throughout discovery and throughout a

18 fully briefed set of papers, the Court can make a decision on

19 that.

20         But with respect to the instant application, it's

21 clear that plaintiffs have not satisfied the hefty burden that

22 they need to in order to receive the relief that they're

23 seeking in this instant motion and I will just -- I will leave

24 it there.

25         THE COURT:  All right.  But you recognize he did ask

1  for injunction against the 12/1 seek to separate part of the

2  award; correct?

3          MS. O'CONNOR:  Correct, Your Honor, and the harm

4  that flows from that is separation of employment which is not

5  irreparable.

6          THE COURT:  Okay, thank you.  I am going to address

7  the motion as you presented it.  I think that's logically the

8  best way to proceed.  I don't control what you bring to me.  I

9  just know what I decide and if you are going to pursue or seek

10  relief specifically, it seems to me the defendants want to be

11  heard on the December 1 process.  Have you said everything you

12  want to say on the DOE's first process that you've got a

13  little better understanding of what the DOE intends?

14          MR. GRAFF:  Yes, Your Honor.

15          THE COURT:  You have said everything, you don't need

16  to make further submissions.

17          MR. GRAFF:  I have said enough today.  I would like

18  a chance to submit a response to what the DOE wants to do.

19          THE COURT:  I suggest you submit your papers by a

20  date certain.  I would really like to not to have to work over

21  Thanksgiving but I will if I have to, but really I would

22  rather not.  I don't think you would either.  But let's set up

23  a time frame for you to -- the plaintiff to submit more on

24  December 1st and then we will hear from defendants and

25  hopefully the defense will speak to each other in the

Proceedings                    46

1    meantime.  So, Mr. Graff what are you proposing?

2             MR. GRAFF:  Your Honor, my son's Bar Mitzvah is

3    Saturday.

4             THE COURT:  Congratulations.  The timing couldn't be

5    worse.  I think your clients are still chatting away, so

6    whatever it's worth -- maybe they don't hear me or they don't

7    care, but we will pay attention to it.

8             MR. GRAFF:  Your Honor, how much time do the

9    defendants need to respond?

10            THE COURT:  Let's start with you.  I don't want to

11   start with a response.

12            MR. GRAFF:  Your Honor, I'm starting a trial on

13   December 1st.  I guess the 30th.

14            THE COURT:  So you will supplement your briefing

15   challenging the December 1 action; is that right?  I don't

16   want to frame your issue for you.  I want you to tell me what

17   you're doing on November 30th.

18            MR. GRAFF:  I will be submitting a brief with

19   respect to the job requirement issue and whether or not they

20   can be separated without the processes.

21            THE COURT:  Okay.  How much time do the defendant's

22   need?

23            MS. O'CONNOR:  Your Honor, I'm concerned about the

24   timing of submitting additional briefing.  I'm assuming that

25   this is still briefing on deciding the preliminary injunction

Proceedings                                    47

1    motion?

2         THE COURT:  No, no.  I'm going to decide the

3    preliminary injunction motion as it currently has been

4    presented to me as soon as I can and it will be before

5    Thanksgiving.

6         MS. O'CONNOR:  I see Your Honor.  Thank you.

7         THE COURT:  This is the December 1st, what happens

8    when the DOE unilaterally seeks to separate.

9         MS. O'CONNOR:  Yes, Your Honor.  Sorry, I

10   understand.  I was confused for a minute.

11        THE COURT:  They are submitting November 30th.

12        MS. O'CONNOR:  I am just thinking about whether or

13   not since we did discuss a motion to dismiss, if it may be

14   more efficient to brief this issue in connection with a motion

15   to dismiss if we're going to brief it once.  I had not

16   conferred with counsel for UFT, but as you can see from the

17   DOE's papers we believe there's a very strong likelihood of

18   success for an anticipated motion to dismiss.  So I am just

19   wondering if we're going to supplement the briefing in

20   connection with the due process argument, what process if any

21   is owed pre or post December 1 if that may be accomplished in

22   connection with a motion to dismiss.

23        THE COURT:  Well, this is the thing with regard to

24   summary judgment motion to dismiss.  I think it's more

25   efficient honestly, if the plaintiff is going to be amending,

1    that they do so before you engage in more motion practice.

2    That way I can decide the best iteration of the plaintiff's

3    claims without, you know, giving another amendment to the

4    complaint and then being back where we started.

5         I think maybe the plaintiffs -- I'm not trying to

6    speak for you at all, but I think they're interest is on

7    December 1 and some of them want to know -- teasing out what

8    the DOE is going to do more clearly, the authority upon which

9    they rely, hearing from the union as to why they don't agree

10   with you in terms of your qualification argument.  And, so, I

11   think we can segregate those two issues and then you can

12   always move to dismiss, but I would first want to give the

13   plaintiff an opportunity to amend the pleading on behalf of

14   the plaintiffs.  Some of them may drop out, right, so that

15   would be the best way forward, I think.

16        MS. O'CONNOR:  Your Honor, would the thought be

17   plaintiffs would submit an amended pleading by November 30th?

18        THE COURT:  No, no.  They just want to brief

19   specifically the issue whether the December 1st processes

20   violate due process or lack of processes and also whether or

21   not the DOE can appropriately rely on the vaccine mandate as a

22   qualification of employment.  If we could have a week to

23   respond?  So December 7th?

24        Is that sufficient for the union too?

25        MS. KOLKER:  The week is sufficient for the union.

1   We want to note that as the Court observed earlier only the

2   UFT has been named here and the other unions have not been

3   involved and the issue of due process is different process

4   that is due to have the different work forces that are covered

5   under other unions --

6          THE COURT:  I am sorry.  But the processes are the

7   same.

8          MS. KOLKER:  They differ across the unions.  There

9   are different contractual provisions so the week is fine for

10  us.  We can get the papers done on that schedule.  We just

11  wanted to remind the Court that only one of the unions is

12  represented today.

13         THE COURT:  But that was the plaintiff's choice.  I

14  don't know why they decided that.  I don't know why.  Maybe

15  they're not as concerned about what their unions did as the

16  UFT members are.

17         Mr. Klinger?

18         MR. KLINGER:  Your Honor, we wanted to clarify and

19  it may be that we will work with the Corp. Counsel.  The other

20  unions, they are similar to the UFT DC 37 which as counsel

21  said negotiated their own agreement.  They are under a

22  different statutory mechanism.  What we would like to do with

23  the Court's permission is to apprise the other unions that are

24  impacted as part of the DOE workforce that this issue is being

25  considered by the Court and then let those unions decide if

Proceedings                                                    50

1    there's something they want to do or not.

2              THE COURT:  Like intervene?

3              MR. KLINGER:  Precisely, Your Honor.

4              THE COURT:  Unless the plaintiff is going to say

5    here right now that they have no other beef with the other

6    unions.  We kept reading, and I didn't do a word-for-word

7    comparison, but there was a general agreement that these

8    mirrored one another and one flowed from the other and they're

9    pretty much similar, but I understand that the statutory

10   scheme governing DC 37 is different than the Education Law.

11             MR. KLINGER:  Yes, Your Honor.

12             MR. GRAFF:  I'm not going to take the position right

13   now that we don't have any issues with them.  I don't want to

14   waive that at this time and we would amend when appropriate

15   and I would join in the UFT's position that they inform the

16   other unions if they want to join in or submit or intervene in

17   some way with the Court's permission.

18             THE COURT:  The problem I am having is that you

19   don't really allege anything against those unions why in the

20   heck would they want to intervene?  Their conduct is not being

21   challenged in your complaint.  Why would they say sue me or --

22   I think it might be more efficient in the end, but it seems to

23   me that if I find that the mandate is a job qualification or

24   isn't or if I find that the post separation or the processes

25   leading up to the separation are consistent with due process

Proceedings                                    51

1   or they're not, it will affect all of those employees.

2         So I'm not really sure that -- I just wanted to

3   understand for my own sake what your strategy was and whether

4   there was a reason for what you did but it sounds like there

5   wasn't.

6         MR. GRAFF:  There wasn't.

7         THE COURT:  There wasn't?

8         MR. GRAFF:  There was not.

9         THE COURT:  Can both the DOE and the UFT submit a

10  response to the plaintiff's further supplemental briefing

11  regarding December 1?  Can they do that by December 7th both

12  defendants?

13        MS. O'CONNOR:  Yes, Your Honor.

14        MS. KOLKER:  Yes, Your Honor.

15        THE COURT:  Okay.  And, again, would you please

16  deliver two courtesy copies to my chambers because trying to

17  print and collate of these papers is difficult.  Is there

18  anything else I need to address?

19        MR. GRAFF:  No, Your Honor.  Thank you for your

20  time.

21        THE COURT:  Okay.  Thank you, everybody.

22        MS. O'CONNOR:  Thank you, Your Honor.

23        MS. KOLKER:  Thank you, Your Honor.

24        (Matter adjourned.)

25

## All Word Index

## 1

**1** [16] - 7:25, 22:25, 23:16, 24:11, 41:12, 41:15, 43:5, 43:10, 43:12, 43:14, 44:4, 45:11, 46:15, 47:21, 48:7, 51:11
**100** [5] - 1:16, 18:21, 18:24, 28:1, 31:3
**10007** [1] - 1:16
**10038** [1] - 1:19
**11201** [1] - 1:23
**11514** [1] - 1:14
**12/1** [1] - 45:1
**12:00** [1] - 1:7
**15th** [1] - 9:3, 9:4, 10:24
**176** [1] - 6:12
**17th** [1] - 9:5
**180** [1] - 1:19
**1964** [1] - 9:15
**1st** [25] - 8:1, 10:20, 15:24, 16:3, 16:7, 16:8, 16:16, 17:5, 17:8, 17:10, 17:14, 17:17, 23:3, 30:6, 33:5, 34:15, 39:9, 39:10, 39:23, 40:2, 42:25, 45:24, 46:13, 47:7, 48:19

## 2

**2** [3] - 1:20, 2:6, 20:13
**2-104** [1] - 1:16
**20** [2] - 18:20, 18:24
**2021** [1] - 1:7
**2022** [5] - 16:13, 23:12, 24:15, 25:1, 25:7
**209** [4] - 5:15, 20:17, 21:4
**209.3(e** [1] - 5:22
**209.3(f)** [2] - 5:22, 6:2
**20cv6387** [1] - 2:4
**21-2678-CV** [1] - 9:10
**21CV638** [1] - 1:3
**22** [1] - 6:12
**225** [1] - 1:23
**23** [1] - 1:7
**24** [1] - 7:7
**25th** [1] - 8:15

## 3

**3020** [1] - 11:23
**3020(a** [6] - 8:1, 17:1, 23:18, 23:19, 24:7, 29:12
**30th** [7] - 25:6, 26:21, 33:5, 46:13, 46:17, 47:11, 48:17
**37** [10] - 4:20, 19:21, 19:25, 35:17, 35:18, 36:4, 36:9, 36:20, 49:20, 50:10
**385** [1] - 1:13
**3d** [1] - 20:13

## 4

**44** [1] - 4:13

## 4th
**4th** [1] - 4:15

## 5

**5** [2] - 7:6, 42:19
**513** [1] - 20:13
**5th** [2] - 16:13, 25:7

## 6

**6-A** [1] - 38:14

## 7

**75** [6] - 15:12, 15:20, 23:20, 24:7, 27:3, 29:13
**7th** [2] - 48:23, 51:11

## 8

**80** [2] - 11:6, 26:11

## 9

**913** [1] - 27:16

## A

**ability** [4] - 16:12, 19:16, 33:12, 33:15
**able** [6] - 8:12, 13:16, 24:12, 38:25, 42:8, 42:22
**absolutely** [2] - 4:2, 41:23
**accept** [1] - 20:19
**accepting** [1] - 35:19
**accommodate** [1] - 3:12
**accommodated** [1] - 18:20
**accommodation** [15] - 16:6, 16:10, 17:20, 18:4, 18:7, 18:13, 18:21, 23:7, 24:13, 24:23, 30:22, 31:25, 32:5, 36:15
**accommodations** [4] - 9:19, 12:24, 13:14, 31:13
**accomodation** [1] - 24:25
**accomplished** [1] - 47:21
**according** [1] - 36:13
**accordingly** [2] - 17:15, 40:8
**account** [1] - 13:14
**accurate** [3] - 11:7, 18:4, 19:4
**across-the-table** [1] - 22:5
**Act** [1] - 9:15
**acted** [2] - 6:7, 35:18
**action** [5] - 8:10, 23:6, 35:7, 46:15
**actions** [6] - 16:1, 16:18, 30:9, 30:10, 31:19, 40:9
**actively** [1] - 26:14
**acts** [1] - 33:6
**add** [2] - 37:1, 37:2
**additional** [4] - 30:16, 36:23, 39:22, 46:24

**additionally** [1] - 25:9
**address** [14] - 4:17, 19:12, 30:8, 30:11, 30:15, 33:25, 39:9, 39:25, 42:8, 42:14, 42:21, 44:6, 45:6, 51:18
**addressed** [4] - 10:3, 15:18, 30:5, 31:19
**adhere** [1] - 9:14
**adjourned** [1] - 51:24
**adjusted** [1] - 32:6
**administers** [1] - 14:3
**administrator** [1] - 35:15
**administrators** [5] - 3:22, 4:20, 32:18, 35:13, 36:19
**adopted** [1] - 27:10
**adults** [1] - 29:6
**advantage** [1] - 16:2
**adverse** [1] - 33:17
**advisement** [3] - 32:10, 38:13, 39:13
**affect** [1] - 51:1
**affected** [1] - 23:19
**affidavits** [1] - 38:8
**afforded** [1] - 23:14
**AFL** [2] - 1:21, 2:6
**AFL-CIO** [2] - 1:21, 2:6
**afternoon** [5] - 2:9, 2:13, 2:16, 2:17, 3:1
**agencies** [1] - 33:12
**agent** [1] - 28:24
**agree** [14] - 14:17, 19:12, 20:20, 20:24, 21:1, 29:2, 34:22, 40:16, 41:11, 41:20, 48:9
**agreed** [5] - 5:20, 14:8, 14:23, 22:13, 22:17
**agreement** [36] - 4:18, 5:1, 5:3, 5:11, 5:25, 6:13, 6:20, 8:14, 8:19, 12:11, 12:13, 14:6, 14:15, 15:6, 15:8, 15:9, 15:16, 19:22, 19:25, 20:15, 20:21, 21:6, 21:11, 21:17, 21:23, 21:25, 22:8, 22:12, 22:22, 35:16, 36:10, 36:14, 41:18, 49:21, 50:7
**agreements** [7] - 5:3, 6:10, 6:11, 7:11, 7:16, 15:2, 21:8
**ahead** [1] - 8:18
**Aided** [1] - 1:24
**AL** [1] - 1:7
**Alan** [2] - 3:3, 22:14
**ALAN** [1] - 1:20
**allege** [1] - 50:19
**alleged** [1] - 10:13
**alleging** [1] - 35:17
**allow** [2] - 39:13, 39:14
**altered** [2] - 21:18, 36:14
**amend** [4] - 36:24, 37:1, 48:13, 50:14
**amended** [4] - 30:21, 36:14, 37:2, 48:17
**amending** [1] - 47:25
**amendment** [1] - 48:3
**American** [2] - 1:20, 2:6
**andrea** [1] - 2:13

## All Word Index

Andrea [1] - 19:2
ANDREA [1] - 1:17
answer [3] - 24:17, 26:3, 36:25
antibodies [4] - 27:24, 28:3, 28:4
anticipate [1] - 37:1
anticipated [1] - 47:18
anticipating [1] - 40:6
apart [1] - 6:8
apologies [1] - 3:16
appeal [4] - 16:11, 23:9, 24:14, 33:8
appealed [1] - 23:8
appeals [2] - 17:22, 36:15
appearance [1] - 2:12
appearances [1] - 2:8
applicable [2] - 7:18, 17:13
application [4] - 16:10, 31:20, 44:14, 44:20
applied [1] - 23:6
appointed [1] - 22:7
appoints [1] - 5:17
appreciate [1] - 4:7
appreciated [1] - 3:7
apprise [1] - 49:23
apprised [2] - 41:20, 42:12
approach [1] - 34:6
approaching [2] - 14:20, 14:21
appropriate [4] - 12:4, 34:23, 39:4, 50:14
appropriately [1] - 48:21
arbitrary [1] - 8:20
arbitration [52] - 4:18, 4:25, 5:11, 6:1, 6:9, 8:8, 8:22, 8:23, 8:24, 9:18, 12:14, 14:8, 14:9, 14:13, 14:24, 15:1, 15:4, 15:11, 15:19, 15:25, 16:3, 16:5, 16:22, 16:23, 17:11, 19:14, 19:17, 19:20, 19:21, 19:23, 20:19, 20:20, 20:21, 20:25, 21:1, 21:3, 21:10, 21:16, 21:21, 22:9, 22:12, 22:17, 22:19, 22:22, 23:11, 23:15, 32:1, 32:12, 33:8, 40:20, 40:22
arbitrations [1] - 12:10
arbitrator [11] - 6:11, 7:17, 7:20, 12:14, 14:18, 17:22, 20:22, 21:11, 21:22, 21:24, 36:8
arguing [1] - 37:19
argument [13] - 12:3, 18:19, 19:7, 19:8, 20:6, 21:15, 21:19, 32:16, 37:17, 39:11, 40:3, 47:20, 48:10
arguments [2] - 39:12, 44:12
arising [1] - 5:4
arrange [1] - 3:12
arranged [1] - 3:10
Article [2] - 6:12, 15:20
assigned [1] - 14:5
assist [1] - 14:15
assuming [2] - 38:15, 46:24
attach [3] - 30:9, 40:1, 40:5
attaches [1] - 30:8
attempting [1] - 22:13

attend [1] - 31:1
attention [3] - 32:23, 39:7, 46:7
August [2] - 8:12, 32:25
AUSTIN [1] - 1:14
Austin [1] - 2:9
authority [3] - 8:8, 21:12, 48:8
authorized [2] - 23:1, 28:24
avail [4] - 11:16, 15:15, 25:9, 35:1
available [4] - 16:22, 17:13, 23:10, 34:2, 34:17, 38:21
availed [2] - 23:9, 23:14
availing [1] - 26:15
avenue [1] - 17:8
avenues [1] - 16:23
award [38] - 4:25, 5:11, 8:8, 9:18, 14:9, 14:19, 14:24, 15:5, 15:6, 15:12, 15:19, 15:25, 16:3, 16:15, 16:22, 16:23, 17:12, 17:17, 19:14, 20:14, 20:16, 20:22, 23:11, 23:15, 24:2, 26:16, 32:1, 32:4, 32:8, 32:13, 33:8, 36:7, 40:20, 40:22, 45:2
awards [1] - 36:5
aware [3] - 13:7, 34:17, 37:25

## B

Bar [1] - 46:2
bargain [1] - 21:8
bargaining [27] - 4:24, 5:3, 5:14, 5:16, 5:25, 6:1, 6:10, 6:13, 7:16, 12:11, 12:13, 12:15, 14:1, 15:6, 15:8, 15:9, 15:16, 19:23, 20:15, 21:6, 21:11, 21:23, 22:2, 22:3, 22:6, 36:7, 36:9
based [9] - 11:5, 11:20, 13:1, 18:13, 18:14, 23:7, 30:23, 40:2, 42:19
basic [1] - 7:13
basis [4] - 8:11, 9:24, 12:5, 32:22
became [1] - 37:24
become [6] - 4:9, 13:22, 15:8, 16:6, 28:14, 35:6
becomes [2] - 15:5, 44:6
beef [1] - 50:5
BEFORE [1] - 1:10
beginning [2] - 14:20, 23:25
behalf [4] - 2:7, 35:7, 35:16, 48:13
behavior [1] - 3:21
behooved [2] - 7:9, 39:19
belief [2] - 28:2, 31:15
beliefs [1] - 9:21
believes [2] - 17:12, 30:15
belong [1] - 19:19
benefits [12] - 23:12, 24:14, 24:25, 25:8, 25:18, 25:20, 26:7, 31:11, 31:22, 36:16, 41:2
best [4] - 39:17, 45:8, 48:2, 48:15
better [3] - 7:10, 24:22, 45:13
between [4] - 4:19, 12:9, 14:1, 14:7, 15:17, 15:19, 22:8, 24:1
beyond [1] - 13:13

bind [1] - 6:21
binding [6] - 14:18, 14:24, 15:9, 19:15, 22:9, 26:16
binds [1] - 5:1
bit [2] - 7:10, 12:9
blanket [1] - 30:24
Board [4] - 5:17, 14:3, 20:13, 20:19
body [2] - 6:6, 6:7
body's [1] - 28:7
booster [2] - 28:8, 28:10
bottom [1] - 35:23
bounds [1] - 6:12
breakneck [1] - 14:5
brief [7] - 39:23, 40:5, 40:14, 42:3, 42:10, 46:18, 47:14, 47:15, 48:18
briefed [3] - 6:17, 13:3, 44:18
briefing [6] - 42:17, 46:14, 46:24, 46:25, 47:19, 51:10
briefs [3] - 10:7, 29:18, 30:16
bring [4] - 4:23, 33:21, 39:7, 45:8
brings [2] - 33:17
broad [1] - 36:18
Broecker [1] - 2:4
BROECKER [1] - 1:3
Brooklyn [1] - 1:5
brought [1] - 33:3
building [1] - 31:5
buildings [2] - 13:15, 30:25
burden [1] - 44:21
BY [2] - 1:14, 1:17
BY:DINA [1] - 1:20

## C

Cadman [1] - 1:23
calm [1] - 3:19
candid [1] - 34:14
cannot [9] - 4:9, 5:23, 6:3, 13:14, 14:17, 20:18, 21:6, 21:12, 41:5
Caproni [1] - 19:4
Caproni's [1] - 18:19
care [1] - 46:7
Carle [1] - 1:14
case [4] - 4:5, 4:22, 4:24, 9:8, 9:23, 10:6, 10:8, 13:2, 17:6, 19:5, 19:22, 20:11, 29:14, 29:18, 31:23, 31:24, 32:12, 33:22, 34:18, 38:7, 40:25
cases [5] - 10:6, 33:11, 33:14, 37:20, 38:6
catalyst [1] - 11:15
categories [1] - 43:10
CAUSE [2] - 1:10
CBA [1] - 21:18
certain [3] - 3:24, 11:17, 17:2, 29:10, 33:1, 33:2, 45:20
certainly [4] - 3:6, 3:25, 41:14, 42:1
cetera [4] - 16:6, 36:15, 36:16, 41:19
challenge [11] - 8:10, 9:24, 13:11, 15:15, 15:18, 19:17, 19:25, 30:11,

30:20, 33:4, 40:20
**challenged** [5] - 9:17, 12:20, 29:3, 36:8, 50:21
**challenges** [1] - 13:7
**challenging** [4] - 15:11, 29:4, 32:12, 46:15
**chambers** [1] - 51:16
**chance** [2] - 30:11, 45:18
**change** [2] - 7:17, 21:12
**changed** [1] - 16:25
**charge** [1] - 31:14
**charges** [2] - 17:1, 31:16
**chat** [1] - 38:20
**chats** [4] - 38:17, 38:20, 38:25
**chatting** [5] - 38:18, 38:23, 38:24, 39:4, 46:5
**children** [1] - 13:15
**choice** [1] - 49:13
**choices** [1] - 16:14
**Chokski** [1] - 29:1
**choose** [1] - 30:4
**choosing** [1] - 18:10
**chose** [3] - 5:21, 13:21, 13:23
**chosen** [4] - 4:24, 5:3, 12:4, 16:17
**Church** [1] - 1:16
**CIO** [2] - 1:21, 2:6
**Circuit** [9] - 8:20, 10:6, 10:8, 19:6, 32:10, 33:20, 33:23, 37:20, 41:4
**circumstances** [3] - 9:23, 22:18, 31:15
**cite** [3] - 10:5, 20:11, 20:13
**cited** [2] - 10:6, 29:18
**citing** [1] - 19:9
**citizens** [1] - 28:25
**city** [2] - 29:9, 41:15
**CITY** [1] - 1:7, 1:15
**City** [14] - 1:16, 2:5, 2:14, 5:13, 6:4, 8:3, 9:16, 14:4, 15:17, 27:7, 27:8, 28:19, 28:25, 44:9
**City's** [2] - 12:18, 27:3, 33:12
**Citywide** [1] - 10:9
**civil** [4] - 5:23, 20:16, 21:4, 21:7
**Civil** [4] - 5:14, 5:21, 9:15, 23:20
**CIVIL** [1] - 1:10
**claim** [1] - 31:13
**claims** [2] - 9:25, 48:3
**clarify** [2] - 31:23, 49:18
**clarity** [1] - 14:22
**classes** [1] - 29:10
**classic** [1] - 19:23
**classrooms** [1] - 3:24
**clear** [3] - 6:18, 42:2, 44:21
**clearly** [4] - 9:12, 16:3, 48:8
**clients** [18] - 4:14, 4:23, 6:21, 8:14, 10:4, 10:18, 10:25, 18:3, 20:8, 26:10, 34:22, 35:1, 35:20, 36:1, 36:19, 37:24, 39:9, 46:5
**clients'** [1] - 18:22
**coextensively** [1] - 21:6
**collate** [1] - 51:17

**collect** [1] - 16:1
**collective** [19] - 5:2, 5:16, 6:10, 6:13, 7:16, 12:11, 12:13, 12:15, 15:5, 15:8, 15:16, 20:15, 21:6, 21:11, 21:23, 22:2, 36:7, 36:9
**colluding** [1] - 35:18
**coming** [2] - 33:1, 41:16
**comment** [1] - 28:20
**comments** [1] - 3:22
**Commissioner** [8] - 23:23, 25:12, 25:14, 25:25, 28:23, 29:1, 29:4, 29:16
**communicated** [1] - 17:7
**communication** [1] - 42:11
**comparison** [1] - 50:7
**compel** [1] - 20:19
**competency** [1] - 11:22
**complaint** [11] - 10:12, 23:22, 26:13, 32:14, 36:1, 36:24, 37:2, 37:3, 41:20, 48:4, 50:21
**compliance** [9] - 24:8, 25:11, 25:14, 25:16, 25:25, 26:12, 29:11, 29:15, 29:20
**compliant** [1] - 28:22
**complied** [1] - 16:17
**complies** [1] - 24:6
**comply** [2] - 17:5, 20:8
**component** [1] - 32:8
**components** [1] - 32:4
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**concern** [2] - 4:23, 39:8
**concerned** [2] - 46:23, 49:15
**concerns** [1] - 13:21
**conclusion** [1] - 11:15
**conduct** [4] - 3:24, 34:20, 50:20
**conferred** [1] - 47:16
**conflict** [4] - 7:24, 8:5, 8:6, 15:7
**confused** [1] - 47:10
**confusion** [1] - 12:9
**congratulations** [1] - 46:4
**connection** [5] - 12:14, 19:8, 47:14, 47:20, 47:22
**consequences** [1] - 38:1
**consideration** [2] - 9:14, 9:17
**considered** [2] - 9:20, 49:25
**consistent** [2] - 27:21, 50:25
**constitutional** [2] - 11:12, 11:13
**Constitutional** [7] - 7:21, 10:5, 10:19, 10:21, 34:19, 37:17, 37:18
**constrained** [1] - 21:22
**consulting** [1] - 6:11
**contempt** [1] - 4:6
**continue** [3] - 20:1, 24:25, 31:11
**continuing** [1] - 31:22
**contractual** [7] - 12:10, 12:15, 17:2, 21:18, 21:21, 22:4, 49:9
**control** [2] - 28:17, 45:8
**copies** [1] - 51:16
**Corp** [1] - 49:19

**correct** [9] - 12:21, 20:6, 25:2, 25:3, 25:4, 35:9, 43:11, 45:2, 45:3
**correcting** [1] - 13:1
**correctly** [3] - 21:19, 25:5, 39:23
**counsel** [13] - 2:7, 2:11, 3:8, 12:21, 19:5, 19:8, 29:3, 29:22, 32:6, 32:16, 41:8, 47:16, 49:20
**Counsel** [1] - 49:19
**Country** [1] - 1:13
**County** [1] - 13:4
**course** [2] - 5:1, 42:11
**Court** [17] - 1:22, 13:4, 30:14, 39:8, 39:12, 39:14, 39:24, 39:25, 40:10, 40:13, 40:17, 41:12, 42:12, 44:18, 49:1, 49:11, 49:25
**COURT** [92] - 1:1, 2:16, 2:19, 2:22, 3:1, 3:5, 3:17, 5:8, 6:14, 6:17, 7:2, 8:5, 8:18, 8:24, 9:4, 9:8, 9:11, 9:22, 10:23, 11:3, 11:5, 11:9, 11:14, 11:20, 12:2, 15:14, 16:19, 17:19, 17:25, 18:2, 18:6, 18:12, 18:18, 20:3, 20:5, 20:24, 21:5, 21:15, 22:24, 24:12, 24:21, 25:3, 25:17, 26:9, 27:1, 27:20, 28:1, 28:9, 29:22, 32:9, 35:11, 35:15, 35:22, 36:3, 36:12, 36:22, 37:4, 37:8, 37:23, 38:10, 38:12, 39:17, 40:15, 41:17, 42:1, 42:13, 43:2, 43:16, 43:24, 44:4, 44:25, 45:6, 45:15, 45:19, 46:4, 46:10, 46:14, 46:21, 47:2, 47:7, 47:11, 47:23, 48:18, 49:6, 49:13, 50:2, 50:4, 50:18, 51:7, 51:9, 51:15, 51:21
**court** [20] - 2:1, 3:14, 3:20, 3:25, 4:3, 4:6, 6:25, 10:15, 11:10, 12:21, 12:22, 13:5, 13:10, 15:12, 15:19, 19:11, 26:20, 30:21, 35:4, 39:5
**Court's** [4] - 36:25, 39:4, 49:23, 50:17
**courtesy** [1] - 51:16
**courthouse** [1] - 4:10
**Courthouse** [1] - 1:5
**courtroom** [4] - 3:7, 4:9, 38:15, 38:23
**COURTROOM** [2] - 2:3, 2:11
**Courtroom** [1] - 38:13
**cover** [1] - 4:8
**coverage** [1] - 16:13
**covered** [5] - 19:24, 23:18, 23:20, 24:13, 49:4
**COVID** [4] - 27:24, 28:4, 33:17
**CPLR** [2] - 15:12, 15:20
**create** [1] - 30:17
**created** [1] - 29:8
**creates** [1] - 30:19
**credit** [2] - 26:4, 26:5
**credits** [2] - 41:3
**criteria** [1] - 9:17
**critical** [1] - 33:14
**CSA** [3] - 19:18, 35:17, 36:4
**current** [4] - 27:13, 31:20, 31:21, 44:10
**cut** [1] - 21:13

## D

**daily** [1] - 24:20
**damages** [2] - 34:1, 37:11
**date** [6] - 10:11, 11:17, 13:13, 43:13, 43:14, 45:20
**days** [4] - 4:13, 8:21, 10:20, 41:16
**DC** [10] - 4:20, 19:21, 19:25, 35:17, 35:18, 36:4, 36:9, 36:20, 49:20, 50:10
**deadline** [5] - 14:21, 26:21, 33:5, 41:15, 43:1
**deadlines** [2] - 30:4, 33:5
**deal** [3] - 5:18, 5:19, 19:9
**DeBlasio** [1] - 9:9
**December** [43] - 7:25, 8:1, 10:20, 15:24, 16:2, 16:7, 16:8, 16:15, 17:5, 17:8, 17:10, 17:14, 17:17, 22:25, 23:3, 23:16, 24:11, 30:6, 33:5, 34:15, 39:9, 39:10, 39:23, 40:2, 41:12, 41:15, 42:25, 43:5, 43:10, 43:12, 43:14, 44:4, 45:11, 45:24, 46:13, 46:15, 47:7, 47:21, 48:7, 48:19, 48:23, 51:11
**decide** [7] - 30:13, 34:9, 40:14, 45:9, 47:2, 48:2, 49:25
**decided** [5] - 10:15, 10:16, 11:9, 13:5, 49:14
**decides** [1] - 17:14
**deciding** [2] - 41:22, 46:25
**decision** [12] - 5:23, 6:2, 6:6, 9:24, 16:15, 19:10, 22:21, 39:14, 39:22, 41:21, 42:22, 44:18
**decisions** [1] - 33:2
**declaration** [3] - 14:2, 22:6, 22:14
**deemed** [2] - 4:6, 11:17
**default** [1] - 14:16
**Defendant** [3] - 1:8, 1:15, 1:18
**defendant** [2] - 27:5, 42:6
**defendant's** [2] - 43:3, 46:21
**defendants** [10] - 7:2, 7:7, 37:2, 37:8, 42:2, 42:7, 45:10, 45:24, 46:9, 51:12
**defense** [3] - 11:5, 12:6, 45:25
**deficient** [1] - 43:5
**definition** [1] - 27:22
**delay** [7] - 10:21, 32:24, 33:21, 33:23, 37:24, 38:4, 38:9
**deliver** [1] - 51:16
**Delta** [1] - 28:13
**demonstrated** [1] - 40:21
**demonstrating** [1] - 41:6
**denied** [1] - 18:16
**DEPARTMENT** [2] - 1:7, 1:15
**Department** [20] - 1:16, 2:5, 2:14, 2:18, 2:20, 5:13, 6:4, 6:9, 8:3, 11:15, 12:17, 12:24, 14:22, 26:1, 27:7, 27:8, 27:9, 27:12, 44:7, 44:8
**depravation** [1] - 35:5
**deprivation** [3] - 34:21, 34:23, 40:24
**deprive** [1] - 31:15
**DEPUTY** [2] - 2:3, 2:11
**describe** [1] - 44:8
**described** [1] - 43:11
**describing** [1] - 43:19
**designed** [2] - 14:14, 33:25
**determination** [1] - 19:7
**determine** [3] - 24:12, 24:18, 41:13
**determining** [2] - 31:20, 41:8
**devastating** [1] - 28:14
**develop** [1] - 28:13
**devoted** [1] - 32:15
**differ** [1] - 49:8
**difference** [1] - 24:1
**different** [16] - 10:16, 14:18, 16:25, 18:20, 18:24, 20:17, 23:10, 32:10, 36:6, 36:10, 43:6, 49:3, 49:4, 49:9, 49:22, 50:10
**differently** [1] - 36:12
**difficult** [3] - 34:7, 36:17, 51:17
**diminish** [1] - 28:4
**dina** [1] - 12:8
**Dina** [1] - 2:24
**disability** [1] - 10:17
**disagree** [1] - 40:6
**disagrees** [1] - 29:25
**disciplinary** [4] - 11:21, 17:1, 31:13, 31:14
**discovery** [1] - 44:17
**discuss** [2] - 22:19, 47:13
**discussed** [2] - 4:18, 36:8
**discussing** [1] - 41:15
**discussion** [1] - 42:18
**discussions** [1] - 22:19
**disease** [1] - 28:16
**dismiss** [8] - 37:4, 37:9, 47:13, 47:15, 47:18, 47:22, 47:24, 48:12
**dismissed** [1] - 26:23
**dispute** [1] - 20:6
**disputes** [1] - 5:4
**disseminating** [1] - 4:5
**district** [2] - 5:24, 6:3
**DISTRICT** [3] - 1:1, 1:1, 1:11
**districts** [1] - 14:12
**docket** [1] - 2:4
**DOE** [60] - 8:1, 8:7, 10:22, 11:20, 12:2, 14:4, 16:16, 16:24, 17:4, 17:8, 17:13, 18:18, 18:23, 19:3, 22:24, 22:25, 23:3, 23:16, 23:21, 24:1, 24:2, 24:3, 24:4, 24:18, 25:13, 28:19, 29:6, 29:7, 29:17, 29:19, 29:25, 30:4, 30:7, 30:9, 31:1, 31:2, 31:12, 31:18, 32:19, 33:6, 33:10, 34:8, 34:14, 35:2, 40:2, 40:7, 40:8, 41:18, 42:6, 43:7, 43:23, 44:7, 45:13, 45:18, 47:8, 48:8, 48:21, 49:24, 51:9
**DOE's** [10] - 8:10, 18:25, 23:17, 24:10, 29:18, 34:10, 39:11, 43:25, 45:12, 47:17
**done** [3] - 20:5, 30:7, 49:10
**down** [3] - 5:8, 19:20, 34:5
**draw** [1] - 32:23
**drop** [1] - 48:14
**due** [22] - 7:22, 8:2, 10:14, 11:13, 13:3, 17:12, 21:14, 22:17, 23:22, 30:8, 30:16, 40:1, 40:5, 43:4, 44:12, 44:16, 47:20, 48:20, 49:3, 49:4, 50:25
**duly** [1] - 28:23
**during** [6] - 15:24, 17:11, 22:7, 25:24, 26:7, 39:5
**duty** [7] - 11:18, 11:23, 27:14, 27:15, 27:18, 27:22

## E

**e-mail** [2] - 22:16, 26:18
**early** [1] - 10:13
**easily** [1] - 28:14
**East/Brooklyn** [1] - 1:23
**EASTERN** [1] - 1:1
**education** [2] - 20:17, 33:15
**EDUCATION** [1] - 1:7
**Education** [18] - 1:17, 2:5, 2:15, 2:18, 2:20, 5:13, 6:4, 6:9, 8:3, 11:16, 20:18, 20:19, 26:1, 27:7, 27:9, 27:15, 27:16, 50:10
**Education's** [1] - 27:12
**effect** [2] - 7:19, 36:13
**effective** [1] - 22:18
**efficient** [3] - 47:14, 47:25, 50:22
**efforts** [1] - 13:2
**either** [9] - 12:2, 16:12, 18:10, 18:14, 20:1, 23:6, 24:13, 39:20, 45:22
**elect** [1] - 25:7
**elects** [1] - 25:23
**eligible** [1] - 13:17
**Employee** [3] - 14:3, 14:10, 20:12
**employee** [10] - 14:4, 19:16, 24:5, 24:8, 24:22, 25:6, 25:23, 28:22, 29:11, 44:2
**employees** [19] - 4:21, 17:2, 19:19, 19:24, 23:19, 24:4, 24:13, 24:15, 27:13, 27:17, 29:7, 29:8, 29:11, 34:16, 35:17, 36:1, 36:20, 44:10, 51:1
**employer** [5] - 15:10, 15:17, 15:19, 22:4, 24:9
**employing** [1] - 31:7
**employment** [13] - 23:17, 23:22, 25:20, 29:8, 29:14, 29:17, 30:18, 31:9, 34:20, 40:24, 41:2, 45:4, 48:22
**Employment** [1] - 5:16
**employment-related** [1] - 25:20
**end** [4] - 14:19, 21:21, 34:7, 50:22
**engage** [2] - 22:13, 48:1
**enter** [2] - 8:8, 29:5
**entered** [8] - 4:19, 4:24, 5:4, 6:22, 15:1, 19:4, 35:16, 36:9
**entering** [2] - 30:19, 31:4
**entire** [1] - 25:9
**entitling** [1] - 20:22
**entity** [1] - 27:6

**environments** [1] - 33:19
**equates** [1] - 44:1
**especially** [1] - 34:6
**ESQ** [5] - 1:14, 1:17, 1:17, 1:20, 1:20
**essentially** [1] - 23:6
**establish** [1] - 3:17
**established** [1] - 9:14
**estimation** [1] - 44:1
**ET** [1] - 1:7
**et** [4] - 16:6, 36:15, 36:16, 41:19
**evaluation** [1] - 32:6
**event** [1] - 39:6
**evidence** [1] - 28:3
**exact** [2] - 11:2, 19:3
**examinations** [1] - 27:17
**examine** [1] - 34:21
**excerpt** [1] - 9:23
**Executive** [1] - 27:3
**exemption** [3] - 11:1, 30:23
**exemptions** [1] - 10:17
**Exhibit** [1] - 22:15
**exigencies** [1] - 22:17
**exist** [1] - 21:6
**existed** [1] - 21:17
**existing** [4] - 15:7, 17:5, 17:12, 21:22
**expanding** [1] - 42:15
**expect** [2] - 35:7, 42:22
**expedite** [2] - 8:12, 22:22
**expedited** [9] - 6:24, 7:3, 8:11, 12:5, 14:8, 15:4, 22:17, 32:22
**explanation** [1] - 37:23
**explicitly** [1] - 12:25
**extend** [3] - 16:13, 23:12, 25:7
**extended** [4] - 24:14, 25:23, 25:24, 36:16
**extent** [2] - 15:7, 15:18

## F

**face** [2] - 16:4, 32:25
**facilities** [2] - 31:1, 39:4
**facility** [1] - 30:20
**fact** [6] - 10:7, 14:16, 23:22, 28:5, 30:21, 34:25
**factfinding** [6] - 5:23, 6:2, 6:6, 14:13, 14:18, 22:9
**factor** [2] - 33:11, 41:7
**fairly** [1] - 33:22
**fairness** [1] - 22:18
**fall** [3] - 6:5, 24:18, 43:10
**falling** [1] - 29:19
**falls** [2] - 24:8, 29:11
**families** [1] - 33:18
**far** [3] - 24:24, 30:2, 33:12
**fast** [2] - 9:11, 28:11
**fast-mutating** [1] - 28:11
**favor** [1] - 28:2
**favoring** [1] - 32:20
**federal** [4] - 3:7, 3:25, 11:10, 32:2

**Federation** [6] - 1:19, 1:20, 2:5, 2:6, 2:25, 9:19
**feeds** [1] - 3:10
**file** [1] - 7:5
**filed** [6] - 9:5, 10:12, 10:18, 14:2, 17:6, 38:8
**finality** [2] - 14:23, 39:15
**fine** [1] - 49:9
**fire** [1] - 20:17
**Firm** [1] - 2:10
**firm** [1] - 40:25
**FIRM** [1] - 1:13
**first** [8] - 3:18, 13:25, 22:5, 24:17, 37:24, 38:6, 45:12, 48:12
**fit** [2] - 11:17, 11:23
**fit-for-duty** [1] - 11:23
**fitness** [5] - 27:14, 27:15, 27:18, 27:22
**five** [1] - 10:9
**flow** [1] - 40:21
**flowed** [1] - 50:8
**flows** [2] - 26:5, 45:4
**folks** [6] - 3:13, 38:14, 38:16, 38:21, 38:22, 43:10
**followed** [1] - 27:19
**FOR** [1] - 1:10
**forbidden** [1] - 4:5
**force** [1] - 7:18
**forces** [1] - 49:4
**forego** [1] - 11:9
**form** [1] - 40:12
**forth** [3] - 9:18, 20:11, 26:15
**forum** [2] - 38:21, 39:1
**forward** [2] - 3:13, 48:15
**fought** [1] - 15:25
**frame** [2] - 45:23, 46:16
**framed** [2] - 41:20, 42:23
**frank** [1] - 35:2
**frankly** [1] - 40:10
**Friday** [2] - 7:8, 22:23
**full** [1] - 7:3
**fully** [3] - 42:17, 44:5, 44:18
**functioning** [1] - 32:1
**fundamental** [2] - 4:16, 34:18
**future** [3] - 3:13, 30:13, 37:16

## G

**general** [4] - 13:12, 40:9, 40:10, 50:7
**generally** [1] - 33:21
**given** [9] - 7:10, 22:10, 24:15, 31:10, 39:20, 42:16, 42:19, 43:2
**goodbye** [1] - 43:20
**govern** [2] - 4:4, 5:4
**governed** [1] - 9:17
**governing** [1] - 50:10
**graff** [1] - 17:19
**GRAFF** [55] - 1:14, 2:9, 3:16, 5:6, 5:10, 6:16, 7:1, 7:15, 8:17, 8:19, 9:1, 9:6, 9:9, 9:13, 10:3, 11:2, 11:4, 11:8,

11:11, 11:19, 12:1, 17:23, 18:1, 18:5, 18:9, 18:15, 20:10, 21:3, 21:10, 26:17, 27:2, 27:23, 28:6, 35:20, 35:25, 36:6, 36:21, 36:23, 37:7, 37:14, 38:2, 38:11, 39:8, 41:25, 42:24, 45:14, 45:17, 46:2, 46:8, 46:12, 46:18, 50:12, 51:6, 51:8, 51:19
**Graff** [2] - 2:9, 4:12, 32:17, 42:14, 46:1
**granted** [4] - 10:9, 12:22, 18:24, 24:24
**grievance** [3] - 21:21, 21:23, 36:4
**grievances** [2] - 12:10, 35:19
**ground** [2] - 3:17, 10:17
**grounds** [2] - 6:19, 16:25
**group** [4] - 23:13, 34:16, 35:3, 38:5
**groups** [1] - 15:23
**guess** [1] - 46:13

## H

**half** [1] - 33:4
**handling** [1] - 17:1
**hard** [5] - 3:12, 8:13, 15:25, 28:17, 39:18
**hardworking** [1] - 32:18
**harm** [9] - 32:21, 37:19, 37:22, 40:21, 41:1, 41:6, 41:7, 43:4, 45:3
**harming** [2] - 10:22
**harms** [1] - 41:3
**heads** [1] - 3:8
**health** [18] - 12:17, 12:23, 13:18, 14:21, 16:13, 18:14, 23:12, 24:14, 24:25, 25:8, 26:6, 28:9, 28:16, 28:25, 30:17, 31:8, 31:10, 31:11
**Health** [2] - 12:18, 12:25, 14:22, 27:8, 28:23, 44:8
**Health's** [6] - 23:23, 25:12, 25:15, 25:25, 29:4, 29:16
**hear** [5] - 20:3, 39:3, 43:6, 45:24, 46:6
**heard** [5] - 12:6, 19:7, 32:15, 40:15, 45:11
**hearing** [6] - 2:4, 3:12, 5:6, 5:10, 31:17, 48:9
**heck** [1] - 50:20
**hefty** [1] - 44:21
**held** [3] - 9:20, 22:19, 33:23
**helpful** [1] - 34:5
**higher** [1] - 41:11
**hire** [1] - 28:21
**hired** [1] - 27:13
**hires** [2] - 27:4, 27:11
**holding** [1] - 9:2
**holidays** [1] - 34:7
**Hon** [1] - 2:2
**honestly** [1] - 47:25
**Honor** [47] - 2:13, 2:17, 2:21, 3:3, 3:16, 5:6, 5:10, 7:24, 9:6, 12:1, 19:2, 21:20, 22:11, 23:2, 23:25, 24:19, 25:2, 25:4, 26:25, 29:21, 29:24, 35:10, 36:21, 39:24, 40:16, 40:19, 40:23, 41:25,

All Word Index 6

42:5, 43:13, 45:3, 45:14, 46:2, 46:8, 46:12, 46:23, 47:6, 47:9, 48:16, 49:18, 50:3, 50:11, 51:13, 51:14, 51:19, 51:22, 51:23
**Honor's** [1] - 24:17
**HONORABLE** [1] - 1:10
**hopefully** [1] - 45:25
**hour** [1] - 3:11
**hours** [1] - 7:8
**Human** [2] - 9:15, 9:16
**hurdles** [1] - 41:5
**Hygiene** [2] - 12:18, 12:25

## I

**i.e** [1] - 43:19
**IC** [1] - 9:18
**idea** [2] - 6:19, 43:6
**imagine** [2] - 24:19, 26:4
**immediately** [1] - 24:16
**impact** [11] - 4:18, 4:25, 5:13, 5:25, 6:1, 8:8, 13:23, 19:13, 23:11, 23:15
**impacted** [1] - 49:24
**impacting** [1] - 12:18
**impacts** [1] - 33:17
**impasse** [7] - 5:13, 5:15, 14:2, 14:12, 19:21, 20:25, 22:6
**implement** [1] - 13:19
**implementation** [5] - 5:1, 13:12, 15:2, 22:3, 36:10
**implemented** [2] - 9:1, 13:20
**important** [7] - 3:14, 3:18, 6:20, 41:7, 41:23, 42:21
**impose** [3] - 5:20, 5:21, 6:6
**imposed** [3] - 5:24, 6:3, 8:20
**incentive** [1] - 16:12
**include** [2] - 30:21, 36:14
**including** [1] - 41:1
**inclusive** [1] - 29:6
**inconsistent** [1] - 36:17
**incorporated** [1] - 5:2
**incorporates** [1] - 20:14
**index** [1] - 9:9
**indicated** [4] - 8:10, 29:3, 29:5, 41:4
**individual** [4] - 19:16, 29:5, 31:16, 41:2
**individuals** [6] - 23:4, 23:5, 23:13, 23:16, 23:18, 24:18
**ineligible** [2] - 29:13, 29:16
**infection** [1] - 28:4
**inform** [1] - 50:15
**information** [2] - 7:10, 18:25
**informed** [1] - 42:17
**initial** [4] - 6:18, 12:22, 40:17, 41:5
**injunction** [7] - 41:8, 41:10, 41:14, 44:14, 45:1, 46:25, 47:3
**injunctive** [6] - 32:22, 33:22, 33:25, 35:4, 37:5, 37:12
**injury** [1] - 33:24

**instant** [3] - 44:14, 44:20, 44:23
**instantly** [1] - 7:6
**instruct** [1] - 3:23
**intact** [1] - 17:3
**intended** [1] - 17:8
**intends** [1] - 45:13
**intense** [1] - 22:7
**intent** [1] - 40:11
**intention** [2] - 24:10, 43:14
**interest** [3] - 34:20, 37:21, 48:6
**intervene** [1] - 50:2, 50:16, 50:20
**invalid** [2] - 6:22, 20:9
**invoke** [5] - 22:5, 24:7, 29:12, 33:7, 35:3
**invoked** [3] - 10:25, 21:1, 36:5
**invoking** [1] - 24:22
**involved** [3] - 12:19, 43:20, 49:3
**irreparable** [9] - 32:21, 37:19, 37:22, 40:21, 41:1, 41:6, 41:7, 43:4, 45:5
**issue** [31] - 10:3, 10:16, 11:22, 11:23, 14:18, 15:18, 19:12, 20:10, 20:22, 26:24, 28:20, 30:13, 30:16, 32:11, 32:16, 34:10, 39:9, 40:5, 40:14, 41:9, 41:12, 42:4, 42:10, 42:22, 44:11, 46:16, 46:19, 47:14, 48:19, 49:3, 49:24
**issued** [11] - 7:6, 8:12, 12:17, 12:24, 12:25, 14:22, 16:22, 16:23, 19:7, 19:10, 19:11
**issues** [12] - 7:23, 10:12, 10:15, 13:4, 14:1, 14:7, 14:9, 32:22, 41:21, 42:21, 48:11, 50:13
**iteration** [1] - 48:2
**itself** [2] - 12:20, 14:21
**IVAN** [1] - 1:17
**ivan** [1] - 2:17

## J

**job** [17] - 24:5, 24:6, 24:8, 27:6, 27:10, 27:11, 28:20, 29:8, 29:12, 29:17, 29:20, 30:18, 34:19, 44:6, 44:9, 46:19, 50:23
**join** [2] - 50:15, 50:16
**JR** [1] - 1:17
**JUDGE** [1] - 1:11
**judge** [1] - 12:21
**Judge** [2] - 18:19, 19:4
**judgment** [1] - 47:24

## K

**KAM** [1] - 1:3
**Kane** [5] - 9:9, 19:5, 31:23, 31:24, 33:14
**keep** [2] - 15:21, 42:12
**kept** [1] - 50:6
**kind** [2] - 21:20, 33:24
**KIYO** [1] - 1:10

**kiyo** [1] - 2:2
**klinger** [1] - 49:17
**Klinger** [2] - 3:3, 22:14
**KLINGER** [5] - 1:20, 3:3, 49:18, 50:3, 50:11
**Klinger's** [1] - 22:15
**knowing** [1] - 32:25
**knowledge** [2] - 26:21, 39:15
**knows** [1] - 38:14
**KOLKER** [17] - 1:20, 2:24, 12:8, 15:16, 16:21, 21:20, 28:23, 29:21, 29:24, 35:10, 35:14, 39:24, 42:5, 48:25, 49:8, 51:14, 51:23
**Kolker** [2] - 2:24, 3:4, 12:8
**kolker** [3] - 19:13, 40:17, 41:12

## L

**lack** [1] - 48:20
**laid** [2] - 6:23, 13:6
**lamb** [1] - 18:1
**landscape** [2] - 6:19, 33:3
**Lane** [1] - 1:19
**language** [3] - 43:16, 43:17, 43:22
**large** [5] - 12:12, 13:16, 16:9, 31:21, 35:25
**last** [4] - 7:5, 8:21, 38:6, 42:20
**late** [8] - 10:24, 24:21, 25:3, 25:5, 25:6, 25:16, 38:3, 42:20
**latter** [1] - 33:4
**LAVAN** [1] - 1:18
**LAW** [2] - 1:13, 1:15
**law** [20] - 4:22, 5:23, 6:2, 7:18, 7:19, 14:4, 15:6, 20:16, 21:7, 21:13, 24:4, 29:18, 30:22, 31:7, 32:2, 32:14, 32:19, 34:18, 37:17, 40:25
**Law** [11] - 2:10, 5:14, 5:22, 9:16, 14:10, 14:11, 23:21, 27:16, 50:10
**lawful** [10] - 12:4, 19:14, 19:17, 23:23, 24:5, 24:6, 28:24, 29:2, 29:18, 29:20
**lawfulness** [1] - 29:4
**laws** [2] - 21:4, 21:7
**lead** [1] - 3:4
**leading** [1] - 50:25
**learn** [1] - 33:16
**least** [5] - 17:23, 18:22, 24:25, 33:9, 42:21
**leave** [14] - 4:14, 7:22, 10:11, 15:24, 16:13, 25:7, 25:10, 25:24, 26:3, 30:3, 37:15, 41:9, 44:23
**leaves** [1] - 17:16
**legislative** [2] - 6:6, 6:7
**life** [1] - 33:15
**light** [1] - 14:19
**lightly** [1] - 34:3
**likelihood** [2] - 32:20, 47:17
**limbo** [2] - 39:10, 39:15
**limitation** [1] - 16:7
**limited** [3] - 12:12, 31:24, 32:7

**limits** [2] - 13:18, 21:24
**line** [1] - 35:23
**listen** [1] - 38:21
**listening** [1] - 39:2
**literally** [2] - 3:11, 31:6
**literature** [1] - 28:1
**live** [1] - 33:15
**LLP** [1] - 1:13
**Local** [2] - 1:19, 2:6
**logically** [2] - 42:13, 45:7
**look** [4] - 10:1, 16:19, 22:14, 24:22
**looked** [2] - 27:9, 33:11
**looming** [1] - 13:25
**loses** [1] - 41:2
**loss** [1] - 33:24

## M

**ma'am** [2] - 2:23, 29:23
**Maiden** [1] - 1:19
**mail** [2] - 22:16, 26:18
**maintain** [3] - 28:25, 29:13, 29:17
**major** [1] - 14:1
**majority** [3] - 35:1, 35:25, 36:1
**mandate** [17] - 5:5, 8:11, 10:13, 11:12, 11:14, 12:5, 12:20, 13:6, 13:12, 15:3, 22:4, 30:21, 31:14, 44:9, 48:21, 50:23
**mandates** [2] - 13:9, 21:7
**mandatory** [4] - 22:3, 27:3, 41:10, 44:14
**Maniscalco** [1] - 33:14
**manner** [1] - 7:3
**MARY** [1] - 1:17
**mask** [2] - 4:10, 4:11
**masks** [2] - 4:7, 4:8
**MATSUMOTO** [1] - 1:10
**matsumoto** [1] - 2:2
**matter** [2] - 10:18, 40:17
**Matter** [1] - 51:24
**mean** [5] - 8:9, 14:17, 21:5, 41:17, 43:18
**meaning** [1] - 27:15
**means** [1] - 41:1
**meantime** [1] - 46:1
**mechanical** [1] - 1:24
**mechanism** [1] - 49:22
**mediation** [6] - 14:5, 14:13, 22:7, 22:8, 22:16, 22:21
**mediator** [3] - 5:17, 14:5, 22:7
**medical** [7] - 11:1, 12:23, 13:14, 23:8, 27:16, 27:20, 30:23
**meditator** [2] - 5:17, 5:20
**meet** [2] - 31:8, 32:2
**members** [6] - 9:19, 19:15, 31:16, 35:8, 36:3, 49:16
**memoranda** [1] - 32:14
**memorializing** [1] - 22:21
**Mendez** [1] - 2:18
**MENDEZ** [2] - 1:17, 2:17

**Mental** [2] - 12:18, 12:25
**mentioned** [2] - 31:24, 32:13
**merits** [6] - 19:6, 19:9, 20:1, 32:21, 44:12, 44:17
**met** [2] - 38:6, 41:13
**mid** [2] - 19:4, 38:4
**mid-October** [2] - 19:4, 38:4
**might** [5] - 24:19, 36:12, 39:3, 39:19, 50:22
**mind** [1] - 15:21
**minute** [1] - 47:10
**mirrored** [1] - 50:8
**misapplications** [1] - 21:24
**misinterpretation** [1] - 12:12
**mistaken** [1] - 18:22
**misunderstandings** [1] - 21:24
**Mitzvah** [1] - 46:2
**modify** [1] - 21:12
**Monday** [1] - 38:7
**money** [3] - 34:1, 34:4, 37:16
**most** [1] - 41:7
**motion** [15] - 19:9, 37:1, 37:4, 40:18, 42:23, 44:23, 45:7, 47:1, 47:3, 47:13, 47:14, 47:18, 47:22, 47:24, 48:1
**mouth** [1] - 4:8
**move** [4] - 13:11, 14:8, 22:22, 48:12
**moved** [1] - 12:19
**moves** [1] - 24:20
**moving** [3] - 6:18, 24:20, 37:9
**MR** [59] - 2:9, 2:17, 3:3, 3:16, 5:6, 5:10, 6:16, 7:1, 7:15, 8:17, 8:19, 9:1, 9:6, 9:9, 9:13, 10:3, 11:2, 11:4, 11:8, 11:11, 11:19, 12:1, 17:23, 18:1, 18:5, 18:9, 18:15, 20:10, 21:3, 21:10, 26:17, 27:2, 27:23, 28:6, 35:20, 35:25, 36:6, 36:21, 36:23, 37:7, 37:14, 38:2, 38:11, 39:8, 41:25, 42:24, 45:14, 45:17, 46:2, 46:8, 46:12, 46:18, 49:18, 50:3, 50:11, 50:12, 51:6, 51:8, 51:19
**MS** [38] - 2:13, 2:21, 2:24, 12:8, 15:16, 16:21, 19:2, 20:4, 21:20, 23:2, 24:17, 25:2, 25:4, 25:23, 28:23, 29:21, 29:24, 35:10, 35:14, 39:24, 40:16, 42:5, 43:12, 43:22, 43:25, 44:11, 45:3, 46:23, 47:6, 47:9, 47:12, 48:16, 48:25, 49:8, 51:13, 51:14, 51:22, 51:23
**must** [1] - 4:8
**mutate** [1] - 28:13
**mutating** [1] - 28:11

## N

**named** [4] - 26:12, 26:13, 26:22, 49:2
**narrow** [1] - 23:4
**necessarily** [1] - 34:5
**necessary** [3] - 22:12, 30:7, 31:20
**need** [9] - 30:13, 37:16, 40:17, 42:15, 44:22, 45:15, 46:9, 46:22, 51:18
**needs** [3] - 3:15, 34:4, 44:13

**negotiate** [2] - 13:11, 13:20
**negotiated** [2] - 15:2, 49:21
**negotiations** [1] - 36:7
**never** [1] - 20:20
**new** [6] - 12:15, 22:4, 27:4, 27:11, 28:13, 28:17
**NEW** [3] - 1:1, 1:7, 1:15
**New** [23] - 1:5, 1:16, 1:16, 1:19, 2:4, 2:14, 5:12, 5:14, 6:3, 6:4, 8:3, 9:15, 9:16, 13:4, 13:8, 14:11, 20:12, 27:2, 27:7, 27:8, 29:1, 44:9
**newly** [1] - 27:12
**news** [1] - 28:7
**next** [1] - 22:10
**NICOLE** [1] - 1:3
**night** [1] - 39:19
**NOLAN** [1] - 1:22
**NolanEDNY@aol.com** [1] - 1:23
**none** [2] - 16:25, 26:17
**nose** [1] - 4:8
**note** [5] - 3:6, 4:13, 13:1, 19:18, 49:1
**noted** [2] - 23:25, 29:24, 33:20, 41:8
**notice** [5] - 20:25, 24:15, 43:15, 43:20, 44:1
**notices** [1] - 43:11
**notifying** [1] - 25:13
**notion** [1] - 30:6
**november** [1] - 1:7
**November** [8] - 10:24, 25:6, 26:21, 33:4, 33:5, 46:17, 47:11, 48:17
**number** [5] - 2:4, 9:9, 11:2, 24:20, 37:14
**numbers** [1] - 19:3
**NY** [5] - 1:14, 1:16, 1:19, 1:23, 20:13

## O

**o'clock** [2] - 7:6, 42:20
**O'Connor** [2] - 2:14, 19:3
**O'CONNOR** [23] - 1:17, 2:13, 2:21, 19:2, 20:4, 23:2, 24:17, 25:2, 25:4, 25:23, 40:16, 43:12, 43:22, 43:25, 44:11, 45:3, 46:23, 47:6, 47:9, 47:12, 48:16, 51:13, 51:22
**observances** [1] - 9:20
**observe** [2] - 3:13, 39:20
**observed** [2] - 40:10, 49:1
**obvious** [1] - 8:6
**obviously** [1] - 36:24
**occurred** [1] - 20:25
**October** [4] - 4:15, 18:23, 19:4, 38:4
**odd** [2] - 11:6, 26:11
**odds** [1] - 34:9
**OF** [3] - 1:1, 1:7, 1:10
**official** [1] - 4:3
**officials** [2] - 28:10, 28:16
**offline** [1] - 38:19
**Old** [1] - 1:13
**once** [2] - 30:9, 47:15

**one** [28] - 7:23, 13:7, 15:20, 16:25, 17:23, 18:2, 20:10, 20:22, 21:7, 21:20, 22:12, 22:24, 26:18, 26:21, 26:25, 27:2, 27:20, 28:18, 29:18, 31:23, 32:24, 35:11, 36:17, 42:24, 49:11, 50:8
**One** [1] - 1:13
**one's** [1] - 33:24
**ongoing** [1] - 37:22
**online** [1] - 27:9
**open** [1] - 2:1
**operate** [1] - 12:11
**opportunity** [5] - 28:12, 40:4, 42:3, 42:17, 48:13
**oppose** [1] - 14:4
**opted** [1] - 35:1
**option** [5] - 25:10, 25:15, 25:24, 33:9
**options** [5] - 16:11, 16:14, 17:16, 30:4, 31:22
**oral** [2] - 18:19, 32:16
**ORDER** [1] - 1:10
**Order** [1] - 27:3
**order** [28] - 2:3, 4:12, 7:6, 9:13, 12:17, 12:23, 12:25, 13:18, 14:21, 19:4, 23:23, 25:12, 25:15, 25:25, 27:8, 28:24, 29:2, 29:5, 29:16, 30:17, 31:8, 40:18, 41:13, 42:25, 43:22, 44:13, 44:22
**ordered** [1] - 37:6
**orders** [1] - 28:24
**original** [1] - 26:13
**outbursts** [1] - 3:21
**outcome** [2] - 19:17, 36:25
**outside** [4] - 4:10, 13:8, 21:12, 38:16
**overall** [1] - 40:11
**overcome** [1] - 41:5
**overflow** [2] - 3:10, 38:14
**overstepped** [1] - 6:11
**owed** [2] - 44:3, 47:21
**own** [3] - 13:21, 49:21, 51:3

## P

**p.m** [1] - 1:7
**page** [1] - 6:12
**paid** [1] - 34:6
**panel** [5] - 10:10, 14:18, 17:22, 19:6, 19:9
**panoply** [1] - 36:18
**papers** [31] - 4:13, 4:17, 6:15, 6:18, 6:23, 7:5, 7:8, 7:9, 7:23, 8:9, 9:5, 10:4, 11:6, 13:7, 17:6, 18:2, 18:17, 20:11, 22:23, 30:5, 41:9, 42:6, 42:8, 42:9, 44:18, 45:19, 47:17, 49:10, 51:17
**paragraph** [2] - 9:13, 10:8
**parallel** [2] - 12:20, 13:11
**parameters** [2] - 31:25, 32:5
**pardon** [1] - 25:11
**part** [11] - 12:12, 13:16, 15:5, 15:8,

16:9, 22:23, 28:11, 31:21, 38:7, 45:1, 49:24
**participating** [1] - 3:20
**particular** [5] - 8:24, 15:3, 29:25, 34:16, 34:19
**particularly** [2] - 13:15, 19:24
**parties** [16] - 5:20, 14:1, 14:8, 14:15, 14:17, 14:23, 20:20, 20:21, 21:8, 22:8, 22:13, 22:15, 39:7, 42:11, 42:16, 44:5
**parties'** [2] - 22:21, 22:22
**party** [1] - 19:22
**pay** [21] - 4:14, 10:4, 10:5, 10:7, 10:10, 10:11, 11:13, 15:24, 21:14, 26:2, 26:3, 26:5, 30:3, 31:10, 31:21, 33:24, 37:16, 37:21, 38:3, 41:9, 46:7
**paycheck** [2] - 34:4, 40:24
**pending** [3] - 23:9, 30:3, 32:7
**pension** [3] - 26:4, 26:5, 41:2
**pensions** [1] - 25:19
**people** [20] - 13:13, 13:23, 15:23, 16:5, 16:10, 16:14, 16:17, 17:9, 18:21, 21:14, 26:19, 28:12, 30:2, 30:19, 31:3, 31:10, 31:13, 33:16, 34:5, 40:2
**PERB** [3] - 5:16, 22:16, 22:20
**percent** [1] - 28:2
**performance** [1] - 11:22
**period** [4] - 15:24, 25:9, 26:2, 26:7
**permission** [2] - 49:23, 50:17
**permit** [2] - 3:21, 7:17
**permits** [3] - 6:5, 24:2, 27:16
**permitted** [1] - 24:9
**person** [1] - 31:7
**personal** [1] - 18:10
**persons** [1] - 27:12
**pertains** [1] - 3:25
**ph** [1] - 10:6
**photographing** [1] - 4:2
**picture** [1] - 7:3
**Place** [1] - 1:14
**place** [1] - 3:9
**placed** [3] - 4:14, 10:11, 15:23
**plaintiff** [13] - 10:8, 10:10, 20:5, 26:22, 32:12, 34:11, 35:12, 41:20, 41:21, 45:23, 47:25, 48:13, 50:4
**Plaintiff** [2] - 1:4, 1:13
**plaintiff's** [8] - 3:3, 10:9, 10:14, 32:16, 44:12, 48:2, 49:13, 51:10
**plaintiffs** [32] - 2:7, 7:21, 9:7, 10:22, 15:14, 15:22, 17:20, 18:9, 18:15, 19:15, 19:19, 26:11, 26:13, 26:17, 27:23, 29:15, 33:1, 34:1, 34:25, 35:24, 36:23, 37:15, 37:20, 38:5, 40:19, 41:5, 41:13, 44:15, 44:21, 48:5, 48:14, 48:17
**plan** [1] - 8:11
**planning** [1] - 43:9
**plays** [1] - 33:15
**Plaza** [1] - 1:23
**pleading** [2] - 48:13, 48:17
**point** [8] - 23:3, 23:16, 25:11, 25:24,

26:25, 31:23, 34:12, 39:21
**points** [1] - 44:7
**police** [2] - 20:16, 20:17
**porcello** [1] - 18:3
**position** [15] - 8:7, 11:21, 17:4, 17:10, 17:11, 23:18, 29:25, 31:12, 31:17, 32:20, 33:24, 34:8, 35:6, 50:12, 50:15
**positions** [1] - 43:7
**post** [4] - 34:21, 35:5, 47:21, 50:24
**practice** [1] - 48:1
**practices** [1] - 9:21
**pre** [3] - 34:21, 34:23, 47:21
**pre-deprivation** [1] - 34:23
**precisely** [1] - 50:3
**preliminary** [4] - 41:14, 44:14, 46:25, 47:3
**premised** [1] - 31:21
**present** [2] - 3:18, 13:15
**presented** [3] - 41:21, 45:7, 47:4
**preserve** [1] - 25:22
**preserving** [1] - 41:10
**presiding** [1] - 2:2
**pretty** [3] - 35:2, 42:2, 50:9
**prevail** [3] - 34:1, 39:11, 39:12
**primarily** [1] - 12:22
**principal's** [1] - 15:4
**principals** [1] - 35:16
**print** [1] - 51:17
**problem** [2] - 20:15, 50:18
**problems** [2] - 8:21, 8:23
**procedural** [2] - 8:2, 36:10
**procedure** [2] - 14:11, 27:18
**procedures** [7] - 10:25, 11:10, 11:24, 17:6, 21:1, 24:23, 26:15
**proceed** [2] - 22:9, 45:8
**proceeded** [1] - 14:6
**proceeding** [2] - 38:18, 39:5
**Proceedings** [1] - 1:24
**process** [56] - 7:23, 8:1, 8:2, 10:14, 11:13, 12:4, 13:4, 14:14, 14:16, 14:19, 14:24, 15:14, 17:1, 17:11, 17:13, 17:22, 19:13, 19:14, 19:17, 20:7, 20:9, 21:14, 21:22, 21:23, 22:1, 22:5, 24:2, 24:10, 28:18, 29:13, 30:8, 30:16, 32:8, 34:22, 34:23, 35:3, 35:5, 40:1, 40:5, 41:19, 43:4, 43:19, 44:3, 44:12, 44:16, 45:11, 45:12, 47:20, 48:20, 49:3, 50:25
**processes** [10] - 17:2, 23:10, 23:14, 36:5, 42:3, 46:20, 48:19, 48:20, 49:6, 50:24
**processing** [1] - 38:5
**produced** [2] - 1:24, 27:5
**professional** [1] - 3:19
**prohibited** [1] - 4:2
**prohibits** [1] - 31:7
**project** [1] - 5:9
**prompt** [1] - 8:10
**promulgate** [1] - 28:24

## All Word Index

9

**promulgated** [1] - 29:1
**proper** [1] - 11:25
**property** [2] - 34:19, 37:20
**proposing** [1] - 46:1
**proposition** [1] - 20:14
**protection** [1] - 24:7
**provide** [4] - 12:23, 16:9, 21:14, 25:8
**provided** [3] - 17:16, 43:15, 44:2
**provides** [3] - 15:25, 16:4, 43:22
**providing** [2] - 7:22, 44:1
**provision** [1] - 21:3
**provisions** [3] - 7:12, 36:14, 49:9
**Pubic** [1] - 14:10
**public** [4] - 3:9, 14:3, 28:9, 28:16
**Public** [5] - 5:16, 14:2, 20:12
**pursuant** [2] - 6:10, 12:11
**pursue** [3] - 24:14, 33:8, 45:9
**put** [5] - 7:8, 9:5, 20:10, 30:3, 38:8

### Q

**qualification** [8] - 11:22, 40:3, 42:4, 44:6, 44:9, 48:10, 48:22, 50:23
**qualifications** [1] - 41:19
**qualified** [1] - 11:18
**quickly** [1] - 38:9
**quite** [3] - 21:9, 28:5, 40:25
**quo** [1] - 41:10

### R

**raise** [1] - 6:14
**raised** [1] - 9:25
**raising** [1] - 10:12
**rapidly** [2] - 28:5
**rather** [2] - 29:13, 45:22
**reach** [5] - 14:6, 21:8, 22:4, 40:18, 41:12
**reached** [5] - 5:13, 19:14, 19:20, 19:22, 44:13
**reaching** [1] - 14:15
**react** [1] - 43:8
**reaction** [1] - 28:7
**read** [5] - 7:6, 18:19, 28:11, 38:19, 38:25
**reading** [5] - 9:11, 9:12, 9:23, 38:25, 50:6
**real** [2] - 6:19
**really** [12] - 3:14, 31:13, 32:13, 32:15, 33:3, 39:1, 44:4, 44:6, 45:20, 45:21, 50:19, 51:2
**reason** [1] - 51:4
**reasonable** [2] - 23:7, 30:22
**reasons** [2] - 13:22, 18:14
**receive** [4] - 10:10, 25:17, 26:2, 44:22
**received** [1] - 16:6
**recently** [1] - 8:20
**reciting** [1] - 7:11
**recognize** [1] - 44:25

**recognized** [1] - 33:14
**recognizing** [2] - 13:10, 13:22
**recommendation** [1] - 14:14
**recommended** [1] - 24:23
**record** [2] - 4:4
**recorded** [1] - 1:24, 22:15
**recordings** [2] - 4:1, 4:5
**reference** [1] - 5:2
**referenced** [1] - 19:5
**refrain** [1] - 39:3
**regard** [4] - 4:16, 32:20, 33:13, 47:23
**regarding** [4] - 10:7, 10:17, 15:2, 51:11
**regardless** [2] - 13:24, 28:21
**regulations** [1] - 7:18
**reinstatement** [1] - 37:12
**related** [4] - 25:20, 32:11, 34:19, 34:20
**Relations** [4] - 5:17, 14:3, 14:11, 20:12
**relations** [1] - 14:4
**relied** [1] - 43:17
**relief** [14] - 6:24, 18:13, 32:22, 32:24, 33:22, 33:25, 35:4, 37:5, 37:12, 44:15, 44:22, 45:10
**reliefs** [1] - 42:24
**religion** [2] - 18:14, 23:7
**religions** [2] - 18:20, 18:24
**religious** [7] - 9:20, 10:17, 10:25, 12:23, 13:14, 30:23, 31:25
**rely** [2] - 48:9, 48:21
**relying** [1] - 44:7
**remain** [4] - 3:19, 17:3, 33:6, 33:9
**remainder** [1] - 13:3
**remedies** [2] - 5:2, 33:7
**remind** [1] - 49:11
**removal** [1] - 31:21
**remove** [1] - 4:11
**reparable** [1] - 41:4
**reply** [2] - 6:16, 7:4
**report** [1] - 22:20
**reporter** [1] - 4:3
**Reporter** [1] - 1:22
**reports** [1] - 28:8
**represent** [5] - 2:12, 17:20, 35:24, 36:18, 41:1
**representative** [1] - 5:4
**representatives** [2] - 8:14, 12:4
**represented** [1] - 49:12
**representing** [5] - 2:14, 2:18, 4:19, 35:13, 35:24
**request** [5] - 10:9, 18:3, 18:7, 18:13, 42:25
**requested** [1] - 42:24
**requests** [4] - 3:11, 18:16, 18:21, 18:24
**require** [1] - 33:13
**required** [4] - 14:23, 30:22, 37:13, 37:25
**requirement** [18] - 24:5, 24:9, 27:4, 27:6, 27:11, 27:20, 28:21, 29:9, 29:17,

29:20, 30:18, 30:19, 30:25, 31:6, 31:8, 46:19
**requirements** [4] - 24:6, 29:10, 29:12, 32:2
**requires** [1] - 23:24
**requiring** [1] - 24:5
**residency** [3] - 29:9, 31:6
**residual** [1] - 28:3
**resisting** [1] - 26:14
**resolve** [4] - 12:5, 14:7, 40:18, 44:13
**resolved** [1] - 14:1
**respect** [10] - 19:13, 20:2, 24:1, 26:3, 26:4, 29:10, 34:25, 41:9, 44:20, 46:19
**respected** [1] - 32:19
**respectful** [1] - 38:23
**respond** [9] - 7:2, 8:7, 8:17, 12:3, 17:15, 40:8, 42:3, 46:9, 48:23
**response** [4] - 36:22, 45:18, 46:11, 51:10
**rest** [1] - 11:9
**restored** [2] - 25:12, 26:6
**restrictions** [1] - 3:9
**result** [5] - 5:5, 8:11, 13:6, 13:10, 19:16
**resulted** [5] - 6:1, 14:9, 14:25, 15:4, 17:11
**resulting** [1] - 16:11
**results** [1] - 14:14
**retroactively** [1] - 25:17
**return** [2] - 25:15, 26:1
**reversing** [1] - 41:11
**review** [1] - 17:22
**reviewing** [2] - 7:9, 18:17
**revised** [1] - 12:25
**Rights** [3] - 9:15, 9:16
**rights** [4] - 7:21, 10:14, 10:19, 44:16
**risk** [1] - 13:11
**risks** [2] - 33:17, 39:16
**Road** [1] - 1:13
**road** [1] - 34:5
**role** [1] - 33:15
**Room** [1] - 1:16
**room** [3] - 3:10, 38:14, 38:20
**rubric** [1] - 21:16
**rule** [1] - 39:25
**rules** [3] - 3:17, 7:18, 36:11
**ruling** [1] - 8:20
**running** [1] - 10:10

### S

**safeguard** [1] - 3:9
**safety** [2] - 3:9, 28:25
**sake** [1] - 51:3
**satisfied** [1] - 44:21
**Saturday** [1] - 46:3
**saw** [1] - 18:2
**schedule** [1] - 49:10
**scheme** [1] - 50:10

All Word Index                                                                10

**SCHER** [1] - 1:13
**school** [12] - 5:24, 6:3, 8:15, 13:15, 13:19, 13:25, 14:12, 14:20, 25:13, 29:6, 30:25, 31:5
**schools** [2] - 12:18, 33:13
**scope** [1] - 42:15
**second** [3] - 4:1, 27:14, 33:11
**Second** [8] - 8:20, 10:6, 10:7, 19:6, 32:9, 33:20, 37:20, 41:3
**Section** [11] - 5:14, 5:22, 6:5, 6:12, 15:12, 20:17, 21:4, 23:20, 24:7, 29:13
**section** [5] - 5:15, 6:2, 24:19, 27:16, 27:19
**see** [10] - 16:10, 20:20, 24:23, 26:20, 27:4, 27:9, 37:5, 40:7, 47:6, 47:16
**seek** [17] - 16:4, 16:8, 16:16, 16:17, 16:24, 17:4, 17:22, 23:1, 23:17, 24:3, 24:13, 24:23, 40:2, 43:16, 43:17, 45:1, 45:9
**seeking** [11] - 10:25, 18:13, 22:6, 32:21, 32:24, 35:4, 36:15, 43:19, 44:15, 44:23
**seeks** [4] - 26:1, 43:24, 43:25, 47:8
**segregate** [1] - 48:11
**seniority** [2] - 25:20, 26:4
**sense** [1] - 42:13
**sent** [2] - 8:22, 20:25
**separate** [16] - 6:7, 15:21, 16:4, 16:24, 17:15, 22:1, 23:17, 23:21, 24:4, 24:9, 29:19, 43:9, 43:16, 43:25, 45:1, 47:8
**separated** [5] - 24:16, 35:6, 43:15, 44:2, 46:20
**separation** [6] - 16:12, 23:1, 25:10, 45:4, 50:24, 50:25
**September** [5] - 8:15, 16:13, 23:12, 25:7
**serve** [1] - 38:14
**Service** [3] - 5:14, 5:22, 23:21
**service** [6] - 5:23, 16:5, 16:24, 20:16, 21:4, 21:7
**set** [6] - 9:18, 21:7, 26:15, 32:8, 44:18, 45:22
**settlement** [1] - 22:13
**seven** [3] - 11:6, 17:19, 17:21
**several** [3] - 8:21, 10:20, 26:19
**shall** [2] - 9:14, 9:17
**Sher** [1] - 2:10
**shifting** [1] - 33:3
**SHOW** [1] - 1:10
**show** [8] - 2:3, 4:12, 7:7, 7:13, 13:18, 19:5, 27:17, 42:25
**shy** [1] - 33:4
**side** [2] - 12:6, 18:25
**sign** [1] - 5:12
**signed** [1] - 20:21
**significant** [3] - 24:4, 33:23, 40:25
**similar** [3] - 29:8, 49:20, 50:9
**simultaneously** [1] - 42:9
**sincerely** [1] - 9:20

**sit** [1] - 5:8
**situation** [7] - 3:23, 5:19, 6:7, 10:18, 21:13, 22:10, 36:6
**slice** [1] - 23:5
**slightly** [1] - 32:10
**slowly** [1] - 9:12
**small** [1] - 34:15
**soften** [1] - 13:23
**some-odd** [2] - 11:6, 26:11
**someday** [1] - 37:9
**someone** [2] - 16:24, 17:4
**sometime** [1] - 38:3
**son's** [1] - 46:2
**soon** [3] - 38:7, 42:22, 47:4
**SOPHIE** [1] - 1:22
**sorry** [7] - 4:25, 5:22, 9:6, 27:2, 28:19, 47:9, 49:6
**sort** [3] - 8:13, 14:22, 41:18
**sought** [3] - 13:19, 17:20, 17:21
**sound** [2] - 11:7, 43:18
**sounds** [2] - 11:8, 51:4
**Southampton** [1] - 20:12
**speaking** [1] - 2:19
**specific** [4] - 30:19, 40:5, 40:12, 40:14
**specifically** [5] - 13:20, 17:7, 24:3, 45:10, 48:19
**spectators** [2] - 3:6, 38:24
**spectrum** [1] - 36:19
**spent** [1] - 7:8
**staff** [1] - 31:2
**stages** [1] - 10:13
**standard** [1] - 41:11
**standards** [1] - 9:14
**standing** [11] - 4:16, 4:23, 7:14, 19:12, 19:25, 20:2, 20:3, 20:6, 20:8, 40:20, 41:6
**start** [2] - 46:10, 46:11
**started** [3] - 8:16, 40:19, 48:4
**starting** [1] - 46:12
**state** [13] - 2:7, 2:11, 10:15, 12:21, 14:2, 14:3, 14:10, 14:11, 15:6, 15:12, 28:24, 30:21
**State** [4] - 6:3, 13:8, 20:12
**statements** [2] - 40:9, 40:11
**STATES** [2] - 1:1, 1:11
**states** [2] - 6:13, 24:3
**States** [1] - 1:5
**status** [6] - 4:14, 22:16, 22:21, 25:20, 33:9, 41:10
**statute** [1] - 20:18
**statutory** [3] - 14:16, 49:22, 50:9
**stay** [1] - 42:25
**stenography** [1] - 1:24
**step** [3] - 4:10, 22:10, 30:1
**steps** [1] - 34:16
**still** [9] - 10:21, 21:8, 26:14, 32:7, 32:11, 34:17, 46:5, 46:25
**stock** [1] - 16:14
**strain** [1] - 28:13

**strains** [2] - 28:13, 28:15
**strategy** [1] - 51:3
**Street** [1] - 1:16
**strong** [1] - 47:17
**STROOCK** [2] - 1:18
**Strook** [3] - 2:24, 3:3
**struck** [1] - 5:19
**students** [2] - 30:25, 33:18
**subject** [1] - 22:3
**submissions** [1] - 45:16
**submit** [6] - 45:18, 45:19, 45:23, 48:17, 50:16, 51:9
**submitted** [5] - 4:13, 7:24, 22:23, 42:6, 42:8
**submitting** [3] - 46:18, 46:24, 47:11
**subset** [1] - 23:19
**success** [2] - 32:21, 47:18
**sue** [3] - 35:12, 35:22, 50:21
**sued** [1] - 36:18
**sufficient** [4] - 37:11, 37:12, 48:24, 48:25
**suggest** [1] - 45:19
**Suite** [1] - 1:13
**summarily** [1] - 40:4
**summary** [1] - 47:24
**super** [1] - 35:25
**supervisors** [3] - 4:20, 35:13, 35:15
**supplement** [2] - 46:14, 47:19
**supplemental** [1] - 51:10
**support** [1] - 4:22
**supports** [1] - 29:19
**Supreme** [1] - 13:4
**system** [1] - 33:16

## T

**table** [2] - 12:7, 22:5
**talks** [1] - 9:10
**Taylor** [1] - 14:10
**teacher's** [1] - 7:25
**teachers** [10] - 3:22, 4:20, 6:12, 23:20, 27:17, 31:2, 32:18, 33:2, 33:18, 36:19
**Teachers** [6] - 1:19, 1:21, 2:6, 2:25, 9:19
**teasing** [1] - 48:7
**tenured** [1] - 23:20
**terminate** [8] - 8:4, 16:5, 16:8, 16:16, 16:17, 17:4, 40:2, 40:4
**terminating** [1] - 17:9
**terms** [8] - 12:15, 15:6, 15:7, 16:12, 21:18, 22:4, 42:5, 48:10
**Thanksgiving** [2] - 45:21, 47:5
**THE** [95] - 1:10, 1:13, 2:3, 2:11, 2:16, 2:19, 2:22, 3:1, 3:5, 3:17, 5:8, 6:14, 6:17, 7:2, 8:5, 8:18, 8:24, 9:4, 9:8, 9:11, 9:22, 10:23, 11:3, 11:5, 11:9, 11:14, 11:20, 12:2, 15:14, 16:19, 17:19, 17:25, 18:2, 18:6, 18:12, 18:18, 20:3, 20:5, 20:24, 21:5, 21:15, 22:24,

SN          OCR          RPR

24:12, 24:21, 25:3, 25:17, 26:9, 27:1, 27:20, 28:1, 28:9, 29:22, 32:9, 35:11, 35:15, 35:22, 36:3, 36:12, 36:22, 37:4, 37:8, 37:23, 38:10, 38:12, 39:17, 40:15, 41:17, 42:1, 42:13, 43:2, 43:16, 43:24, 44:4, 44:25, 45:6, 45:15, 45:19, 46:4, 46:10, 46:14, 46:21, 47:2, 47:7, 47:11, 47:23, 48:18, 49:6, 49:13, 50:2, 50:4, 50:18, 51:7, 51:9, 51:15, 51:21
**themselves** [8] - 11:16, 15:15, 23:10, 23:14, 25:10, 26:15, 35:1, 37:18
**therefore** [2] - 20:7, 37:21
**they've** [1] - 38:3
**thinking** [2] - 43:21, 47:12
**thinks** [1] - 11:24
**third** [1] - 4:7
**thoughts** [1] - 18:15
**three** [3] - 17:22, 34:4, 35:23
**threshold** [1] - 41:14
**throughout** [2] - 44:17
**thwart** [1] - 28:18
**timing** [3] - 42:6, 46:4, 46:24
**Title** [4] - 8:23, 8:25, 9:15, 9:25
**titles** [1] - 29:10
**TO** [1] - 1:10
**today** [10] - 3:18, 5:7, 5:11, 26:20, 34:6, 35:2, 36:9, 37:3, 45:17, 49:12
**today's** [1] - 4:4
**together** [2] - 38:8
**took** [2] - 8:10, 17:11
**Town** [1] - 20:11
**track** [2] - 13:11, 19:20
**tracks** [1] - 12:20
**transcript** [3] - 1:24, 4:3, 18:20
**TRANSCRIPT** [1] - 1:10
**Transcription** [1] - 1:24
**transmissible** [2] - 28:14, 28:15
**treasured** [1] - 32:18
**trial** [1] - 46:12
**tries** [1] - 5:17
**TRO** [2] - 12:22, 12:24
**trouble** [1] - 43:7
**true** [2] - 14:10, 18:5
**try** [2] - 14:6, 28:17
**trying** [5] - 3:12, 28:16, 39:21, 48:5, 51:16
**two** [11] - 9:13, 15:21, 19:18, 23:10, 25:13, 27:2, 32:22, 34:4, 41:5, 48:11, 51:16
**types** [1] - 13:9

## U

**UFT** [28] - 10:12, 10:22, 12:8, 12:19, 15:3, 17:7, 17:14, 19:18, 20:10, 20:25, 21:15, 22:1, 24:1, 29:22, 34:8, 34:9, 35:22, 36:1, 36:2, 36:13, 41:18, 42:7, 44:7, 47:16, 49:2, 49:16, 49:20, 51:9
**UFT's** [4] - 16:3, 16:21, 17:3, 50:15

**ultimate** [1] - 11:15
**ultimately** [5] - 12:13, 13:5, 14:15, 34:1, 40:24
**uncomfortable** [1] - 4:9
**under** [20] - 5:14, 5:22, 6:2, 15:6, 15:12, 15:20, 20:16, 20:18, 21:10, 23:11, 23:15, 27:15, 30:22, 32:10, 33:8, 38:13, 39:13, 49:5, 49:21
**undercuts** [1] - 33:21
**understood** [3] - 13:21, 37:7, 44:5
**unfortunately** [1] - 5:8
**unilaterally** [7] - 8:4, 22:25, 23:21, 24:2, 24:3, 43:23, 47:8
**uninterrupted** [1] - 26:7
**union** [32] - 5:11, 5:12, 6:8, 6:12, 7:25, 8:7, 8:9, 11:24, 12:3, 12:19, 13:19, 15:4, 15:9, 15:17, 15:19, 15:25, 17:10, 17:12, 19:15, 22:1, 29:25, 30:10, 31:5, 35:5, 36:18, 39:22, 40:4, 40:6, 43:8, 48:9, 48:24, 48:25
**Union's** [1] - 39:11
**union's** [5] - 7:16, 13:1, 30:17, 30:20, 31:17
**unions** [24] - 4:19, 12:19, 13:3, 13:5, 15:1, 15:2, 19:19, 30:15, 35:12, 35:23, 36:4, 37:1, 41:15, 49:2, 49:5, 49:8, 49:11, 49:15, 49:20, 49:23, 49:25, 50:6, 50:16, 50:19
**unit** [1] - 4:24
**UNITED** [2] - 1:1, 1:11
**United** [5] - 1:5, 1:19, 2:5, 2:25, 9:18
**unlawful** [1] - 6:22
**unlawfully** [2] - 35:18, 35:19
**unless** [4] - 19:10, 29:6, 38:12, 50:4
**unpaid** [2] - 7:22, 37:15
**unreasonable** [2] - 38:4, 38:9
**unruly** [1] - 3:21
**unvaccinated** [1] - 33:7
**up** [7] - 3:8, 13:18, 24:15, 25:6, 32:8, 45:22, 50:25
**updated** [1] - 18:25
**upheld** [2] - 29:3, 33:12
**upholding** [1] - 13:5
**urgency** [3] - 14:20, 22:10, 33:21
**UTF's** [1] - 22:2

## V

**vaccinated** [11] - 13:13, 13:17, 13:22, 13:24, 16:6, 23:24, 26:11, 28:12, 29:6, 30:20, 31:4
**vaccine** [25] - 5:5, 10:13, 11:11, 11:14, 11:17, 12:5, 13:6, 18:8, 18:10, 26:14, 26:19, 26:22, 27:3, 27:4, 27:6, 27:21, 27:25, 28:5, 28:6, 28:7, 28:18, 28:20, 33:13, 44:9, 48:21
**valid** [3] - 23:23, 32:4
**validity** [2] - 20:7, 32:13
**various** [9] - 4:19, 16:1, 16:23, 17:16, 30:3, 31:22, 33:3, 35:24, 43:3

**vaxx** [1] - 13:9
**vehicle** [1] - 11:25
**vehicles** [1] - 15:11
**Veronca** [1] - 10:6
**versus** [3] - 2:4, 9:9, 20:12
**via** [1] - 19:23
**video** [2] - 3:10, 3:20
**videos** [1] - 4:5
**videotaping** [1] - 4:1
**view** [9] - 16:3, 16:20, 16:21, 18:21, 18:22, 22:2, 30:17, 34:10, 34:12
**views** [1] - 43:3
**VII** [4] - 8:23, 8:25, 9:15, 9:25
**violate** [1] - 7:17, 7:20, 48:20
**violated** [3] - 8:22, 8:24, 44:16
**violates** [1] - 5:21
**violation** [6] - 10:14, 10:19, 10:21, 12:12, 37:18, 37:21
**violations** [1] - 37:18
**virtually** [1] - 7:7
**virus** [1] - 28:11

## W

**wait** [1] - 9:8
**waited** [1] - 7:4
**waiting** [2] - 26:20, 40:7
**waive** [1] - 50:14
**wants** [2] - 12:6, 45:18
**wear** [1] - 4:9
**wearing** [1] - 4:7
**website** [1] - 27:12
**week** [5] - 7:5, 42:20, 48:22, 48:25, 49:9
**weekend** [3] - 7:8, 39:13, 39:18
**weeks** [1] - 25:13
**weigh** [1] - 42:16
**welcome** [1] - 3:7
**welcoming** [1] - 34:12
**whereas** [1] - 36:9
**whole** [2] - 20:24, 32:12
**winning** [1] - 31:13
**withdrew** [1] - 18:3
**wondering** [1] - 47:19
**word** [4] - 38:13, 38:17, 50:6
**word-for-word** [1] - 50:6
**workforce** [2] - 22:18, 49:24
**worried** [1] - 25:19
**worse** [1] - 46:5
**worth** [1] - 46:6
**written** [2] - 22:11, 22:20

## Y

**year** [3] - 8:15, 34:4, 34:7
**yesterday** [1] - 19:6
**YORK** [3] - 1:1, 1:7, 1:15
**York** [23] - 1:5, 1:16, 1:16, 1:19, 2:5, 2:14, 5:12, 5:14, 6:3, 6:4, 8:3, 9:15,

9:16, 13:4, 13:8, 14:11, 20:12, 27:2,
27:7, 27:8, 29:1, 44:10
**young** [1] - 33:16